UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARLOS MARIN, KENNY LEBRON, and MARTINA HANISCH, on behalf of themselves and all others similarly situated,

     Plaintiffs,

  -against-

APPLE  METRO,  INC.,  et al.,

     Defendants.

Case No. 12 Civ. 5274 (ENV)(CLP)

SHAUNTA DOVE, on behalf of herself and all others similarly situated,

     Plaintiffs,

  -against-

APPLE  METRO,  INC.,  et al.,

     Defendants.

Case No. 13 Civ. 1417 (ENV)(CLP)

Oral Argument Requested at a Date and Time to be Determined by the Court.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS, PURSUANT TO FED. R. CIV. P. 72(a), TO MAGISTRATE JUDGE POLLAK'S JULY 28, 2014 ORDER**

LITTLER MENDELSON
 A Professional Corporation
*Attorneys for Defendants*
900 Third Avenue
New York, NY  10022

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ............................................................................................................2

    A.    Restaurant Structure And Policies ....................................................................2

            1.    Employee Time Recording ...................................................................3
            2.    Defendants' Overtime Policy................................................................4
            3.    Tip Share Policy...................................................................................5

    B.    The *Marin* Action ...........................................................................................7

    C.    The *Dove* Action .............................................................................................8

    D.    Plaintiffs' Motion for Conditional Certification ...............................................8

ARGUMENT ..................................................................................................................9

I.    THE MAGISTRATE JUDGE'S ORDER GRANTING COLLECTIVE
    ACTION CERTIFICATION UNDER THE FLSA IS ERRONEOUS AND
    CONTRARY TO LAW ............................................................................................9

    A.    The Standard of Review of the Magistrate Judge's Conditional
        Certification of an FLSA Collective Action ......................................................9

    B.    Plaintiffs' Burden When Seeking Conditional Certification Under the FLSA...10

    C.    The Decision to Conditionally Certify All 36 of Defendants' Restaurants in
        the *Marin* and *Dove* Actions is Clearly Erroneous and Contrary to Law ..........11

            1.    Plaintiffs Failed to Establish an Unlawful, Common Policy or
                Practice in Both the *Marin* and *Dove* Actions ..........................................11
            2.    The Magistrate Judge Erroneously Relies on the Single Employer
                Theory................................................................................................15
            3.    The Magistrate Judge Erroneously Discounted Defendants' Evidence.....17
            4.    Plaintiff Dove Fails to Even Meet the Pleading Standard for FLSA
                Minimum Wage Claims.......................................................................19

    D.    The Scope of the FLSA Collective Action Notice is Clearly Erroneous
        And Contrary to the Law ..................................................................................22

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page**

*Agudelo v. E&D LLC*,
    No. 12-CV-0960 (HB), 2012 U.S. Dist. LEXIS 160510 (S.D.N.Y. Nov. 5, 2012)................16

*Ahmed v. T.J. MAXX Corp., et al.*,
    10-CV-3609 (ADS) (ETB), 2013 U.S. Dist. LEXIS 81942 at *45 (E.D.N.Y. June 8,
    2013) ................................................................................................................................14

*Anglada v. Linens 'N Things, Inc.*,
    2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007)......................................................23

*Barfield v. N.Y. City Health & Hosps. Corp.*,
    No. 05-civ-6319, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005)....................10, 14

*Boutros v. JTC Painting and Decorating Corp.*,
    No. 12-civ-7576, 2013 U.S. Dist. LEXIS 86878 (S.D.N.Y. June 19, 2013) ..............20, 21, 22

*Brickey v. Dolgencorp., Inc.*,
    272 F.R.D. 344 (W.D.N.Y. 2011).........................................................................................14

*Colon v. Major Perry St. Corp.*,
    No 12 Civ. 3788 (JPO), 2013 U.S. Dist. LEXIS 93021 (S.D.N.Y. July 2, 2013) .............18, 19

*DeJesus v. HF Mgmt. Servs., LLC*,
    No. 12-4565, 2013 U.S. App. LEXIS 16105 (2d Cir. Aug. 5, 2013) ...............................20, 21

*Dove v. Apple-Metro, Inc., et al.*,
    Civil Action No. 13–CV–1417 (ENV)(CLP) ("*Dove* Action").................................... passim

*Eng-Hatcher v. Sprint Nextel Corp.*,
    07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262, at *17(S.D.N.Y. Nov. 13, 2009) .........14

*Hernandez v. Immortal Rise, Inc.*,
    No. 11-4360, 2012 U.S. Dist. LEXIS 136556 (E.D.N.Y. Sept. 24, 2012) (Bloom, J.) ..........23

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)..............................................................................................................10

*Lamb v. Singh Hospitality Grp.*,
    No. 11-CV-6060 (MKB), 2013 U.S. Dist. LEXIS 141429 (E.D.N.Y. Sept. 30, 2013)..........16

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (S.D.N.Y. 2008)...................................................................................15

# TABLE OF AUTHORITIES

*Lujan v. Cabana Mgmt., Inc.*,
No. 10-cv-755, 2011 U.S. Dist. LEXIS 9542 (E.D.N.Y. Feb. 1, 2011) ..................................15

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013)......................................................................................20, 21

*Marin, et al. v. Apple-Metro, Inc., et al.*,
Civil Action No. 12–CV–5274 (ENV)(CLP) ("*Marin* Action") ..................................... passim

*Mendoza v. Ashiya Sushi 5, Inc.*,
No. 12 Civ. 8629 (KPF), 2013 U.S. Dist. LEXIS 132777 (S.D.N.Y. Sept. 16, 2013) ...........16

*Morales v. Plantworks, Inc.*,
No. 05-civ-2349, 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 2, 2006) ..............................10

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
Nos. 11-0734, 11-0710, 11-0713, 11-0728, 2013 U.S. App. LEXIS 14128, at *18-20
(2d Cir. July 11, 2013) ........................................................................................................20

*Prizmic v. Armour, Inc.*,
No. 05-cv-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ..........................10

*Rosario v. Valentine Ave. Disc. Stores Co., Inc.*,
828 F. Supp. 2d 508 (E.D.N.Y. 2011) .............................................................................17, 16

*Strait v. Belcan Eng'g Grp., Inc.*,
911 F. Supp. 2d 709 (N.D. Ill. 2012) ...................................................................................10

*Tompkins v. R.J. Reynolds Tobacco Co.*,
92 F. Supp. 2d 70 (N.D.N.Y 2000) .....................................................................................9, 10

*Tribune Co. v. Purcigliotti*,
93-cv-7222, 1998 U.S. Dist. LEXIS 5155 (S.D.N.Y. Apr. 14, 1998) ...............................9, 10

