UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLOS MARIN, et al., *on behalf of themselves*
*and all others similarly situated,*

                              Plaintiffs,                          **REPORT AND**
                                                                   **RECOMMENDATION**
        - against -                                                12 CV 5274 (ENV)

APPLE-METRO, INC., et al.,

                              Defendants.
------------------------------------------------------------X
SHAUNTA DOVE, *on behalf of herself and all*
*others similarly situated,*                                       **REPORT AND**
                                                                   **RECOMMENDATION**
                              Plaintiff,                           13 CV 1417 (ENV)

        - against -

APPLE-METRO, INC., et al.,

                              Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

        On October 22, 2012, Carlos Marin, Kenny Lebron, and Martina Hanisch (the "Marin

plaintiffs"), on behalf of themselves and all others similarly situated, filed a Complaint against

Apple-Metro, Inc., a corporation consisting of Applebee's Restaurants located in Manhattan, the

Bronx, Brooklyn, Queens, Staten Island, Westchester, and Rockland Counties ("Apple-Metro"), as

well as a number of individuals associated with Apple-Metro.  (Docket No. 12 CV 5274).  On

March 18, 2013, Shaunta Dove (the "Dove plaintiff") filed a Complaint in a related action against

Apple-Metro, on behalf of herself and all others similarly situated.  (Docket No. 13 CV 1417).

        On June 6, 2014, Atavia Thomas, on behalf of herself and all others similarly situated, filed

1

an action against Apple-Metro in the Southern District of New York (the "Southern District action"). The collective action claims in the Southern District action were dismissed on February 5, 2015, and on March 3, 2015, Thomas withdrew her Complaint entirely and opted-in to the actions pending in this district. Thereafter, on March 10, 2015, after almost three years of litigation in the Marin action, Thomas filed a Motion to Intervene in these Eastern District actions. For the reasons set forth below, it is respectfully recommended that Thomas' Motion to Intervene be denied.

BACKGROUND

I. Procedural Background

    A. The Marin and Dove Actions

The Marin plaintiffs commenced this action on October 22, 2012, and subsequently filed their Second Amended and Collective Action Complaint on June 28, 2013. (Defs.' Mem. in Opp.[1] at 2). The action, which was filed on behalf of plaintiffs and a class of current and former similarly situated non-managerial employees at 36 Apple-Metro area restaurants, named as defendants Apple-Metro, Inc., the individual restaurant branches,[2] and several individual defendants associated

---

[1]Citations to "Defs.' Mem. in Opp." refer to the Defendants' Memorandum of Law in Opposition to Opt-in Plaintiff Thomas' Motion to Intervene filed on April 27, 2015.

[2]The individual restaurant branches named as defendants are: 117th Apple, LLC, 42nd Apple, LLC, AM NYCF, LLC, AT Apple, LLC, Airmont Apple, LLC, Astoria Apple, LLC, BTM Apple, LLC, Bay Plaza Apple, LLC, Bay Terrace Apple, LLC, Bed-Stuy Apple, LLC, Broadway Apple, LLC, Cortlandt Apple, LLC, Cross Country Apple, LLC, Crossroads Apple, LLC, EB Apple, LLC, Expressway Apple, LLC, Flatbush Apple, LLC, Fordham Apple, LLC, Fresh Meadows Apple, LLC, Harlem Apple, LLC, Hawthorne Apple, LLC, Jamaica Apple, LLC, Kisco Apple, LLC, Mamaroneck Apple, LLC, New Dorp Apple, LLC, New Rochelle Apple, LLC, Outerbridge Apple, LLC, Port Chester Apple, LLC, Queens Center Apple, LLC, Rego Park Apple, LLC, Riverdale Apple, LLC, S.I. Mall Apple, LLC, SVC Apple, LLC, Sheepshead Apple,

2

with Apple-Metro (collectively, "defendants").[3]  (Marin Compl.[4] ¶ 1).  The Second Amended

Complaint alleges that defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

("FLSA"), and New York Labor Law §§ 195, 215, and 650 et seq. ("NYLL"), by failing to pay

non-managerial food service and maintenance employees proper minimum and overtime wages,

and by altering the employees' electronic time records.  (Marin Compl. ¶¶ 1, 2).  Specifically, the

Complaint alleges that defendants violated the FLSA and the NYLL by:  (1) clocking out non-

managerial workers while they were working; (2) forcing non-managerial workers to work off the

clock; and (3) preventing non-managerial workers from clocking in at the beginning of their

scheduled shifts.  (See id.)

