**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS MARIN, KENNY LEBRON, and MARTINA HANISCH, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 12 Civ. 5274 (ENV)(CLP) |
| - against - | |
| APPLE METRO, INC., et al., | -related to- |
| Defendants. | |
| SHAUNTA DOVE, on behalf of herself and all others similarly situated, | Case No. 13 Civ. 1417 (ENV)(CLP) |
| Plaintiff, | |
| - against - | |
| APPLE METRO, INC., et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, CLASS CERTIFICATION, AND APPOINTMENT OF CLASS COUNSEL

THE OTTINGER FIRM, P.C.
401 Park Avenue South
New York, New York 10016
Tel.    (212) 571-2000

*AND*

BORRELLI & ASSOCIATES, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.    (212) 679-5000

*COUNSEL FOR PLAINTIFFS, THE COLLECTIVES,*
*and the PROPOSED SUB-CLASSES*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ iv

**PRELIMINARY STATEMENT** ......................................................................................... 1

**SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY** ............................ 4

I.     The *Marin* and *Dove* Actions ................................................................................... 4

     A.    The *Marin* Action ................................................................................... 4

     B.    The *Dove* Action .................................................................................... 5

     C.    The Apple-Metro Defendants' Common Ownership and Personnel Practices ..... 5

     D.    Plaintiffs' Employment and the Unlawful Wage Practices Suffered at Apple-Metro's Applebee's Restaurants ................................................................. 7

II.    Conditional Certification and the Opt-In Process in *Marin* and *Dove* ........................... 7

III.   The Three Subsequent Actions and the Courts' Denial of a Motion to Intervene ............. 8

IV.   *Dove/Marin* Collective Discovery Reveals Defendants' Liability for Class-wide Minimum Wage and NYLL § 195(1) Violations .............................................................. 11

**ARGUMENT** ……........................................................................................................ 12

**PART ONE:**     **PLAINTIFFS' MINIMUM WAGE AND NYLL § 195(1) CLAIMS ARE, WITHOUT QUESTION, PART OF THESE ACTIONS.** ....................................................................................... 12

I.     Rule 8's Liberal Notice Pleading Standard Only Require Plaintiffs to Provide "Fair Notice" of the Legal Basis for their Claims. ............................................................. 13

II.    The Pleadings, Filings, and Discovery in These Actions Plainly Confirm that Defendants had "Fair Notice" of both Plaintiffs' Claims that Defendants Failed to Pay Minimum Wage or Comply with NYLL § 195(1)'s Statutory Notice Requirement. .................................. 18

     A.    Minimum Wage ..................................................................................... 18

          1.    *Dove* FAC allegations provide fair notice of Plaintiffs' minimum wage claims based on Defendants' attempt to claim a tip credit. ..................... 18

          2.    Defendants' affirmative defenses in both *Dove* and *Marin* confirm they received "fair notice" of Plaintiffs' minimum wage claims. .................... 19

3.      Defendants' filings and this Court's ruling on the Thomas Motion to Intervene displays the Parties' shared clarity on Plaintiffs' claims. ......... 22

4.      Defendants' attempt to ignore the Plaintiffs' claims and disavow their own Answers, filings, and responses to discovery requests defies both the case law interpreting Rule 8 and common sense. ............................................. 23

B.      Plaintiffs' Operative Pleadings also Provide Ample Notice of Plaintiffs' NYLL § 195(1) Claims, also Supported by Defendants' Answers, Prior Filings, this Court's Rulings, and Discovery Responses. ......................................... 26

**PART TWO:      PLAINTIFFS' ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THEIR MINIMUM WAGE AND NYLL § 195(1) CLAIMS.** ................................................... 28

I.      Standard for Summary Judgment ................................................................. 29

II.     Apple-Metro Violated New York State's Minimum Wage Law by Failing to Provide Moving Plaintiffs With Proper Written Notice of the Tip Credit. .................................... 29

A.      Apple-Metro's Tip Credit Notices to Moving Plaintiffs Are Deficient, thereby Invalidating Defendants' Ability to Claim a Tip Credit to Reduce Moving Plaintiffs' Wages Below the Statutory Minimum ................................................. 32

III.    Apple-Metro Violated the Wage Notice Requirements Under NYLL § 195(1)(a). ......... 33

A.      Apple-Metro's Wage Notices to Moving Plaintiffs Are Deficient. ...................... 35

**PART THREE:      THE COURT SHOULD CERTIFY TWO RULE 23 SUB-CLASSES ON PLAINTIFFS' MINIMUM WAGE AND NOTICE CLAIMS.** ................................................... 36

I.      Plaintiffs' NYLL Claims Based on Invalid Tip Credit and Wage Notice Are Well-Suited for Class Adjudication ................................................................. 36

II.     Plaintiffs Meet All of the Requirements for Class Certification ........................................ 37

A.      Plaintiffs Meet Each Rule 23(a) Requirement. ....................................................... 38

1.      Numerosity .................................................................................... 38

2.      Commonality ................................................................................. 38

3.      Typicality ...................................................................................... 39

        4.     Adequacy ................................................................................... 40

        5.     Ascertainability ......................................................................... 41

    B.     Plaintiffs Meet the Rule 23(b)(3) Requirements.................................. 41

        1.     Common Questions Predominate ............................................... 41

        2.     A Class Action is the Superior Mechanism ............................... 42

    C.     Plaintiffs Also Meet the Rule 23(c)(4) Requirements. ......................... 44

III.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel...................................... 45

**CONCLUSION**……… ................................................................................................. 46

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                    **Page(s)**

*Am. Federal Grp, Ltd. v. Rothenberg*,
   136 F.3d 897 (2d Cir. 1998) .......................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................... 29

*Angamarca v. Pita Grill 7 Inc.*,
   2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012) ................................................. 29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 14, 16

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ...................................................................... 16

*Ayala v. Your Favorite Auto Repair & Diag. Ctr., Inc.*,
   2016 WL 5092588 (E.D.N.Y. Supt. 19, 2016) ............................................. 29

*B.H. ex rel D.B. v. City of New York*,
   2011 WL 2133810 (E.D.N.Y. May 27, 2011) ............................................... 40

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ........................................................................... 40

*Baltierra v. Advantage Pest Control Co.*,
   2015 WL 5474093 (S.D.N.Y. Sept. 18, 2015) .............................................. 32

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007). ............................................................................ 14, 15, 16

*Bilyou v. Dutchess Beer Distribs., Inc.*,
   300 F.3d 217 (2d Cir. 2002) ......................................................................... 19

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) .................................................................. 40

*Book v. Moulton*,
   2005 WL 3307361 (N.D.N.Y. Dec. 6, 2005) ................................................ 17

*Chen v. Major League Baseball*,
   6 F. Supp. 3d 449 (S.D.N.Y. 2014) .............................................................. 19

*Chevron Corp. v. Donzinger*,
   886 F. Supp. 2d 235 (S.D.N.Y. 2012)........................................................................ 17, 27

*Conley v. Gibson*,
   355 U.S. 41 (1957) ...................................................................................................... 13, 15

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).......................................................................................... 38

*Copper v. Calvary Staffing, LLC*,
   132 F. Supp. 3d 460 (E.D.N.Y. 2015)........................................................................ 34

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).......................................................................................... 44

*Corning Glass Works v. Brennan*,
   417 U.S. 188 (1974) .................................................................................................... 19

*Curry v. City of Syracuse*,
   316 F.3d 324 (2d Cir. 2003)........................................................................................ 16

*Cuzco v. F & J Steaks 37th St. LLC*,
   2014 WL 2210615 (S.D.N.Y. May 28, 2014)............................................................. 30

*Doo Nam Yang v. ACBL Corp.*,
   427 F. Supp. 2d 327 (S.D.N.Y. 2005)........................................................................ 31

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ...................................................................................................... 14

*Fermin v. Las Delicias Peruanas Rest., Inc.*,
   2015 WL 1285960 (E.D.N.Y. Mar. 19, 2015) ........................................................... 31

*Flickinger v. Harold C. Brown & Co.*,
   947 F.2d 595 (2d Cir. 1991)........................................................................................ 15

*Gen. Tel. Co. of S.W. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................... 39, 40

*Gregory v. Stewart's Shops Corp.*,
   2015 WL 893058 (N.D.N.Y. Mar. 2, 2015)............................................................... 19

*Grenawalt v. AT & T Mobility, LLC*,
   2014 WL 4832318 (S.D.N.Y. Sept. 29, 2014) ........................................................... 43

*Hamelin v. Faxton–St. Luke's Healthcare*,
  2011 WL 1938677 (N.D.N.Y. Mar.8, 2011)..............................................................39

*Hayes v. Dep't of Educ. Of City of N.Y.*,
  20 F. Supp. 3d 438 (S.D.N.Y. 2014)...............................................................14, 24

*Hernandez v. Jrpac Inc.*,
  2016 WL 3248493 (S.D.N.Y. June 9, 2016)...................................................*passim*

*Herrera v. Tri-State Kitchen & Bath, Inc.*,
  2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) ...........................................................34

*Hicks v. T.L. Cannon Corp.*,
  35 F. Supp. 3d 329 (W.D.N.Y. 2014) ..............................................30, 39, 40, 42

*Hill v. City of N.Y.*, No. 13-cv-6147,
  2015 WL 5719656 (E.D.N.Y. Sept. 28, 2015)..........................................................40

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ...................................................................................................36

*Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*,
  2013 WL 2322675 (S.D.N.Y. May 28, 2013).............................................................16

*Hughes v. The Ester C Company*,
  -- F. Supp. 3d --, 2016 WL 6092487 (E.D.N.Y. Sept. 30, 2016)..............................41

*In re Air Cargo Shipping Svcs. Antitrust Litig.*,
  2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010).........................................................13

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)...............................................................................37, 41

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)........................................................................................40

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006).....................................................................................44

*In re Old CarCo LLC*,
  454 B.R. 38 (Bankr. S.D.N.Y. 2011) ....................................................................15, 26

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)......................................................................................37

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ..................................................................... 44, 45

*Jones v. Bryant Park Market Events, LLC*,
   -- Fed App'x --, 2016 WL 4258948 (2d Cir. Aug. 12, 2016) .................................. 16

*Kim v. Kum Gang, Inc.*,
   2015 WL 2222438 (S.D.N.Y. Mar. 19, 2015) ......................................................... 31

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F.3d 706 (2d Cir. 2001) .................................................................................... 23

*Leon v. Hotel & Club Emp. Union Local 6*,
   26 F.R.D. 158 (S.D.N.Y. 1960) .............................................................................. 25

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................................ 38, 40

*Mattia v. Ferrara Foods & Confections, Inc.*,
   2013 WL 2339925 (S.D.N.Y. Apr. 18, 2013) ........................................................ 34

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .................................................................................. 42

*Moreira v. Sherwood Landscaping, Inc.*,
   2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) ........................................................ 42

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d. Cir. 2010) ................................................................................... 38

*Northrop v. Hoffman of Simsbury, Inc.*,
   134 F.3d 41 (2d Cir. 1997) ............................................................ 14, 15, 24, 26

*Oliveras v. Wilkins*,
   2012 WL 3245464 (S.D.N.Y. June 26, 2012) ........................................................ 24

*OSRecovery, Inc. v. One Groupe Intern., Inc.*,
   462 F.3d 87 (2d Cir. 2006) ...................................................................................... 23

*Pemrick v. Stracher*,
   2007 WL 1876504 (E.D.N.Y. June 28, 2007) ........................................................ 23

*Perez v. Allstate Ins. Co.*,
   2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ....................................................... 36

*Raymond Weil, S.A. v. Theron*,
    585 F.Supp.2d 473 (S.D.N.Y.2008) ........................................................................ 16

*Rivera v. Harvest Bakery Inc.*,
    312 F.R.D. 254 (E.D.N.Y. 2016) ........................................................................ 37

