UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MARIN, KENNY LEBRON, and MARTINA HANISCH, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> APPLE  METRO,  INC.,  et al., <br><br> Defendants. | Case No. 12 Civ. 5274 (ENV)(CLP) |
| SHAUNTA DOVE, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> APPLE  METRO,  INC.,  et al., <br><br> Defendants. | Case No. 13 Civ. 1417 (ENV)(CLP) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, CLASS CERTIFICATION, AND APPOINTMENT OF CLASS COUNSEL**

***Oral Argument Requested***

**LITTLER MENDELSON, P.C.**
900 Third Avenue
New York, NY 10022
(212) 583-9600

*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     STATEMENT OF MATERIAL  UNDISPUTED FACTS ............................... 2

        A.      Plaintiffs Filed Two Complaints And Three Amendments, None Of Which
                Include Any Facts Supporting Wage Notice Claims Under NYLL § 195(1)
                or 12 N.Y.C.R.R. § 146-2.2 ....................................................................... 2

                1.      The Marin Complaints ...................................................................... 2

                2.      The Dove Complaints ........................................................................ 4

        B.      The Parties Engaged in Fact Discovery and Conditional Certification
                Motion Practice, But None of the Discovery Taken Nor Factual
                Allegations that Were Briefed Went Towards a Wage Notice Claim Under
                NYLL § 195(1) and/or 12 N.Y.C.R.R. § 146-2.2 ..................................... 6

III.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT  SHOULD
        BE DENIED IN FULL BECAUSE PLAINTIFFS ONLY RAISED THEIR
        SECTION 195(1) CLAIM FOR THE FIRST TIME AT THE SUMMARY
        JUDGMENT STAGE ......................................................................................... 8

        A.      A Failure to Provide Wage Notice Claim Under NYLL § 195(1) Is
                Separate And Distinct From An Improper Paystub Claim Under NYLL §
                195(3) .......................................................................................................... 8

        B.      Noticeably Absent From Plaintiffs' Motion Is Any Reference To Any
                Paragraph In Either The Marin Or Dove Complaints That Support Their
                Alleged Section 195(1) Claim .................................................................. 10

        C.      Plaintiffs' Arguments That The Court Should Look To Defendants'
                Actions – Not Just the Language In The Complaint Itself – To Determine
                Whether They Affirmatively Alleged Facts Sufficient To Support A
                Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim Are Not
                Based In Law Or Fact .............................................................................. 13

                1.      The Inclusion of Defendants' Affirmative Defense Does Not
                        Demonstrate That Plaintiffs Sufficiently Pled A Section 195(1) Or
                        12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim ......................... 13

                2.      Defendants' Production of Section 195(1) Notices In Response To
                        A Request For The Production of Personnel Files Also Does Not
                        Prove That Plaintiffs Sufficiently Pled A Section 195(1) Or 12
                        N.Y.C.R.R. § 146-2.2 Wage Notice Claim ............................. 15

i.

TABLE OF CONTENTS
(CONTINUED)

PAGE

      3.    Defendants' Arguments In Opposition To Atavia Thomas' Motion to Intervene Does Not Prove That Plaintiffs Sufficiently Pled A Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim Either .......................................................................................................... 16

IV.    EVEN IF THE COURT DOES NOT DENY PLAINTIFFS' MOTION FOR THE THRESHOLD ISSUE OF FAILURE TO SUFFICIENT PLEAD THEIR WAGE NOTICE CLAIM, THE COURT SHOULD DENY IT BECAUSE PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ............................................................................................................... 18

    A.    Summary Judgment Standard ........................................................... 18

    B.    Except for the Named Plaintiffs, the "Moving Plaintiffs" Do Not Have State Law Claims to Pursue In This Partial Summary Judgment Motion .......... 19

    C.    The Court Should Deny Plaintiffs' Motion For Partial Summary Judgment On Their NYLL Tip Notice Claims Because Certain Plaintiffs Actually Received Proper Notice, There Is A Genuine Issue of Material Fact as to Whether All the Other Plaintiffs Received Notice of the Tip Credit and, Regardless, Loss of The Tip Credit Is Not The Proper Remedy ........................ 20

        1.    Defendants Did Not Violate NYLL § 195(1) Because It Did, In Fact, Provide Compliant Annual Wage Notices, And Even If It Did Not, Made A Complete And Timely Payment Of All Wages Due And Had A Reasonable Basis To Believe It Complied With This Law ...................................................................................................... 21

        2.    Defendants Did Not Violate 12 N.Y.C.C.R.R. § 146-2.2 (Or NYLL § 195(1) For That Matter) By Failing To Provide Proper Notice Of The Tip Credit, And Regardless, The Loss Of The Tip Credit Is Not An Available Remedy .................................................................. 23

V.    THE COURT SHOULD NOT CERTIFY EITHER OF PLAINTIFFS' PROPOSED SUBCLASSES BECAUSE PLAINTIFFS CANNOT MEET ALL RULE 23 REQUIRMENTS ................................................................................ 29

    A.    The Overall Standard For Certifying A Rule 23 Class ...................................... 29

    B.    The Court Should Deny Certification Because Plaintiffs Have Proposed Impermissible Fail-Safe Classes .......................................................... 30

    C.    The Court Should Deny Certification Because Plaintiffs Cannot Satisfy All the Requirements of Fed. R. Civ. P. 23 ...................................... 31

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

1.  The Named Plaintiffs For Subclass A Are Inadequate Class Representatives ........................................................................... 31

2.  Plaintiffs' Wage Notice Claims Are Neither Common Nor Typical Of Both Putative Subclasses and Individual Issues Predominate over Common Ones ................................................................. 32

VI.    CONCLUSION .......................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Carovano,*
    851 F.2d 561 (2d Cir. 1988) (en banc)...............................................................10

*Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.,*
    2016 U.S. Dist. LEXIS 155116 (S.D.N.Y. Nov. 7, 2016).....................................28

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................................................18

*Barenboim v. Starbucks Corp.,*
    21 N.Y.3d 460 (2013) .........................................................................................28

*Beckman v. U.S. Postal Serv.,*
    79 F. Supp. 2d 394 (S.D.N.Y. 2000)..............................................................10, 18

*Bonnie & Co. Fashions v. Bankers Trust Co.,*
    170 F.R.D. 111 (S.D.N.Y. 1997) ........................................................................10

*Bradford v. CVS Pharmacy, Inc.,*
    2013 WL 5587350 (N.D. Ga. Oct. 10, 2013) ......................................................19

*Briceno v. USI Servs. Grp., Inc.,*
    2016 U.S. Dist. LEXIS 9622 (E.D.N.Y. Jan. 26, 2016) ......................................19

*Caidor v. Potter,*
    2007 WL 2847229 (N.D.N.Y. Sep. 26, 2007) .....................................................12

*Carvente-Avila v. Chaya Mushkah Rest.,*
    2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016) ..................................................27, 28

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC,*
    2016 U.S. Dist. LEXIS 133299 (S.D.N.Y. Sept. 28, 2016)..............................10, 12

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013).....................................................................................29, 34

*Diaz v. Electronics Boutique of Am., Inc.,*
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005)....................................35

*Edwards v. Publrs. Circulation Fulfillment, Inc.,*
    268 F.R.D. 181 (S.D.N.Y. 2010) ........................................................................35

iv.

TABLE OF CONTENTS
(CONTINUED)

*Enzo Biochem, Inc. v. Amersham PLC*,
    981 F. Supp. 2d 217 (S.D.N.Y. 2013).............................................................................10, 12

*Franco v. Jubilee First Ave. Corp.*,
    2016 U.S. Dist. LEXIS 114191 (S.D.N.Y. Aug. 25, 2016)....................................28

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................33

*Gregory v. Stewart's Shops Corp.*,
    2016 U.S. Dist. LEXIS 89576 (N.D.N.Y July 8, 2016)....................................36, 37

*Howard v. Wyman*,
    28 N.Y.2d 434 (1971) ..........................................................................................28

*In re Initial Pub. Offerings Sec. Litig. v. Merrill Lynch & Co., Inc.* ("*In re IPO*"),
    471 F.3d 24, 33 (2d Cir. 2006)............................................................................29

*In Re Literary Works In Elec. Databases Copyright Litig. v. Thomson Corp.*,
    654 F.3d 242 (2d Cir. 2011).................................................................................32

*Kamar v. Radio Shack Corp.*,
    375 F. App'x 734 (9th Cir. 2010) .........................................................................30

*Kapiti v. Kelly*,
    2008 U.S. Dist. LEXIS 64154 (S.D.N.Y. Aug. 18, 2008) .......................................33

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................................32

*Mazzei v. Money Store*,
    288 F.R.D. 45 (S.D.N.Y. 2012) ...........................................................................30

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)...............................................................................37

*Myers v. Hertz Corp.*,
    624 F.3d 537, 547 (2d Cir. 2010).....................................................................37, 34

*Northrop v. Hoffman of Simsbury, Inc.*,
    134 F.3d 41 (2d Cir. 1997)....................................................................................9

*Overton v. N.Y. State Div. of Military & Naval Affairs*,
    373 F.3d 83 (2d Cir. 2004)....................................................................................18

TABLE OF CONTENTS
(CONTINUED)