*Trinidad v. Pret a Manger (USA) Ltd.*,
No. 12-civ-6094, 2013 U.S. Dist. LEXIS 97544 (S.D.N.Y. July 11, 2013).....................14, 15

*U.S. v. U.S. Gypsum Co.*,
333 U.S. 364 (1948)..............................................................................................................10

*Winfield v. Citibank, N.A.*,
843 F. Supp. 2d 397 (S.D.N.Y. 2012).............................................................................18, 19

**STATUTES**

Fair Labor Standards Act ("FLSA") .........................................................................................7

FLSA ............................................................................................................................... passim

## TABLE OF AUTHORITIES

section 216(b) of the FLSA...............................................................................................9, 10, 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) .......................................................................................................1, 9, 23

## PRELIMINARY STATEMENT

Defendants[1] hereby respectfully submit their objections to Magistrate Judge Pollak's Order, dated July 28, 2014 (the "Order"),[2] pursuant to Fed. R. Civ. P. 72(a), in which conditional certification of a collective action in two cases was granted: *Marin, et al. v. Apple-Metro, Inc., et al.*, Civil Action No. 12–CV–5274 (ENV)(CLP) ("*Marin* Action") and *Dove v. Apple-Metro, Inc., et al.*, Civil Action No. 13–CV–1417 (ENV)(CLP) ("*Dove* Action"). Specifically, and as fully discussed below, Defendants object to the Order granting conditional certification on the grounds that finding that the *Marin* and *Dove* Plaintiffs were similarly situated to members of the putative collective in all of Defendants' 36 restaurants was clearly erroneous and contrary to law because: (1) Plaintiffs introduced evidence solely concerning the restaurants where the Named and Opt-in Plaintiffs worked; (2) the Magistrate Judge relied on the single employer theory in the absence of any evidence of an unlawful, common policy or practice in Defendants' other 33 restaurants; (3) the Magistrate Judge discounted Defendants' evidence establishing that there was no unlawful, common policy or practice in Defendants' other 33 restaurants; and (4) Plaintiff Dove failed to even meet the pleading standard for FLSA minimum wage claims, let alone her burden for conditional certification.

Defendants further object to the Order on the grounds that the finding that Plaintiffs in both the *Marin* and *Dove* Actions were entitled to provide notice to all hourly employees employed at any time from three years prior to the filing of the respective Complaints to the present is clearly erroneous and contrary to law. Any notice period should be measured from the

---

[1] "Defendants" refers collectively to all Defendants, with the exception of Kirk Samlal, who is not represented by Littler Mendelson, P.C.

[2] *See* Dkt. No. 75. Plaintiffs filed a joint motion for conditional certification in the *Marin* and *Dove* Actions. The Magistrate Judge issued one decision for both cases. Therefore, when citing to the record, if the filings are duplicative in both actions, Defendants will cite only to the *Marin* Action.

date of the Court's order granting Plaintiffs' motion for conditional certification, not from the filing of the Complaint.

Accordingly, Defendants respectfully request that the Court order the following relief: (1) reverse the Magistrate Judge's Order conditionally certifying a collective action in both the *Marin* and *Dove* Actions for all of Defendants' 36 restaurants; (2) limit the certification order to the *Marin* Action, for only the 42nd Street, Jamaica and Bay Plaza restaurants; and (3) limit the scope of the putative collective to receive the collective action notice in the *Marin* Action to any hourly, non-managerial employee who has worked in the 42nd Street, Jamaica and Bay Plaza restaurants from May 27, 2011 to the present.[3]

## BACKGROUND

### A.     Restaurant Structure And Policies

Apple-Metro, Inc. operates 36 Applebee's Neighborhood Grill & Bar ("Applebee's") restaurants located in the five boroughs of New York City, and in Rockland and Westchester Counties.[4]    Each location differs in its physical structure.[5]    Likewise, each restaurant's operational needs are separate and distinct.[6]    Each restaurant has one General Manager and a varying number of Assistant Managers.[7]    General Managers have broad authority to operate their specific restaurant as they deem appropriate, within the bounds of the lawful policies and guest service standards instituted by Defendants.[8]    General Managers do not have any authority outside of their respective restaurants.[9]

---

[3] This represents three years prior to the Magistrate Judge's Order, dated July 28, 2014, plus 62 days of tolling that was agreed to by the parties in the *Marin* Action only.
[4] *Marin* Dkt. 63-1 at ¶ 2.
[5] *Id.*
[6] *Id*.
[7] *Id*. at ¶ 3.
[8] *Id*.
[9] *Id*.

General Managers are responsible for hiring new hourly employees and conducting their orientation.[10]  During orientation, General Managers review each item on the Hourly New Hire Orientation Checklist with the new employee.[11]  This includes reviewing Defendants' lawful procedures for clocking in and out and reviewing the policies outlined in the Team Member Handbook, most notably the prohibition against off-the-clock work.[12]  General Managers also review Defendants' "Resolve It" or "Open Door" policy, which offers employees a procedure for the resolution of any complaints.[13]  In addition to the policies outlined in the Team Member Handbook, Defendants' managers are instructed that "falsification of or altering of Company records or time reports" is a violation of company policy that may result in disciplinary action, up to and including termination.[14]

### 1. Employee Time Recording

Defendants use a point-of-sale system ("POS System"), which performs many functions, including acting as a time-recording device for restaurants.[15]  Defendants' time-recording policies require, among other things, that employees are clocked in for all of their working time.[16]  Defendants' Team Member Handbook specifically outlines that working off-the-clock is strictly prohibited, and a violation of this policy can result in discipline, up to and including termination.[17]  Upon hire and throughout their employment, employees are informed and reminded of these policies.[18]  In order to clock in and out, Defendants' employees use a swipe

---

[10] *Id.* at ¶ 4.
[11] *Id.* at ¶ 4, Ex. A .
[12] *Id.* at ¶ 5, Ex. B.
[13] *Id.* at ¶ 6.
[14] *Id.* at ¶ 7.
[15] *Id.* at ¶ 8.
[16] *Id.*
[17] *Id.* at ¶ 8, Ex. B at 9.
[18] *Id.* at ¶ 8.

card, which is provided to them upon hire, at orientation.[19]  Employees are required to swipe their card at the POS System when clocking in and clocking out.[20]  Servers also use their swipe card to place their guests' orders into the POS System.[21]