On March 18, 2013, the Dove plaintiff, on behalf of herself and all others similarly situated,

commenced a related action against the same defendants, and submitted an amended Complaint on

September 24, 2013.  (Pls.' Mem. in Opp.[5] at 3; Dove Compl.[6] ¶ 1).  The Dove action was filed on

behalf of current and former "tipped" hourly employees, and alleges that defendants violated the

FLSA and NYLL when they did not pay "tipped" hourly workers minimum and overtime wages

through a reduction in their tip credit by: 1) requiring servers to declare more tips than they earned;

---

LLC, Triangle Apple, LLC, and White Plains Apple, LLC.

[3]The individual named defendants are:  Zane Tankel (the Chief Executive Officer of
Apple-Metro), Roy Raeburn (the President of Apple-Metro), Kirk Samlal, Aubrey Daly, Roland
Raymond, Derrick Palmer, Susy Quintero, and Chris Antoine (the "individual defendants").

[4]Citations to "Marin Compl." refer to the Marin plaintiffs' Second Amended Complaint,
filed June 28, 2013.

[5]Citations to "Pls.' Mem. in Opp." refer to the Marin and Dove Plaintiffs' Memorandum
of Law in Opposition to Opt-in Plaintiff Thomas' Motion to Intervene, filed on April 27, 2015.

[6]Citations to "Dove Compl." refer to the Dove plaintiff's first amended Complaint, filed
September 24, 2013.

2) failing to pay them tips owed to them from the tip pool; and 3) failing to pay sufficient wages so that their hourly wages plus tips equaled the federal minimum wage.  (Dove Compl. ¶¶ 1-3).

On July 29, 2014, the Court conditionally certified the Marin and Dove actions as collective actions and authorized plaintiffs to send a joint Notice of pendency to potential opt-in plaintiffs and to post the Notice in the restaurants.  (Defs.' Mem. in Opp. at 4).  Thereafter, 967 individuals filed timely consents to opt-in to the Marin action, and 723 consented to opt-in to the Dove action.  (Pls.' Mem. in Opp. at 1 n.1).

### B. Other Actions

While the Marin and Dove actions were pending in this district, Shannese Greenaway and Karel Powery, on behalf of themselves and others similarly situated, also filed a Complaint in this district on May 10, 2013 against Apple-Metro and two executives, alleging FLSA and NYLL violations (the "Greenaway action").  Greenaway v. Apple-Metro, Inc., No. 13 CV 2818 (ENV), 2013 U.S. Dist. LEXIS 187198 (E.D.N.Y. Nov. 13, 2013); (Defs.' Mem. in Opp. at 3-4; Pls.' Mem. in Opp. at 4-5).  The Greenaway Complaint described the prospective class as all persons employed as hostesses, waiters and waitresses, and "other comparable positions."  Greenaway v. Apple-Metro, Inc., 2013 U.S. Dist. LEXIS 187198, at *1.

On November 11, 2013, the district court dismissed the Greenaway action under the first-filed rule,[7] finding that the Greenaway plaintiffs had "failed utterly to convince the Court that the ordinary priority that would be accorded to first-filing plaintiffs like the Marin plaintiffs should be

---

[7]The "first-filed rule" provides that "'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'"  Id. at *3 (citing cases).

4

disregarded" in favor of the Greenaway plaintiffs. Id. at *5. In rejecting the Greenaway plaintiffs'

arguments, the court relied on a number of factors, including the fact that the Greenaway action

was filed more than 6 months after the Marin action; an Amended Complaint in the Marin action

had been filed; there had been multiple conferences with this Court, and the establishment of a

discovery and motion schedule. Id. Most importantly, the court noted that the Greenaway

Complaint "involv[ed] identical claims, allegations and defendants," id. at *3, and sought

"essentially the same relief" on behalf of the same class as the Marin case. Id. at *2.

Even before the dismissal of the Greenaway action, another set of plaintiffs filed a

collective action in the Southern District of New York against the same defendants on March 13,

2013 (the "Lebron action"). Lebron v. Apple-Metro, Inc., No. 13 CV 1411 (S.D.N.Y.); (Pls.'

Mem. in Opp. at 5). When the district judge in that action issued an order to show cause why the

Lebron action should not be dismissed under the first-filed rule, plaintiffs in Lebron voluntarily

dismissed the action on July 1, 2013. (Pls.' Mem. in Opp. at 5).


C. The Thomas Action

On June 6, 2014, after more than 18 months of litigation in the Marin action, and shortly

before conditional certification of the collective action was granted in the Eastern District cases,

Atavia Thomas filed a second action in the Southern District of New York, naming Apple-Metro,

Inc., Tankel, and Raeburn as defendants (collectively, the "Thomas defendants"). Thomas v.