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ........................................................................ 41

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ........................................................................ 44

*Salinas v. Starjem Rest. Corp.*,
    2015 WL 4757618 (S.D.N.Y. Aug. 12, 2015) ........................................... 30, 31, 33

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ............................................................ 38, 39, 40

*Sibley v. Choice Hotels Intern., Inc.*,
    304 F.R.D. 125 (E.D.N.Y. 2015) ........................................................... 16, 21

*Simonton v. Runyon*,
    232 F.3d 33 (2d. Cir. 2000) .................................................................. 14, 25

*Spicer v. Pier Sixty LLC*,
    269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................................ 37

*Strunk v. U.S. House of Representatives*,
    68 F. App'x 233 (2d Cir. 2003) ........................................................................ 15

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .................................................................. 14, 15, 24

*Tackie v. Keff Ent., LLC*,
    2014 WL 4646229 (S.D.N.Y. Sept. 16, 2014) ....................................................... 19

*Turner v. White*,
    443 F. Supp. 2d 288 (E.D.N.Y. 2005) ........................................................................ 22

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................ 38, 42

*United States v. Hussein*,
    178 F.3d 125 (2d Cir.1999) ........................................................................ 22

*US Airways, Inc. v. Sabre Holdings Corp.*,
   2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015).................................................................... 13

*Uzdavines v. Weeks Marine, Inc.*,
   418 F.3d 138 (2d Cir. 2005)............................................................................................ 23

*Vantone Grp. Liabl. Co. v. Yangpu NGT Indus. CO.*,
   2015 WL 4040882 (S.D.N.Y. July 2, 2015) ........................................................ 13, 15, 16

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................. 39, 44

*Weiner v. Snapple Beverage Corp.*,
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................................................................... 41

*Woodfield v. Bowman*,
   193 F. 3d 354 (5th Cir. 1999).......................................................................................... 17

*Wynder v. McMahon*,
   360 F.3d 73 (2d Cir. 2004)..................................................................... 13, 14, 19, 24

**Statutes**                                                                                          **Page(s)**

29 U.S.C. § 201 ........................................................................................................... 1, 4

29 U.S.C. § 203 ................................................................................................ 18, 20, 29

29 U.S.C. § 206 .............................................................................................................. 18

29 U.S.C. § 216 .......................................................................................................... 2, 38

NYLL § 195 ........................................................................................................... *passim*

NYLL § 196-d .................................................................................................................. 18

NYLL § 198(1-b) ...................................................................................................... 33, 43

NYLL § 198(1-d) ...................................................................................................... 35, 36

NYLL § 652 .......................................................................................................... 18, 29

**Rules**                       **Page(s)**

Fed. R. Civ. P. 8 ................................................................................... 13, 15, 23

Fed. R. Civ. P. 15 ....................................................................................... 13

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 56 ....................................................................................... 29

Fed. R. Civ. P. 72 ......................................................................................... 7


**Treatises**                   **Page(s)**

5 Wright & Miller, *Federal Practice & Procedure: Civil*, 3d Ed ............................... 16


**Regulations**                 **Page(s)**

12 NYCCRR § 146-1.2 ................................................................................... 36

12 NYCCRR § 146-1.3 ........................................................................... 20, 29, 36

12 NYCCRR § 146-1.4 ........................................................................... 32, 35, 36

12 NYCCRR § 146-2.15 .................................................................................. 18

12 NYCCRR § 146-2.2 ............................................................................. *passim*

12 NYCCRR § 146-3.5 ........................................................................... 28, 30, 32

12 NYCCRR §§ 137-1.3 .................................................................................. 35

29 C.F.R. § 531.59 ...................................................................................... 20

29 C.F.R. § 541.4 .................................................................................... 20, 31

## PRELIMINARY STATEMENT

Named Plaintiffs Carlos Marin, Kenny Lebron and Martina Hanisch (collectively, the "*Marin* Plaintiffs"), Plaintiff Shaunta Dove (the "*Dove* Plaintiff"), and the sixty opt-in Plaintiffs who join this motion (all, together as, "Moving Plaintiffs"),[1] submit this Memorandum of Law in support of their Omnibus Motion for Partial Summary Judgment under Federal Rule of Civil Procedure ("FRCP") 56(a), and certification of two Sub-Classes under FRCP 23(b)(3).

The *Marin* and *Dove* Plaintiffs commenced these actions against Defendant Apple-Metro, Inc. - - and 35-39 of its wholly owned Applebee's Restaurant franchises located in Manhattan, The Bronx, Brooklyn, Queens, Staten Island, Westchester and Rockland counties (collectively, "Defendants" or "Apple-Metro") (together, with the Plaintiffs, as the "Parties"). Together, the *Marin* and *Dove* Plaintiffs allege that Apple-Metro violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"), by, among other ways:

- failing to pay its hourly non-managerial food service and maintenance workers - - including, but not limited to, servers, hosts, bartenders, cooks, expeditors, runners, and dishwashers - - minimum and overtime wages for all hours worked by systematically altering employees' electronic time-clock records, and by refusing to allow employees to perform certain work "on the clock;"

- failing to pay its "tipped" hourly workers - - including servers, hosts, hostesses and bartenders - - minimum hourly and overtime wages by systematically paying only reduced "tip credit" hourly wages,

---

[1]      For a complete list of the Moving Plaintiffs, *see* Ex. 1.  All references to "Ex." in this Memorandum of Law refer to the exhibits found in the Declaration of Ariel Y. Graff in Support of Plaintiffs' Omnibus Motion ("Graff Decl."), submitted simultaneously with this Memorandum, and dated November 4, 2016.

irrespective of whether such workers earned sufficient tips to bring their total hourly pay above the federal minimum hourly wage;[2]

and

- violating NYLL § 195 for Apple-Metro's failure to provide (1) accurate paystubs on each pay day and (2) wage notices - - informing Plaintiffs in both Actions of several categories of information, and permitting Defendants to claim a "tip credit" to reduce the Plaintiffs' hourly pay below the statutory minimum.

On December 18, 2014, this Court's granted conditional certification of a FLSA § 216(b) collective, resulting in 1,104 opt-in Plaintiffs joining these Actions.  During the exchange of class-wide paper discovery, representative documentary evidence revealed that an ascertainable class of 14,890 members were victimized by Defendants' wage violations - - including those based on Defendants' failure to provide adequate written notice of Plaintiffs' regular and overtime rates of pay and/or Defendants' intention to reduce tipped Plaintiffs' hourly wages below the statutory minimum wage through a "tip credit."[3]  Indeed, for each of the sixty opt-in Plaintiffs for whom Defendants produced personnel files (*i.e.*, those who join the Named Plaintiffs as Moving Plaintiffs in this motion), Defendants produced notices that failed to comply with NYLL § 195(1)'s strict requirements, invalidating Defendants' ability to claim a tip credit, and confirming their liability for all on-the-clock hourly pay worked by Plaintiffs, plus statutory penalties under NYLL § 195(1).

---

[2]      The Dove Action was formally designated as "related" to the Marin Action and transferred for coordinated proceedings before The Hon. Eric N. Vitaliano, U.S.D.J., and The Hon. Cheryl L. Pollack, U.S.M.J. - - presiding judges in the Marin Action - - by stipulation and Orders dated January 15 and January 21, 2014.

[3]      This Omnibus Motion does not address any of the other claims pending in this matter, including, without limitation, the individual liability for Named Defendants' other than Apple-Metro, Inc., Defendants' liability for liquidated damages, and any other claims not specifically addressed in this motion. Plaintiffs will later address these issues upon the completion of class discovery.

2

Through this omnibus motion, the Moving Plaintiffs now seek an Order: (1) granting them partial summary judgment on both their NYLL minimum wage claims and NYLL § 195(1) claims; and (2) certifying two Rule 23 sub-classes on these issues.  This Court should grant Plaintiffs' omnibus motion for several reasons.   First, contrary to the arguments of desperation that Defendants previewed in their pre-motion letters, the Parties' pleadings, prior filings in these actions, and discovery responses all reveal - - with zero doubt - - that Plaintiffs have unquestionably placed Defendants on fair notice of their claims for: (1) minimum wages, based on Defendants' failure to comply with New York's strict written notice requirements that would enable them to pay Plaintiffs and the Class Plaintiffs hourly wages below the statutory minimum; and (2) statutory penalties under NYLL § 195(1).  Second, because the documentary evidence thus-far produced reveals that no disputed issues of material fact exist - - and instead confirms that Defendants' NYLL § 195(1) notices were inadequate under the law - - Defendants cannot prevail as a matter of law on their affirmative defenses based on NYLL § 195(1) (which would have allowed them to pay Plaintiffs below the applicable statutory minimum wage rate).  Accordingly, partial summary judgment on these two claims is warranted.  And third, because these two claims affect all putative class members in a uniform manner, certifying sub-classes based on each of these claims will allow for a swift adjudication of these issues under Rule 23(b)(3).

## SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY[4]

I.    **The *Marin* and *Dove* Actions**

A.    **The Marin Action**

The *Marin* Plaintiffs commenced their action on October 22, 2012, and filed their Second Amended Class and Collective Action Complaint against Defendant Apple-Metro, Inc. - - and 35-39 of its wholly owned Applebee's Restaurant franchises located in Manhattan, The Bronx, Brooklyn, Queens, Staten Island, Westchester and Rockland counties (collectively, "Defendants" or "Apple-Metro") - - on June 28, 2013.[5]  The *Marin* Plaintiffs allege that Apple-Metro violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"), by: failing to pay its hourly non-managerial food service and maintenance workers minimum and overtime wages for all hours worked, *inter alia*, by systematically altering employees' electronic time-clock records; by refusing to allow employees to perform certain work "on the clock;" and by failing to provide Plaintiffs with accurate paystubs on each pay day or wage notices at the time of hire as required under NYLL § 195.[6]

The *Marin* Plaintiffs seek recovery under the FLSA, *inter alia*, for the "difference between the amount of wages actually paid to them and the statutory amount due, as well as to recover overtime compensation which is legally due to them for the time worked in excess of forty (40) hours per week."[7]  The *Marin* Plaintiffs also seek recovery on behalf of a putative Rule 23 class

---

[4]    The facts found in this section are drawn from the Parties' filings in these matters, this Court's rulings herein, certain related matters referenced by their docket numbers, and the Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Material facts (hereinafter "Pl's SOF").

[5]    *See* No. 12-cv-5274 (ENV)(CLP) (hereinafter, "*Marin*"), ECF #23 (2d Am. Compl.). *See also* Graff Decl. ¶ 6 (describing forty-seven individual restaurants, some of which have opened and/or closed over the course of this litigation).

[6]    *See* ECF #23 (*Marin*).

[7]    *Id.* ¶¶ 61, 140.

whose members "were not compensated for each hour worked at their straight, regular hourly rate" in violation of the NYLL, and for statutory penalties for Defendants' violations of NYLL § 195.[8]

### B.   The *Dove* Action

The *Dove* Plaintiff commenced her related action on March 18, 2013, and filed an Amended Complaint against the Apple-Metro Defendants on September 24, 2013, alleging that Apple-Metro violated the FLSA and NYLL by failing to pay its "tipped" hourly workers minimum hourly and overtime wages, and by failing to provide Plaintiffs with accurate paystubs on each pay day or wage notices at the time of hire as required under NYLL § 195.[9]  The *Dove* Plaintiff and opt-in Plaintiffs seek "to recover amounts owed to them and that they were deprived of by Defendants' tip sharing scheme, including the minimum hourly required rate of pay per hour worked," and for statutory penalties for Defendants' violations of NYLL § 195.[10]

### C.   The Apple-Metro Defendants' Common Ownership and Personnel Practices

Defendant Apple-Metro, Inc. is owned by Defendant Zane Tankel.[11]  Apple-Metro has exclusive franchise rights to operate Applebee's restaurants in Manhattan, The Bronx, Brooklyn, Queens and Staten Island as well as all of Westchester and Rockland Counties.[12]  Apple-Metro owns/owned and operates/operated all forty-seven of its Applebee's restaurant subsidiaries in these

---

[8]  *Id.* ¶¶ 68, 170-177.