PAGE

*Randleman v. Fidelity Nat'l Title Ins. Co*.,
   646 F.3d 347 (6th Cir. 2011) ..................................................................30

*Robinson v. Metro-N. Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)...................................................................33

*Rocco v. Nam Tai Elecs., Inc*.,
   245 F.R.D. 131 (S.D.N.Y. 2007) ...........................................................34

*Ruggles v. Wellpoint*, Inc.,
   272 F.R.D. 320 (N.D.N.Y. 2011) ...........................................................32

*Ruiz v Citibank, N.A.*,
   2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015) ........................................31

*Saleem v. Corp. Transp. Grp., Ltd.*,
   2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014) .........................................19

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc*.,
   391 F.3d 77 (2d Cir. 2004).....................................................................19

*Simon v. E. Ky. Welfare Rights Org*.,
   426 U.S. 26 (1976).................................................................................32

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006)...................................................................18

*Spann v. AOL Time Warner, Inc.*,
   219 F.R.D. 307 (S.D.N.Y. 2003) ...........................................................33

*Spread Enters., Inc. v First Data Merchant Servs. Corp.*,
   298 F.R.D. 54 (E.D.N.Y. 2014)..............................................................30

*State v. GTE Valeron Corp.*,
   553 N.Y.S.2d 555 (1990).......................................................................28

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)...................................................................29

*Thomas v Apple-Metro, Inc.*,
   2015 WL 505384, at *4-5 (S.D.N.Y. Feb. 5, 2015) .............................16

STATUTES

NYLL § 191 ....................................................................................................17

vi.

**TABLE OF CONTENTS**
(CONTINUED)

**PAGE**

NYLL § 195 ..................................................................................................... passim

NYLL § 198(1-b) ....................................................................................................9, 21

NYLL § 198(1-d) ........................................................................................................8

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 146-1.3 .......................................................................................27, 28

12 N.Y.C.R.R. § 146-2.2 .......................................................................................passim

12 N.Y.C.R.R. § 146-2.14 ...........................................................................................28

12 NYCRR § 146-1.3 ..................................................................................................27

FRCP 12(e) .................................................................................................................12

FRCP 23 ......................................................................................................................34

FRCP 56(c) .................................................................................................................18

Defendants Apple-Metro, Inc. *et al.*[1] respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Class Certification, and Appointment of Class Counsel.

# I.
## PRELIMINARY STATEMENT

In bringing their motion for partial summary judgment, Plaintiffs attempt to somehow trick this Court into believing that they have brought NYLL § 195(1) and/or 12 N.Y.C.R.R. § 146-2.2 wage notice claims.   These claims, however, are not referenced anywhere in the operative complaints.  Since Plaintiffs have failed to sufficiently allege these wage notice claims in their complaint, they cannot raise them for the first time by moving for summary judgment. The Court should deny Plaintiffs' motion on this basis alone.

Even if the Court entertains Plaintiffs' summary judgment motion, however, it ultimately fails.  First, only the named Plaintiffs – and not any of the other "Moving Plaintiffs" (FLSA opt-in plaintiffs) – have state law wage notice claims. When the other Moving Plaintiffs opted into the case, they only agreed to be a part of a collective with federal FLSA claims only.  Since this case has not yet been certified under Rule 23, the motion with respect to these Moving Plaintiffs should be dismissed.   Second, Plaintiffs' motion for summary judgment based on failure to provide notice of the tip credit fail because there are genuine issues of material fact as to whether proper notice has, in fact, been given.  And, to the extent that the motion is based upon a failure to provide all required information in the wage notice form (or, in some cases, the wage notices themselves) it fails because Defendants' affirmative defense – that Defendants made complete and timely payments of wages and/or reasonably believed that notice was not required – applies to preclude summary judgment.

---

[1] Except for individually named defendant Kirk Samlal.

Finally, the second part of Plaintiffs' motion – for Rule 23 certification – should also be denied. As an initial matter, by bringing the above referenced summary judgment claims on behalf of only sixty opt-in plaintiffs, Plaintiffs are essentially conceding that they, themselves, do not believe they could get summary judgment on behalf of all opt-in plaintiffs.  In any event, Plaintiffs' class certification motion should be denied because the claims at issue fail to satisfy the fundamental requirements for class treatment.  In this regard, Plaintiffs propose improper fail-safe subclasses, are inadequate class representatives, and cannot prove commonality, typicality, or predominance because common evidence will not be representative of the entire class.

**II.**
**STATEMENT OF MATERIAL**
**UNDISPUTED FACTS**

**A.      Plaintiffs Filed Two Complaints And Three Amendments, None Of Which Include Any Facts Supporting Wage Notice Claims Under NYLL § 195(1) or 12 N.Y.C.R.R. § 146-2.2     **

       **1.      The *Marin* Complaints**

On October 22, 2012, Carlos Marin, a former hourly employee, filed a putative collective-class action against Defendants.  (Defendants' Local Rule 56.1 Additional Statement of Undisputed Facts ("56.1"), ¶ 1).  The complaint did not contain any factual allegations whatsoever regarding Defendants' failure to provide (1) notice of the tip credit, and/or (2) the wage notice required yearly and at the time of hire.  (*Id.* ¶ 2).  The complaint also did not reference NYLL § 195(1) or its corresponding hospitality regulation, 12 N.Y.C.R.R. § 146-2.2. (*Id.* ¶ 3).

On March 12, 2013, Marin amended his original complaint in order to add additional factual allegations (but no additional causes of action).  (*Id.* ¶ 4).  Marin, however, did not take the opportunity to add any factual allegations regarding Defendants' alleged failure to provide

2

notice of the tip credit and/or the NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 notice.  (*Id.* ¶ 5).

On June 28, 2013, following the voluntary consolidation of the *Marin* action with an another putative collective-class action, *Lebron et al. v. Apple-Metro, Inc. et al.* (Civ. No. 13-CV-1411), the *Marin* plaintiffs amended the complaint for a second time.  (*Id.* ¶ 6).  Again, even though the *Marin* plaintiffs could have added factual allegations regarding Defendants' alleged failure to provide notice of the tip credit and/or the required wage notices, or included a cause of action under NYLL § 195(1) or 12 N.Y.C.R.R. § 146-2.2, they did not to do so.  (*Id.* ¶ 7).

Instead, in this Second Amended Complaint, the *Marin* plaintiffs' factual allegations involve claims that Defendants required employees to work off-the-clock and shaved their time in order to reduce labor costs.  (*Id.* ¶ 8).  In addition, there is a single allegation, repeated almost verbatim a handful of times, that Plaintiffs' biweekly *pay stubs/wage statements* did not reflect the actual amount of hours worked by employees, due to alleged off-the-clock work and time shaving (*Id.* ¶ 9)  – allegations that have nothing whatsoever to do with the notice claims at issue herein.  Based upon that factual allegation, the Marin plaintiffs brought a separate and distinct cause of action pursuant to NYLL § 195(3), for inaccurate pay stubs/wage statements.  (*Id.* ¶ 10).[2]

NYLL § 195(3) involves an obligation on the part of employers to provide employees

---

[2] In their Sixth Cause of Action, the *Marin* plaintiffs alleged:

174.    In clocking employees out of work, requiring them to work without clocking in and readjusting their hours, *Defendants issued pay stubs/wage statements that did not accurately reflect Named Plaintiffs' and Class Action Plaintiffs' hours*.

175.    Defendants willfully failed to provide Named Plaintiffs and Class Action Plaintiffs with proper pay stubs/wage statements.

176.    These practices were willful and lasted for the duration of the relevant time periods.

177.    These practices are in violation of Labor Law § 195.

(56.1 ¶ 11).

with paystubs/wage statements that contain certain enumerated information.  In alignment with this cause of action for improper paystubs/wage statements only, the Marin plaintiffs defined the putative Rule 23 class as follows:

> Current and former employees of Defendants who perform or performed work as non-managerial employees during the statutory period within the State of New York, who (1) were not compensated for each hour worked at their straight, regular hourly rate; (2) worked in excess of forty (40) hours per week and were not paid overtime compensation; (3) worked in excess of ten (10) hours per day and were not paid spread of hours compensation; and/or (4) *were issued inaccurate pay stubs/wage statements* ("Class Action Plaintiffs").

(*Id.* ¶ 12 (emphasis added)).  Noticeably absent is any reference to Defendants' alleged failure to provide notice of the tip credit or wage notice forms.

## 2.    The *Dove* Complaints

On March 18, 2013, Shaunta Dove, a former tipped employee, also filed a putative collective-class action against Defendants.  (*Id.* ¶ 13).  The complaint did not contain any factual allegations whatsoever regarding Defendants' failure to provide (1) notice of the tip credit, and/or (2) the wage notices required yearly and at the time of hire.   (*Id.* ¶ 14).   The complaint also did not reference NYLL § 195(1) or 12 N.Y.C.R.R. § 146-2.2.  (*Id.* ¶ 15).

On September 24, 2013, Dove amended her original complaint in order to add additional factual allegations.  (*Id.* ¶ 16).  Even though Dove could have added factual allegations regarding Defendants' alleged failure to provide notice of the tip credit and/or the NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 notices, or included a cause of action under either of those laws, she chose not to do so.  (*Id.* ¶ 18).