As is common in the industry, employees occasionally neglect to clock in or clock out properly.  This can happen for many different reasons, including but not limited to: (1) they forget their swipe card; (2) they fail to immediately clock in upon beginning their work, noticing this failure later in the shift; (3) they leave at the end of their shift and forget to clock out; or (4) they forget to clock out or clock back in for their break.[22]  Employees are instructed when this happens to notify one of their managers, who will immediately correct the employee's time records by asking the employee what time they started or stopped working, and adjust the employee's time records accordingly.[23]

### 2.    Defendants' Overtime Policy

Defendants have no policy or practice prohibiting employees from working overtime.[24]  As stated above, it is Defendants' policy to pay their employees for all time worked.[25]  Defendants recognize overtime as a part of the cost of doing business.[26]  Employees are regularly scheduled to work overtime, are not disciplined for doing so, and are properly compensated for this time.[27]  Company-wide, Defendants paid their employees $98,341 of overtime compensation in 2009, $196,167 of overtime compensation in 2010, $192,484 of overtime compensation in 2011, $262,698 of overtime compensation in 2012 and $265,650 of overtime compensation in

---

[19] *Id.* at ¶ 9.
[20] *Id.*
[21] *Id.*
[22] *Id.* at ¶ 10.
[23] *Id.*
[24] *Id.* at ¶ 16.
[25] *Id.*
[26] *Id.*
[27] *Id.*

2013.[28]

### 3. Tip Share Policy

Defendants have a tip share program at each of their restaurants.[29] The program is explained to employees by the manager conducting orientation and, if they agree to participate in the program, the employees sign a form confirming their agreement.[30] Defendants' tipped employees retain their tips, however they contribute three percent of their gross sales, which they contribute to a tip sharing pool that is divided amongst the server assistants, hosts and bartenders that were on duty during that server's shift.[31] The purpose of Defendants' tip share policy is to compensate the staff that assists the servers on their shifts.[32] Each employee's portion of the tip share is determined based on the number of hours that they worked.[33] The manager has no discretion regarding the amount of tip share that each employee receives.[34]

At the end of their shift, prior to clocking out, the servers print out a server checkout form from the POS System, which lists among other things, three percent of their gross sales.[35] The server is then supposed to give the bartender this amount in cash and the bartender initials the server checkout form to confirm that they received the cash from the server.[36] The server is also required to declare his or her tips in the POS System prior to clocking out.[37] If the server declares an amount that is less than the total of 100 percent of his or her credit card tips (which

---

[28] *Id.* at ¶ 12.
[29] *Dove* Dkt. 37-1 at ¶ 10.
[30] *Id.*; s*ee also Dove* Dkt. 37-21 at 10.
[31] *Dove* Dkt. 37-1 at ¶ 10.
[32] *Id.* at ¶ 11.
[33] *Id.*; s*ee also Dove* Dkt. 37-21 at 11.
[34] *Id.*; s*ee also Dove* Dkt. 37-21 at 14.
[35] *Dove* Dkt. 37-1 at ¶ 12.
[36] *Id.* at ¶ 12.
[37] *Id.* at ¶ 13.

the POS system independently records), plus 10 percent of the server's gross cash sales, the computer will generate a prompt asking for manager approval because the amount of declared tips "appears to be low."[38] The managers are instructed to approve the amount and also to counsel the server in providing proper guest service.[39] Any employee who is not requesting manager approval when they receive this prompt, and is instead falsely reporting their tip income, is in direct violation of Defendants' policy to properly report 100 percent of tips earned.[40]

At the end of the shift, the manager gives the bartender a spreadsheet indicating the amount of tip share the server assistants, hosts and bartenders are entitled to, based on the number of hours they each worked.[41] Based on the amounts listed in the spreadsheet, the bartender places each employee's tip share in a separate envelope for the employees to pick up the next day.[42] When the employees pick up their tip share envelopes, the managers instruct them to open their envelopes to confirm that the amount of cash matches the amount of tip share calculated on the spreadsheet.[43] The spreadsheet is kept in the manager's office with the envelopes so that the employees can confirm that they received the correct amount in their

---

[38] *Id*. This prompt is unrelated to whether servers are earning the full (as opposed to tipped) minimum wage for each hour they worked, as that is a calculation which is done on a weekly basis. Even if a server earns less than 10% of their sales on one shift, they still may earn enough tips on that shift to earn full minimum wage for each hour they worked. Even if the server does not earn the full minimum wage for each hour they work on one shift, they may still earn enough in tips on other shifts in the same week to satisfy the minimum wage requirements of federal and state law. This prompt is in place as a reminder to servers that they must declare all of the tips that they earn. If a server declares less than 10% of their sales in tips, a manager override is required to prompt a discussion between the manager and server regarding providing proper guest service, as the standard tip rate is 15%.

[39] *Id*. at ¶ 14.

[40] *Id*. at ¶ 14; s*ee also Dove* Dkt. 37-21 at 6.

[41] *Id*. at ¶ 15.

[42] *Id*.

[43] *Id*. at ¶ 16; s*ee also Dove* Dkt. 37-21 at 15.

envelopes.[44]   After each employee opens their envelope and confirms the amount inside, each employee signs the spreadsheet confirming that the amount they received is correct.[45]   The managers then input the tips received by employees from the tip share into the POS System, using the amounts on the spreadsheet.[46]

### B.    The *Marin* Action

On October 22, 2012, Carlos Marin, a former hourly employee who worked at the Applebee's located in Jamaica, Queens, filed a putative collective-class action against Defendants asserting violations of the Fair Labor Standards Act ("FLSA") arising out of alleged unlawful practices such as requiring employees to work off the clock and shaving employees' time.[47]  Plaintiffs seek to represent all:

> Current and former employees of Defendants who perform or performed work in any of Defendants' locations as non-managerial employees during the statutory period, who give consent to file a cause of action to recover the difference between the amount of wages actually paid to them and the statutory amount due as well as to recover the overtime compensation which is legally due to them for the time worked in excess of forty (40) hours per week.[48]

The three named plaintiffs in the *Marin* Action, Carlos Marin, Kenny Lebron ("Lebron") and Martina Hanisch worked in only three restaurants – Jamaica, Bay Plaza and 42nd Street.  Even though the matter has been pending for almost two years, there were only six additional Opt-in Plaintiffs.   Not surprisingly, and confirming the limited scope of the allegations, these are all terminated employees who worked in the same three restaurants.  Despite extensive efforts on Defendants' part to complete additional depositions prior to opposing Plaintiffs' motion for conditional certification, only Plaintiff Lebron was deposed.