Apple-Metro, Inc., No. 14 CV 4120, 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015). The

Thomas Complaint alleged that from August 2004 to January 2014, Thomas was a tipped worker,

employed as a server and bartender at two Apple-Metro restaurants, where she was required to

spend at least 20 percent of her shift, or over two hours per day, performing non-tipped "side

5

work." (Thomas Mot.[8] at 1; Thomas Decl.[9] ¶¶ 2-3, 14).  Her Complaint, which was brought on

behalf of herself and all others similarly situated, alleged that the Thomas defendants also violated

the FLSA and NYLL by failing to pay minimum and overtime wages and by taking unlawful wage

deductions.  Thomas v. Apple-Metro, Inc., 2015 WL 505384, at *2; (see also Thomas Mot. at 1-3;

Thomas Compl.[10] ¶¶ 47-51, 53-54, 64-65).

 On August 8, 2014, the Thomas defendants moved to dismiss the claims brought against

them, raising the first-filed rule based on the claims in the Marin and Dove actions.  Thomas v.

Apple-Metro, Inc., 2015 WL 505384, at *1.  In opposition to the motion to dismiss, Thomas

argued that the first-filed rule should not apply because the claims alleged in her Complaint were

not "identical" to the claims from the Dove and Marin actions, and because these earlier actions did

not raise a claim for violations of the 20% Rule,[11] thus creating "special circumstances."  Id. at *3-

4.  In the event the court applied the first-filed rule and dismissed her action, Thomas sought to

have her case transferred to the Eastern District of New York.  Id. at *1.  While the motion to

dismiss and the motion to transfer were pending, Thomas filed a motion for collective action notice

---

[8]Citations to "Thomas Mot." refer to the Motion to Intervene filed by Atavia Thomas on March 10, 2015.

[9]Citations to "Thomas Decl." refer to the Declaration of Atavia Thomas, attached as Exhibit A to the Schwartz Declaration, dated July 11, 2014.

[10]Citations to "Thomas Compl." refer to Atavia Thomas' proposed Complaint in Intervention, attached as Exhibit B to the Declaration of Justin M. Schwartz, filed March 10, 2015.

[11]The "20% Rule" stems from U.S. Department of Labor regulations that indicate that employers may not take advantage of any tip credit reduction with respect to time spent by employees on non-tipped work to the extent the employees spend more than 20% of their time on non-tipped work.  Id. at *5 n.1 (citing cases).

and conditional class certification on December 11, 2014. (Thomas Mot. at 2).[12]

On February 5, 2015, the Honorable Valerie E. Caproni, United States District Judge, Southern District of New York, issued a well-reasoned and thoughtful opinion, rejecting Thomas' arguments that the claims involving the 20% Rule immunized the Thomas action from the first-filed rule. See Thomas v. Apple-Metro, Inc., 2015 WL 505384, at *4. Noting that Thomas "cites no law in support of this proposition," Judge Caproni found that "the lawsuits at issue seek identical relief, assert nearly identical claims for minimum wage, overtime and tipping violations under Federal law, and have been filed in a sister New York district court with respect to the same class of plaintiffs as against the same core group of Defendants." Id. Judge Caproni also expressly rejected Thomas' request to have her putative collective action transferred to the Eastern District of New York for consolidation or coordination with the Marin and Dove actions, finding that transferring the case "is not appropriate given the relatively advanced status of those [E.D.N.Y.] cases," particularly given the absence of significant differences in the class, the defendants, the law, and the relief being sought. Id. at *5.

In granting defendants' motion to dismiss and denying the motion to transfer Thomas' collective action claims, Judge Caproni found that even if Thomas believed that the Marin and Dove actions did not encompass the 20% Rule claim,[13] dismissal of Thomas' collective action claims would not prejudice her ability to pursue those claims on an individual basis. Thomas v. Apple-Metro, Inc., 2015 WL 505384, at *4. Instead, the judge ordered Thomas either to opt-in to

---

[12]The Marin and Dove plaintiffs (collectively, "plaintiffs") note that in support of her motion for conditional certification, Thomas "submitted identical copies of 10 different exhibits that the plaintiffs had previously submitted for conditional certification in this district. (Pls.' Mem. in Opp. at 6 n.22).

[13]See discussion infra at 10-11.

the Marin and Dove actions, or to proceed individually in the Thomas action. Id. at *5. The court also held that, in the event Thomas decided to proceed individually in the Thomas action, her claims would be stayed pending the resolution of the Marin and Dove actions. Id.

### D. Thomas' Motion to Interview

#### 1) Thomas' Proposed Complaint in Intervention

On March 3, 2015, Thomas opted-in to the Marin and Dove actions, and on March 10, 2015, she filed the present Motion to Intervene in the Marin and Dove actions. (Pls.' Mem. in Opp. at 8). Arguing that plaintiffs did not allege that defendants violated the "20 percent Rule" and the "dual jobs" regulation,[14] Thomas now seeks to intervene in order to pursue these claims on behalf of the class. (Thomas Mot. at 5).[15]

In the Proposed Complaint, Thomas alleges that she was employed as a server and bartender at the Apple-Metro restaurant located at 76 West 225th Street, Bronx, N.Y. from August 2004 to January 2014, except for a one year period in 2008 when she worked at an Apple-Metro restaurant located at 102 N. End Ave., New York, N.Y. ("N. End location"). (Thomas Compl. ¶¶ 44-46; Thomas Decl. ¶¶ 2-3). During this period at the N. End location, Thomas alleges that she was employed as a server and bartender, except for a three month period when she worked as a supervisor. (Thomas Decl. ¶ 3).