[9]  *See* No. 13-cv-1417 (ENV)(CLP) (hereinafter, "*Dove*"), ECF #15 (Am. Compl.).

[10]  *Id.* ¶ 61; *see also id.* ¶ 137 ("Defendants' illegal tip sharing scheme violated FLSA §203 by depriving employees of the minimum hourly required rate of pay per hour worked of $7.25 per hour."), ¶ 116 ("Defendants' illegal tip sharing scheme violated Labor Law §196-d by depriving servers of the minimum hourly required rate of pay per hour worked of $7.25 per hour."), ¶¶ 169-76.

[11]  *See* Graff Decl., Ex. 2 (Transcript of 30(b)(6) Deposition of Neesha Seervai ("Seervai 30(b)(6) Dep. Tr.")); Ex. 3 (Apple-Metro "Company Overview" Webpage ("Company Webpage")); and Ex. 4 (New York Times Article Titled "Franchisee Challenges a Restaurant Chain, to the Benefit of Both," published September 14, 2011 ("NYT Article")).

[12]  Graff. Decl. Ex. 3 (Company Webpage), p. 1.

territories, thirty-five of which are named Defendants in these actions.  Under Defendant Tankel's management, Apple-Metro's restaurants generate double the average revenue of Applebee's restaurant franchises in other parts of the country.[13]  Apple-Metro's restaurants also average among the lowest operating costs of any Applebee's restaurants in the country.[14]

Apple-Metro also trains its store managers in area such as "how to look at labor, how to manage their day, how to do things in the back office, how to open the computer, troubleshooting, and close of day."[15]  Apple-Metro provides the same training to managers and employees at all of its 35 restaurants.[16]  In addition to written training materials, Apple-Metro also provides live on-the-job training to its managers in eight designated "training restaurants."[17]  Restaurant managers can also access Apple-Metro's written policies and related materials through an online shared-drive.[18]

The notice of hourly and overtime wages provided to hourly employees at Apple-Metro's restaurants pursuant to NYLL § 195(1) identifies "Apple-Metro, Inc." - - rather than the particular (wholly owned) subsidiary associated with each of the various restaurants - - as the employees' respective "employer."[19]

---

[13]     Graff. Decl. Ex. 4 (NYT Article), p. 1.

[14]     *Id.*, p. 3.

[15]     Graff Decl. Ex. 2 (Seervai 30(b)(6) Dep. Tr.), pp. 24-25.

[16]     *Id.*, p. 25.

[17]     *Id.*

[18]     *Id.*, p. 27.

[19]     *See* Graff Decl. Ex. 13 (Document produced by Defendants bearing Bates number AM0000611 and titled "Notice and Acknowledgement . . ." ("Notice and Acknowledgement")).

D.    **Plaintiffs' Employment and the Unlawful Wage Practices Suffered at Apple-Metro's Applebee's Restaurants**

Named Plaintiff Carlos Marin was employed as a back-of-house broiler, cook, and general maintenance worker at Apple-Metro's Applebee's restaurant located in Jamaica, Queens, for approximately 18 months, from March 2011 to September 2012.[20] He generally worked an average of 45-50 hours per week, but during busy summer months would often work as many as 60 hours per week.[21] Named Plaintiff Shaunta Dove worked as a host, server, and expeditor at Apple-Metro's Applebee's restaurant located in Jamaica, Queens, for approximately 18 months, from June 2011 to January 2013.[22] Ms. Dove's hourly pay for her on-the-clock time, including her tip-credit hourly wage of $5.00, together with her tip earnings, was often less than the federal minimum hourly wage.[23] When Defendants hired her, Defendants provided Ms. Dove with a NYLL § 195(1) notice that listed her regular rate of pay at $5.00 per hour, and her overtime rate of pay at $7.50 per hour.

## II.    **Conditional Certification and the Opt-In Process in *Marin* and *Dove***

The *Marin* and *Dove* Plaintiffs filed a joint motion for conditional certification, which was granted on July 29, 2014.[24] With respect to the *Marin* action, the Court conditionally certified "a collective action consisting of non-managerial employees at Apple-Metro's 36 area restaurants, including servers, hosts, cooks, bartenders, expediters, runners, dishwashers, and maintenance

---

[20]    Graff Decl. Ex. 5 (Declaration of Carlos Marin ("Marin Decl.") ¶¶ 2, 3.

[21]    *Id.* ¶ 9.

[22]    Graff Decl. Ex. 6 (Declaration of Shaunta Dove) ¶¶ 2-3.

[23]    *Id.* ¶¶ 4, 17-19.

[24]    *See* ECF #75 (*Marin*), #48 (*Dove*).

workers."[25]  With respect to the *Dove* action, the Court granted conditional certification of a collective action comprising "all tipped hourly employees—servers, hosts, hostesses, and bartenders." [26]  District Judge Vitaliano overruled Defendants' objections to the grant of conditional certification pursuant to Fed. R. Civ. P. 72(a) on December 18, 2014.[27]

After further submissions by the parties, the Court authorized the *Marin* and *Dove* Plaintiffs to jointly transmit a revised Notice of pendency of the actions to potential opt-in Plaintiffs, and Ordered Defendants to post the Notice in their restaurants.[28]  Nine hundred and sixty-eighty individuals filed timely notices of consent to become party plaintiffs in the *Marin* action, and 724 filed consent to become party plaintiffs in the *Dove* action, for a combined total of 1,104 unique opt-in Plaintiffs.

## III.    The Three Subsequent Actions and the Courts' Denial of a Motion to Intervene

On May 10, 2013, Shannese Greenaway and Karel Powery filed a Complaint against Apple-Metro and two of its executives on behalf of themselves and a putative collective action comprising: "[A]ll persons who were employed by the Defendants . . . as Hostesses and Waitresses/Waiters and other comparable positions with different titles, who were non exempt employees within the meaning of the FLSA."[29]  Following motion practice, Judge Vitaliano dismissed the *Greenaway* collective action claims under the first-filed rule.[30]  Soon thereafter, on March 1, 2013, a separate set of plaintiffs filed a collective action against the same Defendants

---

[25]    *Id.* at 17-18.

[26]    *Id.* at 22.

[27]    *See* ECF #86 (*Marin*), #59 (*Dove*).

[28]    ECF #88 (*Marin*), #61 (*Dove*).

[29]    *See* No. 13-cv-2818 (ENV)(CLP) (hereinafter, "*Greenaway*") at ECF #1.

[30]    *Id.*

before Judge Castel in the Southern District of New York (the "*Lebron* Action").[31]  The *Lebron*

plaintiffs voluntarily dismissed their action on July 1, 2013.[32]  Then, on June 6, 2014 - - after more

than eighteen months of litigation in the *Marin* action - - Atavia Thomas filed yet another putative

collective action against Apple-Metro and two of its executives in the Southern District of New

York (the "*Thomas*" action).[33]

      Following unfavorable rulings under the first-filed rule in the *Thomas* action, Thomas then

filed a motion to intervene into both the *Dove* and *Marin* actions on March 10, 2015, asserting that

her action was unique and purportedly outside the scope of the first filed rule simply because her

Complaint included a separately denominated cause of action for violation of the "20% Rule"

under the FLSA and NYLL.[34]  Previously, by Order dated February 5, 2015, Southern District

Judge Caproni concluded that the first-filed Rule was, in fact, particularly well-suited to the

circumstances of Thomas's duplicative collective action claims:

> the lawsuits at issue **seek identical relief**, assert nearly identical
> claims for minimum wage, overtime and tipping violations under
> Federal law, and have been filed in a sister New York district court
> with respect to the same class of plaintiffs as against the same core
> group of Defendants.

*Id.*  Thomas's Proposed Complaint in Intervention in these matters included, *inter alia*, the

following allegations and claims:

> 137. Defendants failed to pay Plaintiff-Intervener and the
> FLSA Collective Members the minimum wages to which they are
> entitled under the FLSA.

---

[31]    *See* No. 13-cv-01411 (PKC) (S.D.N.Y.) (hereinafter, "*Lebron*") at ECF #1.

[32]    *Id.* ECF #16.

[33]    *See* No. 14-cv-4120 (VEC) (S.D.N.Y.) (hereinafter, "*Thomas*").

[34]    *Id.*

138. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff-Intervener and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

\*     \*     \*

### ELEVENTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Annual Wage Notices**
**(Brought on behalf of Plaintiff-Intervener and the Class)**

\*     \*     \*

196. Defendants have failed to supply Plaintiff-Intervener and the Class Members with wage notices, as required by NYLL, Article 6, § 195(1) . . . .

### ELEVENTH CAUSE OF ACTION[35]
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff-Intervener and the Class)**

\*     \*     \*

200. Defendants have failed to supply Plaintiff-Intervener and the Class Members with accurate statements of wages as required by NYLL, Article 6, § 195(3). . . .

ECF # 178-2 (*Marin*), ¶¶ 137-38, 195-96, 199-200.  Both Plaintiffs *and* Defendants opposed Thomas's motion, advancing surprisingly similarly arguments against intervention. *Compare generally* ECF # 218 (*Marin*) (Defendants' Response in Opposition), *with* ECF # 220 (*Marin*) (Plaintiffs' Response in Opposition).

*Un*surprisingly, on February 24, 2016, following a September 16, 2015 Report and Recommendation issued by the Honorable Judge Cheryl L. Pollak, this Court denied Thomas's

---

[35]     In the *Thomas* Proposed Intervenor Complaint, ECF # 178-2 (*Marin*), Thomas listed both her NYLL §§ 195(1) and 195(3) claims as the "Eleventh Cause of Action," much like Plaintiffs here listed on heading for their NYLL § 195 claims.

motion to intervene, citing as part of its reasoning the fact that "both plaintiffs and defendants agree that the claims [the Thomas] plaintiffs plan to litigate are inclusive of all potential damages that could be awarded." ECF # 242 (*Marin*) at 17, *report & recommendation adopted*, ECF # 252 (*Marin*) at 3 (adopting R&R over Defendants' objection) ("the Court finds Judge Pollak's R&R to be characteristically correct, thorough, well-reasoned, and free of any clear error.  The Court, therefore, adopts it in its entirety as the opinion of the Court."); *see also* ECF # 218 (*Marin*) [**Defendants'** opposition to Thomas's motion] at 13 ("Plaintiffs, however, are already seeking what Thomas would seek if allowed to intervene - - loss of the tip credit and payment of minimum wage and overtime to all relevant current and former employees.  There is no difference in the claims brought or the relief sought. In fact, the claims in Thomas' complaint are identical to the claims in the Dove complaint. . . ."), ECF # 220 (*Marin*) [**Plaintiffs'** opposition to Thomas's motion] at 19 ("this Court can simply agree with Judge Caproni, who found that Thomas's claims, when compared to the cases at bar, seek identical relief, [and] assert nearly identical claims.") (internal quotations and citations omitted).

## IV.    *Dove/Marin* Collective Discovery Reveals Defendants' Liability for Class-wide Minimum Wage and NYLL § 195(1) Violations

Following the close of the opt-in period, 1,104 individuals submitted consent forms and became plaintiffs in these matters.[36]  Once all received opt-in forms were filed, Plaintiffs served class-wide requests for production of documents and interrogatories on June 16, 2015.[37] Defendants served their initial responses on August 3, 2015, and supplemental responses following

---

[36]      A total of 14,890 individuals are putative class members, should this Court certify a Rule 23 class or classes. Graff Decl. ¶ 7 .