Instead, in her Amended Complaint, Dove alleged that Defendants created an illegal tip sharing scheme whereby tipped employees (1) were required to "tip out" other employees so that their earnings fell below minimum wage, (2) did not receive all tips owed to them, and (3) did

not earn enough in tips to bring their wages to minimum wage.  (*Id.* ¶ 19).   In addition, there is an allegation, repeated almost verbatim a handful of times, that Dove's pay stubs/wage statements were inaccurate because Defendants took credit for an inaccurate amount of tips and improperly paid employees the tipped minimum wage, instead of the regular minimum wage (*Id.* ¶ 20).   Based upon that factual allegation, Dove brought an additional cause of action pursuant to NYLL § 195(3), for inaccurate pay stubs only.  (*Id.* ¶ 21).[3]   Consistent with her pleadings, she also explicitly defined the putative Rule 23 class as follows:

> Current and former servers, hosts, hostesses and bartenders of Defendants who perform or performed work as non-managerial employees during the statutory period within the State of New York, who . . . (3) *were issued inaccurate pay stubs/wage statements pursuant to which Defendants took credit for inaccurate employee tips* ("Class Action Plaintiffs").

(*Id.* ¶ 22 (emphasis added)).  Similar to the *Marin* complaint, all the facts and the class definition itself only related to Dove's Section 195  sub-(3) claim – improper paystubs – not any sub-(1) or 12 N.Y.C.R.R. § 146-2.2 claim, which involves an employer's failure to provide employees with the required wage notices on yearly basis and at the time of hire.  Nowhere in the complaint is any mention of this separate and distinct claim.

---

[3] In her Seventh Cause of Action, Dove alleged:

> 173.     Defendants took credit for an inaccurate amount of employee tips and issued pay stubs/wage statements reflecting these inaccurate tips.

> 174.     Defendants failed to provide Plaintiff and Class Action Plaintiffs with proper pay stubs/wage statements.

> 175.     These practices were willful and lasted for the duration of the relevant time periods.

> 176.     These practices are in violation of Labor Law §195.

(*Id.* ¶ 17).

5

**B.** **The Parties Engaged in Fact Discovery and Conditional Certification Motion Practice, But None of the Discovery Taken Nor Factual Allegations that Were Briefed Went Towards a Wage Notice Claim Under NYLL § 195(1) and/or 12 N.Y.C.R.R. § 146-2.2**

On or about May 10, 2013 – before his voluntary consolidation with the *Lebron* matter, Marin served written discovery demands upon Defendants. (*Id.* ¶ 23). Significantly, none of the document requests required Defendants to produce documents reflecting notice of the tip credit, or any wage notice forms – the documents at the heart of the notice claims at issue. (*Id.* ¶ 24). Marin's thirteenth document request, however, did request that Defendants produce all pay stubs (*i.e.*, consistent with his Section 195(3) claim). (*Id.* ¶ 25).

Then, on or about August 2, 2013, after the voluntary consolidation of the two cases and filing of the operative complaint, the *Marin* plaintiffs served new discovery demands. (*Id.* ¶ 26). Again, the Marin plaintiffs neglected to include any requests for tip credit notice documents or wage notice forms. (*Id.* ¶ 27). Similar to the May 2013 demands, the *Marin* plaintiffs only requested copies of paystubs in support of their Section 195(3) claim. (*Id.* ¶ 28). On or about October 3, 2013, Plaintiff Dove served discovery demands. (*Id.* ¶ 29). Like the document requests served in the *Marin* case, Dove also failed to request production of tip credit notice documents or wage notice forms. (*Id.* ¶ 30). Instead, like the *Marin* plaintiffs, she only requested copies of paystubs in support of her Section 195(3) claim. (*Id.* ¶ 31).

All in all, none of the initial written discovery served in either *Marin* or *Dove* had anything to do with a notice of tip credit violation or a Section 195(1) and 12 N.Y.C.R.R. § 146-2.2 wage notice claim.

On February 3, 2014, Plaintiffs moved for conditional certification pursuant to the FLSA. (*Id.* ¶ 32). In their moving papers, Plaintiffs described the alleged unlawful practices as follows:

> Moreover, the respective Complaints and declarations, if proven, demonstrate that Apple Metro's restaurants are uniformly infected by

6

> similar unlawful pay practices, including: (i) downward adjustments to employees' actual hours of work as recorded by the AppleOne POS system; (ii) requiring employees to perform certain work before permitting them to clock-in; (iii) requiring employees to perform clean-up and other chores after clocking-out; and (iv) failing to pay tip-credit employees a sufficient wage in addition to tip earnings to meet the federal minimum (let alone overtime premium) wage thresholds.

(*Id.* ¶ 33). Consistent with the pleadings and discovery taken as of the date of that motion, Plaintiffs did not reference any alleged failure of Defendants to provide tipped employees with notice of the tip credit. (*Id.* ¶ 34).[4]

On July 29, 2014, Magistrate Judge Pollack granted Plaintiffs' motion and conditionally certified a *Marin* FLSA class of all "non-managerial employees at Apple-Metro's 36 area restaurants, including servers, hosts, cooks, bartenders, expediters, runners, dishwashers, and maintenance workers" and a *Dove* FLSA class of all "tipped hourly employees – servers, hosts, hostesses, and bartenders." (*Id.* ¶ 35). Plaintiffs transmitted Notice to the FLSA classes on or about February 18, 2015. (*Id.* ¶ 36). The notice did not reference a tip credit notice claim. (*Id.* ¶ 37).

On or about June 16, 2015, as part of merits discovery on the certified claims, Plaintiffs served their First Set of Class-Wide Requests for Production of Documents. (*Id.* ¶ 38). Like the document requests served previously, Plaintiffs failed to request production of tip credit notice documents or wage notice forms. (*Id.* ¶ 40). Instead, Plaintiffs, again, only requested copies of paystubs in support of their Section 195(3) claim. (*Id.* ¶ 41).

Indeed, over a period of three years and nine months, in which Plaintiffs' counsel filed two complaints and three subsequent amendments, served four sets of document requests, and moved for conditional certification, Plaintiffs, at no time, put Defendants on notice that they are

---

[4] Plaintiffs did not request that the Court conditionally certify their Section 195(1) or 12 N.Y.C.R.R. § 146-2.2 wage notice claims, as these claims arise under state law only.

alleging that Defendants did not provide proper notice of the tip credit and/or did not comply with NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 by failing to provide wage notice forms yearly and upon hire.  In fact, the *very first time* Plaintiffs communicated to Defendants that they intended to assert these types of claims in the *Dove* and *Marin* actions was during the telephonic status conference with the Court on August 16, 2016, where they brought up their intention to move for summary judgment on these issues.  (*Id.* ¶ 44; *see also id.* ¶¶ 1-42).

## III.
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED IN FULL BECAUSE PLAINTIFFS ONLY RAISED THEIR SECTION 195(1) CLAIM FOR THE FIRST TIME AT THE SUMMARY JUDGMENT STAGE

**A.    A Failure to Provide Wage Notice Claim Under NYLL § 195(1) Is Separate And Distinct From An Improper Paystub Claim Under NYLL § 195(3)**

In the present motion, Plaintiffs argue that their operative pleadings assert Section 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims, in addition to Section 195(3) claims. (Pl. Br. at 12-28). These claims, however, are legally and analytically distinct, and must both be sufficiently pled in order to bring claims under each subsection.

NYLL § 195(3), which Plaintiffs actually did plead in their complaints, requires employers to:

> furnish each employee with *a statement with every payment of wages*, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

NYLL § 195(3) (emphasis added).  The remedy for this particular violation is found in NYLL § 198(1-d).

NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims are completely different from the 195(3) pay stub claims.  Section 195(1) requires that employers provide:

> in writing in English and in the language identified by each employee as the primary language of such employee, *at the time of hiring, a notice containing the following information*: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1) (emphasis added).[5]  The remedy for this violation is found in NYLL § 198(1-b).

Section 195(1)'s corresponding hospitality regulation, 12 N.Y.C.R.R. § 146-2.2, contains similar notice requirements:

> (a) Prior to the start of employment, an employer shall *give each employee written notice of* the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. The employer must provide notice in:
>
> > (1) English; and
> >
> > (2) any other language spoken by the new employee as his/her primary language, so long as the commissioner has made such notice available to employers in such language on the department's website.
>
> (b) Such notice shall also be required prior to any change in the employee's hourly rates of pay.

12 N.Y.C.R.R. § 146-2.2 (emphasis added).  The fundamental differences in these laws are beyond dispute.

---

[5] Before December 29, 2014, Section 195(3) also had a yearly wage notice requirement as well.

**B.    Noticeably Absent From Plaintiffs' Motion Is Any Reference To Any Paragraph In Either The Marin Or Dove Complaints That Support Their Alleged Section 195(1) Claim**

It is axiomatic that to assert a claim, a plaintiff *must affirmatively allege facts sufficient* to support that claim.  *Northrop v. Hoffman of Simsbury, Inc*., 134 F.3d 41, 45-46 (2d Cir. 1997) ("Factual allegations alone are what matters.") (citing *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).   "Because a failure to assert a claim until the last minute will inevitably prejudice [Defendants], courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time [at the summary judgment stage]."  *Beckman v. U.S. Postal Serv*., 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000).  *See also Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 U.S. Dist. LEXIS 133299, at *29-31 (S.D.N.Y. Sept. 28, 2016) ("[I]t is well established that a party may not amend its pleadings through its motion papers."); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 222-23 (S.D.N.Y. 2013) (same); *see also Bonnie & Co. Fashions v. Bankers Trust Co.*, 170 F.R.D. 111, 118-19 (S.D.N.Y. 1997) (reminding counsel that attempting to raise new claims through submissions at summary judgment stage is an intentional misrepresentation to a court and may be sanctionable conduct).