---

[44] *Id.* at ¶ 16.
[45] *Id.* at ¶ 17;  *see also Dove* Dkt. 37-21 at 15.
[46] *Id.* at ¶ 17.
[47] *See Marin* Dkt. 23 at ¶¶ 101; 106; 115; 123-124.
[48] *Id.* at ¶ 61.

## C.     The *Dove* Action

On March 18, 2013, Shaunta Dove, a former hourly employee who also worked at the Jamaica Applebee's, filed a putative collective-class action against Defendants, asserting FLSA violations arising out alleged unlawful practices related to Defendants' "illegal tip-sharing scheme."[49]  Plaintiff seeks to represent all:

> Current and former servers, hosts, hostesses and bartenders of Defendants who perform or performed work in any of Defendants' locations as non-managerial employees during the statutory period, who give consent to file a cause of action to recover amounts owed to them and that they were deprived of by Defendants' tip sharing scheme, including the minimum hourly required rate of pay per hour worked."[50]

Plaintiff Dove is the only named plaintiff in the *Dove* Action.  Even though this action has been pending for over 17 months, there have been no opt-in consent forms filed by any of Defendants' current or former employees, including those employees who have opted-in to the *Marin* Action.

## D.     Plaintiffs' Motion for Conditional Certification

On February 3, 2014, Plaintiffs filed a single motion seeking to conditionally certify the *Marin* and *Dove* Actions and facilitate notice in to a putative collective of individuals who worked as hourly employees at all 36 Applebee's restaurants operated by Defendants, who Plaintiffs allege are owed minimum wage and overtime compensation under the FLSA.[51]  Despite the fact that Defendants only stipulated that the *Marin* and *Dove* Actions were related, and not consolidated, Judge Pollak issued a single Order, dated July 28, 2014, granting Plaintiffs' motion for conditional certification in both the *Marin* and *Dove* actions.[52]  In the *Marin* Action, Judge Pollak certified a collective of all "non-managerial employees at Apple-Metro's 36 area

---

[49] *See Dove* Dkt. 14 at ¶¶ 62; 93; 95-96; 101-102.
[50] *Id*. at ¶ 61.
[51] *See Marin* Dkt. 51.
[52] *See Marin* Dkt. 75.

restaurants, including servers, hosts, cooks, bartenders, expediters, runners, dishwashers, and maintenance workers."[53] In the *Dove* Action, Judge Pollak certified a collective of all "tipped hourly employees – servers, hosts, hostesses, and bartenders."[54]

Judge Pollak further ordered Defendants to provide Plaintiffs with a "computer-readable list of 'all hourly non-managerial employees at Apple Metro's Applebee's restaurants at any point in the three years prior to or after the filing of the respective Complaints' including 'names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment' in order to mail the notice to the class members."[55]

## ARGUMENT

I. **THE MAGISTRATE JUDGE'S ORDER GRANTING COLLECTIVE ACTION CERTIFICATION UNDER THE FLSA IS ERRONEOUS AND CONTRARY TO LAW**

    A. **The Standard of Review of the Magistrate Judge's Conditional Certification of an FLSA Collective Action**

The Magistrate Judge's grant of conditional certification pursuant to section 216(b) of the FLSA is a non-dispositive order which is reviewed under Fed. R. Civ. P. 72(a). Under Rule 72(a), a district court judge may modify or set aside any portion of a magistrate judge's order on a non-dispositive matter to the extent that the order is "clearly erroneous or contrary to law." *Tribune Co. v. Purcigliotti*, No. 93-7222, 1998 U.S. Dist. LEXIS 5155, at *12-13 (S.D.N.Y. Apr. 14, 1998) (Preska, J.) (quoting Rule 72(a)); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y 2000); *Statewide Aquastore, Inc. v. Pelseal Techs., LLC*, No. 06-93, 2010 U.S. Dist. LEXIS 13820, at *4-5 (N.D.N.Y. Feb. 17, 2010). A finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left

---

[53] *See Marin* Dkt. 75 at 17-18.
[54] *Id*. at 22.
[55] *Id*. at 23.

with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An order is "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins*, 92 F. Supp. 2d at 74 (citations omitted); *Tribune Co.*, 1998 U.S. Dist. LEXIS 5155, at *12-13 (citations omitted).

### B.    Plaintiffs' Burden When Seeking Conditional Certification Under the FLSA

The FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b). Court-ordered notice is not automatic. Rather, "district courts have discretion, *in appropriate cases* ... [to] facilit[ate] notice to potential plaintiffs." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added). "'Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made'" to warrant conditional certification. *Prizmic v. Armour, Inc.*, No. 05-cv-2503, 2006 U.S. Dist. LEXIS 42627, at *6 (E.D.N.Y. June 12, 2006); *Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05-civ-6319, 2005 U.S. Dist. LEXIS 28884, at *3 (S.D.N.Y. Nov. 18, 2005). To meet their burden of proof, Plaintiffs must put forth evidence "sufficient to demonstrate that plaintiffs and potential class members were victims of a common scheme or plan *that violated the law*." *Morales v. Plantworks, Inc.*, No. 05-civ-2349, 2006 U.S. Dist. LEXIS 4267, at *6 (S.D.N.Y. Feb. 2, 2006) (emphasis added). A factual showing that pertains primarily to the named plaintiffs is not enough. *Id.*, at *7. Moreover, though a common question may exist among putative collective members, the Court must determine whether that common question can be "answered without individualized inquiries." *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 720 (N.D. Ill. 2012).

Plaintiffs failed to meet this burden here. Indeed, as discussed below, Plaintiffs accuse Defendants of maintaining universally applicable unlawful policies relating to alleged off-the-

clock work and improper time altering, but are unable to identify a single unlawful policy that

provides the requisite uniformity. Instead, Plaintiffs' allegations assert that specific managers

committed individual *deviations* from Defendants' lawful policies. They offer no evidence that

these practices are common among all, or even most, of Defendants' 36 restaurants. Far from it,

in the *Marin* Action, Plaintiffs' allegations are limited to the conduct of certain managers in three

of Defendants' restaurants – "Jamaica", "42nd Street" and "Bay Plaza." In the *Dove* Action,

Dove fails to show that she was subject to any violations of company policy herself, much less

any evidence outside of the three restaurants where she and the *Marin* Plaintiffs worked. By

failing to recognize this glaring lack of commonality in the record evidence, the Magistrate

Judge reached an erroneous conclusion concerning the similarly situated nature of the putative

collective.