---

[14]Thomas' "dual jobs" claim is based on the FLSA's prohibition on employers requiring employees to perform non-tipped duties unrelated to their tip producing duties. (Thomas Mot. at 2-4 (citing 29 C.F.R. § 531.56(e)).

[15]In the Proposed Complaint in Intervention ("Proposed Complaint"), Thomas refers to the Thomas defendants named in the Southern District action simply as "defendants." (Thomas Compl. ¶¶ 47-51, 53-54, 64-65).

The Proposed Complaint alleges that the Thomas defendants had a policy of requiring "tipped" workers to perform non-tipped "side work" for two hours or more, equaling more than twenty percent of the employees' shift. (Thomas Compl. ¶ 11). This "side work" included:

> completing the ten-point station check, inspecting and cleaning ketchup containers and salt and pepper shakers, running silverware through the dishwashing machine, sorting silverware, rolling silverware, breaking down side stands, breaking down and cleaning the soda machine and coffee machine, setting up burger bins, cutting lemons, sweeping, wiping down booths and chairs, stocking plates, napkins, cups, and to-go containers, cleaning doors and windows, and setting up and breaking down the expeditor line.

(Thomas Mot. at 1; Thomas Compl. ¶ 13; Thomas Decl. ¶ 15). Thomas claims that she was required to spend "a substantial amount of time" performing non-tipped side work, and that she observed a number of other employees performing the same non-tipped side work "before and after their shifts, and at the beginning and end of them." (Thomas Decl. ¶ 13). Thomas alleges that she and other "tipped" employees were compensated at the reduced tip credit minimum wage rather than the full minimum wage for the time spent performing non-tipped side work. (Thomas Compl. ¶ 14). As a result, Thomas alleges that she earned tips below fifteen percent of her sales during her shifts and that defendants deducted taxes on tips she did not earn. (Id. ¶¶ 19-20). She further claims that defendants "maintain[ed] a policy and practice" where tipped workers were encouraged to work off the clock, and that she performed unpaid work in excess of forty hours per work week. (Id. ¶¶ 22, 26).

Thus, Thomas asserts that the Thomas defendants violated the "20 percent Rule" and "dual jobs" regulation under the FLSA and the NYLL. (Thomas Mot. at 2). Since plaintiffs did not plead claims based on the "20 percent Rule" or the "dual jobs" regulation in their Complaints, Thomas seeks to intervene to protect those claims on behalf of the collective class. (Id. at 5).

2) Plaintiffs' Opposition

Plaintiffs are opposed to the Thomas Motion to Intervene on its merits.  (Pls.' Mem. in

Opp. at 1).  First, plaintiffs argue that Thomas' attempt to enter the lawsuit as a named plaintiff is

untimely and "comes only in response to the dismissal of parallel collective action claims that she

filed in the Southern District . . . and, even then, only as a result of her deliberate choice to forego

litigation of her individual claims in the Southern District in favor of opting-in to these actions."

(Id.)  Plaintiffs contend that Thomas' "own misguided" actions, "elect[ing] to devote ten months in

the Southern District to a gambit bent on leapfrogging the Marin and Dove actions" precludes any

argument that she "promptly" moved to intervene.  (Id. at 10).

While plaintiffs assert that their Complaints adequately represent and protect Thomas'

interests (id. at 2), plaintiffs argue that this interest does not warrant Thomas' intervention as a

named plaintiff in the Marin and Dove actions, noting that she did not have to opt-in and could

have pursued her claims as an individual.  (Id. at 10-12).  With regards to Thomas' 20% Rule

claim, plaintiffs argue that this claim is "merely an alternative, less favorable theory for securing a

much *smaller* recovery" than the plaintiffs' claims, which seek recovery of the "full minimum

wage for *100%* of hours worked."  (Id. at 12) (emphases in original).

Plaintiffs also contend that the Thomas action should be dismissed on the basis of the first-

filed rule, especially in light of the fact that the papers submitted in the Thomas action in the

Southern District of New York drew heavily on the papers filed in the Marin and Dove actions.

(See id. at 6).  Plaintiffs, citing Judge Caproni's Order, assert that their collective action claims do

not prevent Thomas from individually pursuing her claims or opting out of the settlement class.