[37]      *See generally* Graff Decl., Ex. 9.

11

several meet-and-confers on November 9, 2015 and November 19, 2015.[38]  In response to
Plaintiffs' requests, Defendants produced, among other things, electronic payroll records
displaying the amounts that Defendants paid each opt-in Plaintiff on a daily basis.[39]  Defendants
also produced NYLL § 195(1) notices for a sampling of eighty-eight opt-in Plaintiffs from both
the *Marin* and *Dove* matters.[40]  Of these notices, Defendants produced up to sixty notices for opt-
in Plaintiffs whom Defendants paid below the statutory minimum wage by attempting to claim a
tip credit.[41]  Every NYLL §195(1) notice that Defendants produced for tipped employee opt-ins
incorrectly calculated the employee's statutory required overtime rate.  *Id.* (all listing overtime rate
at $7.50 per hour - - which is one and one-half the tip credit minimum wage of $5.00).

## ARGUMENT

### *PART ONE*:   PLAINTIFFS' MINIMUM WAGE AND NYLL § 195(1) CLAIMS ARE, WITHOUT QUESTION, PART OF THESE ACTIONS.

Plaintiffs in these actions seek to certify two Rule 23 sub-Classes - - and move for partial
summary judgment pursuant to Rule 56 - - based on Defendants' failure to: (1) pay Plaintiffs the
statutory minimum wage rate for all hours worked; in violation of the NYLL and (2) provide
accurate notices to its tipped employees in violation of New York Labor Law § 195(1) and the
NYLL's tip credit regulation, 12 NYCCRR § 146-2.2.  In Defendants' pre-motion letter, and
during the parties' pre-motion conference before Judge Pollak on October 13, 2016, Defendants
puzzlingly argued that Plaintiffs' operative complaints in these actions include neither minimum
wage claims based on the FLSA and NYLL's tip credit provisions, nor NYLL § 195(1) claims.

---

[38]        *See generally* Graff Decl. Exs. 10.

[39]        *See generally* Graff Decl. Ex. 11 (column bearing heading "Base Rate").

[40]        *See* Graff Decl. Ex. 12-73 (Plaintiff Dove and Moving Plaintiffs' Notices).

[41]        *Id.*

But even a cursory analysis of the case law governing pleadings - - and the Parties' pleadings, court filings, and discovery here - - all reveal that both claims are inarguably present in these actions.[42]

Under Rule 8(a)'s pleading requirements, the "key" to pleading a claim is "'whether adequate notice is given,'" defining "'fair notice [as] 'that which will enable the adverse party to answer and prepare for trial, allow the application of *res judicata,* and identify the nature of the case so that it may be assigned the proper form of trial.'" *Vantone Grp. Liabl. Co. v. Yangpu NGT Indus. CO.*, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)).   Here, because the Defendants' own answers to the operative complaints in these actions, filings in opposition to Thomas's motion to intervene, and responses to Plaintiffs' discovery, together unquestionably confirm that they received fair notice of Plaintiffs' tip credit-based minimum wage and NYLL § 195(1) claims, this Court should quickly purge any manufactured aura of confusion surrounding these claims.   Once Defendants' curious tactic is swept aside, the Court can proceed to the merits of Plaintiffs' omnibus motion for partial certification of a Rule 23 class and partial summary judgment on these claims.

I.   **Rule 8's Liberal Notice Pleading Standard Only Require Plaintiffs to Provide "Fair Notice" of the Legal Basis for their Claims.**

Under Rule 8, to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Typically analyzed in the

---

[42]   Were this Court to find that either or both of these claims are absent from the Plaintiffs' pleadings - - which Plaintiffs strongly doubt will occur - - Plaintiffs can swiftly amend their operative complaints in this action.  No additional discovery would be required for these claims, and Plaintiffs brought this issue to the Court's attention promptly upon receipt of the documentary discovery already produced revealing Defendants' liability.  *See US Airways, Inc. v. Sabre Holdings Corp.*, 2015 WL 8335119, at *2 (S.D.N.Y. Dec. 8, 2015) (explaining how liberal standard for leave to amend under FRCP 15(a)(2) "requires that courts freely give leave to amend when justice so requires.").

context of a motion to dismiss under FRCP 12(b)(6), for nearly fifty years, the accepted federal rule was that a complaint stated a claim unless "'it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 10947344, at *5 (E.D.N.Y. Sept. 22, 2010) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (alterations in original)). Then, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court abrogated the "no set of facts" pleading standard in favor of the "plausibility standard," requiring only that a plaintiff must plead facts that "nudge" the plaintiff's claims "across the line from conceivable to plausible." 550 U.S. 544, 570 (2007). The Court elaborated on "facial plausibility" in *Aschroft v. Iqbal*, explaining that a pleading must provide factual allegations that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009). While *Twombly* and *Iqbal* clarified federal pleading requirements, the Supreme Court's decision in *Erickson v. Pardus* - - post-dating *Twombly* - - expressly rejected any notion of a new, heightened pleading standard: notice pleading still rules the day when determining a complaint's legal sufficiency. 551 U.S. 89, 94 (2007).

*Erickson* further clarified that "specific facts are not necessary;" instead, all that is required is that the complaint "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Id.* at 93. Thus, under the still-applicable "notice pleading" standard, while it is not always clear precisely what is required to give the defendant "fair notice" of the claims at issue, courts have made clear what is *not* required. Specifically, "[u]nder the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure . . . the failure in a complaint to cite to a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Hayes v. Dep't*

*of Educ. Of City of N.Y.*, 20 F. Supp. 3d 438, 441-42 (S.D.N.Y. 2014) (same).  Nor must a complaint "correctly plead the legal theory or theories and statutory basis supporting the claim[s]." *Simonton v. Runyon*, 232 F.3d 33, 36-37 (2d. Cir. 2000) (internal citation and quotations omitted); *see also Wynder*, 360 F.3d at 77 ("federal pleading is by statement of claim, not by legal theory. . . . Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one."); *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991) ("Defendant "point[s] out that [plaintiff] failed to plead the third party beneficiary theory in his complaint.  To this, we simply respond that federal pleading is by statement of claim, not by legal theory.").  This is because the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues." *Swierkiewicz*, 534 U.S. at 512.

As one court has summarized:

> Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." [*Twombly*, 550 U.S.] at 555 n. 3.  However, once the claim is adequately supported, specific facts beyond those needed to state the claim are not necessary. *See Id*. at 570.  Indeed, other sections of the Federal Rules of Civil Procedure support a simplified notice pleading standard, including Rule 8(f), which provides that technical forms of pleading or motions are not required, and Rule 8(e)(1), which provides that pleadings are to be construed in a way that does substantial justice. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002).  The simplicity required by the rule, in forgoing additional factual detail, recognizes the ample opportunity afforded for discovery and other pre-trial procedures, which permit the parties to obtain more detail as to the basis of the claim and as to the disputed facts and issues. *Id*. at 512–13; *see also Conley*, 355 U.S. at 47–48. Based upon the liberal pleading standard established by Rule 8(a), even the failure to cite a statute, or to cite the correct statute, will not affect the merits of the claim. *Northrop v. Hoffman of Simsbury, Inc*., 134 F.3d 41, 46 (2d Cir.1997).

*In re Old CarCo LLC*, 454 B.R. 38, 46 (Bankr. S.D.N.Y. 2011) (internal parallel citations omitted), *aff'd sub nom. In re Old Carco LLC*, 509 F. App'x 77 (2d Cir. 2013).  Rule 8's core purpose is simply "to 'provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial.'" *Vantone Grp. Liab. Co.*, 2015 WL 4040882, at *3 (quoting *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003)).  That is, "Rule 8 'does not demand that a complaint be a model of clarity' so long as it provides 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001)).  At bottom, a complaint provides adequate notice of its claims as long as it is not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

Notably in contrast to a plaintiff's burden of pleading, the "far majority of district courts within this Circuit have held that the *Twombly/Iqbal* pleading standard does not apply to affirmative defenses." *Sibley v. Choice Hotels Intern., Inc.*, 304 F.R.D. 125, 132-33 (E.D.N.Y. 2015); *see also Jones v. Bryant Park Market Events, LLC*, -- Fed App'x --, 2016 WL 4258948, at *2 (2d Cir. Aug. 12, 2016) (declining to reach the issue of whether *Twombly* applies to affirmative defenses, but permitting an affirmative defense to go forward without waiver where it is either pled in conclusory terms or even absent - - as long as plaintiff had notice and an opportunity to respond).  Instead, a party's affirmative defenses may be pleaded in general terms, judged only by whether the defense gives the plaintiff "fair notice of the nature of the defense." *Sibley*, 304 F.R.D. at 133; *Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, 2013 WL 2322675, at *9 n.96 (S.D.N.Y. May 28, 2013) (citing 5 Wright & Miller, *Federal Practice & Procedure: Civil*, 3d Ed., § 1274)).

Given the extraordinarily liberal standard for pleading affirmative defenses, courts can, at times downplay their importance. *See, e.g., Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473,

489–90 (S.D.N.Y.2008) (McMahon, *J.*) ("There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time.").  However, the failure to timely plead certain affirmative defenses may prove fatal. *Cf. Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003) (explaining how affirmative defense "normally must be pled in a timely manner or it may be waived."); *Am. Federal Grp, Ltd. v. Rothenberg*, 136 F.3d 897, 909-10 (2d Cir. 1998) ("Waiver by failure to' plead is indeed the general rule . . . .").  And when a party chooses to plead an affirmative defense, it cannot ignore its own conduct to suit its litigation purpose.  For example, parties cannot simply invoke affirmative defenses in their answers and then seek to ignore that "their own words and actions . . . were intended to plead [their defense]" once an opposing party moves for summary judgment. *See Chevron Corp. v. Donzinger*, 886 F. Supp. 2d 235, 265-67 (S.D.N.Y. 2012) (rebuking defendants' efforts to constrain the full breadth of their affirmative defenses as "without merit" and "unworthy pretense.").  Thus, much like the plaintiff's pleading standard, a defendant's affirmative defenses are also hinged to the "fair notice" standard, with the purpose to avoid causing a plaintiff to fall "victim of unfair surprise." *Book v. Moulton*, 2005 WL 3307361, at *1 (N.D.N.Y. Dec. 6, 2005) (citing *Woodfield v. Bowman*, 193 F. 3d 354, 362 (5th Cir. 1999)).

II.     **The Pleadings, Filings, and Discovery in These Actions Plainly Confirm that Defendants had "Fair Notice" of both Plaintiffs' Claims that Defendants Failed to Pay Minimum Wage or Comply with NYLL § 195(1)'s Statutory Notice Requirement.**

A.      **Minimum Wage**

The operative *Dove* complaint unquestionably affords Defendants "fair notice" that Plaintiffs bring minimum wage claims, accusing Defendants of failing to pay Plaintiffs all of their wages by unlawfully claiming a tip credit to reduce Plaintiffs' hourly wages.[43]

1.      ***Dove* FAC allegations provide fair notice of Plaintiffs' minimum wage claims based on Defendants' attempt to claim a tip credit.**

The operative pleading in the *Dove* matter, Plaintiffs' First Amended Complaint ("FAC"), ECF # 14 (*Dove*), sets forth six broad categories of claims for relief sought. *See* ECF # 14 (*Dove*), Introductory Paragraph, at 2.  These include claims for violations of, *inter alia*, the New York Labor Law's ("NYLL") Minimum Wage statutory provision, §§ 652, and the NYLL and New York Consolidated Codes, Rules, and Regulations ("NYCCRR"), pertaining to gratuities, NYLL §§ 195 and 196-d, and 12 NYCCRR § 146-2.15.  *Id.*  The FAC also cites the FLSA's definition and minimum wage provisions, 29 U.S.C. §§ 203 and 206, respectively - - the former of which defense "wages" as an amount equal to "the case wage paid [to tipped employees] . . . and an additional amount on account of the tips received by such employee. . . ." *See id.*; 29 U.S.C. § 203(m)(1), (2).