Here, Plaintiffs seek summary judgment on NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 tip credit and wage notice claims, which have never been a part of this case.   Plaintiffs have not alleged <u>any</u> facts (let alone facts sufficient) to support those claims in any of their several complaints.  For example, Plaintiffs have not asserted factual allegations in any of the *Marin* or *Dove* complaints that: (1) Plaintiffs did not receive wage notices claims upon hire or each year; (2) Plaintiffs' wage notices were lacking certain categories of information; or (3) Plaintiffs' wage notices were insufficient to allow Defendants to take the tip credit.  In fact, the phrases "wage

notice" and "notice of the tip credit" are not found *anywhere* in any of those complaints.  (56.1 ¶¶ 1-22).

    As alleged support for their position, Plaintiffs desperately point to Plaintiff Dove's allegations that Defendants (1) lost the right to take the tip credit because they failed to provide tip makeup pay, and (2) violated NYLL § 195(1) by taking credit for an inaccurate amount of employee tips and issuing pay stubs/wage statements reflecting the inaccurate tips.  (Pl. Br. at 19, 26-28).  These allegations *have nothing whatsoever to do with* failure to provide proper notice of the tip credit or wage notices yearly and/or upon hire.

    First, Plaintiffs seemingly attempt to confuse the Court into believing that alleging that Defendants failed to provide tip makeup pay somehow puts them on notice for a failure to provide notice of the tip credit claim, simply because the remedy – loss of the tip credit and reimbursement of the remaining minimum wage – is the same for both types of claims. (Pl. Br. at 18-19).  This is illogical and overreaching.  There are plenty of tip-related causes of action that have the same remedy.  For example, loss of the tip credit and reimbursement of the remaining minimum wage is also the remedy for when a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips.  Plaintiffs, however, cannot possibly be claiming that this cause of action is also sufficiently alleged in the *Marin* and *Dove* complaints.

    Second, Plaintiffs try to get the Court to give them a free pass on their failure to plead a separate and distinct Section 195(1) wage notice claim, simply because they alleged a violation of a different subsection of the same law.    (Pl. Br. at 26-28).  Again, this is improper.  By way of example, the requirement of employers to notify employees of their policy on sick leave, vacation, personal leave, holidays and hours is located in Section 195(5).   The obligation of

11

employers to notify employees of the exact date of termination and cancellation of benefits upon termination of employment is located in Section 195(6). Plaintiffs, however, are certainly not bringing those claims in this litigation.

As a final example, courts in this District even routinely deny summary judgment when a plaintiff tries to raise new grounds to support a previously asserted cause of action, much less something that they are asserting for the first time. *See, e.g. Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 U.S. Dist. LEXIS 133299, *29-31 (S.D.N.Y. Sept. 28, 2016) (rejecting breach of contract claim raised at the summary judgment stage on grounds other than the grounds pleaded in complaint); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 222-23 (S.D.N.Y. 2013) (same); *Caidor v. Potter*, 2007 WL 2847229, at *8 (N.D.N.Y. Sep. 26, 2007) (refusing to allow the plaintiff to bring a race-based disparate impact claim upon summary judgment, in addition to his pleaded race-based disparate treatment claim, even though both claims fell under the same statute, because the disparate impact claim was not alleged in his complaint).

Plaintiffs make the final argument that if their complaints are, in fact, ambiguous as to whether they sufficiently plead a Section 195(1) claim, it is Defendants' burden to move for a more definite statement under FRCP 12(e). Plaintiffs essentially flip the pleading standard on its head. It is not Defendants' responsibility to provide sufficient notice of plaintiffs' causes of action – that is Plaintiffs' responsibility.

Given that Plaintiffs failed to allege any facts in support of their alleged Section 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims, they cannot, now, raise these claims for the first time in their partial summary judgment motion. Accordingly, the Court should deny Plaintiffs' partial summary judgment on these claims for this threshold reason.

C.     **Plaintiffs' Arguments That The Court Should Look To Defendants' Actions – Not Just the Language In The Complaint Itself – To Determine Whether They Affirmatively Alleged Facts Sufficient To Support A Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim Are Not Based In Law Or Fact**

Plaintiffs argue that the Court should permit them to raise their new Section 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims at the summary judgment stage because Defendants (i) referenced a Section 195(1) affirmative defense in their answer, (ii) produced Section 195(1) wage notices in response to Plaintiffs' requests for the production of personnel files; and (iii) argued that Atavia Thomas' motion to intervene should be denied on the basis that her complaint (which contained a Section 195(1) claim) and the Dove complaint (which does not) seeks identical relief on behalf of an identical class against almost identical parties.  As demonstrated below, these arguments are unavailing because they are legally insufficient, and, regardless, Plaintiffs mischaracterize the relevant facts.

1.     **The Inclusion of Defendants' Affirmative Defense Does Not Demonstrate That Plaintiffs Sufficiently Pled A Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim**

Plaintiffs first argue that Defendants' affirmative defenses permit them to raise their new Section 195(1) claim at summary judgment.  (Pl. Br. at 19-22).  Specifically, Plaintiffs argue that because Defendants pleaded an affirmative defense regarding compliance with Section 195(1), Plaintiffs may raise a Section 195(1) claim for the first time at summary judgment *without actually pleading* that claim in any of their complaints.

First, Plaintiffs do not cite any authority to support the legal theory that a defendant can somehow waive a plaintiff's obligation to sufficiently plead a cause of action in a complaint.  Nor could they, as Plaintiffs are essentially turning the pleading requirement on its head by asking the Court to look at Defendants' answers – not Plaintiffs' complaints – to see which causes of action are sufficiently pled.

13

In any event, even if the Court was to consider evidence outside the operative *Dove* and *Marin* complaints, Defendants' inclusion of an affirmative defense to Section 195(1) is not enough to prove that Defendants received sufficient notice of a Section 195(1) claim in those complaints. As Plaintiffs recognized in their motion, the failure to plead affirmative defenses "may prove fatal," but the risk of a motion to strike affirmative defenses is extremely low. (Pl. Br. at 16-17). This dynamic – high risk of waiver and low risk of a motion to strike – reasonably encourages parties, such as Defendants here, to be overzealous in asserting all affirmative defenses that could in any way be relevant in the future litigation of the case. Here, Defendants asserted an affirmative defense to Section 195(1) simply out of extreme cautiousness because Plaintiffs actually pled a violation of Section 195(3) – not because they had notice of any Section 195(1) claim.

As it turns out, Defendants were correct to be extremely cautious. Plaintiffs are now moving for summary judgment on a Section 195(1) claim, and as explained below, Defendants are defending against this claim by using *the very affirmative defense* that it could have potentially waived had Defendants not included it in their Answers.

To be sure, Plaintiffs would have opposed Defendants' application of the affirmative defense here. In fact, in their pre-motion conference letter, Plaintiffs' counsel explicitly requested that the Court allow them to move to "*preclude Defendants from invoking an affirmative defense* to their payment of sub-minimum (tip credit) wages to the Dove Plaintiffs." (56.1 ¶ 45). The Court should not conclude that Defendants had sufficient notice of Plaintiffs' Section 195(1) claim, simply because of their cautious (and, as it turns out, rightful) inclusion of a single affirmative defense.

14

2.      **Defendants' Production of Section 195(1) Notices In Response To A Request For The Production of Personnel Files Also Does Not Prove That Plaintiffs Sufficiently Pled A Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim**

Next, Plaintiffs argue that because Defendants produced Section 195(1) wage notices in response to Plaintiffs' document requests, Plaintiffs are permitted to raise their new Section 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims at summary judgment. (Pl. Br. 21-22). This is a red herring. Again, there is no legal support for Plaintiffs' implication that a defendant can somehow obviate the need for a plaintiff to sufficiently plead a cause of action in a complaint – in this case, by providing documents as part of the discovery process.

More importantly, however, is that Plaintiffs deliberately misrepresent the reason why Defendants produced personnel files in the first place. Plaintiffs claim it was in response to their Document Request No. 26, which requested documents "concerning any and all good faith efforts that Defendants have made to comply with federal or state wage and hour laws." (Pl. Br. at 22). Plaintiffs, however, hide the fact that Defendants produced personnel files (with the Section 195(1) notices) in response to Document Request No. 13, which *directly* called for the production of personnel files:

> **DOCUMENT REQUEST NO. 13:**
> All employment-related documents and electronically stored information concerning each of the Plaintiffs, including but not limited to, all personnel files and compensation records concerning each of the Plaintiffs.
>
> **RESPONSE**
> Defendants hereby incorporate by reference the General Objections as if fully set forth herein. Defendants further object . . .
>
> Subject to and without waiving any of the foregoing objections, Defendants respond as follows: Defendants are willing to meet and confer in order to identify a representative sample of opt-in plaintiffs, and for each (1) produce personnel files, to the extent that they exist, (2) produce compensation records for the relevant statutory period, and (3) identify relevant custodians and search terms in order to produce responsive, non-privileged ESI, to the extent it exists.