      **C.**     **The Decision to Conditionally Certify All 36 of Defendants' Restaurants in the *Marin* and *Dove* Actions is Clearly Erroneous and Contrary to Law**

          **1.**     **Plaintiffs Failed to Establish an Unlawful, Common Policy or Practice in Both the *Marin* and *Dove* Actions**

It is undisputed that Defendants' policies relevant to the *Marin* and *Dove* Actions are

lawful. Defendants have a lawful policy to pay their employees for all time worked, and prohibit

off-the-clock work.[56] Defendants also have a lawful tip sharing policy, which provides that

servers tip out three percent of their cash sales, which is split between the bartenders, hosts and

server assistants (the positions that help the servers during the service).[57] Plaintiffs in the *Marin*

Action cannot establish that the alleged deviations from these policies were commonly occurring

in the Jamaica, Bay Plaza and 42nd Street restaurants, much less that they were commonly

occurring in Defendants' other 33 restaurants. Plaintiff Lebron, the only Plaintiff who has been

---

[56] *Marin* Dkt. 63-1 at ¶ 8, Ex. B at 9.
[57] *Dove* Dkt. 37-1 at ¶ 10-11; *see also Dove* Dkt. 37-21 at 11; 14.

deposed in the *Marin* case (despite extensive efforts to depose the other Named and Opt-In Plaintiffs), testified that the practices of the managers at the 42nd Street restaurant were not even similar to each other, much less to the managers of another restaurant:

> Q:    In terms of clocking out, where you required to swipe out at the end of every shift?
>
> A:    Yes.
>
> Q:    And what was the check out process you went through at the end of your shift?
>
> A:    There were days where I actually did.  There were days where I would be automatically swiped out.  They wouldn't need my card to swipe me out.  They could just swipe me out from their computer system.
>
> Q:    Okay.  That's understood.  I'm just trying to understand what the customary procedure was.  Because it sounded like the way you described it was, typically, you would swipe yourself out with a manager either next to you or with a manager card.  Is that the way you typically ended your day?
>
> A:    Yes.
>
> Q:    And how often was it that when you went to try to swipe out that you had already been swiped out?
>
> A:    A lot of the times.  Mostly every other day.  I mean, if not, the managers would encourage you to swipe out right after your shift is done and then tell you to go roll silverware.
>
> Q:    And was – did every manager do that or did only some of them?
>
> A:    Most of them, yeah.
>
> Q:    And which managers didn't?
>
> A:    Mohammed, he didn't really do any of the swiping.  ***It was mainly Jamal and then Ali.***[58]

Similarly, the specific allegations in the declarations of other Named and Opt-in Plaintiffs were focused on the conduct of specific managers.  *See* Hanisch Declaration ("Decl.") at ¶ 18

---

[58] *Marin* Dkt. 63-30 at 6-7 (emphasis added).

(allegations focused on conduct of managers Jason and Jaleel at the Bay Plaza restaurant) (*Marin* Dkt. 53-4); Marin Decl. at ¶ 24 (allegations focused on conduct of managers Kirk Samlal, Susy Quintero, Aubrey Daly, Roland Raymond, Derrick Palmer and Chris Antonie at the Jamaica restaurant) (*Marin* Dkt. 53-5); K. Griffiths Decl. at ¶ 14 (allegations focused on conduct of managers Kirk Samlal and Susy Quintero at the Jamaica restaurant) (*Marin* Dkt. 53-7); R. Usher Decl. at ¶ 10 (allegations focused on conduct of managers Roland Raymond, Derrick Palmer, Kirk Samlal, Chris Antoine, Aubrey Daly and "Nestly" at the Jamaica restaurant) (*Marin* Dkt. 53-9); Hazzard Decl. at ¶ 16 (allegations focused on conduct of manager Jaleel at the Bay Plaza restaurant) (*Marin* Dkt. 53-11); and Dove Decl. at ¶ 13 (allegations focused on conduct of managers Kirk Samlal, Derek Palmer and Danny Jimenez at the Jamaica restaurant) (*Marin* Dkt. 53-12).

Even assuming, *arguendo*, that alleged deviations from the above-referenced, lawful policies, by certain individual managers at the Jamaica, 42nd Street and Bay Plaza restaurants were commonly occurring at those particular restaurants, Plaintiffs have failed to introduce any evidence that they were also occurring at any of Defendants' other 33 restaurants. Defendants, however, have submitted evidence from Defendants' other 33 restaurants, establishing that these alleged deviations from Defendants' lawful policies did not occur.[59]

In the *Dove* Action, Plaintiff Dove testified that her tip share was never wrong.[60] Therefore, Plaintiff Dove's evidence fails to establish that the alleged deviations happened consistently to her, much less consistently among Defendants' 36 restaurants. While Plaintiff Dove relied on the declarations of Named and Opt-in Plaintiffs in the *Marin* Action, she failed to introduce any evidence from Defendants' other 33 restaurants. Defendants also submitted

---

[59] *See Marin* Dkt. 63-2 through 63-29.
[60] *Dove* Dkt. 37-21 at 16.

evidence from Defendants' other 33 restaurants in the *Dove* Action, establishing that any alleged deviations from Defendants' lawful policies were not commonly occurring.[61]

Given these undisputed facts, Plaintiffs cannot meet their burden of showing an *unlawful* common policy, or that managers at each and every Applebee's restaurant at issue have commonly deviated from Defendants' lawful policies in the same *unlawful* manner. *See Eng-Hatcher v. Sprint Nextel Corp.*, 07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262, at *17 (S.D.N.Y. Nov. 13, 2009); *Ahmed v. T.J. Maxx Corp., et al.*, 10-CV-3609 (ADS) (ETB) 2013 U.S. Dist. LEXIS 81942, at *45 (E.D.N.Y. June 8, 2013). (holding that although plaintiffs had offered some evidence that some of defendant's managers flouted defendant's policies, plaintiffs did not show "that such activity was widespread or common practice, or that the managers did so because they were instructed, compelled, forced, or encouraged to do so by other [of defendant's] policies.") (quoting *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011)); *Barfield*, 2005 U.S. Dist. LEXIS 28884, at *3 (denying conditional certification where the plaintiff presented nothing but anecdotal hearsay to suggest that the defendants had a widespread unlawful practice).

In light of the absence of any evidence to support conditional certification of Defendants' other 33 restaurants, at most, this Court should limit conditional certification on an individual restaurant basis[62] to the Jamaica, 42nd Street and Bay Plaza restaurants. *See Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-civ-6094, 2013 U.S. Dist. LEXIS 97544, at *28 (S.D.N.Y. July 11, 2013) (conditionally certifying only six of the defendants' 33 stores, because the factual

---

[61] *See Dove* Dkt. 37-2 through 37-20.