(Id. at 7).  Additionally, plaintiffs argue that because Judge Caproni declined to transfer the

Thomas collective action from the Southern District to this district for "consolidation or

10

coordination" due to the status of plaintiffs' case, this Court should also deny Thomas' Motion to Intervene. (Id. at 7-8). Finally, plaintiffs argue that allowing Thomas to intervene will unfairly delay these proceedings and prejudice the rights of over a thousand opt-in plaintiffs. (Id. at 13). Plaintiffs point out that not only has extensive discovery been conducted, but also a new Notice would need to be sent, possibly confusing those who have already joined the suits. (Id. at 14-15).

### 3) Defendants' Opposition

The defendants in the Marin and Dove actions (collectively, "defendants") also oppose Thomas' Motion to Intervene on similar grounds to those raised by plaintiffs. Defendants assert that Thomas' proposed intervention is "an improper attempt to circumvent the Southern District's order," noting that defendants were successful on their Motion to Dismiss based on the first-filed rule and on Thomas' request to transfer the action to this district. (Defs.' Mem. in Opp. at 1). Defendants also argue that Thomas' Motion to Intervene is untimely, and that granting the motion would prejudice existing plaintiffs. (Id. at 8-11). While defendants recognize Thomas' right to proceed with her claims on an individual basis, defendants contend that Thomas is not entitled to bring collective action claims in this case, pointing to the dismissal of Greenaway v. Apple-Metro action as further support for denying Thomas' Motion to Intervene. (Id. at 1-2).

### 4) Thomas' Reply

On May 11, 2015, Thomas' counsel filed a Reply Memorandum of Law in Support of the Motion to Intervene, arguing that both plaintiffs and defendants concede that the Marin and Dove actions do not allege violations of the "20 percent Rule" and the "dual jobs" regulation, which if

proven, would grant relief to the class members. (Reply Mem.[16] at 1). Additionally, Thomas argues that plaintiffs did not state that these two claims were without merit or harmed the class in any way. (See id.) Rather, Thomas asserts that both parties concede that the plaintiffs did not plead the relevant state law as to the "80/20" claim. (Id. at 2). Thomas also distinguishes her action from the Greenaway action, arguing that in Greenaway, the court ruled on a motion to dismiss and not on a motion to intervene, and that unlike Greenaway, the Thomas action raises new claims that are different from those brought by plaintiffs. (Id. at 3). Finally, Thomas disagrees with plaintiffs' claim that Thomas' theory of recovery is a less favorable and conflicting alternative claim. (Id. at 4). Instead, Thomas asserts that her claim may allow for a larger recovery for plaintiffs without affecting their present claims. (Id.)

## DISCUSSION

### I. Legal Standard

#### A. Intervention as of Right

Rule 24(a)(2) of the Federal Rules for Civil Procedure provides that the court must permit anyone to intervene who "claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In order to intervene as of right pursuant to Rule 24(a)(2), "the applicant must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to

---

[16]Citations to "Reply Mem." refer to Thomas' Reply Memorandum of Law in Support of the Motion to Intervene, dated May 11, 2015.

the action." In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000); see also St. John's Univ. v. Bolton, 450 F. App'x 81, 83 (2d Cir. 2011) (discussing and applying a similar test). Courts have held that a "[f]ailure to meet any of these requirements suffices for a denial of the motion." In re Bernard L. Madoff Inv. Secs., LLC, Nos. 13 CV 1300, 13 CV 2447, 2013 WL 4778163, at *2 (S.D.N.Y. Sept. 6, 2013) (quoting In re Holocaust Victim Assets Litig., 225 F.3d at 197).

In determining whether a motion to intervene is timely, the court is instructed to take into account "'all of the circumstances,' including when intervenors discovered there was a need to intervene and the procedural posture of the case." NYTDA, Inc. v. City of New York, No. 11 CV 1836, 2014 WL 4274219, at *4 (E.D.N.Y. Aug. 28, 2014) (citing Turkmen v. Ashcroft, No. 02 CV 2307, 2010 WL 3398965 (E.D.N.Y. June 30, 2010), report and recommendation adopted by 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010)). The Court should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id. (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)); see also Frankel v. Cole, 490 F. App'x. 407, 408 (2d Cir. 2013). "The decision whether to deny a motion to intervene on the ground that it is untimely is committed to the sound discretion of the district court." Frankel v. Cole, 490 F. App'x. at 408.

In considering whether the applicant has met the second requirement to intervene under Rule 24(a), courts first analyze whether the applicant's interest in the litigation is "direct, substantial, and legally protectable." Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010). Next, the court requires the applicant to rebut the presumption of adequate representation by the party already in the action. See Butler, Fitzgerald & Potter v. Sequa Corp.,

13

250 F.3d 171, 179-80 (2d Cir. 2001) (citing U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)). To meet the third and fourth interest requirements under Rule 24(a), the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Id. (citing cases).