---

[43]     The *Marin* operative pleading does not contain minimum wage claims, as Carlos Marin himself was a non-tipped employee paid above the statutory minimum wage for his on-the-clock, paid time. However, to the extent that any opt-in Plaintiffs in the *Marin* action were paid less than the statutory minimum wage as tipped employees, and are not also opt-in Plaintiffs in the *Dove* action, this analysis applies in equal force to the *Marin* action, as the *Marin* action addresses claims for plaintiffs who "who give consent to file a cause of action to recover the difference between the amount of wages actually paid to them and the statutory amount due as well as to recover overtime compensation which is legally due to them for the time worked in excess of forty (40) hours per week." ECF # 23 (*Marin*), ¶ 61.

The *Dove* FAC sets forth "Collective Action Allegations," including the following proposed collective action definition:

> [c]urrent and former servers, hosts, hostesses and bartenders of Defendants who . . . give consent to file a cause of action to recover amounts owed to them . . . including the minimum hourly required rate of pay per hour worked ("FLSA Plaintiffs").

ECF # 14 (*Dove*), ¶ 61.  The *Dove* FAC refers to the FLSA Plaintiffs' claims to recover "the minimum hourly required rate of pay per hour worked" at least eleven times. *Id.*, ¶¶ 61, 62, 67, 69, 71, 116, 126, 137, 148, 159, 166.

The *Dove* FAC also goes above and beyond the applicable pleading requirements by expressly citing both the applicable federal and state statutes mandating that employees receive statutory minimum wages (what was at the time, $7.25 per hour). *See generally* ECF # 14 (*Dove*), ¶¶ 153-161 (citing FLSA, 20 U.S.C. § 206); ¶¶ 162-168 (citing NYLL § 195).  Finally, the *Dove* FAC also expressly describes Defendants' utilization of the tip credit to pay Plaintiffs below the statutory minimum wage:

> 59.     Knowing that a salary of $5.00 per hour is below the $7.25 per hour minimum wage under federal and state law, Defendants expected servers to make up the $2.25 difference in tips.

> 60.     Hosts and hostesses were expected to make up the same difference through a mandated tip-sharing arrangement.

ECF # 14 (*Dove*), ¶¶ 59-60.

### 2.     Defendants' affirmative defenses in both *Dove* and *Marin* confirm they received "fair notice" of Plaintiffs' minimum wage claims.

In light of the foregoing, it is difficult to imagine that any defendant might legitimately suggest that Plaintiffs' FAC lacks sufficient factual allegations to put a defendant on "fair notice" that Plaintiffs bring minimum wage claims based on Defendants' failure to pay them statutory

minimum wages and based on their efforts to instead pay them the tip credit minimum wage, particularly since "failure in a complaint to cite a statute, or to cite the correct one" is immaterial under Rule 8. *See Wynder*, 360 F.3d at 77.  Any notion to the contrary is further implausible when considering Defendants' affirmative defenses in both the *Dove* and *Marin* actions.  Indeed, any exemptions to the FLSA's and NYLL's minimum wage requirements are "affirmative defenses, for which employers have the burden of proof." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002); *Gregory v. Stewart's Shops Corp.*, 2015 WL 893058, at *3 (N.D.N.Y. Mar. 2, 2015) (citing *Tackie v. Keff Ent., LLC*, 2014 WL 4646229, at *3 (S.D.N.Y. Sept. 16, 2014)) ("NYLL minimum wage claims are analyzed similarly to FLSA minimum wage claims.").  As one such affirmative defense, under the NYLL, employers may lawfully pay restaurant employees below the statutory minimum wage rate by claiming a "tip credit":

> An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips **and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part**.

12 NYCCRR § 146-1.3 (emphasis added).  To take advantage of the tip credit, an employer must follow the NYLL's strict notice regulation referenced above:

> Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. . . . (b) Such notice shall also be required prior to any change in the employee's hourly rates of pay. . . . **(d) The employer has the burden of proving compliance with the notification provisions of this section**.

12 NYCCRR § 146-2.2 (emphasis added).  This regulation is also codified in the NYLL itself:

> Every employer shall . . . provide his or her employees, in writing . . . a notice containing the following information: . . . **allowances**, if any, claimed as part of the minimum wage, including **tip** . . . allowances.

NYLL § 195(1) (emphasis added).[44]

Defendants' operative answer displays that they were plainly cognizant of both their burden of proof for affirmative defenses under the FLSA and NYLL, and that Plaintiffs had indeed notified Defendants of their minimum wage claims.  Specifically, Defendants, in their operative pleadings, listed at least two affirmative defenses that notified Plaintiffs of Defendants' intention to defend against Plaintiffs' minimum wage claims - - specifically acknowledging the tip credit minimum wage in the latter:

## EIGHTEENTH DEFENSE

> At all times, Defendants made complete and timely payments of all wages due to Plaintiff Under Article 6 or Article 19 or Article 19-A of the New York Labor Law.

## NINETEENTH DEFNSE

> At all times, Defendants reasonably believed in good faith that they provided Plaintiff with adequate notice of wage information pursuant to New York Labor Law § 195(1).

ECF # 16 (*Dove*), at 34.

Based on these affirmative defenses - - evidencing Defendants' efforts to give Plaintiffs "fair notice of the nature of [their] defense," *Sibley*, 304 F.R.D. at 133, Plaintiffs served class-wide

---

[44]     *See also* 29 U.S.C. § 203(m) (FLSA tipped employee definition).  And, to the extent that the FLSA's and NYLL's tip credit regulations may in any way differ, the FLSA mandates that the more employee-favorable standards must apply. 29 C.F.R. § 541.4 ("The Fair Labor Standards Act provides minimum standards that may be exceeded. . . . Employers must comply, for example, with any [ ] State [ ] laws, regulations or ordinances establishing a higher minimum wage . . . than those established under the Act."); 29 C.F.R. § 531.59 (FLSA tip credit regulation)

discovery requests seeking, *inter alia*, "[a]ll documents and electronically stored information relating to the compensation of all Plaintiffs, including, but not limited to . . . payroll records . . . [and] wage records Defendants have been statutorily required to keep. . . ."[45] Plaintiffs also sought through the same discovery requests "[a]ll documents and electronically stored information concerning any and all good faith efforts that Defendants have made to comply with federal or state wage and hour laws, including but not limited to those of the Fair Labor Standards Act and/or the New York Labor Law." *Id.*, Req. No. 36.  In response to these and other requests, after many months of meet-and-confer sessions, Defendants evidently understood that Plaintiffs requested documents relating to their minimum wage claims - - and Defendants' affirmative defenses - - that pertain to the minimum wage generally (and the tip credit minimum issues, specifically). Presumably as a result of that understanding, Defendants produced a sample set of opt-in Plaintiff personnel files, which included, *inter alia*, NYLL § 195(1) wage notices, which, as will be described in greater detail below, all failed to comply with the NYLL's strict requirements, giving rise to this motion.

### 3.     Defendants' filings and this Court's ruling on the Thomas Motion to Intervene displays the Parties' shared clarity on Plaintiffs' claims.

Nearly eighteen months after the Parties served their pleadings in the *Marin* action, the Parties and the Court all confirmed that Plaintiffs have included tip credit-based minimum wage and NYLL § 195(1) claims.  As described in this brief at Part One, Section III, *supra*, both this Court and Judge Caproni in the *Thomas* action have already held that these claims are plainly found in Plaintiffs' operative complaints.  As this Court held, "both plaintiffs and defendants agree that the claims [the Thomas] plaintiffs plan to litigate are inclusive of all potential damages that

---

[45]      *See* Graff Decl., Ex. 9, Req. No. 31.

could be awarded." ECF # 242 (*Marin*) at 17, *report & recommendation adopted*, ECF # 252 (*Marin*) at 3; *see also* ECF # 218 (*Marin*) [***Defendants'*** opposition to Thomas's motion] at 13 ("Plaintiffs, however, are already seeking what Thomas would seek if allowed to intervene - - loss of the tip credit and payment of minimum wage and overtime to all relevant current and former employees.  There is no difference in the claims brought or the relief sought. In fact, the claims in Thomas' complaint are identical to the claims in the Dove complaint. . . .").  In light of the Court's ruling, it is now the law of the case that Plaintiffs here have indeed pled these claims, foreclosing Defendants' efforts to now try to ignore the state of these matters. *See, e.g., Turner v. White*, 443 F. Supp. 2d 288, 295 (E.D.N.Y. 2005) (Pollak, *J.*) (citing *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir.1999)) ("The doctrine of law of the case essentially stands for the proposition that a legal decision made at one stage of litigation . . .  becomes the law of the case for future stages of the same litigation. . . .") (internal quotations omitted).[46]

### 4.   Defendants' attempt to ignore the Plaintiffs' claims and disavow their own Answers, filings, and responses to discovery requests defies both the case law interpreting Rule 8 and common sense.

Despite this unambiguous, straightforward procedural posture - - featuring pleadings that unambiguously complied with Rule 8 and provided the Parties' with fair notice of both Plaintiffs'

---

[46]   Should it be determined that these claims are not currently present in Plaintiffs' pleadings, Defendants should be either equitably or judicially estopped from claiming otherwise, as Plaintiffs would have surely moved to amend their pleadings as an alternative argument against Thomas's motion to intervene if Defendants had not previously agreed with Plaintiffs that their claims were virtually identical to those raised by Thomas's Proposed Complaint in Intervention. *See Pemrick v. Stracher*, 2007 WL 1876504, at *8 n.16 (E.D.N.Y. June 28, 2007) (Pollak, *J.*), *aff'd*, 331 F. App'x 17 (2d Cir. 2009) ("Application of the doctrine of "[e]quitable estoppel is proper where the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought."); *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 462 F.3d 87, 94 n. 3 (2d Cir. 2006) (citing *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005)).  Equitable estoppel, like judicial estoppel, is concerned with inconsistent factual representations. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).

minimum wage claims and Defendants' defenses to those claims, and Defendants' own representations to this Court and discovery responses sent to Plaintiffs - - Defendants now frivolously attempt to ignore their own Answer, court filings, and discovery responses, and mystifyingly suggest to this Court that they somehow had no notice of Plaintiffs' minimum wage claims. *See* ECF # 271 (*Marin*) at 1 ("Defendants are at a loss. . . . Plaintiffs [ ] now seek to move for partial summary judgment, Rule 23 class certification, and to "preclude Defendants from invoking an affirmative defense" to *a claim that is not even a part of this case*.") (emphasis in original). That is, Defendants' principal tactic - - as suggested by their pre-motion filings and their arguments presented to this Court on October 13, 2016 at the Parties' pre-motion conference before Judge Pollak - - in opposing Plaintiffs' efforts to even bring this motion is to deny that their affirmative defenses pled actually mean what they say in plain English. But of course, Defendants cannot disavow their prior conduct now that it suits their ill-fated defense. Instead, Rule 8's "simplified notice pleading standard" which "relies on liberal discovery rules and *summary judgment motions* to define disputed facts and issues," *Oliveras v. Wilkins*, 2012 WL 3245464, at *18 n.32 (S.D.N.Y. June 26, 2012) (citing *Swierkiewicz*, 534 U.S. at 506), has precisely met its purpose: at the current stage of these matters, based on the Parties' pleadings and discovery thus-far exchanged, the issues of Defendants' failure to meet their burden on their minimum wage affirmative defenses warrant granting partial summary judgment on this claim, and certifying a Rule 23 class on the same issue.