15

(56.1 ¶ 39).  The fact that the personnel files just happened to contain Section 195(1) notices is of no moment, and certainly does not provide proof that Plaintiffs sufficiently pled a Section 195(1) claim.

### 3.    Defendants' Arguments In Opposition To Atavia Thomas' Motion to Intervene Does Not Prove That Plaintiffs Sufficiently Pled A Section 195(1) Or 12 N.Y.C.R.R. § 146-2.2 Wage Notice Claim Either

As a final attempt to distract the Court from simply reviewing Plaintiffs' complaints to determine whether they *actually* pled a Section 195(1) claim, Plaintiffs argue that this Court and Judge Caproni in the *Thomas* action have already held that the Section 195(1) claims are properly a part of this litigation.  Notably, however, Plaintiffs do not point to any part of either of these decisions that specifically state that Plaintiffs' complaints contain a Section 195(1) claim.  Nor could they – as Plaintiffs completely mischaracterize Defendants' arguments and the Courts' decisions in those two cases.

Thomas' original complaint did not contain a Section 195(1) claim, let alone any claim under Section 195.  (56.1 ¶ 43).  Thus, when Judge Caproni held that Thomas' complaint and Plaintiffs' complaints "assert nearly identical claims," *Thomas v Apple-Metro, Inc.*, 2015 WL 505384, at *4-5 (S.D.N.Y. Feb. 5, 2015), as Plaintiffs quoted in their motion papers (Pl. Br. at 9), Judge Caproni could not have been referring to a Section 195(1) claim.  Accordingly, Judge Caproni's decision in no way confirms that Plaintiffs' complaints in the present case contain a Section 195(1) claim.

As for Defendants' arguments in opposition to Thomas' motion to intervene and this Court's decision on that motion, Plaintiffs completely ignore the particular standard that was applied in that motion versus the present one.  Here, the Court must determine, simply, whether the Plaintiffs sufficiently pled a NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 cause of action in their complaints.  In order to intervene, Thomas had to prove, instead, that her interests would be

16

impaired by disposition of the *Marin* and *Dove* actions and that her interests were protected. These are two completely different legal standards.

Moreover, in opposition to Thomas' motion to intervene, Defendants simply argued that (1) Thomas' interests with respect to her side work claims wouldn't be impaired because she could opt-out of the *Marin* and *Dove* actions, and (2) that her interests were protected because the same underlying claims – failure to pay proper minimum wage and overtime – under the same federal and state statutes with the same relief, were already included, and, presumably, the *Marin* and *Dove* attorneys did not believe they had a factual basis for bringing side work allegations.  (56.1 ¶ 42).[6]

To be clear, the claims are different here: a Section 195(3) claim is different than a Section 195(1) claim.  The very best evidence of this is Plaintiffs' recitation of the causes of action listed in Thomas' proposed complaint.  As laid out by Plaintiffs on pages 9 through 10, Thomas listed her Section 195(1) and Section 195(3) claims separately.[7]  In fact, the Thomas proposed intervener complaint (as referenced by Plaintiffs in their brief) should be a lesson to Plaintiffs in how to actually plead a violation of Section 195(1):

> 196. Defendants have failed to supply Plaintiff-Intervener and the Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing Plaintiff-Intervener and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical

---

[6] Defendants were *not* arguing that Thomas' Section 195(1) claims were the same as Plaintiffs' Section 195(3) claims here – that wasn't even at issue in the motion to intervene.

[7] Plaintiffs interpret Thomas' labeling of the Section 195(1) and 195(3) claims – both are listed as the "Eleventh Cause of Action" as a deliberate attempt to show that they are the same cause of action.  It is much more reasonable, however, to interpret this simply as a typo on the part of Thomas' counsel, and that they made a mistake, but intended the Section 195(3) section to be the "Twelfth Cause of Action" – why else would they be placed in two separate sections with separate headings.

address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

(*Marin* ECF No. 178-2, ¶ 196).[8]

In any event, it is clear from this Court's decision denying Thomas' motion to intervene that the Court's decision "hinge[d] solely" on whether Plaintiffs protected Thomas' right to recover for her "side work" allegations. (*Marin* ECF No. 242, at 18). It had nothing to do with any Section 195(1) claims, and, accordingly, should be irrelevant to Plaintiffs' motion here.

For all the reasons listed above, this Court should deny Plaintiffs' motion for partial summary judgment because "it is inappropriate to raise new claims for the first time [at the summary judgment stage]." *Beckman*, 79 F. Supp. 2d at 407-08.

## IV.
## EVEN IF THE COURT DOES NOT DENY PLAINTIFFS' MOTION FOR THE THRESHOLD ISSUE OF FAILURE TO SUFFICIENTLY PLEAD THEIR WAGE NOTICE CLAIM, THE COURT SHOULD DENY IT BECAUSE PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

### A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment if the evidence demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is

---

[8] In a footnote, Plaintiffs argue that Defendants should be estopped from claiming Plaintiffs' complaints do not contain a Section 195(1) claim because the parties previously agreed that their claims were virtually identical to those raised by Thomas' proposed complaint in intervention. Defendants, however, never agreed that Plaintiffs' complaints and Thomas' proposed complaint in intervention were identical in all respects. Since Thomas filed her proposed complaint in March 2015, however, Plaintiffs have been on clear notice on how to properly plead a Section 195(1) claim, separate and distinct from a Section 195(3) claim.

such that 'a reasonable [fact finder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc*., 391 F.3d 77, 83 (2d Cir. 2004).

As demonstrated below, the so-called "Moving Plaintiffs" are not entitled to summary judgment on their NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 claims or to the loss of tip credit as a remedy.

**B.      Except for the Named Plaintiffs, the "Moving Plaintiffs" Do Not Have State Law Claims to Pursue In This Partial Summary Judgment Motion**

As an initial matter, the only plaintiffs who currently have NY state claims in this case are the named plaintiffs – not any of the other "Moving Plaintiffs" (all opt-in plaintiffs) listed in Exhibit 1 to Mr. Graff's Declaration.  When they opted in, these opt-in plaintiffs merely became a part of an FLSA collective bringing FLSA claims – for that federal claim only – because conditional certification under the FLSA was granted. (56.1 ¶¶ 32-37).  The opt-in plaintiffs do not actually have any state law claims, including the claims at issue herein, NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2, to move for summary judgment upon.  *See Saleem v. Corp. Transp. Grp., Ltd.*, 2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014),) (finding "no basis to conclude that the Opt-In Plaintiffs joined the named Plaintiffs in bringing claims under the NYLL" and, accordingly, holding that it "had no basis to rule on the NYLL claims of anyone other than the named Plaintiffs") (citations omitted); *Bradford v. CVS Pharmacy, Inc.*, 2013 WL 5587350, at *3 (N.D. Ga. Oct. 10, 2013) (holding that "opt-in plaintiffs" only opted into "the unpaid overtime

FLSA claim," not the named plaintiff's non-FLSA declaratory judgment claim).

In addition, permitting this motion to go forward as to the non-Named Plainitffs would cause significant prejudice to Defendants.  For example, *Briceno v. USI Servs. Grp., Inc.*, 2016 U.S. Dist. LEXIS 9622, at *6 (E.D.N.Y. Jan. 26, 2016), on a motion for reconsideration, the court reversed its decision to permit the named plaintiffs to amend their complaint to convert certain FLSA opt-in plaintiffs into named plaintiffs, so that they can assert their state law wage claims as well.  It held that such an amendment would cause significant prejudice to the defendants, who would suddenly have to face "the prospect of having to potentially litigate 169 additional individual NYLL claims, about which they have taken no discovery." *Id.* at *16-17. In the present case, the prejudice is even higher.  Defendants have not had an opportunity to take discovery on any of the Moving Plaintiffs' tip notice and wage notice claims; yet Plaintiffs are already moving for summary judgment upon them.

Because the Moving Plaintiffs – as opt-ins – have no state-law claims in this case, and due to the significant prejudice it would cause Defendants if the Moving Plaintiffs were permitted to proceed with their motion, the Court should deny the non-named Plaintiffs' partial motion for summary judgment as a matter of law.

**C.    The Court Should Deny Plaintiffs' Motion For Partial Summary Judgment On Their NYLL Tip Notice Claims Because Certain Plaintiffs Actually Received Proper Notice, There Is A Genuine Issue of Material Fact as to Whether All the Other Plaintiffs Received Notice of the Tip Credit and, Regardless, Loss of The Tip Credit Is Not The Proper Remedy**

Plaintiffs' partial motion to summary judgment is confusing at best, and deliberately obfuscatory at worst.  Plaintiffs move for summary judgment on two grounds:

1. After 2011, Apple-Metro did not provide tipped workers with a compliant "written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday," resulting in Apple-Metro's failure to pay tipped

employees the statutory minimum wage for all hours worked, 12 N.Y.C.C.R.R. § 146-2.2(a); and

2. Apple-Metro violated NYLL Section 195(1) by failing to provide compliant annual wage notices.

(Pl. Br. at 28).   As explained below, however, Plaintiffs cannot meet their burden on either ground.