[62] Plaintiffs' evidence fails to establish any uniformity among the three restaurants. Conditional certification of these restaurants should be done on an individual restaurant basis, resulting in three conditionally certified classes, as opposed to one conditionally certified class of three restaurants.

allegations were limited to the locations where the plaintiffs worked, and even in those locations, the allegations of violations were not systematic or uniform); *Lujan v. Cabana Mgmt., Inc.*, No. 10-cv-755, 2011 U.S. Dist. LEXIS 9542, at *25 (E.D.N.Y. Feb. 1, 2011) (conditionally certifying employees at three New York restaurants based on declarations from workers representing each location, but declining to certify employees at the three Florida restaurants because the court lacked "firsthand evidence of violations"); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356 (S.D.N.Y. 2008) (conditionally certifying employees at the store where plaintiffs worked, but declining to certify employees at five other stores where the evidence relating to those five stores amounted to hearsay statements and "generalized allegations of wrongdoing.").

The Magistrate Judge discounts the reasoning in the *Trinidad*, *Lujan* and *Laroque* cases, which supports limiting an order of conditional certification to the Jamaica, Bay Plaza and 42nd Street restaurants, and attempts to distinguish them based on the single employer theory. However, as established in Point C.2., *infra*, evidence of a single employer, alone, is not sufficient to warrant conditional certification of all of Defendants' 36 restaurants in the absence of proof of an unlawful, common policy or practice. Therefore, the Magistrate Judge's reliance on evidence of limited individualized deviations by some managers from Defendants' lawful policies at three restaurants to conditionally certify a collective of thousands of employees at 33 other restaurants is clearly erroneous and contrary to law.

### 2. The Magistrate Judge Erroneously Relies on the Single Employer Theory

The Magistrate Judge erroneously relied on the single employer theory to justify certifying a collective of thousands of employees in all of Defendants' 36 restaurants, despite the complete absence of any evidence of an unlawful, common policy or practice among them.

Establishing that Defendants are a single employer, alone, is not enough. In each of the cases relied upon by the Magistrate Judge, the evidence suggested the presence of a common, unlawful policy or practice, in addition to a single employer. In *Lamb v. Singh Hospitality Grp.*, some of the plaintiffs' claims arose out of the way in which the computer system calculated payments, and all of the defendants' restaurants used the same payment system and allegedly unlawful calculation. *Lamb v. Singh Hospitality Grp.*, No. 11-CV-6060 (MKB), 2013 U.S. Dist. LEXIS 141429, at *5 (E.D.N.Y. Sept. 30, 2013). The plaintiffs in *Lamb* also introduced testimony from putative plaintiffs who had worked in the restaurants where the plaintiffs had not worked. *Id*. at * 4.

In *Mendoza v. Ashiya Sushi 5, Inc.*, the plaintiffs introduced evidence of a common, unlawful policy of paying all non-exempt employees a set weekly or biweekly salary, without regard to the number of hours they actually worked. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 U.S. Dist. LEXIS 132777, at *1 (S.D.N.Y. Sept. 16, 2013). The plaintiffs also introduced evidence that employees from other restaurants in New York City would come and work in the restaurant where the plaintiffs were employed, which the court relied on in limiting certification to the restaurants in New York City. *Id*. at *5. Notably, the court did not conditionally certify all of the defendants' restaurants in New York State, but limited the order to those employees who worked in the defendants' New York City restaurants. *Id*.

In *Agudelo v. E&D LLC*, there were common, unlawful policies at issue, which applied to all employees: failure to provide notice, miscalculating the overtime rate and including non-tipped employees in the tip pool. *Agudelo v. E&D LLC*, No. 12-CV-0960 (HB), 2012 U.S. Dist. LEXIS 160510 (S.D.N.Y. Nov. 5, 2012). In *Rosario v. Valentine Ave. Disc. Stores Co., Inc.*, the

defendants were paying all non-exempt employees weekly, without regard to the actual number of hours they worked. *Rosario v. Valentine Ave. Disc. Stores Co., Inc.*, 828 F. Supp. 2d 508, 512 (E.D.N.Y. 2011).

In each of the cases relied upon by the Magistrate Judge, evidence of a single employer, standing alone, did not form the basis of the rationale to conditionally certify the collective. In each of these cases, the plaintiffs had evidence of a common, unlawful policy that applied to all employees they were seeking to include in their putative collective. If there were evidence in this action, for example, that Defendants paid all of their non-exempt employees a flat, weekly salary, regardless of the hours that they worked, coupled with evidence that Defendants were a single employer, conditional certification of all 36 restaurants would be justified under the reasoning in these cases. Similar facts are simply not present here. In both the *Dove* and *Marin* Actions, the Plaintiffs are relying on individual and limited deviations from Defendants' lawful policies, committed by certain managers in three restaurants, as discussed on Point C.1., *supra*. Even if the Magistrate Judge is correct in finding that Defendants are a single employer, this is not enough to warrant conditional certification of Defendants' other 33 restaurants. Therefore, the Magistrate Judge's reliance on the single employer doctrine, absent any proof of a common, unlawful policy or practice in the other 33 restaurants, was clearly erroneous and contrary to law.

### 3. The Magistrate Judge Erroneously Discounted Defendants' Evidence

Plaintiffs utterly failed, in both the *Dove* and *Marin* Actions, to introduce any proof of a common, unlawful policy or practice in Defendants' other 33 restaurants. Defendants, however, introduced numerous declarations of hourly employees who worked in these restaurants, establishing both Defendants' lawful policies and the fact that their managers followed these

lawful policies.[63]  The Magistrate Judge discounted Defendants' declarations, with the blanket assertion that they are "competing" in nature and not to be considered at this stage of the litigation, citing *Colon v. Major Perry St. Corp*., No 12 Civ. 3788 (JPO), 2013 U.S. Dist. LEXIS 93021 (S.D.N.Y. July 2, 2013) and *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012) as alleged support for this position.  As will be demonstrated below, her rationale is incorrect and her reliance on the cases misplaced.

In *Colon*, the plaintiff introduced evidence that he and all other superintendents were paid a flat weekly rate, were rarely paid overtime, and in the event they were paid overtime, they were not paid the correct overtime rate. *Colon*, 2013 U.S. Dist. LEXIS 93021, at *1.  The plaintiff also attempted to show that handymen were subject to the same unlawful policies and practices, because while their job titles were different, the plaintiffs' alleged that their duties were similar and overlapping.  *Id*. at *2.  Defendants relied on a declaration from their Chief Operating Officer, which directly contradicted the plaintiff's allegations that superintendents and handymen were similarly situated, and alleged that their job duties were "wholly separate and almost never overlap." *Id*. at *2.  Even though the court discounted this competing declaration, the plaintiffs' motion to conditionally certify a collective of both superintendents and handymen was denied, and certification was limited to superintendents, because of the "near total absence of evidence concerning handymen" that was offered by the plaintiffs.  *Id*. at *7.