B. Analysis

1) Timeliness

Thomas argues that she has "moved expeditiously" in litigating her claims and in filing the Motion to Intervene. (Thomas Mot. at 6). She asserts that she has met all applicable deadlines imposed by Judge Caproni after her collective action claims were dismissed in the Southern District,[17] and that she filed the Motion to Intervene shortly after opting-in to the plaintiffs' actions here. (Id. at 6-7). According to Thomas, since she only recently learned of her inability to pursue her collective action claims when they were dismissed by Judge Caproni, the pending Motion to Intervene falls within the appropriate time period set out by case law in this district. (Id. (citing NYTDA v. City of New York, 2014 WL 4274219, at *4 (stating that timeliness is based on when the intervenor learned of the "need to intervene")). Finally, Thomas asserts that plaintiffs will not be prejudiced by her intervention because it will protect more class members, and defendants will not be prejudiced because the Marin and Dove actions are in the early stages of discovery. (Id. at 7).

Plaintiffs disagree and argue that Thomas' motion is untimely because of the first-filed rule and the amount of time that has elapsed while pursuing her claims in the Southern District even

---

[17]Judge Caproni ordered Thomas to decide if she wished to proceed on an individual basis by March 13, 2015, and Thomas "met the deadline." (Thomas Mot. at 6).

14

while analogous claims were pending and actively being litigated in this district. (Pls.' Mem. in Opp. at 9-10). Plaintiffs argue that Thomas' claim that she only recently learned of her claims and the need to intervene "simply blinks reality and ignores both the law and common sense." (Id. at 9).

Defendants assert that the question of whether Thomas' motion was timely should not be analyzed from the date Judge Caproni granted defendants' motion to dismiss, but instead should be measured from when Thomas had notice of her interest in the action. (Defs.' Mem. in Opp. at 9 (citing Jones v. Richter, No. 97 CV 291, 2001 WL 392079, at *2 (W.D.N.Y. Apr. 4, 2001)). Defendants contend that the nine-month delay between notice of the collective action claims in Marin and Dove in July 2014 and the Motion to Intervene filed in March 2015 "constitutes significant delay" because the initial litigation has been going on for over two years, with almost a year since the initial class certification. (See id. at 10). Additionally, defendants argue that although Thomas claims she did not have *notice* of a need to intervene until after the dismissal of the Southern District collective action claims, that does not make her motion timely; rather, defendants assert that if her motion is granted, then other plaintiffs may make similar motions and further slow down the litigation. (Id. at 11). Finally, defendants claim that Thomas' intervention would complicate the lawsuit by adding another protected class, confusing current opt-in plaintiffs with another notification period, and pausing the litigation of the Marin and Dove actions. (Id. at 11-12).

Defendants also address the third and fourth timeliness factors set out in Frankel, claiming that Thomas has conceded them. (Id. at 12). With respect to the third factor, which requires the court to consider whether the applicant will be prejudiced if the motion to intervene is denied, defendants assert that Thomas will not be prejudiced because she can still prosecute her claims on

an individual basis.  (Id.)  Regarding the fourth factor, which allows the court to look for any unusual circumstances that would, or would not warrant a finding of timeliness, defendants also assert that no unusual circumstances exist that would allow Thomas to fulfill a requirement of timeliness, and that the case is too far litigated to justify her intervention.  (Id.)

In response to plaintiffs' and defendants' arguments, Thomas claims that her application to intervene after Judge Caproni dismissed her collective action claims was appropriate due to the "alleged risks" of the claim and she points to the filing of her Motion to Intervene shortly after "changed litigation circumstances." (Reply Mem. at 5 (citing Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania, 701 F.3d 938, 950 (3d Cir. 2012))).  She also reasserts that the parties are "still early in the discovery process," and that granting the Motion to Intervene would not prejudice the case.  (Id.)

Having reviewed the papers submitted by all parties, the Court finds that Thomas' Motion to Intervene is untimely.  While Thomas did move expeditiously in seeking to join plaintiffs' action and in filing the Motion to Intervene once the collective action in the Southern District was dismissed earlier this year, she was clearly on notice of her right to bring these claims as early as July 2014, when the collective action notice was sent in the Marin and Dove actions.  (Pls.' Mem. in Opp. at 3-4).  Rather than seeking to intervene at that time, she sought instead to file her own separate action, disregarding the prior decisions in Lebron and Greenaway, where two courts found that the first-filed rule precluded those actions.  (See id. at 4-5).  She has provided no reason for this Court to conclude that her decision to pursue the separate action in the Southern District, ignoring the findings of two courts dismissing similar later-filed actions, was done without the knowledge of the potential consequences if her case was not allowed to proceed.