Still, should Defendants suggest that because Plaintiffs' FAC did not expressly cite the above-referenced tip credit regulations, Plaintiffs could not have pled such claims, such an argument fares no better. *See* ECF # 271 (*Marin*), at 1 ("It is *also* telling that the regulation that Plaintiffs cite to in their letter, which forms the basis of their proposed summary judgment motion

– 12 N.Y.C.R.R. 146-2.2 – is <u>not cited to anywhere in their complaint</u>.") (emphasis in original). Again, "the failure in a complaint to cite to a statute, or to cite the correct one, in no way affects the merits of a claim.  Factual allegations alone are what matters." *Northrop*, 134 F.3d at 46; *Hayes*, 20 F. Supp. 3d at 441-42.  Finally, any efforts by Defendants to preclude Plaintiffs from relying on any "theory" of liability to prove Plaintiffs' claims should be given short shrift.  *See* ECF # 271 (*Marin*) ("the Dove matter only involves claims that Defendants allegedly imposed an 'illegal tip-sharing scheme' whereby managers misappropriated tips, fraudulently altered tip-out and wage records, and forced directly-tipped employees to tip out other employees, bringing their hourly wage plus tips to below the regular minimum wage.").  As the Second Circuit has plainly stated, this is because "federal pleading is by statement of claim, not by legal theory." *Wynder*, 360 F.3d at 77; *Simonton*, 232 F.3d at 36-37 ("[g]enerally a complaint . . . need not [ ] correctly plead the legal theory or theories and statutory basis supporting the claim[s].").

Defendants raise their concerns for the first time now that Plaintiffs are prepared to move on to the merits of the claims at issue.  Defendants did not, for example, make a motion for a more definite statement under Rule 12(e) accusing Plaintiffs of failing to unambiguously articulate their claims. *See, e.g., Leon v. Hotel & Club Emp. Union Local 6*, 26 F.R.D. 158, 159 (S.D.N.Y. 1960) (describing the function of a Rule 12(e) motion for more definite statement as one to be made "when vagueness and/or ambiguity in the pleading attacked is such that a party cannot reasonably be required to frame a responsive pleading.") (internal quotations and citations omitted). Defendants prior conduct throughout this litigation instead confirms that Plaintiffs' FAC provides fair notice of Plaintiffs' minimum wage claims - - based both on well-settled case law and everyday notions of common sense.

**B.**   **Plaintiffs' Operative Pleadings also Provide Ample Notice of Plaintiffs' NYLL § 195(1) Claims, also Supported by Defendants' Answers, Prior Filings, this Court's Rulings, and Discovery Responses.**

Just as Plaintiffs' operative pleadings unquestionably contain minimum wage claims, so too do their pleadings contain claims under the Wage Theft Prevention Act for failure to provide proper notice of Defendants' attempt to claim the tip credit. [47]   Specifically, paragraphs 169 through 176 of the *Dove* FAC set forth a seventh cause of action for Defendants' violation of New York Labor Law § 195.   While these paragraphs do not differentiate between NYLL §§ 195(1) and 195(3), doing so is not necessary: "[t]he simplicity required by the rule, in forgoing additional factual detail . . . [and] [b]ased upon the liberal pleading standard established by Rule 8(a), even the failure to cite a statute, or to cite the correct statute, will not affect the merits of the claim." *In re Old CarCo LLC*, 454 B.R. at 46 (citing *Northrop*, 134 F.3d at 46).   In light of Rule 8's "liberal pleading standard," paragraphs 169 through 176 of the *Dove* FAC provide sufficient notice to Defendants that Plaintiffs pled claims under both NYLL §§ 195(1) and (3).

First, paragraph 173 states: "Defendants took credit for an inaccurate amount of employee tips and issued pay stubs/wage statements reflecting these inaccurate tips." (Emphasis added). Second, paragraph 174 states that: "Defendants failed to provide Plaintiff and Class Action Plaintiffs with proper pay stubs/wage statements."   While not explicitly referring to NYLL § 195's multiple subsections, again, this is not required and does not "affect the merits of the claim." *In re Old CarCo LLC*, 454 B.R. at 46.   Instead, these two paragraphs of Plaintiffs' FAC provide fair

---

[47]      Again, the *Marin* operative pleading does not contain minimum wage claims.   Thus, to the extent that any opt-in Plaintiffs in the *Marin* action were paid less than the statutory minimum wage as tipped employees, and did not receive accurate WTPA wage notices upon hire or when their rates changed, this analysis applies in equal force to the *Marin* action, which addresses claims for Plaintiffs based on Defendants failure "to provide Named Plaintiffs and Class Action Plaintiffs with proper pay stubs/wage statements . . . . in violation of Labor Law § 195." ECF # 23 (*Marin*), ¶¶ 175, 177.

notice of both provisions within § 195.  By alleging the fact that Defendants "took credit" for an inaccurate amount of employee tips, Plaintiffs bring claims under § 195(1) which reads, in relevant part:

> Every employer shall . . . provide his or her employees, in writing . . . a notice containing the following information: . . . allowances, if any, claimed as part of the minimum wage, including tip . . . allowances. (Emphasis added).

Next, by alleging that Defendants "failed to provide Plaintiff[s] . . . with proper pay stubs/wage statements," Plaintiffs invoke § 195(3), which reads in relevant part:

> Every employer shall . . . furnish each employee with a statement with every payment of wages, listing the following: . . . gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. (Emphasis added).

For the avoidance of doubt, Paragraphs 175 and 176 in Plaintiffs' FAC both refer to the illegality of "[t]hese practices" - - i.e., Defendants' violations of both the wage notice and wage statement provisions, or NYLL §§ 195(1) and (3), respectively.

Again, Defendants know this.  Tellingly, Defendants' Answer in *Dove* recognizes this point in its Nineteenth Affirmative Defense: "[a]t all times, Defendants reasonably believed in good faith that they provided Plaintiff with adequate notice of wage information pursuant to New York Labor Law § 195(1)." ECF # 16 (*Dove*) at 34.  So too does Defendants' operative answer in *Marin* through its Twentieth Affirmative Defense. ECF # 28 (*Marin*) at 36 (same).  That is, Defendants' Answers in both actions concede that Plaintiffs' FAC put them on notice of Plaintiffs' NYLL §195(1) claims.  For Defendants to now attempt to wholly disassociate themselves from their own pleading and argue that Plaintiffs' motion "presents nothing for this Court to decide . . . by claiming that their own answer are insufficient . . . is an unworthy pretense." *Chevron Corp.*, 886 F. Supp.

2d at 265, 266-67. And again, as described above, the Parties and the Court have already determined that these claims are present in these actions within the context of Thomas's motion.

Because Plaintiffs' FAC provides fair notice of both Plaintiffs' minimum wage and NYLL § 195(1) claims, and because the discovery thus-far exchanged reveals Defendants' class-wide liability, the time is ripe to hold Defendants accountable for their top-down belief that "there is no real minimum wage."[48]

### PART TWO: PLAINTIFFS' ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THEIR MINIMUM WAGE AND NYLL § 195(1) CLAIMS.

The merits of this motion targets one subset of NYLL violations on which no more discovery is necessary: the Moving Plaintiffs seek partial summary judgment on two discrete NYLL claims. These claims can be adjudicated by examining Apple-Metro's own documents and interpreting the relevant provisions of the NYLL. They do not require the Court to decide any fact disputes.

The Court should therefore grant partial summary judgment to the Moving Plaintiffs on the following two issues:

1. After 2011, Apple-Metro did not provide tipped workers with a compliant "written notice of the employee's regular hourly pay rate,[49] overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday," resulting in Apple-Metro's failure to pay tipped employees the statutory minimum wage for all hours worked, 12 NYCCRR § 146-2.2(a); and

2. Apple-Metro violated NYLL Section 195(1) by failing to provide compliant annual wage notices.

---

[48]     *See* Zane Tankel, *The Consequence of a Higher Minimum Wage,* FoxBusiness.com (Aug. 26, 2016), at 02:50 - 03:24, http://video.foxbusiness.com/v/5100850671001/?#sp=show-clips (*last visited* on Nov. 4, 2016).

[49]     *See* 12 NYCCRR § 146-3.5(a) (defining regular hourly pay rate as "the amount that the employee is regularly paid for each hour of work, *before subtracting a tip credit, if any*.") (emphasis added).

These provisions are an important part of the NYLL remedial scheme as they inform low-wage workers about their compensation. Apple-Metro has no excuse for failing to comply with these straightforward requirements because it knew about them and because the relevant statutes, regulations, and wage orders contain examples of compliant notices, which Apple-Metro could have used.

## I.        Standard for Summary Judgment

Rule 56 allows a party to move for partial summary judgment at any time until 30 days after the close of all discovery. Fed. R. Civ. P. 56(b). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it affects the outcome of the litigation, and a dispute is genuine only if a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.        Apple-Metro Violated New York State's Minimum Wage Law by Failing to Provide Moving Plaintiffs With Proper Written Notice of the Tip Credit.

The NYLL has set a minimum hourly required rate of pay for all employees. *See* NYLL § 652.1. The NYLL also permits employers to deviate from the statutory minimum wage for "tipped employees," paying less than the minimum wage by taking a "tip credit." 12 NYCRR §§ 146-1.3. However, to lawfully avail themselves of the tip credit, employers must provide tipped workers with written notice containing specific information. *See id.* §§ 146-2.2; *see also Ayala v. Your Favorite Auto Repair & Diag. Ctr., Inc.*, 2016 WL 5092588, at *20 (E.D.N.Y. Supt. 19, 2016) (citing 29 U.S.C. § 203(m)) ("An employer may not take a tip credit unless (1) each employee has been informed by the employer of the [tip credit] provision; and (2) all tips received by such employee have been retained by the employee.") (internal quotations omitted); *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016) ("The tip credit provision is strictly

construed, and an employer may not take a tip credit unless it complies strictly with both statutory requirements.") (internal quotations and citations omitted).  This requirement is "strictly construed" and must be satisfied in order for an employer to benefit from the tip credit. *See Angamarca v. Pita Grill 7 Inc.*, 2012 WL 3578781, at *5 (S.D.N.Y. Aug. 2, 2012) (citations omitted).

Prior to January 1, 2011, the NYLL regulations required employers availing themselves of the tipped credit to provide "employees [with] a statement with each paycheck listing allowances claimed as part of the tip credit." *Id.*  On January 1, 2011, the Hospitality Wage Order ("2011 Wage Order") clarified existing regulations and explicitly required employers to provide a written tip credit notice to tipped workers prior to the start of employment. *See Cuzco v. F & J Steaks 37th St. LLC*, 2014 WL 2210615, at *2 (S.D.N.Y. May 28, 2014).  Notice under the NYLL must be written - - not verbal. *Hernandez*, 2016 WL 3248493, at *25.

The 2011 Wage Order requires employers availing themselves of the tip credit after January 1, 2011 to provide each employee "prior to the start of employment" with "*written* notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." 12 NYCCRR § 146-2.2(a) (emphasis added); *see also Salinas v. Starjem Rest. Corp.*, 2015 WL 4757618, at *15 (S.D.N.Y. Aug. 12, 2015) (same); *see also* 12 NYCCRR § 146-3.5(a) (defining the regular hourly pay rate as "the amount that the employee is regularly paid for each hour of work, *before subtracting a tip credit*, if any.") (emphasis added).

Each component of the regulation must be provided in a single written notice. *See Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 334 (W.D.N.Y. 2014) *reconsideration denied*, 2014 WL 5088879 (W.D.N.Y. Oct. 8, 2014) (finding the employer's written notice to be inadequate where it did not state the items required by 12 NYCCRR § 146-2.2(a)); *see also* 12 NYCCRR § 146-

2.2(d) (the statutory language is "notice" in the singular, and the model notice contained in the regulations is a single document). It is the *employer's* burden to prove "compliance with the [tip] notification provisions" as a defense to paying sub-minimum, tip-credit reduced hourly wages. 12 NYCCRR § 146-2.2(d). The 2011 Wage Order even provides an example of a compliant tip credit notice that satisfies the requirement. *Id*.