1.      **Defendants Did Not Violate NYLL § 195(1) Because It Did, In Fact, Provide Compliant Annual Wage Notices, And Even If It Did Not, Made A Complete And Timely Payment Of All Wages  Due And Had A Reasonable Basis To Believe It Complied With This Law**

Plaintiffs' arguments as to the second ground enumerated above are more direct, so they will be taken up initially here.

First, Plaintiffs claim that summary judgment is warranted because Defendants, in unlawfully taking the tip credit on the minimum wage, improperly listed the tipped minimum wage – instead of the correct full minimum wage – on their Section 195(1) notices.  (Pl. Br. at 33, 35).   Plaintiffs, however, do not explain *why* Defendants should not have paid their employees the tipped minimum wage in this section.   Assuming it is because the Moving Plaintiffs were (i) required to "tip out" other employees so that their earnings fell below minimum wage, (2) did not receive all tips owed to them, and/or (3) did not earn enough in tips to bring their wages to minimum wage (and, for all those alleged reasons, must be paid the full minimum wage for that particular shift) – Plaintiffs' motion is premature.  The parties are still undergoing discovery with respect to those issues.  (56.1 ¶ 46).[9]

Second, Plaintiffs claim that summary judgment is warranted because Defendants included the incorrect overtime rate of pay on the Moving Plaintiffs' Section 195(1) forms.  (Pl.

---

[9] If this portion of Plaintiffs' claim relates to Defendants' failure to provide employees with notice of the tip credit, that argument is dealt below in subsection two.

Br. at 35-36).  Defendants concede for purposes of this motion only that they did not list some of

the proper overtime rates on Moving Plaintiffs' forms.  However, Defendants have a complete

affirmative defense to this technical and inconsequential mistake – and any mistake to provide all

required Section 195(1) wage notices (or all required information within) to any Moving

Plaintiff.

That defense is specifically spelled out in NYLL § 198(1-b).  This section states, in

relevant part:

> In any action or administrative proceeding to  recover damages for violation of
> paragraph (a) of subdivision one of section one hundred ninety-five of this article,
> it shall be an affirmative defense that (i) the employer made *complete and timely*
> *payment of all wages* due pursuant to this article or article nineteen or article
> nineteen-A of this chapter to the employee who was not provided notice as
> required by subdivision one  of section one hundred ninety-five of this article or
> (ii) the *employer reasonably believed in good faith that it was not required to*
> *provide the employee with notice* pursuant to subdivision one of section one
> hundred ninety-five of this article.

NYLL § 198(1-b) (emphasis added).

Despite what is listed on the Section 195(1) forms, Defendants did pay the Moving

Plaintiffs the proper overtime rate, when overtime occurred.  (56.1 ¶ 69).  Moreover, Apple-

Metro reasonably believed in good faith that, through its General Managers – who were

responsible for getting the notices signed – the Company provided the required notice.  (56.1 ¶¶

53-57).  The Company did use the forms provided by the New York Department of Labor for the

entire statutory period.  (*Id.* ¶ 54).  At the very least, the assertion of this affirmative defense

causes genuine issues of fact sufficient to preclude summary judgment, if not grounds to grant

summary judgment in Defendants' favor as a whole.  Moreover, these are certainly areas that

need to be explored in further discovery – discovery that has not taken place because this claim

has never been part of the case.

**2.      Defendants Did Not Violate 12 N.Y.C.C.R.R. § 146-2.2 (Or NYLL § 195(1) For That Matter) By Failing To Provide Proper Notice Of The Tip Credit, And Regardless, The Loss Of The Tip Credit Is Not An Available Remedy**

Plaintiffs' arguments as to their second ground for partial summary judgment are equally unavailing.  Plaintiffs claim that Defendants violated 12 N.Y.C.C.R.R. § 146-2.2(a) by failing to provide the Moving Plaintiffs with proper notice of the tip credit.  Section 146-2.2(a) states, in relevant part:

> Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, *the amount of tip credit, if any, to be taken from the basic minimum hourly rate*, and the regular payday. *The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.*

12 N.Y.C.C.R.R. § 146-2.2(a) (emphasis added).  Plaintiffs argue that Defendants violated this regulation by including the tipped minimum wage rate, instead of the full minimum wage rate. (Pl. Br. at 32-33).

First, Plaintiffs claim that because the "2011 Wage Order defines the 'regular hourly pay rate' as 'the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any,'" and Defendants only included the tipped minimum wage on the notices, Defendants are automatically non-compliant. (*Id.* at 32).  The hospitality wage order, however, has no definition for "regular hourly pay rate".  Plaintiffs mislead the Court in this regard. Instead, the definition set forth above is for "regular rate," not "regular hourly pay rate."  12 N.Y.C.C.R.R. § 146-2.2(a).

Furthermore, a plain reading of Section 146-2.2(a) gives more than adequate context to understand what the regulation means by "regular hourly pay rate."  It states: "an employer shall give each employee written notice of the *regular hourly pay rate* [and] the amount of tip credit, if any, to be taken from *the basic minimum hourly rate*."  By including reference to the "basic minimum hourly rate," *i.e.*, the full minimum wage rate in the same sentence, it is clear that the

23

"regular hourly pay rate" means the regular rate of pay, which, in the case of tipped employees, is the tipped minimum wage. Since the Moving Plaintiffs' Section 195(1) forms explicitly list the tipped minimum wage rate, there is no violation here.

Second, and in any event, Defendants utilized a variety of methods in order to give the Moving Plaintiffs proper notice of the tip credit pursuant to 12 N.Y.C.C.R.R. § 146-2.2(a).[10] First, every single employee, including the Named and Moving Plaintiffs, receives notice of the tip credit via the New York State minimum wage posters, which are placed in a prominent area of the restaurant where all employees had access (56.1 ¶ 74). Every NY minimum wage poster since 2007 has explicitly stated: "Tips: A specific allowance may be credited toward the minimum wage for tips earned." (*Id.*). This language was deliberately drafted by the New York Department of Labor and included on the poster to inform employees of the tip credit. Plaintiffs cannot legitimately argue that the language drafted by the agency *in charge of enforcing the laws at issue here* did not draft language that would pass muster.[11]

In addition, Named Plaintiffs Dove, Marin, and Lebron, in addition to all other employees, should have received notice via the Sections 195(1) forms that the NY Department of Labor *itself* provided. (*Id.* ¶ 75; *see* Graff Decl. Exs. 12-13).[12] Even though the rate and tip credit amounts have changed over the years, this notice has always made it clear that tipped

---

[10] Plaintiffs claim that "each component of the regulation must be provided in a single written notice." (Pl. Br. at 30). The case that Plaintiffs cite to in support, however, is a Western District case, which is not precedential, and regardless, does not stand for the proposition cited whatsoever.

[11] Plaintiffs may argue that district courts, like in *Salinas*, have held that posters can never provide proper tip notice. In those cases, however, including *Salinas*, the court found that a poster was unable to provide sufficient notice because the poster was generic and in English, plaintiffs were not English-speaking, and the poster only generally described "employee rights, payroll, hourly wages, sick pay, [and] sick day[s].'" *Salinas,* 123 F. Supp. 3d at 461. Such is not the case here, and, accordingly, these cases are distinguishable.

[12] *See* Point IV.B.1 *supra* for why Defendants affirmative defense excuses any clerical errors that they made with respect to filling in the various rates correctly.

employees receive less than the full minimum wage, the Defendants take a tip credit, and if employees do not make enough in tips to bring them up to the full minimum wage, Defendants will be "paid additional wages that week to make up the difference." Again, this language was deliberately drafted by the New York Department of Labor to inform employees of the tip credit. Plaintiffs cannot legitimately argue that the language drafted by the agency is somehow insufficient.

Yet other Moving Plaintiffs and Named Plaintiff Dove, also (or otherwise) received written notice via special Notice to Team Members Who Receive Tips. (56.1 ¶¶ 75-76; *see also* Graff Aff. Exs. 18, 32, 33, 40, 52, 65, 68, 70). This notice clearly states the tipped minimum wage, tip credit, and full minimum wage, and explains that defendants "will make up the difference" if the employee does not make enough tips to get to the full minimum wage for all hours worked. (*Id.*). This is also sufficient notice of the tip credit.

Employees who worked in June 2015 or later also received written notice via the Employee Handbook, which was distributed to all new and then-current employees. (56.1 ¶ 77). It has an entire section on tip credit notice. (*Id.*).

Finally, all tipped employees should have received oral notice of the tip credit during orientation, where managers were required to provide notice of the tip credit and employees signed off that they received it on orientation checklist forms. (*Id.* ¶ 78). For example, named Plaintiffs Marin, Dove, and Lebron all have filled out orientation checklists in their files. (*Id.* 79).[13]

Accordingly, there is any number of ways in which employees would be made aware of

---

[13] Even though Plaintiff Hanisch's personnel file has not yet been found, regular policies and practices of the Company leads to the inevitable conclusion that she received proper notice of the tip credit as well. (56.1 ¶¶ 70-75, 78). Only further discovery on the notice of tip credit issue will enable the parties to obtain further information with respect to this plaintiff.

the proper rate of pay that they were receiving.  At the very least, *all of this evidence leads to a genuine dispute of material fact*, which precludes Plaintiffs' motion for partial summary judgment here.