In *Winfield v. Citibank, N.A.*, the plaintiffs introduced evidence that two company-wide policies were implemented in an unlawful manner across the company, resulting in the failure to pay overtime: a nationwide, aggressive sales quota, coupled with a policy to limit overtime pay. *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d at 405.  Put simply, the plaintiffs alleged that these

---

[63] *See Marin* Dkt. 63-2 through 63-29; *Dove* Dkt. 37-2 through 37-20.

quotas were impossible for all employees to meet without working overtime. *Id*. The plaintiffs introduced testimony from employees who worked in thirteen different branches in six of the thirteen states where the defendants operated, which included information regarding other similarly situated employees who worked in other branches. *Id*. at 407. The plaintiffs also introduced evidence that managers who committed FLSA violations did so because they were "instructed, compelled, forced, or encouraged to do so" based on directives from regional management. *Id*. The court in *Winfield* declined to weigh declarations submitted by the defendants that disputed the plaintiffs' allegations related to the two company-wide policies at issue. *Id*.

In the *Marin* and *Dove* Actions, as distinguished from *Colon* and *Winfield*, the declarations submitted by Defendants are not "competing" with any evidence submitted by Plaintiffs of the practices of some managers at the Jamaica, Bay Plaza and 42nd Street restaurants. Nor do the declarants dispute Plaintiffs' allegations regarding their experiences at these three restaurants. Defendants' declarations were limited to hourly employees who worked in restaurants other than Jamaica, Bay Plaza and 42nd Street. Plaintiffs, on the other hand, submitted no evidence whatsoever with respect to these 33 other locations. Therefore, the Magistrate Judge's decision to discount the only evidence in the record outside of the Jamaica, Bay Plaza and 42nd Street restaurants, which did not compete with any of Plaintiffs' evidence, was clearly erroneous and contrary to law. Defendants submitted the only proof in these locations, which supports the denial of conditional certification due to the "total absence of evidence" concerning Defendants' other 33 restaurants. *See Colon*, 2013 U.S. Dist. LEXIS 93021, at *7.

  **4.**  **Plaintiff Dove Fails to Even Meet the Pleading Standard for FLSA Minimum Wage Claims**

In further support of Defendants' opposition to Plaintiff Dove's motion for conditional certification, Plaintiff fails to meet even the pleading standard for FLSA minimum wage claims. Recent cases have further established the pleading requirements to state a viable FLSA claim. *See Lundy v. Catholic Health Sys. of Long Island, Inc*., 711 F.3d 106, 114 (2d Cir. 2013) (plaintiff did not state a plausible FLSA overtime claim because he did not allege he worked 40 hours in a given workweek and did not allege "uncompensated time in excess of the 40 hours"); *Nakahata v. New York-Presbyterian Healthcare Sys.,* Nos. 11-0734, 11-0710, 11-0713, 11-0728, 2013 U.S. App. LEXIS 14128, at *18-20 (2d Cir. July 11, 2013) (same); *DeJesus v. HF Mgmt. Servs., LLC*, No. 12-4565, 2013 U.S. App. LEXIS 16105, at *11 (2d Cir. Aug. 5, 2013) (Plaintiff's allegations that "in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation" was insufficient to state an FLSA claim).

The standard announced in *Lundy* has since been applied at the conditional certification stage to dismiss facially inadequate pleadings. In *Boutros v. JTC Painting and Decorating Corp.*, No. 12-civ-7576, 2013 U.S. Dist. LEXIS 86878, at *10 (S.D.N.Y. June 19, 2013), Judge Engelmayer dismissed, *sua sponte*, Plaintiff's FLSA wage claim, finding that Plaintiff's allegations were "akin to the vague, conclusory pleadings in *Lundy*." Plaintiff's allegations in *Boutros* that they "regularly" worked more than 40 hours per week, but were paid only straight time wages for that work, was inadequate because they failed to provide "any reference to any particular week in which either plaintiff worked more than 40 hours." *Id.* Plaintiff has not alleged a claim for unpaid overtime, and therefore "has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage." *Lundy*, 711 F.3d at 115. However, the degree of specificity required in a

complaint does not change simply because the Plaintiff is claiming she is entitled to uncompensated gap time when her wage allegedly fell below the minimum wage. "Rais[ing] the possibility" of a claim is not enough. *DeJesus*, 2013 U.S. App. LEXIS 16105, at *89.

In the instant action, as in *Lundy* and *Boutros*, Plaintiff Dove's Complaint is facially inadequate because she fails to provide any reference to any particular week in which she didn't earn the requisite minimum wage. In her Amended Complaint, Plaintiff Dove does not allege a single fact that is related to her particular employment, she includes only generalized allegations. In her declaration submitted in support of her motion for conditional certification, Plaintiff Dove alleges the following: "[o]n many occasions, my share of the tip pool was either incorrect, or given to another employee by mistake by the Restaurant manager there during my shift. No effort was ever made to correct mistakes in my tip pool distributions."[64] However, Plaintiff Dove confirmed when deposed approximately one month after her declaration was "signed" (electronically) that her declaration was not accurate, and that she always received the tip share she was entitled to. Specifically, Plaintiff Dove testified:

> Q:   Referring you to Paragraph 17 [of the declaration], the second sentence says, "On many occasions my share of the tip pool was either incorrect or given to another employee by mistake." Didn't you previously testify today that your tip share was never wrong, and it was never given to another employee by mistake?

> A:   The tip share – my tip share was never wrong, no – yes, you're right, I did tell you that. My tip share was never wrong. And, no, my tip share was never given to another employee. I just received another employee's stuff, and I gave it back.

> Q:   So isn't this sentence in Paragraph 17 [of the declaration] wrong?

> A:   Yeah, it's inaccurate.[65]

---

[64] *Marin* Dkt. No. 53-12 at ¶ 17.
[65] *Dove* Dkt. 37-21 at 16.

In addition, Plaintiff Dove alleges in her declaration "As a host, my share of the tip pool was very low. As a result, I rarely earned the minimum wage for each hour that I worked."[66] This allegation is insufficient to establish even one occasion on which she was not paid minimum wage as a result of Defendants' alleged "illegal tip sharing scheme." While Plaintiff's tip share may have been very low, this does not establish that she did not earn enough tips in a week to bring her wage to the requisite minimum wage. Plaintiff doesn't even venture to guess how often she was allegedly improperly paid. The conclusory allegation that she "rarely" earned minimum wage is insufficient to even state a claim under the FLSA, much less support a motion for conditional certification. Plaintiff's motion for conditional certification, as in *Boutros*, should be denied and her claim dismissed. The Magistrate Judge's decision to the contrary is clearly erroneous and contrary to law.