16

2) Interest Warranting Intervention

Thomas claims that her interest in the litigation meets the standards set out in Bridgeport Guardians due to her status as a member of the collective and putative class as a result of her former employment with defendants. (Thomas Mot. at 8). She also states that her claims do not inject collateral issues into the proceedings because they involve the same statutes and similar facts. (Id.) However, as Judge Caproni noted in dismissing Thomas' collective action claims and in denying her motion to transfer, Thomas was not required to opt-in to plaintiffs' actions; she was given the option of litigating her claims on an individual basis in the Southern District action. Thomas v. Apple-Metro, Inc., 2015 WL 505384, at *5; see also Davis v. J.P. Morgan Chase & Co., 775 F. Supp. 2d 601, 604-06 (W.D.N.Y. 2011) (denying intervention in FLSA action, noting that the intervenors' interests can be fully protected by the opportunity to not opt-in to the FLSA action or to object to any settlement at the fairness hearing). Since Thomas elected to dismiss her individual claims and opt-in to the plaintiffs' collective actions, she cannot complain that her interests are not protected; if she truly believed that, she would not have chosen to participate in these actions, but would have proceeded on her own. (Pls.' Mem. in Opp. at 10). Moreover, both plaintiffs and defendants agree that the claims plaintiffs plan to litigate are inclusive of all potential damages that could be awarded. (See id. at 10-11; Defs.' Mem. in Opp. at 13-14).

Thomas, however, asserts that the "individual, class, and collective 20 percent rule and 'dual job' claims are at risk" if she is not permitted to intervene because plaintiffs have not pursued those claims in these actions. (Thomas Mot. at 8). She argues that if her claims are resolved in these actions, it benefits defendants because claim preclusion would help defendants avoid future litigation on her new claims. (See id.)

Having considered all of the arguments, the Court finds that Thomas was given the choice

17

to pursue her claims individually but instead she chose to opt-in here. Even so, her interests are still protected because she always has the ability to opt out of any settlement. A prospective plaintiff may always select not to opt-in to the FLSA action or may opt out of a Rule 23 class settlement if the plaintiff fears his or her substantive rights will not be protected. Klein v. Ryan Beck Holdings, Inc., No. 06 CV 3460, 2007 WL 2059828, at *7 (S.D.N.Y. July 13, 2007), as amended, (July 20, 2007). Here, Thomas made a deliberate choice to join these actions and abandon her right to pursue these claims on an individual basis. Thus, the Court finds that Thomas' interests are adequately protected.

### 3) Protection of Class Interests

To the extent that Thomas claims that the class' interests are not protected because plaintiffs have failed to raise the "20% Rule" or "dual jobs" claims (Thomas Mot. at 8), the Court finds that Thomas has not persuasively explained why the plaintiffs' claims of FLSA violations based on defendants' alleged tip credit scheme and failure to pay minimum wages, do not encompass Thomas' claims. As plaintiffs argue, Thomas' motion "hinges solely on the false premise that she and other members of the Marin and Dove actions are somehow precluded from recovering on a 20% Rule claim as a result of the alleged failures of the Plaintiffs." (Pls.' Mem. in Opp. at 11). Thomas has failed to explain why those members of the class who were not paid adequate wages and deprived of tips because they were forced to do non-tipped work will not be able to recover in these actions even if the 20% Rule and dual jobs regulation are not explicitly alleged in the Complaints; it seems clear that these individuals would still have valid claims of FLSA violations under the existing Marin and Dove Complaints. Indeed, Thomas' decision to become an opt-in plaintiff reflects a recognition that her claims are protected. (Id.)

18

This Court agrees with both Judge Caproni's and Judge Vitaliano's decisions to dismiss the later filed <u>Thomas</u> and <u>Greenaway</u> actions and their assessment that the claims of the class were adequately protected by plaintiffs. In light of Judge Caproni's decision dismissing the <u>Thomas</u> action, in part, because Thomas sought "essentially the same relief" on behalf of the same class as the <u>Marin</u> case, Thomas has not adequately explained this issue in the Motion to Intervene. Therefore, the Court is not persuaded that the "20% Rule" and "dual jobs" claims entitle plaintiffs to relief that is different from the relief already being sought in the <u>Marin</u> and <u>Dove</u> actions. Accordingly, the Court finds that this factor weighs against granting Thomas' Motion to Intervene, as the Court is not convinced that the proposed "20% Rule" or "dual jobs" claims are not already reflected in plaintiffs' collective action claims.