Here, as explained below, Apple-Metro cannot meet its burden to prove that it complied with the NYLL's written tip credit notice requirements.   Apple-Metro therefore forfeited its entitlement to the tip credit. *See Salinas*, 2015 WL 4757618, at *15-16 (employer may not take a tip credit absent written notice complying with 12 NYCCRR § 146-2.2); 29 C.F.R. § 541.4 ("The Fair Labor Standards Act provides minimum standards that may be exceeded. . . . Employers must comply, for example, with any [ ] State [ ] laws, regulations or ordinances establishing a higher minimum wage . . . than those established under the Act.").

Apple-Metro might argue that it provided tipped workers with an oral notification. Again, an oral notification, is not sufficient. *See Hernandez*, 2016 WL 3248493 at *25 ("Notice of the tip credit under the NYLL, however, must be written. . . ."); *Salinas*, 2015 WL 4757618, at *15 ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee *written* notice") (emphasis added); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 2015 WL 1285960, at *17 (E.D.N.Y. Mar. 19, 2015) (same); *Kim v. Kum Gang, Inc.*, 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015) (same).

Apple-Metro may attempt to rely on a letter that was written by a New York State Department of Labor attorney to a New York state representative. Apple-Metro may claim that this letter establishes that there is no requirement that the tip credit notice be in writing. This letter,

31

however, which is not even an official letter of the Department,[50] is not entitled to any deference. *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005) ("deference is not required when the question is one of pure legal interpretation of statutory terms.") (internal quotation marks and citation omitted); *see also Baltierra v. Advantage Pest Control Co.*, 2015 WL 5474093, at *7 n.5 (S.D.N.Y. Sept. 18, 2015) (stating the New York Court of Appeals has not found the DOL entitled to deference where the DOL's interpretation goes "against the plain meaning of the relevant statute."). This is especially so because the DOL letter directly contradicts the explicit language in the regulation. *See* 12 NYCCRR § 146-2.2 (requiring "*written* notice") (emphasis added).

### A. Apple-Metro's Tip Credit Notices to Moving Plaintiffs Are Deficient, thereby Invalidating Defendants' Ability to Claim a Tip Credit to Reduce Moving Plaintiffs' Wages Below the Statutory Minimum.

The tip credit notice must contain the "regular hourly pay rate," which the 2011 Wage Order defines as "the amount that the employee is regularly paid for each hour of work, *before subtracting a tip credit*, if any." 12 NYCCRR § 146-3.5(a) (emphasis added). The 2011 Wage Order also requires the tip credit notice to include the overtime rate, which must be calculated as follows:

> 1 1/2 times the employee's *regular rate* for hours worked in excess of 40 hours in one workweek. When an employer is taking a credit toward the basic minimum hourly rate . . ., the overtime rate shall be the employee's *regular rate of pay* before subtracting any tip credit, multiplied by 1 1/2, minus the tip credit.

12 NYCCRR § 146-1.4 (emphasis added).

---

[50]    https://labor.ny.gov/legal/counsel-opinion-letters.shtm (*last visited* on Nov. 2, 2016) ("Opinion [Letters] are no longer rendered by the Department of Labor.").

None of the notices that Apple-Metro provided as to the eighty-eight Moving Plaintiffs (or to any Plaintiffs for whom Apple-Metro has produced notices during discovery) contain either (1) the correct regular rate of pay (the full minimum wage), or (2) the correct overtime rate of pay.[51] Moreover, the notices provided to many of the Moving Plaintiffs contain no regular and/or overtime rate of pay at all - - and others are altogether blank.[52]  Making matters worse, the pay that Apple-Metro provide to its tipped employees comports with the insufficient amounts referenced in the notices - - ranging $5.00 to $6.00 per hour for their regular pay.[53]

Apple-Metro thereby failed to comply with the notice requirements that are a pre-requisite to taking the tip credit and, as such, summary judgment should be granted in Moving Plaintiffs' favor.

### III.   Apple-Metro Violated the Wage Notice Requirements Under NYLL § 195(1)(a).

Apple-Metro did not provide tipped workers with a wage notice at the time of hire and annually thereafter that complied with the requirements of NYLL § 195(1)(a). Since April 2011, the NYLL § 195(1) has required employers to provide annual notice in English (and the employee's primary language if other than English) that contained the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any ''doing business as'' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

---

[51]      Pls.' SOF ¶¶ 24-26.

[52]      Pls.' SOF ¶¶ 24-26.

[53]      Pls.' SOF ¶¶ 22-23

*Salinas*, 2015 WL 4757618, at *22 (citing NYLL § 195(1)(a)). "For all employees who are not exempt from overtime compensation . . . the notice must state the *regular hourly rate*." N.Y. Lab. Law § 195(1)(a) (emphasis added). Pursuant to NYLL § 198(1-b), prior to February 27, 2015, for each week that Apple-Metro failed to provide the statutorily required notice to tipped workers, it is liable for $50.00 per workweek that the violation occurred, up to a maximum of $2,500.00, plus attorney's fees and costs and disbursements of the action. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (finding defendants liable where plaintiffs never received a written statement from defendants at the time they were hired or during their employment).  For each week following February 27, 2015, pursuant to NYLL § 198(1-b), for each week that Apple-Metro failed to provide the statutorily required notice to tipped workers, it is liable for $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00. *Hernandez*, 2016 WL 3248493, at *29 (referring to amendment to § 198(1-b), 2014 N.Y. Sess. Laws Ch. 537 (A.8106-C), which allowed for $50.00 per day penalty with a cap of $5,000.00).

As with the tip credit notice under the NYLL, employers must provide employees with the wage notice in written form, and the employer must keep a signed and dated "written acknowledgement" of receipt of the notice for six years. NYLL § 195(1)(a); *see also Mattia v. Ferrara Foods & Confections, Inc.*, 2013 WL 2339925, at *3 (S.D.N.Y. Apr. 18, 2013) (finding the written notice requirement to be "strict" and holding that the employer could not use constructive knowledge as a defense to not providing the annual notice).  Further, a notice that provides inaccurate information fails to comply with the NYLL's requirements. *Cf. Copper v. Calvary Staffing, LLC*, 132 F. Supp. 3d 460, 467-68 (E.D.N.Y. 2015) (describing liability under

34

NYLL § 195(3) and holding that providing inaccurate statements was actionable violation under NYLL).

### A.   Apple-Metro's Wage Notices to Moving Plaintiffs Are Deficient.

NYLL § 195(1)(a) requires employers to include on the wage Notice the employee's regular rate of pay and correct overtime rate.  Because Apple-Metro took a credit on the minimum wage, the Moving Plaintiffs' regular rate of pay was the minimum wage, which was: $7.15 an hour until July 24, 2009; $7.25 an hour until December 30, 2013; $8.00 an hour until December 30, 2014; $8.75 an hour until December 30, 2015; and $9.00 an hour beginning January 1, 2016. *See* NYCCRR §§ 137-2.1, 137-2.2 (repealed eff. Jan. 1, 2016), and 146.2.

The then-applicable regular rate is not listed on any wage notice for any of the Moving Plaintiffs and opt-in Plaintiffs.[54] Therefore, Apple-Metro is liable to the eighty-eight Moving Plaintiffs and opt-in Plaintiffs for the statutory damages set forth in NYLL § 198(1-d).

Additionally, none of Apple-Metro's annual notices contains the correct overtime rate, which must be calculated at "1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek. When an employer is taking a credit toward the basic minimum hourly rate …, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by 1 1/2, minus the tip credit." 12 NYCCRR § 146-1.4. Here, the correct overtime rates, calculating for the tip credit, are as follows:

1.   Prior to July 24, 2009: $8.18.[55]

---

[54]    Pls.' SOF ¶¶ 24-26.

[55]    $7.15 (regular rate of pay) multiplied by 1.5, and then subtracting $2.55 (tip credit). *See* 12 NYCCRR §§ 137-1.3, 137-2.5 and 137-2.2 (repealed eff. Jan. 1, 2011).

2.  From July 25, 2009 – December 31, 2010: $8.28.[56]

3.  From January 1, 2011 – December 30, 2013: $8.63.[57]

4.  From December 31, 2013 – December 30, 2014: $9.00.[58]

5.  From December 31, 2014 – December 30, 2015: $9.37.[59]

6.  From December 31, 2015 and thereafter: $12.00.[60]

Not a single annual notice provided to any of the Moving Plaintiffs contains these correct overtime rates. Therefore, Apple-Metro is liable for the statutory damages set forth in NYLL § 198(1-d) for this reason as well.

**PART THREE:**      **THE COURT SHOULD CERTIFY TWO RULE 23 SUB-CLASSES ON PLAINTIFFS' MINIMUM WAGE AND NOTICE CLAIMS.**

I.   **Plaintiffs' NYLL Claims Based on Invalid Tip Credit and Wage Notice Are Well-Suited for Class Adjudication**

Class actions are critical to ensuring that the "broad remedial goals" of wage and hour laws can be met because they allow workers to pool their resources and hold large corporations accountable for widespread violations. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *see also Perez v. Allstate Ins. Co.*, 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014) (class members lacked the resources to even "contemplate proceeding with this [wage and hour] litigation in any context other than through their participation in a class action, given the expense

---

[56]    $7.25 (regular rate of pay) multiplied by 1.5, and then subtracting $2.60 (tip credit). *See id.*

[57]    $7.25 (regular rate of pay) multiplied by 1.5, and then subtracting $2.25 (tip credit). *See* 12 NYCCRR §§ 146-1.2, 146-1.3, 146-1.4.

[58]    $8.00 (regular rate of pay) multiplied by 1.5, and then subtracting $3.00 (tip credit). *See id.*

[59]    $8.75 (regular rate of pay) multiplied by 1.5, and then subtracting $3.75 (tip credit). *See id.*

[60]    $9.00 (regular rate of pay) multiplied by 1.5, and then subtracting $1.50 (tip credit). *See id.*

and burden that such litigation would entail" (internal quotation marks omitted)). The ability to pool resources is particularly important in the wage and hour context, where each worker's individual damages would be overwhelmed by the cost of litigating the claims individually. *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 277 (E.D.N.Y. 2016); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (class actions "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery"). Class wage and hour actions also promote judicial efficiency by avoiding repeated litigation of the same issue. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 339 (S.D.N.Y. 2010) ("As to Rule 23(b)(3)'s requirement that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy . . . [c]ourts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method.") (internal citations and quotations omitted).

## II.   Plaintiffs Meet All of the Requirements for Class Certification.

Plaintiffs seek to certify two NYLL sub-classes under Rule 23 (based on the same two NYLL claims for which Moving Plaintiffs seek summary judgment as discussed above):

> **SUBCLASS A**:   All current and former employees of Apple-Metro from January 1, 2011 through the present who were paid tip-credit reduced (sub-minimum wage) hourly rates but were not provided with compliant written notices containing the information required under NYCCRR tit. 12, § 146-2.2, who are thereby owed additional pay per hour worked based on Apple-Metro's failure to pay minimum wages.

> **SUBCLASS B**:   All current and former employees of Apple-Metro from January 1, 2011 through the present who were not provided with compliant wage notices as required by NYLL Section 195(1), and who are thereby entitled to the statutory penalties set forth in Section 195(1).

To certify these subclasses, the Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial*

*Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). The Court has more than enough evidence to do so here.