As a final matter, Plaintiffs are incorrect in their statement that "oral notification is not sufficient" to provide notice of the tip credit under New York law (Pl. Br. at 31), and in their implication that only by giving employees 12 N.Y.C.C.R.R. § 146-2.2(a) and/or Section 195(1) forms, will an employer give sufficient notice of the tip credit under New York law.  The NY Department of Labor has affirmatively stated that *even oral notice is sufficient*.

On March 4, 2015, Pico Ben-Amotz, in his capacity as General Counsel to the NYDOL, wrote a letter to the Hon. Joseph D. Morelle, Majority Leader of the New York State Assembly ("Opinion Letter") and provided guidance regarding the NYDOL's position on the provision of a proper Section 195(1) notice not necessarily being a prerequisite to taking the tip credit under New York law.  (56.1 ¶ 80 (attached to Benson Decl. Ex. 16)).  In that letter, General Counsel Ben-Amotz addressed the "intersection of the tip credit and notice of pay rules," and specifically, the regulation that requires issuance of a wage theft prevention act notice upon hire, 12 N.Y.C.R.R. § 146-2.2, and the tip credit notice regulation, 12 N.Y.C.R.R. § 146-1.3, which went into effect in January 2011.  *See Opinion Letter*, at 1.  Section 146-1.3 provides that an employer may only take the tip credit if the employee "receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part." *Id.*

Specifically, Mr. Ben-Amotz was responding to Majority Leader Morelle's inquiry as to whether, "as a precondition to claiming a tip credit . . . an employer [must] provide *written* notice of the tip credit rules."  *Id.* (emphasis added).  The Opinion Letter answered with a resounding and unambiguous: <u>no</u>.  The Opinion Letter reasoned:

26

> ***DOL's interpretation of 12 NYCRR § 146-1.3 is compelled both by the plain
> language of the regulation and the need to prevent unintended consequences,
> such as loss of eligibility for the tip credit for otherwise compliant employers
> and an unjustified windfall for employees that have actual notice of their
> employer's tip credit practices.***  If an employer can demonstrate compliance with
> all of the other minimum wage requirements and that their employees understood
> the manner in which the employer took the tip credit, there is no policy rationale
> to preclude the employer from claiming the tip credit simply because the
> employer did not provide written notice of the tip credit rules.  Alternatively
> stated, written notice is not necessary to protect employees that have actual
> knowledge of the tip credit rules.

*Id.* at 2 (emphasis added).

Despite Plaintiffs' anticipatory arguments to the contrary (Pl. Br. at 31-32), the Opinion

Letter is entitled to deference and must be followed here.  In *Carvente-Avila v. Chaya Mushkah*

*Rest.*, 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016), the court specifically relied upon the Opinion

Letter to deny the plaintiffs' motion for reconsideration, where plaintiffs argued, like they do

here, for loss of the tip credit as a remedy for violation of the wage theft prevention act notice

and paystub requirements in NYLL §§ 195(1) & (3).  *See id.* at *1 (emphasis added).  The court

first laid out the applicable law on deference:

> New York courts have . . . consistently held that the NYDOL's "interpretation of
> a statute it is charged with enforcing is entitled to deference." *Barenboim v.
> Starbucks Corp.*, 21 N.Y.3d 460, 470-71 (2013); *see also State v. GTE Valeron
> Corp.*, 553 N.Y.S.2d 555, 557 (1990) ("Judicial deference should therefore be
> accorded the interpretation by the [New York] Department of Labor ...").  In fact,
> Barenboim involved the NYDOL's interpretation of a regulation under another
> provision under Section 146 of the New York Minimum Wage Order, 12
> N.Y.C.R.R. §§ 146-2.14. *Id.* 21 N.Y.3d at 470-71. In addition, New York courts
> have held that "regulations by the agency responsible for [statutory]
> administration, if not irrational or unreasonable, should be upheld." *Howard v.
> Wyman*, 28 N.Y.2d 434, 438 (1971). **"The judicial function is exhausted when
> there is found to be a rational basis for the conclusions approved by the
> administrative body." *Id.***

*Id.* at *2 (emphasis added).

Applying that law, the *Carvente-Avila* court held that there is a rational basis for the

conclusions made in the Opinion Letter.  *Id.*  In fact, the Court pointed out three separate rational

27

bases (which were also set forth in the Opinion Letter):

(1) the plain language of the tip credit notice regulation itself, Section 146-1.3, does not require *written* notice,

(2) there was a policy reason for not allowing loss of the tip credit as a remedy for the pay notice regulations – because of the "'need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices'"; and

(3) Section 146-2.2's penalties already provide "strong incentive" to comply with the pay notice regulations.

*Id.* at *2-3. Accordingly, the court held that deference was required and the loss of the tip credit was not an available remedy. *See also Franco v. Jubilee First Ave. Corp.*, 2016 U.S. Dist. LEXIS 114191, *39-40 (S.D.N.Y. Aug. 25, 2016) (*sua sponte* recognizing the potential application of the Opinion Letter, but holding that defendants had waived any arguments regarding its applicability); *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, 2016 U.S. Dist. LEXIS 155116, at *38 n.11 (S.D.N.Y. Nov. 7, 2016) ("The NYLL has similar notice provisions . . . although the New York Department of Labor (NYDOL), as well as at least one other court in this district, has interpreted [those provisions] to permit employers lawfully to claim the tip credit if they can prove that their employees understood that they were being paid pursuant to the tip credit minimum wage (internal quotation omitted)."). The Court should make the same finding here.

As a final matter, despite the evidence that Defendants have already been able to marshal with respect to notice of the tip credit, any motion that is broader than simply whether Plaintiffs received Section 195(1) wage notices is premature. Defendants have not had the opportunity to request any discovery on this issue. Nor have they been able to search for additional Notices to Team Members Who Receive Tips that are not contained in personnel files or other sources of written notice of the tip credit. (56.1 ¶¶ 46-48). Because it is actual notice, and not necessarily

28

what was contained on the notices themselves that are relevant in this regard, additional discovery in not only appropriate, but necessary.  For these reasons, the Court should simply deny Plaintiffs' motion for partial summary judgment on this issue as premature.

## V.

## THE COURT SHOULD NOT CERTIFY EITHER OF PLAINTIFFS' PROPOSED SUBCLASSES BECAUSE PLAINTIFFS CANNOT MEET ALL RULE 23 REQUIRMENTS

Plaintiffs claim that the questions of whether they properly received notice of the tip credit and received Section 195(1) wage notices are capable of being resolved via representative evidence.  Nothing is further from the truth.

### A.  The Overall Standard For Certifying A Rule 23 Class

A court may only certify a class action if, "after a rigorous analysis," it is satisfied that Plaintiff have met the Rule 23 requirements by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Initial Pub. Offerings Sec. Litig. v. Merrill Lynch & Co., Inc.* ("*In re IPO*"), 471 F.3d 24, 33 (2d Cir. 2006) (internal quotation marks omitted).  The Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement is met." *In re IPO*, 471 F.3d at 41.

In particular, Plaintiffs must first prove their compliance with the (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation prerequisites under Rule 23(a).  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).[14]  Then, Plaintiffs must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)," *id.*, in this case – predominance and superiority.  Although the "same analytical principles govern Rule 23(b) . . .

---

[14] At this stage, Defendants do not dispute that (1) numerosity is satisfied, or (2) Plaintiffs' counsel is adequate.

Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* (internal citations omitted).

**B.    The Court Should Deny Certification Because Plaintiffs Have Proposed Impermissible Fail-Safe Classes**

As an initial matter, Plaintiffs' motion for Rule 23 class certification immediately fails because Plaintiffs have proposed impermissible fail-safe classes.

A fail-safe class "is one whose definition 'shields the putative class members from receiving an adverse judgment . . . .'" *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011)). *See also Kamar v. Radio Shack Corp*., 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."). Such classes "should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Spread Enters., Inc. v First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) (citing *Mazzei*, 288 F.R.D. at 55).

Here, Plaintiffs have split their wage notice classes into two subclasses:

> **SUBCLASS A:**    All current and former employees of Apple-Metro from January 1, 2011 through the present who were paid tip-credit reduced (sub-minimum wage) hourly rates but were not provided with compliant written notices containing the information required under NYCCRR tit. 12, § 146-2.2, who are thereby owed additional pay per hour worked based on Apple- Metro's failure to pay minimum wages.

> **SUBCLASS B:**    All current and former employees of Apple-Metro from January 1, 2011 through the present who were not provided with compliant wage notices as required by NYLL Section 195(1), and who are thereby entitled to the statutory penalties set forth in Section 195(1).

(Pl. Br. at 37).  Both of these classes, however, presuppose Defendants' liability: Subclass A

only includes employees who "were not provided with compliant written notices" and Subclass B only includes employees who "were not provided with compliant wage notices." If the Court certifies this case under these subclasses, "plaintiffs might effectively litigate their claims without the risk of an adverse judgment: either they "win" and are in the class, which by definition cannot lose its claim, or they "lose" and are outside the class, and thus are not bound by an adverse decision." *Ruiz v Citibank, N.A.*, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015). Moreover, "such a class definition would require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation." Accordingly, the Court must deny class certification for this reason alone.