Based on the foregoing, the Magistrate Judge's decision to conditionally certify all 36 of Defendants' restaurants in the *Marin* and *Dove* actions is clearly erroneous and contrary to law. The evidence introduced by Plaintiffs, at most, supports the conditional certification of the *Marin* Action only, limited to the Jamaica, Bay Plaza and 42nd Street restaurants.

**D.  The Scope of the FLSA Collective Action Notice is Clearly Erroneous and Contrary to the Law**

Even if this Court were otherwise inclined not to disturb the Magistrate Judge's Order, the scope of the employees to receive the proposed collective action notice should be narrowed to the appropriate three-year limitations period. The Magistrate Judge granted Plaintiffs' request for notice to be provided to "all hourly non-managerial employees at Apple Metro's Applebee's restaurants at any point in the three years prior or after to the filing of the respective operative

---

[66] *Marin* Dkt. 53-12 at ¶ 18.

Complaints."[67]   Because a putative class member is not deemed to have joined the case until

he/she affirmatively opts-in to the case, however, it is well established that notice of a collective

action should issue to those individuals who were employed within three years *from the date the*

*motion for conditional certification is granted*, not three years from the date the action was

initially filed.  *See, e.g., Hernandez v. Immortal Rise, Inc.*, No. 11-4360, 2012 U.S. Dist. LEXIS

136556, at *19-21 (E.D.N.Y. Sept. 24, 2012) (Bloom, J.) ("[D]efendants accurately point out that

any notice period generally shall be measured from the date of the Court's order granting

plaintiffs' motion for conditional certification, not from the filing of the complaint.") (citing

*Anglada v. Linens 'N Things, Inc.*, 2007 U.S. Dist. LEXIS 39105, at *26 n. 5 (S.D.N.Y. Apr. 26,

2007) (finding a three year period preceding the issuance of the notice "more in keeping with §

216(b)), *adopted*, 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 29, 2007). In fact, District Judge

Thomas J. McAvoy, in ruling on the defendants' Fed. R. Civ. P. 72(a) objections to the

Magistrate Judge's Order on this issue, held "[D]efendants accurately point out that any notice

period generally shall be measured from the date of the Court's order granting plaintiffs' motion

for conditional certification, not from the filing of the complaint."[68]

The *Marin* Action was initially filed on October 22, 2012.  The *Dove* Action was initially

file on March 18, 2013.  Therefore, the Magistrate Judge's Decision would require notices be

sent to employees who worked as long ago as October 22, 2009.  But due to the three-year

statute of limitations, anyone who left employment before May 2011 no longer has a viable

claim in the *Marin* Action, and anyone who left employment before July 2011 no longer has a

viable claim in the *Dove* Action.  Accordingly, at a minimum, the Magistrate Judge's Order

---

[67] *Marin* Dkt. 75 at 23.

[68] *See* Decision of District Judge Thomas J. McAvoy, dated August 19, 2013, in *Roach, et al. v. T.L. Cannon Corp., et al.*, 3:10-CV-0591, at page 11, attached to the Declaration of Craig R. Benson as Exhibit A.

should be modified to require Defendants to provide contact information for: (1) those employees who fall within the *Marin* putative collective definition, who worked for Defendants any time from May 27, 2011 to the present;[69] and (2) those employees who fall within the *Dove* putative collective definition, who worked for Defendants any time from July 28, 2011 to the present.

## CONCLUSION

Defendants respectfully request that this Court sustain Defendants' objections, and issue an Order: (1) reversing the Magistrate Judge's Order conditionally certifying a collective action in both the *Marin* and *Dove* Actions for all of Defendants' 36 restaurants; (2) limiting the certification order to the *Marin* Action, for only the 42nd Street, Jamaica and Bay Plaza restaurants; and (3) limiting the scope of the putative collective to receive the collective action notice in the *Marin* Action to any hourly, non-managerial employee who has worked in the 42nd Street, Jamaica and Bay Plaza restaurants from May 27, 2011 to the present.[70]

Date: August 11, 2014
      New York, New York

/s/ Craig R. Benson
Craig R. Benson
George B. Pauta
Erin W. Smith
LITTLER MENDELSON
  A Professional Corporation
900 Third Avenue
New York, NY 10022
212.583.9600
cbenson@littler.com
gpauta@littler.com
ewsmith@littler.com

---

[69] This date represents three years prior to the Magistrate Judge's Order, dated July 28, 2014, plus 62 days of tolling that was agreed to by the parties in the *Marin* Action only.
[70] This date represents three years prior to the Magistrate Judge's Order, dated July 28, 2014.

*Attorneys for Defendants APPLE-METRO, INC., AM NYCF, LLC, 42ND APPLE, LLC, 117TH APPLE, LLC, AIRMONT APPLE, LLC, ASTORIA APPLE, LLC, AT APPLE, LLC, BAY PLAZA APPLE, LLC, BAY TERRACE APPLE, LLC, BED-STUY APPLE, LLC, BROADWAY APPLE, LLC, BTM APPLE, LLC, CORTLANDT APPLE, LLC, CROSS COUNTY APPLE, LLC, CROSSROADS APPLE, LLC, EB APPLE, LLC, EXPRESSWAY APPLE, LLC, FLATBUSH APPLE, LLC, FORDHAM APPLE, LLC, FRESH MEADOWS APPLE, LLC, HARLEM APPLE, LLC, HAWTHORNE APPLE, LLC, JAMAICA APPLE, LLC, KISCO APPLE, LLC, MAMARONECK APPLE, LLC, NEW DORP APPLE, L.L.C., NEW ROCHELLE APPLE, LLC, OUTERBRIDGE APPLE, LLC, PORT CHESTER APPLE, LLC, QUEENS CENTER APPLE, LLC, REGO PARK APPLE, LLC, RIVERDALE APPLE, LLC, S.I. MALL APPLE, L.L.C., SHEEPSHEAD APPLE, LLC, SVC APPLE, LLC, TRIANGLE APPLE, LLC, WHITE PLAINS APPLE, LLC, ZANE TANKEL, ROY RAEBURN, AUBERY DALEY, ROLAND RAYMOND, DEREK PALMER, SUSY QUINTERO, and CHRISTOPHER ANTOINE*

:128324303.2