Moreover, Thomas' counsel makes no attempt to rebut the presumption that plaintiffs' counsel are adequate to represent the collective class, including Thomas, in the current action. This alone is sufficient for the Court to find that Thomas' interest and the interest of the class members will not be impaired and are adequately protected by plaintiffs' counsel. <u>See</u> <u>In re Holocaust Victim Assets Litig.</u>, 225 F.3d at 197. However, were the Court to independently analyze the adequacy of plaintiffs' counsel, the Court would find that plaintiffs' current counsel in the <u>Marin</u> and <u>Dove</u> actions will adequately represent the interests of all class members, including Thomas. <u>See</u> <u>Butler, Fitzgerald & Potter v. Sequa Corp.</u>, 250 F.3d at 179-80 (citing <u>U.S. Postal Serv. v. Brennan</u>, 579 F.2d at 191). Not only has this Court, through its dealings with counsel, observed the diligence with which current counsel have proceeded to prosecute these actions to date, but Thomas' own counsel relied heavily on papers previously submitted by the <u>Marin</u> and <u>Dove</u> counsel, by filing identical exhibits in Thomas' own action in the Southern District. (<u>See</u> Pls.' Mem. in Opp. at 6). Thomas' counsel's choice to copy plaintiffs' counsel's

19

papers demonstrates that even Thomas' counsel must believe that plaintiffs' counsel are more than adequate to represent the interests and rights of the collective class. Moreover, it is undisputed that plaintiffs' counsel have been actively pursuing the Marin and Dove actions for several years, filing an Amended Complaint in both actions, setting up conferences with this Court to establish a discovery and motion schedule, and engaging in extensive discovery. Thus, they are far more familiar than Thomas' counsel with the status of these cases and the discovery that has been exchanged. Accordingly, the Court finds that Thomas has failed to demonstrate that plaintiffs' counsel are inadequate to represent Thomas' interest and the interest of the class in the Marin and Dove actions.

### 4) Prejudice to Existing Class Members

Perhaps the most persuasive factor in considering Thomas' proposed intervention is the prejudice to the existing parties. Here, the parties in Marin and Dove have been litigating these claims for over two years and there are over a thousand plaintiffs who have opted-in to these actions. (See Pls.' Mem. in Opp. at 1). The collective action class notice was sent out on February 19, 2015, and the period for opting-in closed as of April 20, 2015. (Defs.' Mem. in Opp. at 5). If Thomas were permitted to intervene, a new collective action motion would need to be filed; defendants would be given an opportunity to oppose the motion, resulting in delay while the briefing proceeded; and, even assuming that Thomas succeeded, a new notice would have to be sent to class members, potentially causing confusion and perhaps resulting in some plaintiffs who have currently opted-in from not re-submitting their consents.[18]

_____

[18]As noted by defendants, this could create satellite litigation as to whether a plaintiffs' initial consent form would operate as a continued consent in the new case. (Defs.' Mem. in Opp.

20

Apart from the delay resulting from this motion practice, and the additional notice period, there may also be the need for Thomas to conduct pre-certification discovery on her new claims prior to filing her motion for collective action. The parties have already conducted extensive discovery in the cases; indeed, the Court met with the parties on September 11, 2015 to discuss various aspects of e-discovery and to resolve certain disputes. For new counsel, unfamiliar with the discovery that has already been exchanged, to come in at this time and re-start the process with new requests and a different focus would be a huge setback to resolving the class' interests.

Having considered all of the factors that courts consider in determining whether there should be intervention as of right, and finding no special circumstances that would favor a finding that intervention is timely here, the Court respectfully recommends that Thomas' motion to intervene as of right be denied as untimely.

### C. Permissive Intervention

Thomas also seeks permission to intervene under Federal Rule of Civil Procedure 24(b)(1)(B), arguing that because her claims share the same legal and factual issues with plaintiffs' claims, she should be allowed to intervene permissively. Rule 24(b)(1)(B) provides: "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

When the court determines if a party may intervene under this provision, it "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In determining the appropriateness of permissive intervention, it

_____

at 11).

21

is "well-settled that the principal consideration in either granting or denying an application for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. 497, 502 (E.D.N.Y. 1984) (quoting U.S. Postal Service v. Brennan, 579 F.2d at 191); see also Apple v. Atlantic Yards Dev. Co., LLC, No. 11 CV 5550, 2014 WL 5450030, at *4 (E.D.N.Y. Oct. 27, 2014) (citing U.S. Postal Service v. Brennan, 579 F.2d at 191). Additionally, a court may consider "whether the intervener's participation will contribute to the just and equitable adjudication of the issues, and whether the intervener's interests are adequately represented by the parties of the record." Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. at 502

Thomas asserts that her entry would not delay or prejudice the present litigation and adjudication. (Thomas Mot. at 9). This Court disagrees. As discussed supra at 20-21, the potential prejudice to the existing class of plaintiffs is substantial. Given the delay necessarily engendered by a new notice and new class period alone, and the need to commence discovery anew, the Court respectfully recommends that Thomas' request for permissive intervention be denied.

22

CONCLUSION

The Court finds that Thomas has not met the standard for a Motion to Intervene as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, nor has she demonstrated that permissive intervention under Rule 24(b) of the Federal Rules will not cause substantial prejudice to the existing class. Therefore, it is respectfully recommended that the Motion to Intervene be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
         September 16, 2015

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

23