### A.  Plaintiffs Meet Each Rule 23(a) Requirement.

### 1.  Numerosity

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, more than 1,000 putative class members have already opted-in to these actions under Section 216 of the FLSA.  Moreover, Defendants provided a "class list" of more than 14,000 putative class members for purposes of transmitting the FLSA notices.  As such, there are far in excess of 40 individuals in each of the proposed subclasses.

### 2.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single common question of law or fact is sufficient to warrant certification. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). A "common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration omitted) (internal quotations marks omitted); *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d. Cir. 2010) (commonality met where "some of the [common questions] can be answered with respect to the members of the class as a whole through generalized proof" (internal citations and quotation marks omitted)).

As the Second Circuit reasoned, when employees are challenging a restaurant's tip credit policies, those claims will meet the commonality requirements of Rule 23. *See Shahriar v. Smith*

& *Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). They all derive from the same compensation policies and they all arise under the same statutes and regulations. *See id.* Moreover, in *Hicks v. T.L. Cannon Corp.* - - a case almost identical to the one before this Court - - the district court held that the commonality requirement was satisfied because "Plaintiffs' claims depend upon the common contention that Defendants allegedly provided all class members with deficient wage and tip notices" in violation of the NYLL. 35 F. Supp. 3d at 352 (citation omitted), *reconsideration denied,* 2014 WL 5088879 (W.D.N.Y. Oct. 8, 2014). As the *Hicks* court reasoned, Plaintiffs' contention as to deficient wage and tip notices "is 'capable of classwide resolution' as its 'truth or falsity will resolve [the] issue ... in one stroke.'" *Id.* (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (alteration in original).

Here - - as in *Shahriar* and *Hicks* - - this case easily meets the commonality requirements of Rule 23, because the claims for which Plaintiffs seek class certification all derive from the same tip credit compensation policies and they arise under the same statutes and regulations. Rule 23 certification should therefore be granted.

### 3.     Typicality

Rule 23(a)(3)'s typicality requirement tends to merge with Rule 23(a)(2)'s commonality requirement and are "generally examined together." *Hamelin v. Faxton–St. Luke's Healthcare*, 2011 WL 1938677, at *8 (N.D.N.Y. Mar.8, 2011); *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("Both [commonality and typicality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."). Nevertheless, "while often analytically inseparable from the concept of commonality, looks to whether each class member's

claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *B.H. ex rel D.B. v. City of New York*, 2011 WL 2133810, at *1 (E.D.N.Y. May 27, 2011) (quoting *Marisol A.*, 126 F.3d at 375-76).  Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted). When plaintiffs assert "that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Hicks*, 35 F. Supp. 3d 329 at 352 (quoting *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y. 2002)).

Here, because "[a] determination that Defendants failed to properly provide the appropriate notice would result in all Plaintiffs obtaining the same relief," typicality is established and class certification should be granted. *Id.*

### 4. **Adequacy**

Like typicality and commonality, Rule 23(a)(4)'s adequacy requirement also tends to merge with the Rule's other elements. *Falcon*, 457 U.S. at 157 n.13.  Still, analyzing the factor alone, adequacy under Rule 23(a)(4) "is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Hill v. City of N.Y.*, No. 13-cv-6147, 2015 WL 5719656, at *31 (E.D.N.Y. Sept. 28, 2015). Plaintiffs meet Rule 23(a)(4) because they do not have interests antagonistic to the class and have demonstrated a commitment to the class by assisting with the prosecution of the case and participating in discovery. *Shahriar*, 659 F.3d at 253 (finding adequacy requirement met where "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member"). Plaintiffs also selected counsel who are "qualified, experienced and able to conduct the litigation."

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *see also* Graff

Decl. ¶¶ 82-87; *see generally* Borrelli Decl.  Therefore, Plaintiffs and Plaintiffs' Counsel have and

will continue to dutifully represent the interest of the Class, satisfying Rule 23(a)(4)'s requirements.

### 5.      Ascertainability

In addition to Rule 23(a)'s explicit requirements, "[t]he Second Circuit has also recognized

the 'implied requirement of ascertainability.'" *Hughes v. The Ester C Company*, -- F. Supp. 3d --,

2016 WL 6092487, at *5 (E.D.N.Y. Sept. 30, 2016) (quoting *In re Initial Pub. Offerings Sec. Litig.*,

471 F.3d at 30). "'To be ascertainable, the class must be readily identifiable, such that the court

can determine who is in the class and, thus, bound by the ruling.'" *Id.* (quoting *Weiner v. Snapple

Beverage Corp.*, 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010)).  Here, Defendants produced

a list of 14,890 individual class members within the three years prior to the filing of the *Marin*

complain.  Using the same information Defendants employed to compile this 14,890 person list,

though a matter of a few keystrokes, the full scope of the proposed sub-classes can be easily

ascertained. *See* Graff Decl. ¶ 7.

### B.      Plaintiffs Meet the Rule 23(b)(3) Requirements.

Upon determining that a proposed class meets Rule 23(a)'s requirements, a court must then

determine whether certification is appropriate under Rule 23(b). *Roach v. T.L. Cannon Corp.*, 778

F.3d 401, 405 (2d Cir. 2015).  Here, as described below, the proposed sub-classes are perfectly

suited for certification under Rule 23(b)(3) and easily meet each of the Rule's requirements.

### 1.      Common Questions Predominate

Rule 23(b)(3) requires "questions of law or fact common to class members [to]

predominate over any questions affecting only individual class members[.]" Fed. R. Civ. P.

23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in

the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (internal quotation marks omitted). Common questions predominate when "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, the central issue on the two claims for which Plaintiffs seek class certification is simple: whether defendants provided notices that met the requirements of the NYLL to pay members of proposed Subclass A less than the minimum wage; and whether Defendants provided notices that met the requirements of NYLL 195(1) as to members of proposed Subclass B. Both parties will be able to submit generalized proof in support of their arguments as to whether AppleMetro's pay policies and notices comply with the NYLL in these two respects. Resolution of these two issues (one issue as to Subclass A, and one issue as to Subclass B) will predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore met.

## 2. A Class Action is the Superior Mechanism

Rule 23(b)(3) also requires courts to determine "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts "routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant." *Moreira v. Sherwood Landscaping, Inc.*, 2015 WL 1527731, at *14 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks omitted); *accord Hicks*, 35 F. Supp. 3d at 356.

In determining whether superiority is met, the Court may consider the following nonexclusive list of relevant factors:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs satisfy all four factors. First, where "many of the class members are alleged to be owed only a relatively modest amount which might not justify the cost of individual litigation . . . pursuing this litigation individually would be a hindrance rather than a boon." *Grenawalt v. AT & T Mobility, LLC*, 2014 WL 4832318, at *6 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks omitted). Here, members of Subclass A are entitled to the difference between their hourly and overtime pay (i.e., $5.00 per hour for all on-the-clock hours up to forty per week, $7.50 per hour for all on-the-clock hours over forty) and the then-existing minimum wage (i.e., between $7.25 per hour and $9.00 per hour, and 1.5 times those rates). Members of Subclass B are entitled to a maximum of either $2,500.00 or $5,000.00 each. *Hernandez*, 2016 WL 3248493, at *29 (referring to amendment to § 198(1-b), 2014 N.Y. Sess. Laws Ch. 537 (A.8106-C), which allowed for $50.00 per day penalty with a cap of $5,000.00). Taken together, each individual class member's claims "relatively modest amount" of damages fit neatly within the *Grenawalt* court's analysis.

Second, this Court has already applied the first-filed rule and dismissed two putative class actions that overlap with the claims for which Plaintiffs seek class certification here, explicitly recognizing the efficiency, desirability, and superiority of litigating all claims through one action. Further, Plaintiffs are unaware of any other pending litigation by members of the proposed class

43

regarding these claims. Third, concentrating the litigation in this forum is desirable because Apple-Metro's executive office is located in this District, many class members work or reside here, and this Court is familiar with the action, which has been pending here for several years. Fourth, this case is unlikely to present manageability problems because the claims of potential class members are identical.  For all of these reasons, a class action is plainly superior to upwards of 14,000 individual actions on the issues slated for certification.

### C.        Plaintiffs Also Meet the Rule 23(c)(4) Requirements.

The Second Circuit has held that certification is not only to be analyzed under Rule 23(b), but also under the more permissive standards of Rule 23(c)(4). *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167-68 (2d Cir. 2001) *abrogated on other grounds by Wal-Mart Stores*, 564 U.S. 338.  The principal difference between the two provisions is that there is no predominance or superiority requirement under Rule 23(c)(4). *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593 (S.D.N.Y. 2013) ("[Rule 23(c)(4)] can act as a tool that is appropriate and useful when classwide proof and predominance exist as to some, but not all issues.").  Rule 23(c)(4) simply requires that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("we hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."); *Robinson*, 267 F.3d at 167-68 (directing district courts to apply the more permissive Rule 23(c)(4) standard as well as Rule 23(b) standards); *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 109 (2d Cir. 2007) (same). As the Second Circuit held in *Cordes*, the common issue certified pursuant to Rule 23(c)(4) can be limited even to one element of one claim. 502 F.3d at 109.

Here, even if class members' claims did not meet the predominance requirement of Rule 23(b)(3) - - which, as set forth above, they *do* - - the class should still be certified pursuant to Rule 23(c)(4) based on the common legal and factual issues discussed above, as doing so would "materially advance a disposition of the litigation as a whole." *Jacob*, 293 F.R.D. at 593.

## III.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

The Court should appoint The Ottinger Firm, P.C. and Borrelli & Associates P.L.L.C. (collectively, "Plaintiffs' Counsel") as Class Counsel because they satisfy the requirements of Rule 23(g). Rule 23(g) requires the Court to consider:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

As this Court knows, Plaintiffs' Counsel have performed significant work and committed substantial resources to investigating and prosecuting the class claims. They obtained conditional certification of the collective under the FLSA; and have engaged in extensive discovery and discovery-related motion practice. Graff Decl. ¶¶ 82-87; *see also* 13-cv-1417 (ENV)(CLP) at ECF #135, p.19 ("[W]ere the Court to independently analyze the adequacy of plaintiffs' counsel, the Court would find that plaintiffs' current counsel in the *Marin* and *Dove* actions will adequately represent the interests of all class members . . . ."). Plaintiffs' Counsel are also regularly appointed class counsel in overtime actions. *See* Graff Decl. ¶¶ 82-87.; Borrelli Decl.

Here, by the time this motion is decided, Plaintiffs' Counsel will have invested over 3,000 hours - - and tens of thousands of dollars in expenses - - prosecuting these actions, including retaining a third-party ESI vendor to assist with forensic document review. *See* Graff Decl. ¶¶ 82-

87.; Borrelli Decl. ¶ 3.  This Court should therefore appoint Plaintiffs' Counsel as Class Counsel pursuant to Rule 23(g).

<u>**CONCLUSION**</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court (1) grant their motion for partial summary judgment with respect to the Moving Plaintiffs; and (2) grant their motion for Rule 23 Certification as to the Class.

Dated:  New York, New York
       November 4, 2016

Respectfully submitted,

By: _____

    Ariel Y. Graff        *AND*
    Robert W. Ottinger

THE OTTINGER FIRM, P.C.
401 Park Avenue South
New York, New York 10016
Tel.    (212) 571-2000
ari@ottingerlaw.com
robert@ottingerlaw.com

Respectfully submitted,

By: _____

    Michael R. Minkoff, Esq.
    Alexander T. Coleman, Esq.
    Michael J. Borrelli, Esq.

BORRELLI & ASSOCIATES, PLLC
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.    (212) 867-5000
mrm@employmentlawyernewyork.com
atc@employmentlawyernewyork.com
mjb@employmentlawyernewyork.com

*COUNSEL FOR PLAINTIFFS, THE COLLECTIVES,*
*and the PROPOSED SUB-CLASSES*