**C.**     <u>The Court Should Deny Certification Because Plaintiffs Cannot Satisfy All the Requirements of Fed. R. Civ. P. 23</u>

Assuming, *arguendo*, that the Court does not deny class certification of fail-safe subclasses outright, the Court should *still* deny class certification because Plaintiff cannot meet Rule 23's commonality, typicality, class representative adequacy, and predominance requirements.

**1.**     **The Named Plaintiffs For Subclass A Are Inadequate Class Representatives**

First, the named Plaintiffs are inadequate representatives for the Subclass A because they don't have standing to bring claims on behalf of a class.

A named plaintiff must possess the same interest and have suffered the same injuries as the class he or she purports to represent. *In Re Literary Works In Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 249 (2d Cir. 2011); *Ruggles v. Wellpoint*, Inc., 272 F.R.D. 320, 333 (N.D.N.Y. 2011) ("class representative must be part of the 'class' that she purports to represent."). *A priori*, the named plaintiffs here – Dove, Marin, Lebron, and Hanisch

31

– must be able to prove that they were injured because they either did not receive notice of the tip credit, or were not given the requisite Section 195(1) forms. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("Under well settled Supreme Court precedent, in order to demonstrate standing, a plaintiff must show . . . an injury in fact . . . ." (internal quotation marks and citations omitted)). *See also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (explaining that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" (internal quotation marks and citations omitted)).

Here, as explained above, all tipped employee named Plaintiffs – Dove, Hanisch, and Lebron – received notice of the tip credit. Accordingly, they have no standing to bring Subclass A, and, accordingly, do not qualify as adequate class representatives, as they can't even bring these claims on behalf of themselves. Therefore, Plaintiffs' motion to certify Subclass A must be denied.

### 2. Plaintiffs' Wage Notice Claims Are Neither Common Nor Typical Of Both Putative Subclasses and Individual Issues Predominate over Common Ones

Second, Plaintiffs cannot possibly meet the commonality, typicality, or predominance requirements for either Subclass because the Named Plaintiffs' evidence (nor so-called representative class-wide evidence) will not generate "common answers" – just individualized issues.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[t]his does not mean merely that they have all suffered a violation of the same provision of law," but that "[t]heir claims must

depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Stated differently, "[w]hat matters to class certification is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 2551 n.6 (internal citation omitted).

Similarly, typicality "requires that the claims of the [named plaintiffs] be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). "[T]o satisfy the typicality requirements of Rule 23(a)(3), plaintiffs must demonstrate that other members of the purported class have suffered the same or similar grievances." *Kapiti v. Kelly*, 2008 U.S. Dist. LEXIS 64154, at *17 (S.D.N.Y. Aug. 18, 2008) (internal citations omitted). Moreover, when a named plaintiff's claims are subject to unique defenses, his claims are not typical. *See, e.g., Rocco v. Nam Tai Elecs., Inc*., 245 F.R.D. 131, 135-36 (S.D.N.Y. 2007).

Finally, in addition to the requirements under Rule 23(a)(2), in order to certify a class action under Rule 23, Plaintiffs have to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." FRCP 23(b)(3). This "requirement is [only] satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)

33

(emphasis added).  The Supreme Court's decision in *Comcast* imposes an enhanced "duty to take a 'close look'" into whether common issues actually predominate under Rule 23(b)(3), including whether the action can be tried in a representative fashion.  *Comcast*, 133 S. Ct. at 1432.

Here, there is no common contention that is capable of class-wide resolution, the Named Plaintiffs have not suffered the same grievance (if any), and trying the case based upon representative proof would be impossible.

It is true that Apple-Metro had common policies and practice of providing (1) notice of the tip credit (Subclass A), and (2) Section 195(1) wage notice claims (Subclass B).  (56.1 ¶ 51, 53, 70).  Apple-Metro, however, left both of these tasks to restaurant-specific management to accomplish, and those managers, in certain instances, allegedly deviated from those policies and practices.  (*Id.* ¶¶ 50-52, 55-65, 71-72).  Simply put, there is no set pattern or predictability to (1) how and whether tipped employees received proper notice of the tip credit (Subclass A), or (2) which employees received and signed all required wage notice forms (or refused to sign the forms), which forms were preserved and placed in personnel files, and which personnel files were properly preserved (Subclass B).  (*Id.* ¶¶ 60 71-78).  This lack of pattern or predictability not only affects all the members of both subclasses, but also the Named Plaintiffs seeking to represent them.

With respect to Subclass A, some employees received written notice of the tip credit via Section 195(1) forms, the Notice to Team Members Who Receive Tips, and/or employee handbook.  (*Id.* ¶¶ 73-77).  Others, however, allegedly did not receive written notice, but received oral notice.  (*Id.* ¶ 78-79).  Still others allegedly did not receive any notice of the tip credit – whether it be written or oral – and thus cause Defendants to lose the right to take the tip credit.

There is simply no common or representative evidence that can answer the question of whether an employee received notice of the tip credit, "in one stroke," generating a common answer. *Dukes*, 131 S. Ct. at 2551. For plaintiffs who did not receive written notice of the tip credit, in particular, only individualized testimony will be able to provide the evidence required to resolve those plaintiffs' claims. This is fatal to Plaintiffs' certification of Subclass A. *See Gardner v. Western Beef Props.*, 2011 U.S. Dist. LEXIS 146467, at *10 (E.D.N.Y. June 16, 2008) (class certification denied despite plaintiffs' "common questions" because the answers would require "individualized examination[s]" of each class member); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382, at *23 (W.D.N.Y. Oct. 13, 2005) (same); *Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151, at *51 (S.D.N.Y. May 1, 2012) (same); *Edwards v. Publrs. Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 188-89 (S.D.N.Y. 2010) (same)[15]

Similarly, with respect to Subclass B, some putative class members received the requisite Section 195(1) notices, while others allegedly did not. (56.1 ¶¶ 53-65; Graff Exs. 12-73). Some forms were filled out correctly while others had an incorrect overtime hourly rate. (56.1 ¶¶ 63, 66; Graff Exs. 12-73). By looking at one employee's Section 195(1) forms, there is no way to determine whether the next employee's forms will be preserved and/or properly completed. In cases such as these, there is no "representative evidence." The only way to determine liability is to go through each and every subclass B member's personnel files – over 14,000 – to review the wage notice forms found within. Thereafter, Defendants should also be able to question each

[15] Plaintiffs may argue that common evidence such as Defendants' common ownership and manager training materials provide sufficient evidence of commonality. *Dukes*, however, instructs that plaintiffs must state a "common contention" that is "central to the validity" of their claims. *Dukes*, 131 S. Ct. at 2551. These contentions are *not* central to the validity of Plaintiffs' claims that they did not receive notice of the tip credit or their Section 195(1) notices – they are not even relevant. *See Edwards*, 268 F.R.D. at 186 (holding that there was nothing in plaintiff's proffered common proof that supported a finding of liability).

member to determine if a Section 195(1) notice was signed, even if Defendants no longer have a copy.  All of this defeats the purpose of common evidence, and proves that class certification must be denied for this subclass as well.

Finally, the ability of Defendants to potentially put forth an affirmative defense to the claims of both sub-classes is fatal to Plaintiffs' class certification motion.  As set forth in Point IV.C.1, *supra*, the affirmative defense requires a showing that each individual received the proper wages notwithstanding any alleged issues with the notice.  Defendants' assert that all individuals were, in fact, paid the proper wages at all times.  Unless Plaintiffs are willing to stipulate to this fact – which is unlikely given that it would preclude a recovery – this is something that requires additional discovery and necessitates an individualized inquiry.  There are simply no alternatives in this regard.

In *Gregory v. Stewart's Shops Corp*., 2016 U.S. Dist. LEXIS 89576, at *98-99 (N.D.N.Y July 8, 2016), defendant had a lawful policy of providing wage notices. Plaintiffs in that case, however, claimed that defendant did not follow its policy and violated Section 195(1).   In denying class certification, the Court noted that Defendants were asserting an affirmative defense.  The Court held:

> [T]he plaintiffs are clearly claiming that they did not receive all wages they were due . . . .  Thus, resolution of the affirmative defense to plaintiffs' wage notification claim will implicate the same concerns about individualized proof that precluded class certification of plaintiffs' NYLL off-the-clock claims. It is clear in this Circuit, that a Rule 23 class action may be denied if individualized issues relating to a defense in a wage and hour action predominates over issues of law and fact common to the proposed class.

*Id.* (citing *Myers*, 624 F.3d at 551).  The instant case is indistinguishable.  Since "mini-trials" are an eventuality here, *see, e.g.*, *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002); *Vinole v. Countrywide Home Loans, Inc.*,  571 F.3d 935, 947 (9th Cir. 2009), as they would have

been in *Gregory*, the Court must deny Plaintiffs motion for class certification as a whole.

## VI.
## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs'
partial motion for summary judgment in its entirety, *sua sponte* grant summary judgment in
favor of Defendants on some or all of Plaintiffs' claims, deny plaintiffs' motion for class
certification under Rule 23, and order such other and further relief as the Court deems just and
proper.

Date:   December 16, 2016
        New York, New York

s/Craig Benson

Craig R. Benson, Esq.
Christine L. Hogan, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
(212) 583-9600
cbenson@littler.com
clhogan@littler.com

*Attorneys for Defendants*

37