UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLOS MARIN, et al., on behalf of themselves
and all others similarly situated,

                              Plaintiffs,                  **REPORT AND**
                                                        **RECOMMENDATION**

    - against -                                              12 CV 5274 (ENV) (CLP)

APPLE-METRO, INC., et al.,

                           Defendants.
------------------------------------------------------------X
SHAUNTA DOVE, on behalf of herself and all
others similarly situated,

                              Plaintiff,                  **REPORT AND**
                                                        **RECOMMENDATION**

    - against -                                              13 CV 1417 (ENV) (CLP)

APPLE-METRO, INC., et al.,

                           Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

      On October 22, 2012, Carlos Marin, on behalf of himself and all others similarly situated,

filed a Complaint against Apple-Metro, Inc., a corporation consisting of Applebee's Restaurants

located in Manhattan, the Bronx, Brooklyn, Queens, Staten Island, Westchester and Rockland

Counties ("Apple Metro"). (Docket No. 12 CV 5274). The Complaint also names as defendants

Jamaica Apple, LLC, AM NYCF, LLC, and individual defendants Zane Tankel, Roy Raeburn,

and Kirk Samlal. The Complaint alleges that defendants violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL") §§ 195, 215, and 650 et

seq., by altering the employees' electronic time records, failing to pay the non-managerial

1

employees the proper minimum and overtime wages, and providing no or inaccurate wage statements and paystubs.

On March 12, 2013, plaintiff Marin filed an Amended Complaint, adding Aubrey Daly, Roland Raymond, Derek Palmer,[1] Susy Quintero, and Chris Antoine as defendants.  On March 12, 2013, plaintiff Marin, along with Kenny Lebron and Martina Hanisch, on behalf of themselves and all other similarly situated (collectively, the "Marin plaintiffs"), filed a Second Amended Complaint, adding as defendants a number of individual restaurant branches[2] (along with the existing defendants, collectively, "defendants"), alleging claims that these new defendants also violated the FLSA and the NYLL by altering the employees' electronic time records and failing to pay the non-managerial employees the proper minimum and overtime wages.  (Marin Compl.[3] ¶¶ 1, 2, 62).

On March 18, 2013, Shaunta Dove (the "Dove plaintiff"), on behalf of herself and all others similarly situated, filed a Complaint in a related action against defendants Apple-Metro,

---

[1]     The Court notes that Derek Palmer's name is spelled alternatively as "Derrick Palmer" and "Derek Palmer" in the parties' document production and filings.

[2]     The named defendant restaurant branches include:  117th Apple, LLC, 42nd Apple, LLC, AM NYCF, LLC, AT Apple, LLC, Airmont Apple, LLC, Astoria Apple, LLC, BTM Apple, LLC, Bay Plaza Apple, LLC, Bay Terrace Apple, LLC, Bed-Stuy Apple, LLC, Broadway Apple, LLC, Cortlandt Apple, LLC, Cross Country Apple, LLC, Crossroads Apple, LLC, EB Apple, LLC, Expressway Apple, LLC, Flatbush Apple, LLC, Fordham Apple, LLC, Fresh Meadows Apple, LLC, Harlem Apple, LLC, Hawthorne Apple, LLC, Jamaica Apple, LLC, Kisco Apple, LLC, Mamaroneck Apple, LLC, New Dorp Apple, LLC, New Rochelle Apple, LLC, Outerbridge Apple, LLC, Derrick Palmer, Port Chester Apple, LLC, Queens Center Apple, LLC, Rego Park Apple, LLC, Riverdale Apple, LLC, S.I. Apple, LLC, SVC Apple, LLC, Sheepshead Apple, LLC, Triangle Apple, LLC, and White Plains Apple, LLC.

[3]     Citations to "Marin Compl." refer to the Marin plaintiffs' Second Amended Complaint, filed on  June 28, 2013, attached as Exhibit 3 to the Declaration of Craig R. Benson in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Class Certification, and Appointment of Class Counsel ("Benson Decl."), filed on December 17, 2016.

Inc., Jamaica Apple, LLC, AM NYCF, LLC, and individual defendants Zane Tankel, Roy Raeburn, Kirk Samlal, Aubrey Daly, Roland Raymond, Derek Palmer, Susy Quintero, and Chris Antoine, in which she alleged that defendants violated the FLSA and the NYLL by, among other things, clocking employees out of work while they were still working, altering employees' time records, paying employees with free movie tickets, and providing no or inaccurate wage statements and paystubs. (Docket No. 13 CV 1417). On September 24, 2013, Dove filed an Amended Complaint, naming as defendants the same defendants as in the Marin Complaint, but adding the allegation that defendants failed to pay "tipped" hourly workers proper minimum and overtime wages in violation of the FLSA and the NYLL. (Dove Compl.[4] ¶¶ 1–4).

Currently before the Court is a motion for partial summary judgment, pursuant to Rule 56(1) of the Federal Rules of Civil Procedure, filed by the Marin plaintiffs, the Dove plaintiff, and 60 opt-in plaintiffs' (the "Moving Plaintiffs"). Also before the Court is a motion for class certification of two subclasses pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure filed by the Marin plaintiffs and the Dove plaintiff. The motions were referred to the undersigned by the Honorable Eric N. Vitaliano to prepare a report and recommendation.

FACTUAL BACKGROUND

A.  Marin Allegations

The Marin plaintiffs allege that defendants violated the FLSA and the NYLL by failing to pay nonmanagerial employees the proper amount of overtime and spread-of-hours pay through an illegal scheme to alter the number of hours worked by nonmanagerial employees. (Marin Compl.

---

[4]     Citations to "Dove Compl." refer to the Dove plaintiff's First Amended Complaint, filed on September 24, 2013, attached as Exhibit 5 to the Benson Decl.

3

¶¶ 99, 101, 120).  Specifically, the <u>Marin</u> plaintiffs allege that Apple-Metro directed its restaurants to reduce the cost of labor to a percentage of the restaurants' gross income, causing restaurant managers to adjust the number of hours worked by non-managerial employees in their time-keeping system so that those employees would not have to be paid overtime compensation or spread of hours compensation.  (<u>Id.</u> ¶¶ 99–101, 106–10, 114–21).  Of note for the instant motions, the <u>Marin</u> Complaint alleges that "[i]n clocking employees out of work, requiring them to work without clocking in and readjusting their hours, Defendants issued pay stubs/wage statements that did not accurately reflect [plainitffs'] hours" in violation of Section 195 of the NYL ("Section 195").  (<u>Id.</u> ¶¶ 174, 177).  Thus, as part of the scheme, the employees would receive earning statements that did not fully reflect the number of hours worked and did not comply with the NYLL.  (<u>Id.</u> ¶¶ 99–101, 106–10, 114–21).

The <u>Marin</u> Complaint sought to define a putative Rule 23 class for purposes of their claims under the NYLL as:

> Current and former employees of Defendants who perform or performed work as non-managerial employees during the statutory period within the State of New York, who (1) were not compensated for each hour worked at their straight, regular hourly rate; (2) worked in excess of forty (40) hours per week and were not paid overtime compensation; (3) worked in excess of ten (10) hours per day and were not paid spread of hours compensation; and/or (4) were issued inaccurate pay stubs/wage statements.

(<u>Id.</u> ¶ 68).

## B. <u>Dove Allegations</u>

The <u>Dove</u> Complaint alleges that defendants engaged in an illegal tip-sharing scheme that affected tipped employees who worked at Apple-Metro's restaurants, including servers, hosts,

hostesses, and bartenders, in violation of the FLSA and NYLL.  (Dove Compl. ¶¶ 1, 2).  The Dove plaintiff alleges that servers were required to pay 3% of their gross tips to the managers, who would distribute this money to the hosts, hostesses, and bartenders.  (Id. ¶ 3).  The Dove plaintiff further alleges that the tip share would often result in their pay being below minimum wage, and that when the computer system notified employees of their insufficient wages, the managers would override the system.  (Id. ¶ 5).  The Dove plaintiff also alleges that the managers would alter the records of what employees had received in tips.  (Id. ¶ 9).

The Dove plaintiff alleges that she was paid a tip-credit hourly wage of $5.00, and that even with her tip earnings, she was often paid less than the federal minimum wage.  (Pls.' 56.1 Stmnt[5] ¶ 18 (citing Dove Decl.[6] ¶¶ 4, 17–19)).  The Dove Complaint alleges that "Defendants took credit for an inaccurate amount of employee tips and issued pay stubs/wage statements reflecting these inaccurate tips."  (Dove Compl. ¶ 173).  The Dove plaintiff claims that defendants provided her with a wage notice when she was hired pursuant to Section 195(1) of the New York Labor Law which indicated that her "regular rate of pay" was $5.00 per hour, and that her "overtime rate of pay" was $7.50 per hour.  (Pls.' 56.1 Stmnt ¶ 19).  The Dove Complaint further alleges that "[d]efendants failed to provide [plaintiffs] with proper pay stubs/wage statements" in violation of Section 195 of the NYLL.  (Dove Compl. ¶¶ 174, 176).

The Dove Complaint sought to define a putative Rule 23 class for purposes of their claims

---

[5]     Citations to "Pls.' 56.1 Stmnt" refer to plaintiffs' Statement of Facts Pursuant to Rule 56.1 of the Eastern District of New York's Local Rules, filed on November 4, 2016.

[6]     Citations to "Dove Decl." refer to the Declaration of Shaunta Dove, attached as Exhibit 6 to the Declaration of Ariel Y. Graff, Esq. in Support of Plaintiffs' Motion for Partial Summary Judgment Class Certification and Appointment of Class Counsel ("Graff Decl."), filed on November 4, 2016.

under the NYLL as:

> Current and former servers, hosts, hostesses and bartenders of Defendants who perform or performed work as non-managerial employees during the statutory period within the State of New York, who (1) were deprived of sums owed to them by Defendants' illegal tip sharing scheme; (2) were not paid the minimum hourly required rate of pay per hour worked; and/or (3) were issued inaccurate pay stubs/wage statements pursuant to which Defendants took credit for inaccurate employee tips.

(Id. ¶ 67).

Defendants deny the Dove plaintiff's allegations and contend that the Dove plaintiff was always either paid in excess of the applicable minimum wage or was paid "tip makeup pay" to ensure that she was always paid at least the applicable minimum wage. (Defs.' 56.1 Stmnt[7] ¶¶ 18, 19).

## PROCEDURAL HISTORY

On January 14, 2014, the Marin and Dove actions were consolidated. On July 29, 2014, the Court granted the Marin plaintiffs' and Dove plaintiff's (together, "plaintiffs") motion for conditional collective action certification. On approximately February 18, 2015, plaintiffs sent Notice and Consent forms to the putative class members. (Defs.' 56.1 Stmnt ¶ 36; Benson Decl., Ex. 10). According to plaintiffs, 1,104 individuals have opted in to the collective action. (Pls.' Mem.[8] at 2).

---

[7]    Citations to "Defs.' 56.1 Stmnt" refer to Defendants' Local Rule 56.1 Counterstatement, filed on December 19, 2016.

[8]    Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, Class Certification, and Appointment of Class Counsel, filed on November 4, 2016.

Discovery in this case is ongoing.  On or about June 16, 2015, plaintiffs served defendants with their first set of document requests.  (Defs.' 56.1 Stmnt ¶ 38; Benson Decl., Ex. 14).  Among the documents that plaintiffs requested were:  1) all named plaintiffs' and opt-in members' personnel files and compensation records (Benson Decl., Ex. 14 ¶¶ 13, 14); 2) documents relating to employment or personnel policies, including compensation, benefits, and tips (id. ¶ 15); 3) wage records that defendants were statutorily required to keep for all named plaintiffs and opt-ins (id. ¶ 31); and 4) documents concerning good faith efforts made by defendants to comply with federal or state wage and hour laws, including the FLSA and the NYLL.  (Id. ¶ 36).  In response to plaintiffs' request for documents concerning the named plaintiffs and opt-ins, including their personnel files and compensation records, defendants agreed to produce a sample set of both personnel files and compensation records.  (Pls.' Mem. at 22; Benson Decl., Ex. 15 at 2).  According to plaintiffs, defendants produced the personnel files of sixty (60) opt-in plaintiffs.  (Pls.' Mem. at 2; see also Pls.' 56.1 Stmnt ¶¶ 24, 25, 26).  Among other items produced within the personnel files, defendants produced Section 195(1) notices for the Dove plaintiff, for Marin plaintiffs Lebron and Marin, and for the sixty opt-ins.[9]  Plaintiffs assert that "[v]irtually every one of these sixty NYLL § 195(1) notices misstate the respective employees' statutorily mandated minimum and overtime hourly wage rates" and that twenty-two (22) of these notices omit some or all of the information required by the NYLL.  (Pls.' 56.1 Stmnt ¶¶ 24, 25, 26).

On June 6, 2014, Atavia Thomas ("Thomas") filed a collective action against defendant Apple-Metro and two of its executives in the Southern District of New York.  (Pls.' Mem. at 9;

---

[9]      As discussed infra, the parties have provided the wage notices distributed to all sixty-four plaintiffs who are seeking summary judgment other than named Marin plaintiff Martina Hanisch. (See Graff Decl., Exs. 12–73; Benson Decl., Ex. 28).

7

Benson Decl., Ex. 6). The Honorable Valerie E. Caproni dismissed Thomas's claims in the

Southern District, explaining that Thomas's lawsuit and the Marin and Dove lawsuits "seek

identical relief, assert nearly identical claims for minimum wage, overtime and tipping violations

under Federal law, and have been filed in a sister New York district court with respect to the same

class of plaintiffs as against the same core group of defendants." Thomas v. Apple-Metro, Inc.,

No. 14 CV 4120, 2015 WL 505384, at *4 (S.D.N.Y. Feb. 5, 2015). Thereafter, on March 10,

2015, Thomas filed a motion to intervene in the Marin and Dove actions, claiming inter alia that

defendants failed to supply plaintiffs with "wage notices, as required by NYLL, Article 6,

§ 195(1). (Thomas Prop. Compl.[10] ¶ 196; see also Thomas Mot.[11]).

On September 16, 2015, the undersigned issued a Report and Recommendation

recommending that Thomas's motion to intervene be denied, citing Judge Caproni's decision in

Thomas and further noting that "both plaintiffs and defendants agree that the claims plaintiffs

plan to litigate are inclusive of all potential damages that could be awarded." (See Thomas

R&R[12] at 17). On February 24, 2016, Judge Vitaliano adopted the Report and Recommendation

and denied Thomas's motion to intervene. (Thomas Order[13]).

In September 2016, the parties exchanged pre-motion conference letters to file the instant

---

[10]     Citations to "Thomas Prop. Compl." refer to the "[Proposed] Complaint in Intervention," attached as Exhibit B to the Declaration of Justin M. Swartz in Support of Motion to Intervene by Atavia Thomas, filed on March 10, 2015.

[11]     Citations to "Thomas Mot." refer to the Memorandum of Law in Support of Motion to Intervene by Atavia Thomas, filed on March 10, 2015.

[12]     Citations to "Thomas R&R" refer to this Court's Report and Recommendation, filed on September 16, 2015.

[13]     Citations to "Thomas Order" refer to Judge Vitaliano's Memorandum & Order, filed on February 26, 2016.

motion.  On October 13, 2016, Judge Vitaliano referred the pre-motion conference letters and anticipated motion to the undersigned.

Thereafter, on November 4, 2016, plaintiffs filed their motion for partial summary judgment on the named plaintiffs' and sixty opt-ins' (the "Moving Plaintiffs") claims for failure to pay minimum wages under the NYLL and for statutory damages based on defendants' failure to provide proper wage notices under Sections 195(1) and 198(1-b) of the NYLL.  Plaintiffs also sought certification of two subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure on those same claims.  On December 16, 2016, defendants filed their opposition to plaintiffs' motion and, on January 13, 2017, plaintiffs filed their reply.  On February 3, 2017, oral argument was held before the undersigned.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for partial summary judgment be granted in part and denied in part, and that plaintiffs' motion for class certification of two proposed subclasses be granted in part and denied in part.

## DISCUSSION

### PLEADING REQUIREMENTS

#### Whether the Complaints Plead State Law Minimum Wage and Wage Notice Violation Claims

Before considering whether the Moving Plaintiffs have satisfied their burden of showing that they are entitled to summary judgment on certain claims, defendants argue that the Court should first determine if the claims for which plaintiffs seek judgment were actually alleged in the

9

Complaints. (Defs.' Mem.[14] at 8). Specifically, defendants contend that the Moving Plaintiffs'
motion for partial summary judgment should be denied because the claims for unpaid minimum
wages under the NYLL and for statutory damages based on defendants' failure to provide a wage
notice statement as required by NYLL § 195(1), were not actually alleged in either the Marin or
the Dove Complaints. (Id.)

A. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short
and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
8(a)(2). The purpose of this rule is "to give the defendant fair notice of what the claim is and the
grounds upon which it rests." Keiler v. Harlequin Enters., 751 F.3d 64, 70 (2d Cir. 2014) (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ideal Steel Supply Corp. v. Anza, 652
F.3d 310, 323 (2d Cir. 2011)); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007). This
"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Vantone
Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co., No. 13 CV 7639, 2015 WL 4040882, at *3
(S.D.N.Y. July 2, 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rule 8 "does not
demand that a complaint be a model of clarity or exhaustively present the facts alleged."
Morrison v. Hoffmann-La Roche, Inc., No. 14 CV 4476, 2016 WL 5678546, at *4 (E.D.N.Y.
Sept. 29, 2016) (quoting Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)).
Rather, "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given." Wynder v.

---

[14]    Citations to "Defs.' Mem." refer to the Memorandum of Law in Opposition to Plaintiffs'
Motion for Partial Summary Judgment, Class Certification, and Appointment of Class Counsel,
filed on December 17, 2016.

McMahon, 360 F.3d 73, 79 (2d Cir. 2004).

The Second Circuit has defined "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata and identify the nature of the case so that it may be assigned the proper form of trial." Twombly v. Bell Atl. Corp., 425 F.3d 99, 107 (2d Cir. 2005), rev'd on other grounds, 550 U.S. 544 (2007) (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995)). The failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." Townsend v. Benjamin Enters., 679 F.3d 41, 57 (2d Cir. 2012) (citing Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988)).

Section 195(1) of the New York Labor Law requires employers to provide employees, at the time of hiring, a written notice in English and in the language identified by each employee as his or her primary language, containing: 1) the rate of pay and basis thereof (whether paid by hour, shift, day, week, salary, or other); 2) the allowance, if any, claimed as part of the minimum wage, including tip credit; 3) the regular pay day designated by the employer; 4) the name of the employer; 5) any "doing business as" names used by the employer; 6) the address of the employer's main office or principal place of business; 7) the employer's telephone number; and 8) any additional information as required by the Commissioner of the Department of Labor. NYLL § 195(1)(a). For all employees who are not exempt from overtime compensation, the notice must also state the regular hourly rate and overtime rate of pay. Id. Section 195(3) of the NYLL requires a wage statement to accompany each payment of wages. NYLL § 195(3).

Section 652 of the New York Labor Law sets forth the applicable minimum wage rates for New York State. NYLL § 652(1). The Hospitality Industry Wage Order further refines the

applicable minimum wage rates for hospitality industry workers by providing that "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2." 12 N.Y.C.R.R. § 146-1.3. Section 146-2.2, in turn, provides that the notice of the tip credit must be in writing, provided to the employee prior to the start of employment, and must include certain information, such as the employee's "employee's regular hourly pay rate, overtime hourly pay rate, the amount of the tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." 12 N.Y.C.R.R. § 146-2.2(a); see also discussion infra at 50–52.

## B. The Parties' Arguments

Plaintiffs argued in their initial papers supporting this motion for partial summary judgment that they had adequately pleaded both the wage notice claims and the minimum wage claims. (Pls.' Mem. at 18–28).

### 1. Wage Notice Claims

Turning first to plaintiffs' claims for statutory damages based on defendants' alleged failure to provide a proper wage notice pursuant to Section 195(1) of the NYLL, plaintiffs maintain that both the Marin and Dove Complaints properly pleaded those claims. (Pls.' Mem. at 26). Plaintiffs note that the Marin Complaint alleges that "Defendants willfully failed to provide Named Plaintiffs and Class Action Plaintiffs with proper pay stubs/wage statements . . . in violation of Labor Law § 195." (Id. (quoting Marin Compl. ¶¶ 175, 177)). As to the Dove Complaint, plaintiffs refer to the Seventh Cause of Action, which alleges a violation of Section

12

195 of the NYLL.  (Id. (citing Dove Compl. ¶¶ 169–76)).  While plaintiffs acknowledge that the allegations in the Seventh Cause of Action "do not differentiate between NYLL §§ 195(1) and 195(3)," they argue that "doing so is not necessary" in light of the "liberal pleading standard" of Rule 8, contending that the allegations in the Seventh Cause of Action "provide sufficient notice to Defendants that Plaintiffs pled claims under both NYLL §§ 195(1) and 195(3)."  (Id.)

Defendants respond that while plaintiffs did adequately plead a claim under the NYLL § 195(3) – requiring a wage statement to accompany each payment of wages – that claim is "legally and analytically distinct" from claims for statutory damages based on defendants' alleged failure to provide a valid wage notice prior to the start of plaintiffs' employment under the NYLL § 195(1).  (Defs.' Mem. at 8–10).[15]  To the extent that the Complaint alleges that defendants "violated NYLL § 195(1) by taking credit for an inaccurate amount of employee tips and issuing pay stubs/wage statements reflecting the inaccurate tips," those allegations "have nothing whatsoever to do" with defendants' alleged failure to provide a wage notice upon plaintiffs' hiring.  (Id. at 11 (citing Pls.' Mem. at 19, 26–28)).  Defendants argue that alleging a failure to pay tip makeup pay failed to put defendants on notice of a claim for a failure to provide a proper wage notice, "simply because the remedy – loss of the tip credit and reimbursement of the remaining minimum wage – is the same for both types of claims."  (Id. (citing Pls.' Mem. at 18–19)).

Moreover, defendants contend that plaintiffs are asking the Court to give them a "free pass

---

[15]    The Court notes that the Dove Complaint alleges violations of "Labor Law § 195" and does not solely refer to Section 195(3) of the New York Labor Law.  (Dove Compl. ¶¶ 169–176).  Moreover, the Dove Complaint alleges that defendants failed to provide "proper pay stubs/wage statements," the latter of which provided notice of plaintiffs' claims under Section 195(1).  (Id. ¶ 174).

on their failure to plead a separate and distinct Section 195(1) wage notice claim, simply because they alleged a violation of a different subsection of the same law," which they argue is improper. (Id. at 11–12 (citing Pls.' Mem. at 26–28; Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, No. 14 CV 8767, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016); Enzo Biochem, Inc. v. Amersam PLC, 981 F. Supp. 2d 217, 222–23 (S.D.N.Y. 2013); Caidor v. Potter, No. 02 CV 1486, 2007 WL 2847229, at *8 (N.D.N.Y. Sept. 26, 2007))).  They argue that the pleadings do not allege sufficient facts to put defendants on notice that plaintiffs were bringing claims under Section 195(1), such as that plaintiffs did not receive wage notices upon being hired, that the wage notices lacked certain categories of information, or that the wage notices were insufficient to permit defendants to take a tip credit.  (Id. at 10 (citing Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45–46 (2d Cir. 2007); Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, 2016 WL 5416498, at *8; Enzo Biochem, Inc. v. Amersam PLC, 981 F. Supp. 2d at  222–23; Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 407–08 (S.D.N.Y. 2000); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 118–19 (S.D.N.Y. 1997))).  They further note that neither the phrases "wage notice" nor "notice of the tip credit" are found in either the Marin or the Dove Complaints.  (Id. at 10–11) (citing Defs.' 56.1 Stmnt ¶¶ 1–22).

Plaintiffs challenge defendants' claimed lack of notice by raising several arguments.  First, plaintiffs point to defendants' Answers to both operative Complaints, which demonstrate that they were on notice of plaintiffs' Section 195(1) claims.  Both Answers pleaded the affirmative defense that "[a]t all times, Defendants reasonably believed in good faith that they provided Plaintiff with adequate notice of wage information pursuant to New York Labor Law § 195(1)." (Pls.' Mem. at 27 (citing Dove Answer at 34; Marin Answer at 36)).  Moreover, plaintiffs contend

14

that if defendants were unsure about the allegations in the Complaint, defendants could have filed

for a more definite statement.  (Id. at 25).

As to plaintiffs' argument that defendants could have moved for a more definite statement

pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, defendants argue that plaintiffs are

seeking to "flip the pleading standards on its head" when it is plaintiffs' responsibility to provide

sufficient notice of their causes of action. (Defs.' Mem. at 12).  In response to the assertion that

they included an affirmative defense relating to NYLL § 195(1), defendants explain that they did

this "simply out of extreme cautiousness because Plaintiffs actually plead a violation of Section

195(3) – not because they had notice of any Section 195(1) claim." (Id. at 14).  Thus, defendants

contend, their inclusion of this affirmative defense does not indicate that either Complaint put

them on notice of a claim under NYLL § 195(1).  (Id.)  Plaintiffs urge the Court not to credit

defendants' argument, noting that if such affirmative defenses had not been included in the

Answer and plaintiffs later made clear that they were bringing such a claim, defendants could

have amended their Answer to add this defense at that point. (Pls.' Reply[16] at 7–8).  Accordingly,

plaintiffs assert that defendants included these affirmative defenses because they were on notice

of plaintiffs' claims.  (Id.)

Second, plaintiffs also refer to defendants' responses to plaintiffs' requests for production

of documents, in which defendants produced wage notices that they allege were deficient under

New York law. (Pls.' Mem. at 22).  In addition to reiterating that "there is no legal support for

Plaintiffs' implication that a defendant can somehow obviate the need for a plaintiff to

---

[16]     Citations to "Pls.' Reply" refer to Plaintiffs' Reply Memorandum of Law in Further
Support of Plaintiffs' Motion for Partial Summary Judgment, Class Certification, and
Appointment of Class Counsel, filed on January 13, 2017.

sufficiently plead a cause of action in a complaint," defendants dispute plaintiffs' claim that defendants' production of Section 195(1) wage notices indicates that defendants were on notice of that claim. (Defs.' Mem. at 14–15). Defendants contend that they produced wage notices not in response to a specific request for those documents, but rather in response to plaintiffs' request for personnel files, which contained the wage notices. (Id.) Thus, defendants contend, the production of these notices as part of the personnel files does not indicate that they had actual notice of a claim under Section 195(1) of the NYLL. (Id. at 15–16).

Finally, plaintiffs note that the proposed complaint in Thomas specifically claimed that defendants failed to provide the plaintiffs with wage notices pursuant to NYLL § 195(1). (Pls.' Mem. at 22–23). Plaintiffs argue that in deciding the Thomas motion to intervene, this Court stated that "both plaintiffs and defendants agree that the claims [the Thomas] plaintiffs plan to litigate are inclusive of all potential damages that could be awarded." (Id. at 22–23 (citing Thomas R&R at 17, report and recommendation adopted, Thomas Order)). Accordingly, plaintiffs contend that "the Parties and the Court have already determined that these claims are present in these actions within the context of Thomas's motion." (Id. at 28).

Defendants dispute plaintiffs' contention that the Court's ruling in connection with the Thomas motion to intervene, or defendants' position in opposing that motion, indicates that defendants were on notice of the Section 195(1) claim. (Defs.' Mem. at 16). They note that plaintiffs did not point to any portion of the Court's decision that indicated that any of the complaints included a claim under Section 195(1), and that, in fact, the original Thomas complaint filed in the Southern District of New York did not contain a claim under Section 195. (Id. (citing Defs.' 56.1 Stmnt ¶ 43)). Accordingly, when Judge Caproni held that the Thomas

complaint and plaintiffs' pleadings here "assert[ed] nearly identical claims," defendants argue that Judge Caproni could not have been referring to a Section 195(1) claim. (Id. (citing Thomas v. Apple-Metro, Inc., 2015 WL 505384, at *4–5)).

While defendants refer to the original Thomas complaint in arguing that a Section 195 claim was not included, defendants point to the proposed Thomas intervenor complaint as a proper example of a Section 195(1) claim being stated. (Id. at 17). There it is specifically claimed that "Defendants have failed to supply Plaintiff-Intervener and the Class Members with wage notices, as required by NYLL, Article 6, § 195(1)." (Id.) However, they argue that even though they did not raise the new Section 195(1) claim in opposing intervention, that does not indicate that they conceded that such claims are, in fact, part of the instant action, because the standard on a motion to intervene is different. (Id. at 16–17).

### 2. Minimum Wage Claims

Defendants also contend that plaintiffs' Complaints failed to plead minimum wage violations. In response, plaintiffs argue that the allegations in the Dove Complaint, the affirmative defenses asserted by defendants in both the Dove and Marin actions, and this Court's prior rulings each confirm that defendants should be and are on notice of plaintiffs' minimum wage claim. (Pls.' Mem. at 18). First, they note that the Dove Complaint not only alleges violations of NYLL §§ 195 (Notice and Record-Keeping Requirements), 196-d (Gratuities), and 652 (Minimum Wage), but there are also claimed violations of 12 N.Y.C.R.R. § 146-2.15(2) (Tip Sharing), and the FLSA, 29 U.S.C. §§ 203 (Definitions) and 206 (Minimum Wage). (Id. at 18–19 (citing Dove Compl. at 2)). The FLSA claims contain a proposed collective action definition

17

which includes individuals seeking "to recover amounts owed to them . . . including the minimum hourly required rate of pay per hour worked." (<u>Dove</u> Compl. ¶ 61)).

Plaintiffs note that there are at least eleven (11) references in the <u>Dove</u> Complaint to claims to recover "the minimum hourly required rate of pay per hour worked." (<u>Id.</u> at 19 (citing <u>Dove</u> Compl. ¶¶ 61, 62, 67, 69, 71, 116, 126, 137, 148, 159, 166)). They further note that the <u>Dove</u> Complaint describes defendants' use of a tip credit to pay plaintiffs below the statutory minimum wage. (<u>Id.</u> (citing <u>Dove</u> Compl. ¶¶ 59, 60)). Accordingly, plaintiffs contend that the citations to the federal and state statutes requiring payment of minimum wages go "above and beyond" the applicable pleading requirements. (<u>Id.</u>) Moreover, in their Reply Memorandum, plaintiffs point to the portion of the <u>Dove</u> Complaint seeking to bring a collective action on behalf of current and former employees alleging that amounts are owed to them, "including the minimum hourly required rate of pay per hour worked," and a class action including the same claims as well as claims that defendants improperly sought credit for tips. (Pls.' Reply at 3 (citing <u>Dove</u> Compl. ¶¶ 61, 67)). Plaintiffs also note that the <u>Dove</u> Complaint alleges that "[k]nowing that a salary of $5.00 per hour is below the $7.25 per hour minimum wage under federal and state law, Defendants expected servers to make up the $2.25 difference in tips." (<u>Id.</u> at 3–4 (citing <u>Dove</u> Compl. ¶ 59)).[17]

As with the wage notice claims, plaintiffs contend that defendants' affirmative defenses in both the <u>Dove</u> and <u>Marin</u> actions indicate that they were on notice of plaintiffs' minimum wage

---

[17]    Plaintiffs reiterate their argument that if defendants believed that the <u>Dove</u> Complaint was ambiguous as to plaintiffs' minimum wage claims, they could have filed a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. (Pls.' Mem. at 25; <u>see</u> discussion <u>supra</u> at 15).

claims. (Pls.' Mem. at 19–21). Defendants' Eighteenth Defense in the <u>Dove</u> action asserts that

"Defendants made complete and timely payments of all wages due to Plaintiff [u]nder . . . the

New York Labor Law." (<u>Id.</u> at 21 (citing <u>Dove</u> Answer[18] at 34)). The <u>Marin</u> Answer contains the

same affirmative defenses. (<u>Marin</u> Answer[19] at 36). Plaintiffs claim that, based on these

affirmative defenses, they served on defendants discovery requests seeking, among other things,

payroll records and wage records that defendants were statutorily required to keep, as well as

documents concerning any and all good faith efforts made to comply with the FLSA and the

NYLL. (<u>Id.</u> at 21–22 (citing Graff Decl., Ex. 9 at 2)). Defendants' responses to plaintiffs'

document requests, which included a sample of opt-in plaintiffs' personnel files, contain wage

notices indicating that plaintiffs were not paid the proper minimum wage and evidence

defendants' understanding that plaintiffs were claiming they were not paid the adequate minimum

wage rate under the NYLL. (<u>Id.</u> at 22).

     Plaintiffs reiterate their argument that the Court's decision on the <u>Thomas</u> motion to

intervene confirms that defendants were aware of plaintiffs' minimum wage claims. (<u>Id.</u>) Given

that the proposed <u>Thomas</u> complaint claimed that defendants failed to pay the proper minimum

wage, plaintiffs maintain that defendants were on notice of plaintiffs' minimum wage claims. (<u>Id.</u>

at 23). Moreover, based on the Court's ruling in connection with the <u>Thomas</u> motion, plaintiffs

contend that it is the "law of the case" that plaintiffs pleaded minimum wage and wage notices

claims under the NYLL. (<u>Id.</u> (citing <u>Turner v. White</u>, 443 F. Supp. 2d 288, 295 (E.D.N.Y.

---

[18]    Citations to "<u>Dove</u> Answer" refer to the Answer to First Amended Complaint, filed on October 3, 2013.

[19]    Citations to "<u>Marin</u> Answer" refer to the Answer to Second Amended Complaint, filed on July 19, 2013.

2005))).

With respect to plaintiffs' contention that defendants' own actions demonstrate that they were actually on notice of the minimum wage claims, defendants respond that "these arguments are unavailing because they are legally insufficient, and, regardless, Plaintiffs mischaracterize the relevant facts." (Defs.' Mem. at 13). Defendants assert that "Plaintiffs do not cite any authority to support the legal theory that a defendant can somehow waive a plaintiff's obligation to sufficiently plead a cause of action in a complaint." (Id.)


C. Analysis

    1. Law of the Case

As an initial matter, the Court finds that the law of the case doctrine requires a finding that plaintiffs' minimum wage and wage notice violations under the NYLL are part of these actions. See In re Nassau Cty. Strip Search Cases, 958 F. Supp. 2d 339, 343 (E.D.N.Y. 2013) (citing In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991)) (explaining that "[u]nder the law of the case doctrine, a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation"). In 2015, when Atavia Thomas sought leave to intervene in these actions, she filed a proposed complaint which alleged that defendants were not permitted to take a tip credit on plaintiffs' wages based on their failure to meet the requirements of the FLSA and NYLL. (Thomas Prop. Compl. ¶ 10). Additionally, she stated causes of action for "New York Labor Law – Minimum Wage" and "New York Labor Law – Failure to Provide Annual Wage Notices." (Id. at 22, 27). The latter cause of action specifically referred to Section 195(1) of the NYLL and alleged that "Defendants have failed to supply

Plaintiff-Intervener and the Class Members with wage notices, as required by NYLL, Article 6, §
195(1)." (Id. ¶ 196).

In their opposition to Thomas's motion to intervene, defendants argued that the Marin and
Dove plaintiffs "are already seeking what Thomas would seek if allowed to intervene – loss of the
tip credit and payment of minimum wage and overtime to all relevant current and former
employees." (Defs.' Thomas Mem.[20] at 13). Although in arguing that "the claims in Thomas'
complaint are identical to the claims in the Dove complaint" defendants focused on "the failure to
pay proper minimum wage and overtime," they explicitly stated: "There is no difference in the
claims brought or the relief sought." (Id.) Thus, at the time defendants sought to preclude Ms.
Thomas from intervening in the case, they clearly understood the minimum wage and wage notice
claims to be part of the existing actions or they would not have represented to this Court that the
claims were "identical." Moreover, in denying Ms. Thomas' motion to intervene, the Court found
that "the claims [Ms. Thomas] plan[s] to litigate are inclusive of all potential damages that could
be awarded." (Thomas R&R at 17, report and recommendation adopted, Thomas Order).

Accordingly, because the proposed Thomas Complaint included claims for minimum
wage and wage notice violations under the NYLL and the Court has already held that all claims in
the proposed Thomas Complaint were included in the Marin and Dove actions, the law of the case
is that those claims are part of the instant actions.

### 2. Sufficiency of the Pleadings

Apart from the law of the case doctrine, the Court finds that the Dove Complaint

---

[20]    Citations to "Defs.' Thomas Mem." refer to Defendants' Memorandum of Law in
Opposition to Opt-In Plaintiff Thomas' Motion to Intervene, filed on April 27, 2015.

sufficiently put defendants on notice that plaintiffs were claiming violations of the minimum

wage and wage notice provisions of the NYLL.  While perhaps not a model of clarity, plaintiffs

were only required to provide a "short and plain statement of the claim showing that the pleader is

entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the

claim is and the grounds upon which it rests." Keiler v. Harlequin Enters., 751 F.3d at 70.  Here,

the Dove Complaint put defendants on notice of plaintiffs' minimum wage and wage notice

claims under the NYLL.

     As an initial matter, the introduction to the Dove Complaint references various sections of

the NYLL that relate to both minimum wage and wage notice violations.  (See Dove Compl. at 2).

The Dove Complaint alleges that defendants violated Sections 195, 196-d, and 652 of the NYLL,

as well as Section 146-2.15 of the New York Codes, Rules and Regulations.  (Id.)  These sections

include provisions relating to the requirement to provide accurate wage notices that include

paying the proper minimum wage, as well as the amount of a tip credit to be taken for tipped

employees, and the withholding or sharing of tips.

     As to the minimum wage violations, the Dove Complaint seeks to bring a class action

under the NYLL that includes defendants' employees who were "not paid the minimum hourly

required rate of pay per hour worked."  (Id. ¶ 69(c) (emphasis added)).   In paragraph 71 of the

Dove Complaint, plaintiffs clearly allege that defendants failed to pay plaintiff Dove "the

minimum hourly required rate of pay per hour worked" and took credit "for an inaccurate amount

of her tips."  (Id. ¶ 71 (emphasis added)).  Moreover, the Dove Complaint's Sixth Cause of Action

alleges a violation of Section 652 of the NYLL, claiming that "Defendants failed to compensate

Plaintiff and Class Action Plaintiffs the minimum hourly required rate of pay per hour worked of

$7.25 per hour." (Id. ¶ 166). It is unclear how these allegations, individually and in combination, could have failed to alert defendants that plaintiffs were asserting minimum wage violations. Accordingly, the Court finds that the Dove Complaint provides sufficient allegations to put defendants on notice of plaintiffs' claim that defendants failed to pay sufficient minimum wages in violation of the NYLL.

As to the wage statement claim under Section 195(1) of the NYLL, the Dove Complaint seeks to bring a class action on behalf of defendants' employees who "were issued inaccurate pay stubs/wage statements pursuant to which Defendants took credit for inaccurate employee tips." (Id. ¶ 67 (emphasis added)). The Complaint references Section 195 of the NYLL on the second page of the pleading, explaining that the action was brought "for violations of: (1) the New York Labor Law ('Labor Law') §§ 196-d, 652 and 195." (Id. at 2 (emphasis added). Moreover, the Seventh Cause of Action claims a violation of "Labor Law § 195." (Id. at 27). The Dove Complaint alleges that "Defendants failed to provide Plaintiff and Class Action Plaintiffs with proper pay stubs/wage statements." (Id. ¶ 174).

Defendants are correct that Section 195 contains two potentially applicable provisions: Section 195(1) requires an employer to provide employees with compliant wage notices prior to the start of their employment, and Section 195(3) requires that an employer provide pay stubs at the time wages are paid. See NYLL § 195. However, plaintiffs are not required to specify the precise provision of applicable law under which they seek to bring claims; rather, they are required to put defendants on notice of their claims. See Townsend v. Benjamin Enters., 679 F.3d at 57 (finding that defendants were not "prejudiced in any way" when the original complaint had not alleged employer liability, but the defendants "had notice" of the proposed jury charge). By

23

alleging a violation of Section 195 and referencing a failure to provide proper "wage statements," the Dove Complaint sufficiently put defendants on notice that plaintiffs were alleging a failure to provide compliant wage notices prior to the start of their employment, in violation of Section 195(1) of the NYLL. Indeed, the fact that the Dove Complaint differentiates between "wage statements" and "pay stubs" provides further indication that they were bringing claims under both provisions of Section 195.

With respect to plaintiffs' contention that defendants' behavior throughout the case demonstrates that defendants were on notice of plaintiffs' minimum wage and wage notice claims, the Court agrees that a party's conduct during the course of litigation cannot obviate the requirements of Rule 8 of the Federal Rules of Civil Procedure to adequately plead causes of action in the complaint. Nevertheless, because plaintiffs have met their burden under Rule 8 to put defendants on notice of their minimum wage and wage notice claims under the NYLL, defendants' assertion of an affirmative defense explicitly referencing Section 195(1) of the NYLL belies defendants' assertion that they lacked awareness of the claim.[21] Similarly, their brief setting forth arguments in opposing the Thomas motion to intervene concedes that both Dove and Thomas alleged a failure to pay minimum wages. (Defs.' Thomas Mem. at 13). Thus, it is difficult to see how defendants can now claim they were unaware of these minimum wage claims.[22]

---

[21]     With respect to defendants' argument that they only included an affirmative defense to claims brought under Section 195(1) of the NYLL "out of extreme cautiousness," the Court notes that defendants have not referenced any other affirmative defenses that they pleaded out of similar "extreme cautiousness" to claims that they contend were not included in either the Marin or Dove Complaints.

[22]     As to defendants' argument that their production of the wage notices does not demonstrate that they were on notice of plaintiffs' minimum wage or wage notice claims and they just

Accordingly, it is respectfully recommended that the district court find that plaintiffs

adequately pleaded claims for both unpaid minimum wages and wage notice violations under the

NYLL.[23]


## MOTION FOR SUMMARY JUDGMENT

Having determined that the wage notice violations and minimum wage claims are included

in this action, the Court turns to plaintiffs' motion for summary judgment on both claims.


I. Standing to Seek Summary Judgment on NYLL Claims

Defendants contend that the opt-in plaintiffs opted in to this case pursuant to a collective

action notice authorized under the FLSA, but they have not consented to join any claims under the

NYLL. (Defs.' Mem. at 19–20 (citing Saleem v. Corporate Transp. Grp., Ltd., 2014 WL

7106442, at *1; Bradford v. CVS Pharmacy, Inc., No. 12 CV 1159, 2013 WL 5587350, at *3

(N.D. Ga. Oct. 10, 2013))).  Therefore, defendants argue that, even if the pleadings do state

---

provided the wage notices in response to a request for personnel files, the Court notes that
plaintiffs specifically requested the production of "wage records Defendants have been statutorily
required to keep." (Benson Decl., Ex. 14 at 14).  The NYLL requires employers to preserve wage
notices provided to employees at the time of hiring for six (6) years.  NYLL § 195(1)(a).  Thus,
apart from plaintiffs' request for personnel files, the Section 195(1) wage notices were responsive
to plaintiffs' request for statutorily required wage records.  Again, because the allegations in the
Marin and Dove Complaints were sufficient to provide notice, it is unnecessary for the Court to
determine whether production of the wage notices alone would be evidence that defendants were
on notice of the Section 195(1) claim.

[23]      If the district court were to disagree with this analysis that Plaintiffs have adequately
pleaded claims for both unpaid minimum wages and wage notice violations under the NYLL, this
Court respectfully recommends granting leave for plaintiffs to amend their complaint to
separately allege both claims.  Plaintiffs note that discovery is "far from over," and that amending
their complaint "would in no way prejudice Defendants or delay these proceedings." (Pls.' Reply
at 4 n.3).

claims under the minimum wage and wage notice provisions of the NYLL, the only plaintiffs who have state law claims, and thus can move for summary judgment on those claims, are the named plaintiffs, and not the plaintiffs who opted in to the conditionally certified FLSA collective action. Id.

Plaintiffs respond that, by using the term "party plaintiffs" in the statutory provision of the FLSA authorizing collective action certification, "Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs." (Pls.' Reply at 9 (quoting Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643, at *3 (E.D.N.Y. Mar. 31, 2008))). Plaintiffs argue that "courts in this circuit recognize that opt-in plaintiffs have standing as NYLL plaintiffs as well, if the language of the opt-in plaintiffs' consent-to-join forms suggests an intent to join a lawsuit as to FLSA and NYLL claims alike." (Id. (citing Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 337)).

In determining whether plaintiffs who have opted into a collective action pursuant to the FLSA are also plaintiffs for purposes of state law claims, courts in this circuit look at the notice and consent forms that were sent to putative party plaintiffs to determine whether the notice limited the scope of opting in to only the FLSA claims.

In Hicks v. T.L. Cannon Corp., the court explained that "the issue is . . . whether in this case [the opt-in plaintiffs] have consented to pursuing state law claims." 35 F. Supp. 3d 329, 339 (W.D.N.Y. 2014). In Hicks, even though the consent forms stated that each opt-in plaintiff consented to be a plaintiff in "any Fair Labor Standards Act action of unpaid wages" and thus did not expressly provide that they were opting into any NYLL claims, the court found that the opt-in plaintiffs also opted into NYLL claims because the consent forms provided that the opt-in

26

plaintiffs "wish to preserve and pursue any claim that [they] may have to the greatest extent possible" and that they "expressly consent to the use of this consent form for purposes of making [them] a party plaintiff in any lawsuit and/or lawsuits that plaintiffs' attorneys have brought and/or may bring." Id. Thus, the court permitted plaintiffs who had opted in to an FLSA collective action to seek redress as to the NYLL claims that were brought in the lawsuit as well. Id.; see also Fengler v. Crouse Health Sys., Inc., 634 F. Supp. 2d 257, 263 (N.D.N.Y. 2009) (citing Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003)) (holding that a magistrate judge's decision that opt-in plaintiffs must be limited to seeking damages for claims under the FLSA was "contrary to law" and interpreting the FLSA to require that "once a potential plaintiff opts in, that person is a party to the action, not just to a claim"); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 90 (S.D.N.Y. 2001) (permitting opt-in plaintiffs who had opted into an FLSA collective action to have the "same rights" as the named plaintiffs as they pertained to state law claims in the case).

On the other hand, on a motion to amend a complaint after discovery had closed, the court in Briceno v. USI Services Group, Inc. held that the defendants did not have notice that opt-in plaintiffs were seeking to recover damages for violations of the NYLL where the collective action notices that were distributed provided that "this Notice relates only to the Fair Labor Standards Act claims." No. 09 CV 4252, 2016 WL 324964, at *5 (E.D.N.Y. Jan. 26, 2016); see also Saleem v. Corporate Transp. Grp., Ltd., No. 12 CV 8450, 2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014) (holding that opt-in plaintiffs only consented to join the suit as to claims under the FLSA and not under the NYLL and noting that class certification under the NYLL had already been denied). The Notice further advised recipients that "in the future, they might be advised in a

separate notice of any additional rights that they may have to recover under New York law."

Briceno v. USI Services Group, Inc., 2016 WL 324964, at *5.

Plaintiffs contend that the Notice and Consent forms in the instant case do not limit the scope of the opt-in plaintiffs' claims to those brought exclusively under the FLSA. (Pls.' Reply at 9). Rather, the forms do not distinguish between the FLSA and the NYLL claims, instead characterizing these actions as "Collective Action Lawsuits Regarding Wages." (Id. at 9–10 (citing Notice;[24] Consent[25])). Accordingly, plaintiffs argue that the "broad language" of the Notice and Consent forms, which do not limit the description to FLSA claims only, indicates that the opt-in plaintiffs have become plaintiffs for all claims in this action, including those brought under the NYLL. (Id.) Therefore, plaintiffs maintain that the opt-in plaintiffs have standing to join in this motion for partial summary judgment on NYLL claims. (Id.)

The Court agrees and finds that the scope of the Notice and Consent forms that were provided to the opt-in plaintiffs was not limited to the FLSA claims and, thus, the opt-in plaintiffs who joined this case are plaintiffs as to all claims contained in the Marin and Dove Complaints, not just those brought under the FLSA. As plaintiffs note, neither the Notice nor the Consent form makes any mention of either the FLSA or the NYLL. (See Notice; Consent). To the contrary, the Notice refers to the lawsuits as alleging violations of "federal and state law." (Notice at 2). Similarly, the Notices do not contain a waiver of just the FLSA claims. The Notice explains that, should an individual opt in and become a plaintiff pursuant to the terms of

---

[24]    Citations to "Notice" refer to the Notice of Collective Action Lawsuits Regarding Wages, attached as Exhibit A to plaintiffs' letter, filed on February 4, 2015.

[25]    Citations to "Consent" refer to the Consent to Join Collective Action Lawsuit(s) Regarding Wages, attached as Exhibit B to plaintiffs' letter, filed on February 4, 2015.

the Notice, that individual will "give up any rights to separately sue the Defendants about the same legal claims in these lawsuits." (Id. (emphasis added)).

The Consent form requires a putative plaintiff to check a box asking if they want to join either the Marin or Dove "lawsuit;" the form does not mention "FLSA claims." (Consent at 1). The Consent form further authorizes plaintiffs' counsel to act on the opt-in's behalf "in all matters relating to this action." (Id.) Therefore, because nothing in either the Notice or Consent forms limits the scope of the claims to which putative plaintiffs were opting in, the Court finds that plaintiffs who opted into the Marin and/or Dove actions did so with respect to all claims brought, not just those pursued under the FLSA.

Accordingly, the Court respectfully recommends that all Moving Plaintiffs—including the opt-in plaintiffs—be found to have brought minimum wage and wage notices claims under the NYLL.

## II. Legal Standard – Summary Judgment

The Moving Plaintiffs move for partial summary judgment on behalf of a limited number of members of the collective action class with respect to:  1) claims that the Moving Plaintiffs were not provided with the proper statutorily required wage notices pursuant to NYLL § 195(1); and 2) claims that defendants failed to properly pay minimum wages to the Moving Plaintiffs.

It is well-settled that a party moving for summary judgment has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102,

114 (2d Cir. 2010).  Since summary judgment is an extreme remedy, cutting off the rights of the

non-moving party to present their case to the jury, see Buck v. Cleary, 345 F. App'x 660, 662 (2d

Cir. 2009); Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter

v. City of New York, 612 F. Supp. 125, 133–34 (E.D.N.Y. 1985), the Court should not grant

summary judgment unless "it is quite clear what the truth is" and "there can be but one reasonable

conclusion as to the verdict." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. at 250; Poller v. Columbia Broad. Sys., Inc., 368 U.S.

464, 467 (1962)).  Indeed, "the mere existence of some alleged factual dispute between the

parties" alone will not defeat a properly supported motion for summary judgment.  Garden City

Apartments, LLC v. Xcel Plumbing of N.Y., Inc., – F. Supp. 3d –, No. 15 CV 1380, 2017 WL

193151, at *3 (E.D.N.Y. Jan. 18, 2017) (emphasis in original) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. at 247–48).

Once the moving party discharges its burden of proof, the party opposing summary

judgment has the burden of setting forth "specific facts showing that there is a genuine issue for

trial,' wherein 'a reasonable jury could return a verdict for the non-moving party.'"  International

Bus. Machs. Corp. v. BGC Partners, Inc., No. 10 CV 128, 2013 WL 1775367, at *4 (S.D.N.Y.

Apr. 25, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  A party opposing a

properly supported motion for summary judgment "may not rest upon the mere allegations or

denials of his pleading." Mitsubishi Motor Credit of Am., Inc. v. Country Motors LLC, No. 07

CV 3528, 2008 WL 3200248, at *2 (E.D.N.Y. Aug. 5, 2008) (quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248).  Although "[a]ll ambiguities must be resolved, and all inferences drawn, in

favor of the non-moving party . . . the non-moving party may not rely on mere conclusory

30

allegations nor speculation, but instead must offer some hard evidence showing that its version of

the events is not wholly fanciful." Adler v. Kent Vill. Housing Co., 123 F. Supp. 2d 91, 97

(E.D.N.Y. 2000) (citing D'Amico v. City of New York, 132 F.3d 145, 159 (2d Cir.), cert. denied,

524 U.S. 911 (1998); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996))) ; see also

Mhany Mgmt, Inc. v. County of Nassau, 819 F.3d 581, 621 (2d Cir. 2016).

Federal Rule of Civil Procedure 56 provides that, in moving for summary judgment or

responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed

must support the assertion by . . . citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose

a [summary judgment] motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated." Fed. R. Civ. P. 56(c)(4).  Rule 56's "requirement that affidavits be made on

personal knowledge is not satisfied by assertions made 'on information and belief.'" Patterson v.

County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) (citing Sellers v. M.C. Floor

Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)).  If assertions in an affidavit "are not based upon

the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and

conclusory statements," a court may strike those portions of the filing, or decline to consider those

portions that are not based on personal knowledge or are otherwise inadmissible. Serrano v.

Cablevision Sys. Corp., 863 F. Supp. 2d 157, 163 (E.D.N.Y. 2012) (citations omitted).  While the

Court need consider only the materials cited by the parties, it may consider any other materials in

the record in deciding a motion for summary judgment.  Fed. R. Civ. P. 56(c)(3).

### III.  Prematurity of the Instant Motion

Defendants contend that, even if the opt-in plaintiffs have standing to bring the instant

motion for partial summary judgment, such a motion is premature and defendants would be

prejudiced by having to defend state law claims as to the opt-in plaintiffs because they have "not

had an opportunity to take discovery on any of the Moving Plaintiffs' tip notice and wage notice

claims."[26]  (Defs.' Mem. at 20 (citing Briceno v. USI Servs. Grp., 2016 WL 324964, at *5)).

The Moving Plaintiffs contend that the summary judgment motion can be decided based

on the wage notice forms provided at the commencement of their employment that were already

produced in discovery.  (Pls.' Reply at 11).  Plaintiffs note that defendants have sole possession of

those forms which defendants actually produced to plaintiffs, as well as any additional forms that

may demonstrate proper notice of the tip credit, so it is unclear what additional discovery

defendants need on these claims which provide for statutory damages.  (Id.)  As to the minimum

wage violations, plaintiffs are only seeking a ruling limited to defendants' liability, which also

would be based on the wage notice forms.  (Id. at 10–11).  Essentially, the Moving Plaintiffs

argue that because the wage notices failed to comply with the NYLL, defendants were not entitled

to take credit for tips, and their own wage notices show that Moving Plaintiffs were not paid

proper minimum wages if defendants were not entitled to this tip credit.

The Court agrees with the Moving Plaintiffs.  As discussed above, all relevant discovery

as to whether defendants complied with Section 195(1) of the NYLL and whether defendants

---

[26]    The Court notes that defendants here fail to specify which facts are unavailable to them
that would be provided in further discovery.  See Fed. R. Civ. P. 56(d).

were entitled to claim a tip credit has been exchanged with regard to the Moving Plaintiffs. Indeed, defendants have already produced personnel files and relevant payroll records for the Moving Plaintiffs. Although a calculation of damages owed to an individual plaintiff would require further discovery, damages are not requested as part of this motion for partial summary judgment. Thus, as set forth below, the Court finds that the motion for partial summary judgment as to defendants' liability on the Moving Plaintiffs' minimum wage and wage notice claims is not premature.

IV. <u>Moving Plaintiffs' Claims Under Sections 195(1) of the New York Labor Law</u>

The Moving Plaintiffs seek summary judgment on their claim that defendants failed to provide proper notices of wages in violation of Section 195(1) of the NYLL, entitling them to statutory damages pursuant to Section 198(1-b). (Pls.' Mem. at 33–36). The Moving Plaintiffs contend that defendants "did not provide tipped workers with a wage notice at the time of hire and annually thereafter that complied with the requirements of NYLL § 195(1)(a)," specifically by failing to provide the proper regular and overtime rates of pay as required by the statute. (<u>Id.</u> at 33, 35–36).

A. <u>History of the Wage Notice Requirement</u>

Prior to April 9, 2011, Section 195(1) of the NYLL required an employer to "notify his or her employees, in writing, at the time of hiring of the rate of pay and of the regular payday designated by the employer." NYLL § 195(1), 2009 N.Y. Laws ch. 270 § 1 (effective Oct. 26, 2009) (amended by 2010 N.Y. Laws ch. 564 § 3). For employees eligible to receive overtime

33

compensation, the notices were required to state both the "regular hourly rate and overtime rate of pay." Id. Prior to April 9, 2011, the NYLL did not provide any remedy for employees who did not receive the required notice.

Effective April 9, 2011, Section 195(1) was amended to add a subsection (a), which provides that an employer must:

> [P]rovide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay.

NYLL § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3 (effective Apr. 9, 2011) (amended by 2014 N.Y. Laws ch. 537 § 1); see also Franco v. Jubilee First Ave. Corp., No. 14 CV 7729, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016).

At the same time Section 195(1) was amended, the legislature also amended Section 198(1-b) to provide that if an employee is not provided with the notice at the time of hire as required by Section 195(1), Section 198(1-b) permits the employee to recover statutory damages for the violation. NYLL § 198(1-b), 2010 N.Y. Laws ch. 564 § 7 (effective Apr. 9, 2011)

34

(amended by 2014 N.Y. Laws ch. 537 § 2). Thus, effective on April 9, 2011, an employee who

did not receive a notice complying with Section 195(1)(a) of the NYLL at the time of hire was

permitted to recover statutory damages of $50 per week that the violations continued, up to a total

of $2,500, pursuant to Section 198 of the NYLL. Id.; see also Franco v. Jubilee First Ave. Corp.,

2016 WL 4487788, at *13. In 2014, the requirement that the notice be provided annually on or

before February 1 was rescinded. Thus, since February 27, 2015, when the amendment became

effective, this notice need only be provided at the time of hiring. NYLL § 195(1)(a), 2014 N.Y.

Laws ch. 537 § 1 (effective Feb. 27, 2015).

As to violations of the notice requirement of Section 195(1), Section 198 at all relevant

times has provided for a penalty if an employer fails to provide the notice "within ten business

days of [the employee's] first day of employment." N.Y. Lab. L. § 198(1-b). Section 198 does

not, however, appear to provide for a monetary award to an employee for violations of the

subsequent annual notices that were also required by Section 195 beginning in 2011 until 2015,

when the annual notice requirement was rescinded. See id. §§ 198(1-b), 195(1)(a). Indeed,

several courts have held that there is no private cause of action for employees to enforce the

annual notice requirement that was in place from 2011 until 2015; under Section 198, only the

commissioner of the New York Department of Labor, on an employee's behalf, could have sought

a monetary award against an employer who violated the annual notice requirement. See, e.g.,

Krupinski v. Laborers E. Region Org. Fund, No. 16 CV 9923, 2017 WL 3267764, at *6 (S.D.N.Y.

July 31, 2017) (explaining that "Section 198 provides only the Commissioner of Labor, not

employees themselves, with a cause of action to enforce [Section 195(1)(a)]"); Yuquilema v.

Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014),

adopted by 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (observing that "[o]ddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years").

As a result, employees hired after April 9, 2011 may sue for damages under Section 198(1-b) if they were not provided with the initial wage notice upon hiring as required by Section 195(1)(a), but longer term employees, hired before this date, have no right to recover damages even though their employer failed to provide annual notices in violation of the statute. It seems profoundly unfair for the legislature "to confer a private right of action upon new employees, while depriving existing employees of the same right." Cuzco v. F & J Steaks 37th Street LLC, No. 13 CV 1859, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014). It is perhaps for this reason that the courts have not been uniform in their interpretation of Section 198(1-b). See Severino v. 436 W. L.L.C., No. 13 CV 3096, 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015). However, based on the plain text of the statute, and given the legislature's subsequent enactment of the revision in 2014 that removed the annual notice requirement, the Court concludes that Section 198(1-b) does not provide for damages for annual notice violations.

Additionally, in 2014, the legislature added an affirmative defense for employers in Section 198(1-b). Thus, since February 27, 2015, in an action brought under Section 198(1-b) to recover statutory damages for failure to provide proper wage notice, an employer may avoid liability by showing that: 1) it made "complete and timely payment of all wages due" to the employee who was not provided notice; or 2) it "reasonably believed in good faith that it was not required to provide the employee with notice." NYLL § 198(1-b), 2014 N.Y. ch. 537 § 2

(effective Feb. 27, 2015).

The Moving Plaintiffs seek summary judgment on their claim that defendants failed to provide proper wage notices under Section 195(1), relying on the files and records produced by defendants for the 64 plaintiffs and opt-ins, none of which contain the proper "overtime" and "regular" rates of pay required under NYLL and 12 N.Y.C.R.R. § 146-1.3.

### B. Analysis of Wage Notices Claim

#### 1. The Wage Notices

##### a) Overtime Pay Rate

Under New York Law, the minimum wage is set forth in NYLL § 652(1).   However, the applicable regulations provide that employers may pay tipped workers in the food service industry a lower minimum wage by taking a "tip credit," provided that the wage and the employee's tips, taken together, are at least equivalent to the minimum wage. See 12 N.Y.C.R.R. § 146-1.3; Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).

According to the Moving Plaintiffs, because defendants claimed a tip credit, the Moving Plaintiffs' "regular rate of pay" for purposes of complying with the Section 195(1)(a) requirements was the minimum wage rate and should have been so reflected in the notices.  (Id. at 35 (citing 12 N.Y.C.R.R. §§ 137-2.1; 137-2.2; 146-2)).  The Moving Plaintiffs claim that a review of the wage notices produced during discovery demonstrate that the proper minimum wage rate is not provided on any of these notices.  (Id.)

Similarly, the Moving Plaintiffs contend that their overtime rate should have been calculated as "the employee's regular rate of pay before subtracting any tip credit, multiplied by 1 1/2, minus the tip credit." (Id. (citing 12 N.Y.C.R.R. § 146-1.4)).  The Moving Plaintiffs claim, however, that "[n]ot a single [] notice provided to any of the Moving Plaintiffs contains the[] correct overtime rates." (Id. at 36).  Accordingly, the Moving Plaintiffs claim that defendants are liable and summary judgment is appropriate based on defendants' failure to provide accurate wage notice information as required by the NYLL.

Defendants dispute the Moving Plaintiffs' contentions as to the amount required to be reported as the "regular rate of pay," claiming that, "in the case of tipped employees, [the regular rate of pay] is the tipped minimum wage." (Defs.' Mem. at 24).  Regarding the amount of the overtime rate of pay required to be included in Section 195(1) notices, defendants "concede for purposes of this motion only that they did not list some of the proper overtime rates on Moving Plaintiffs' forms." (Id. at 22).

There is no dispute that, in the case of an employee for whom the employer properly claims a tip credit,[27] the overtime hourly pay rate is defined by regulation as "the employee's regular rate of pay before subtracting any tip credit, multiplied by 1 ½, minus the tip credit." 12 N.Y.C.R.R. § 146-1.4.  Accordingly, in the case of an employer who may properly claim a tip credit, if the employee is compensated at a rate of $7.25 per hour, with a $2.25 per hour tip credit claimed, the employee's overtime rate to be received from the employer would be $8.625, calculated as $7.25 (the regular rate of pay before subtracting the tip credit), multiplied by 1 ½,

---

[27]      As discussed infra, the parties dispute whether defendants are entitled to claim a tip credit. (See discussion at pp. 50–75, infra).

38

minus the $2.25 tip credit. Thus, an employer who is not entitled to take a tip credit would be required to pay its employee at $10.875 per hour for overtime work – calculated as 1 ½ times the minimum hourly rate of $7.25 – while an employer entitled to take a tip credit would only pay the employee at the rate of $8.625 per hour for overtime work. (See id.).

The Court, having reviewed each of the wage notices provided for the Moving Plaintiffs, finds that none of the wage notices submitted contain the proper figures for the overtime hourly pay rate. (Graff Decl. Exs. 12–72). Indeed, some of the wage notices do not contain any amount whatsoever for one or more of the categories of required information.[28] (Id., Exs. 18, 20, 21, 24, 25, 26, 29, 30, 31, 32, 36, 38, 39, 40, 43, 44, 47, 48, 51, 52, 54, 60, 61, 63, 64, 67, 68, and 69). Others list an incorrect overtime rate. (Id., Exs. 16, 23, 49, 59, 66, 70, and 71). For example, for some employees who earned $7.25 an hour, defendants claimed a tip credit of $2.25 per hour such that the employee received $5.00 from defendants. However, the overtime rate listed on those employees' wage notices was $7.50 per hour, calculated as one and a half times the $5.00 per hour amount, rather than at $8.625, calculated as discussed above. (Id., Exs. 12, 13, 14, 15, 17, 19, 23, 27, 28, 33, 34, 35, 37, 41, 42, 45, 46, 49, 53, 55, 56, 57, 58, 62, 65, and 72). At least one wage notice lists an overtime rate of $0. (Id., Ex. 22).

Accordingly, the Court finds that each Moving Plaintiff received an inaccurate wage notice in that each notice contained an incorrect overtime hourly pay rate.

---

[28]    As discussed infra at 48–49, the parties have submitted two different Section 195(1) notice forms. When the parties provided the Court with only a copy of the form with the heading "Labor Law Section 195(1) Notice and Acknowledgment of Wage Rate and Designated Payday Hourly Rate Plus Overtime" on behalf of an opt-in plaintiff, this form does not include an area to indicate the amount of tip credit to be taken, one of the required pieces of information per Section 195(1).

b) <u>Regular Pay Rate</u>

Since none of the wage notices provided to the Moving Plaintiffs contained the correct

overtime hourly pay rate and therefore were in violation of the statute and regulations, the Court

need not address the parties' disagreement as to the proper definition of "regular hourly pay rate."

Nevertheless, for the sake of clarity, the Court concludes that the "regular hourly pay rate" is

calculated as the employee's hourly pay rate before subtracting the tip credit.

Defendants contend that the individual wage notices that were provided to the Moving

Plaintiffs and provided to the Court contain the correct "regular hourly pay rates." (Defs.' Mem.

at 23). They note that the applicable regulations do not define "regular hourly pay rate" and argue

that a "plain reading" of Section 146-2.2(a) provides sufficient context to understand that "regular

hourly pay rate" refers to an employee's hourly rate of pay <u>after</u> subtracting the applicable tip

credit. (<u>Id.</u>) Section 146-2.2 provides that "an employer shall give each employee written notice

of the employee's regular hourly pay rate . . . [and] the amount of tip credit, if any, to be taken

from the basic minimum hourly rate." (<u>Id.</u> (quoting 12 N.Y.C.R.R. § 146-2.2(a))). According to

defendants, because the regulation includes a reference to the "basic minimum hourly rate" in the

same sentence as a reference to "regular hourly pay rate," the Department of Labor intended

"regular hourly pay rate" to mean the employee's regular hourly rate minus the amount of the tip

credit, in the case of tipped employees. (<u>Id.</u> at 23–24).

Plaintiffs disagree with this reading of Section 146-2.2(a) and contend that "regular hourly

pay rate" means the employee's hourly pay rate <u>before</u> subtracting the tip credit. (Pls.' Reply at

13–14). They refer to Section 146-3.5(a), which defines "regular rate" as "the amount that the

employee is regularly paid for each hour of work, before subtracting a tip credit, if any." (<u>Id.</u>

40

(quoting 12 N.Y.C.R.R. § 146-3.5(a))).  Accordingly, plaintiffs contend that the "regular hourly

pay rate," for which notice is required by Section 146-2.2, follows the same definition and refers

to their hourly wage rate <u>before</u> the tip credit is subtracted, not after.  (<u>Id.</u> at 14).  Thus, since the

wage notices provided to the Moving Plaintiffs provide hourly pay rates that have subtracted the

amount of the tip credit from the employees' full hourly rate of pay, plaintiffs argue that the

notices do not comply with Section 146-2.2.  (<u>Id.</u>)

      The Court agrees with the plaintiffs and finds that the "regularly hourly pay rate"

contemplated by Section 146-2.2 refers to "the amount that the employee is regularly paid for

each hour of work, <u>before subtracting a tip credit, if any</u>."  <u>See</u> 12 N.Y.C.R.R. § 146-3.5(a). Most

of the wage notices provided to the Court indicate that the employees' "regular hourly pay rate"

was $5.00 per hour.  (<u>See</u> Graff. Decl., Exs. 12–20, 22–23, 26–28, 32–38, 41–43, 45–48, 50–53,

55–60, 62–72).  Others state that the employees' "regularly hourly pay rate" was $5.50 per hour

(<u>id.</u>, Ex. 49), $4.85 per hour (<u>id.</u>, Ex. 61), or the amount was left blank.  (<u>Id.</u>, Exs. 21, 24, 25, 29,

30, 31, 39, 40, 44, 54).  Clearly, the notices that left the hourly pay rate blank did not provide

sufficient notice.  Thus, for those Moving Plaintiffs who were compensated at a total rate of $7.25

per hour, such that defendants were paying them $5.00 per hour, plus a $2.25 per hour tip credit,

the "regular hourly pay rate" on the wage notice should have been $7.25 per hour, not the $5.00

that was actually listed.  To the extent that these employees received wage notices setting forth

the hourly rate after deducting tips, the Court finds that these notices violated New York Labor

Law.[29]

---

[29]    The Code of Federal Regulations defines "regular rate of pay" as the higher of the
employee's hourly rate and the minimum wage under either state or federal law:  "Where a higher
minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by
virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair

For some employees, however, their wage notices stated that "your cash wage per hour is

$7.25."[30]  In those instances, or where the amount listed was actually equal to the wage provided

to the employee before subtracting the tip credit, the Court finds that the wage notices did list the

employee's proper "regular hourly pay rate."  However, as discussed supra at 37–39, since none

of the wage notices for the Moving Plaintiffs listed the employee's proper overtime rate, these

notices did not comply with Section 195.

Additionally, even if defendants were correct on their definition of "regular rate of pay,"

the Court notes that several notices provide an inaccurate tip credit amount or fail to list any tip

credit whatsoever.[31]  Some notices list the tip credit as "$0" or "N/A" per hour  where the regular

rate of pay is listed as $5.00, which would never be the proper rate unless a tip credit was

subtracted.  (See, e.g., id., Ex. 26).[32]  One notice lists the tip credit as "$0 per hour, so that your

cash wage per hour is $0."  (See id., Ex. 19).  There is even at least one instance where the wage

notice lists the tip credit as $5.00 and the employee's regular hourly rate is also listed as $5.00,

with the following statement: "so that your cash wage per hour is $5.10."  (See, e.g., id., Ex. 59).

---

Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate
at which he is employed' as used in section 7 must be construed to mean the regular rate at which
he is lawfully employed."  29 C.F.R. § 778.5; see Santana v. Latino Express Restaurants, Inc., No.
15 CV 4934, 2016 WL 4059250, at *4 (S.D.N.Y. July 28, 2016).

[30]    These employees are:  1) Shaunta Dove; 2) Kenny Lebron; 3) Samantha Jace; 4) Ajalai
Edwards; 5) Antonio Ferrara; 6) Marquetta Jemmott; 7) Anorvia James; 8) Daja Karumba; 9)
Maya Curtiss; 10) Denae Stallings; 11) Danielle Williams; 12) Angie Wassif; 13) Marsha
Michaud; 14) Jennifer Schmoll; 15) Gaspare Randazzo; and 16) Mana Camila Ruiz.  (See Graff
Decl., Exs. 12, 13, 14, 15, 16, 23, 27, 28, 33, 34, 37, 41, 42, 47, 55, 56, 57, 65, 72).

[31]    These wages notices are:  Graff Decl., Exs. 17, 18, 20, 21, 24, 25, 29, 30, 31, 32, 35, 38,
39, 40, 43, 44, 46, 47, 48, 50, 52, 54, 58, 60, 61, 63, 64, 67, 68, 69, and 73.

[32]    These wage notices are:  Graff Decl., Exs. 19, 26, 36, 49, 51, 53, 59, 62, 66, 70, 71.

In another example, the employee's rate of pay is listed at $5 per hour, and the tip credit is listed at $8 per hour. (Id., Ex. 53). This is nonsensical.

### 2. Affirmative Defense

#### a) The Parties' Arguments

Nevertheless, defendants invoke the affirmative defense provision that was added to Section 198(1-b) in the amendments that went into effect on February 27, 2015, and argue that they have a "complete affirmative defense to this technical and inconsequential mistake," or as to any other mistake within the Section 195(1) notices. (Defs.' Mem. at 22).

At minimum, defendants claim that, under this amendment to Section 198(1-b), because they allege that they paid the Moving Plaintiffs the proper overtime rate and because they "reasonably believed in good faith that . . . the Company provided the required notice," there is a genuine issue of material fact as to whether they may invoke this affirmative defense to Moving Plaintiffs' claims for statutory damages, such that summary judgment should be denied. (Id. (citing NYLL § 198(1-b)). Thus, defendants maintain that plaintiffs' motion for summary judgment is premature because discovery on the amounts plaintiffs were actually paid is still ongoing. (Id. at 21). Defendants argue that if they can prove that plaintiffs received a sufficient amount of tips such that they were actually paid the minimum wage, defendants have a complete defense to plaintiffs' wage notice claims.

In reply, the Moving Plaintiffs claim that the affirmative defense provided by the NYLL requires the employer to prove both that the employer made complete and timely payment of all

wages due <u>and</u> that the employer reasonably believed in good faith that it was not required to provide notice pursuant to Section 195(1).  (Pls.' Reply at 11–12 (citing NYLL § 198(1-b)).  As to whether the Moving Plaintiffs were completely and timely paid all wages, the Moving Plaintiffs claim that defendants have not established that any genuine issue of material fact is in dispute because defendants are in possession of all relevant discovery as to plaintiffs' pay and they "have failed to proffer [payroll] records in discovery or in opposition to Plaintiffs' Motion for partial summary judgment."  (<u>Id.</u> at 12).  As to whether defendants in good faith believed they did not have to provide a Section 195(1) notice, the Moving Plaintiffs contend that "Defendants concede that they knew they were required to provide Plaintiffs with compliant wage notices, and assert that they directed their General Managers at each restaurant location to do so."  (<u>Id.</u> (citing Defs.' Mem. at 22)).  Accordingly, because plaintiffs assert that defendants have not established a genuine issue of material fact as to whether they can apply both prongs of the affirmative defense, plaintiffs argue that the affirmative defense fails as a matter of law.  (<u>Id.</u>)

Moreover, during oral argument, the Moving Plaintiffs argued that because the affirmative defense set forth in NYLL § 198(1-b) did not go into effect until February 27, 2015 and the Moving Plaintiffs were all hired prior to that date, the defense does not apply to the Moving Plaintiffs' claims.  In response, defendants argued that the legislature's intent is that the affirmative defense apply to all claims brought under Section 195(1), even those claims that arose prior to February 27, 2015.  According to defendants, the original statute contained a typographical or clerical error which was corrected in the February 27, 2015 amendment to Section 198(1-b).

b) <u>Analysis</u>

First, the Court notes that plaintiffs are incorrect that, to prevail on the affirmative defense, defendants must prove both that the employees were completely and timely paid their wages and that the employer in good faith believed that it was not required to provide the Section 195(1) notice. (Pls.' Reply at 11–12). The statute is clear that, to invoke the defense, the employer must only prove one of the elements, but not both. <u>See</u> NYLL § 198(1-b); <u>Hicks v. T.L. Cannon Corp.</u>, 35 F. Supp. 3d at 347. Thus, while the Court agrees with the Moving Plaintiffs that there is no issue of material fact that defendants were clearly aware of their obligation to provide Section 195(1) notices, that in itself does not preclude defendants from invoking the affirmative defense.

However, because this defense was not made applicable to Section 195(1) claims until after all of the Moving Plaintiffs were hired, the defense is not available to defeat the Moving Plaintiffs' claims. Even accepting as true defendants' argument that the affirmative defense should have been available at the time the Moving Plaintiffs were hired but for a typographical error in the drafting, defendants have not provided the Court with any authority, nor has the Court been able to find any authority, supporting the proposition that the Court should apply the affirmative defense retroactively to claims that accrued before February 27, 2015.

"The Second Circuit has made clear that 'retroactive operation of statutes is not favored' by New York courts absent a 'clear expression of the legislative purpose to justify a retroactive application." <u>Saldana v. New Start Grp., Inc.</u>, No. 14 CV 4049, 2016 WL 3683530, at *1 (E.D.N.Y. July 5, 2016) (quoting <u>Gold v. New York Life Ins. Co.</u>, 730 F.3d 137, 143 (2d Cir. 2013)). Courts in this district have not found this "clear expression of legislative purpose" to apply amendments to Section 198 retroactively, and thus have not done so. <u>See, e.g.</u>, <u>Saucedo v.</u>

On the Spot Audio Corp., No. 16 CV 451, 2016 WL 8376837, at *14 n.14 (E.D.N.Y. Dec. 21,

2016), report and recommendation adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017) (noting

that "[a]lthough the Court notes that [NYLL] § 198 has been amended effective January 19, 2016,

courts in this district have not applied this revision retroactively to violations that occurred prior

to January 19, 2016"); Chen v. JP Standard Constr. Corp., No. 14 CV 1086 , 2016 WL 2909966,

at *13 (E.D.N.Y. Mar. 18, 2016), report and recommendation adopted, No. 14 CV 1086, 2016

WL 2758272 (E.D.N.Y. May 12, 2016) (applying the version of Section 198(1-b) and Section

198(1-d) in effect at the time of plaintiff's hiring); Saldana v. New Start Grp., Inc., 2016 WL

3683530, at *1 (noting that "the recent revisions to [Section 198 of the NYLL] have not been

applied retroactively by federal courts" and citing cases).

Therefore, because the affirmative defense which defendants seek to employ was only

made effective after each Moving Plaintiffs was hired and defendants have not provided the Court

with any evidence that, notwithstanding any typographical or clerical error that may have

occurred previously, the New York legislature intended the affirmative defense to be available

retroactively, the Court finds that defendants may not invoke the affirmative defense to the

Moving Plaintiffs' Section 195(1) claims.

Thus far, the Court has concluded that none of the wage notices produced by the parties

conforms to the requirements of Section 195, and that defendants are not entitled to invoke the

affirmative defense to Moving Plaintiffs' Section 195 claims.  However, given that the plaintiffs

began employment at different dates, and the legal standard for relief varies in accordance with

the various amendments to the statute, see supra, the Court must analyze individually the

evidence presented as to each Moving Plaintiff to determine if there is any issue of fact in dispute as to defendants' liability to that plaintiff.

### 3. Moving Plaintiffs Who Were Hired Prior to April 9, 2011

The documents submitted by the parties indicate that three of the opt-in plaintiffs – Stephanie Persaud, Erica Schmid, and Mark Kennedy – were hired prior to April 9, 2011, as they received wage notices on March 8, 2011, March 8, 2010, and February 15, 2011, respectively. (Graff Decl., Exs. 54, 61, 69). Additionally, named plaintiff Carlos Marin has represented in his Declaration that he was employed "from in or about March 2011 to September 2012." (Marin Decl.[33] ¶ 2). Therefore, because the NYLL did not provide a remedy for wage notice violations prior to April 9, 2011, these four plaintiffs cannot recover statutory damages under Section 198(1-b) of the NYLL based on any alleged failure by defendants to provide them with accurate wages notice prior to the start of their employment. (See supra at 33–36).

Accordingly, plaintiffs have failed to establish as a matter of law that Moving Plaintiffs Persaud, Schmid, Kennedy, and Marin are entitled to summary judgment against defendants for any violations of Section 195(1). Thus, the Court respectfully recommends that the Moving Plaintiffs' motions for summary judgment on their claim under Sections 195(1) and 198(1-b) of the NYLL be denied as to Persaud, Schmid, Kennedy, and Marin.

---

[33]     Citations to "Marin Decl." refer to the Declaration of Carlos Marin, attached as Exhibit 5 to the Graff Decl.

4.   Moving Plaintiffs Who Were Hired On or After April 9, 2011

First, the Court notes that while named Marin plaintiff Martina Hanisch allegedly began

work in March 2012, the parties have not submitted any wage notices on her behalf.   (Hanisch

Decl.[34] ¶ 2).  The Court, then, has no evidence to evaluate her claimed wage notice violation.

Therefore, plaintiffs have failed to establish as a matter of law that Ms. Hanisch is entitled to

summary judgment on her Section 195(1) wage notice claim.

Turning to the plaintiffs and opt-ins hired after the April 9, 2011 amendment to Section

195 went into effect, the records submitted by the parties vary in terms of the information

provided.  The parties have submitted two different Section 195(1) notice forms: a form with the

heading "Labor Law Section 195(1) Notice and Acknowledgment of Wage Rate and Designated

Payday Hourly Rate Plus Overtime," and another form with the heading "Notice and

Acknowledgment Under Section 195.1 of the New York State Labor Law, the New York

Hospitality Wage Order, and 29 C.F.R. §§ 531.54 and 531.59. Notice for Tipped Employees."

The first form does not indicate whether it was the initial notice provided on the date of hire, or a

subsequent notice provided on another date.[35]  (See Graff Decl., Exs. 21, 40, 43, 46, 58, 63, 67,

---

[34]    Citations to "Hanisch Decl." refer to the Declaration of Martina Hanisch, attached as
Exhibit 4 to the Affidavit in Support re Motion to Certify FLSA Collective Action, filed on
February 3, 2014.

[35]    The Court notes that neither plaintiffs nor defendants have submitted affidavits as to the
initial date of hire for each individual opt-in plaintiff in the sample set of documents provided for
these motions.  Therefore, to determine the initial date of hire, the Court has relied on the
affidavits for plaintiffs where available, such as for Marin and Hanisch, discussed supra.  For
others, the Court was confined to examining the 195(1) wage notice  records submitted for the
sixty individual opt-in plaintiffs, some of which indicated that the document was provided on the
date of hire; others indicated that they were provided at some other time or were silent.  In the
absence of evidence as to when each plaintiff or opt-in was hired and a statement that no other
wage notices have been produced for that plaintiff, the Court is not in a position to rule as a
matter of law on some of these claims.

68.)  Thus, when only a copy of the first form was submitted to the Court on behalf of an opt-in plaintiff, a question of fact arises as to when the notice was provided and the evidence is insufficient to determine as a matter of law that that employee was not provided with a proper wage notice at the time of hire.  This affects the claims of Esmeralda Rivera, Sheena Benjamin, Samuel Williams, Briana Palmieri, Jamal Vargass, Tiffany Reese, Akita Ashley, and Saquarius Delain.  (See id.)

The second form includes a checklist of options to indicate whether notice was being given (a) at hiring; (b) on or before February 1; or (c) before a change in pay rates.  However, even when a copy of the second form was submitted for some of the plaintiffs, the records are still unclear and raise an issue of fact as to when the notice was provided because, on some of the forms, none of the options was checked off, so the Court cannot determine if this form was given at the time of hire or on another date.   (See id., Exs. 23, 24, 25, 29, 30, 31, 39, 48, 52, 59, 60, 71). This prevents the Court from granting summary judgment as to Tiffany Jacinthe, Melitta Jones, Christina Carr, David Martinez, Veronica Gonzalez, Ashley Marie Cedeno, Keydia Manns, Latoya Thomas, Ariana Roman, Christine Makepeace, Whitney Kerr-Black, and Jesus Roldan. (Id.)

Furthermore, two (2) of the plaintiffs' records indicate that the form was given to them "before a change in pay rates" as opposed to at the time of hire; therefore, the Court is unable to find as a matter of law that these two plaintiffs, Camille Dieudonne and Joanna Cosso, did not receive proper notice at the time of hire.  (Id., Exs. 16, 42).  As discussed supra, there does not appear to be a private right of action or damages for any potential notice violation that occurred other than at the time of initial hire.

49

Finally, one (1) notice was provided "on or before February 1," and a question of fact remains as to whether it was also provided at time of hire. (Id., Ex. 50). Accordingly, the Court finds that this plaintiff, Natalie Ramirez, has not met her burden of showing that defendants are liable to her under Section 195(1).

However, the records indicate that thirty-six (36) Moving Plaintiffs were hired by defendants after April 9, 2011. The Moving Plaintiffs have submitted the Section 195(1) notice that was provided to each of these thirty-six plaintiffs at the time of hire.[36] Based on a review of each of these documents, it is clear that none of them contain the proper overtime rate, which alone establishes defendants' liability.[37] Thus, these Moving Plaintiffs (hereinafter, "the 198(b) Plaintiffs"), have established defendants' liability for violations of Section 195 of the NYLL and are eligible for statutory damages under Section 198. (See supra at 33–36).

Accordingly, the Court respectfully recommends granting partial summary judgment on behalf of the 198(b) Plaintiffs' Section 195(1) wage notice claims.

---

[36]     These thirty-six Moving Plaintiffs are (1) Shaunta Dove; (2) Kenny Lebron; (3) Samantha Jace; (4) Ajalai Edwards; (5) Brianna Thomas; (6) Kashawn Gillespie; (7) Cristian Matos; (8) Azuria Nesmith; (9) Jessica Butler; (10) Shawana Brunson; (11) Antonio Ferrara; (12) Marquetta Jemmott; (13) Sara Kastuk; (14) Anorvia James; (15) Daja Karumba; (16) Ariel Plaza; (17) Demetrius Mariakakis; (18) Maya Curtiss; (19) Ralph Ruiz; (20) Denae Stallings; (21) Mariela E. Cruz; (22) Danielle Williams; (23) Tiana K. Reid; (24) Laura Bolukbasi; (25) Ashley Scheur; (26) Jeremy Cohen; (27) Angie Wassif; (28) Marsha Michaud; (29) Jennifer Schmoll; (30) Michael Magagnin; (31) Stephen Friscia; (32) Gaspare Randazzo; (33) Adam A. Reilly; (34) Dalivette Serrano; (35) Mana Camila Ruiz; and (36) Christian Rodriguez. (See Graff Decl., Exs. 12, 13, 14, 15, 17, 18, 19, 20, 22, 26, 27, 28, 32, 33, 34, 35, 36, 37, 38, 41, 44, 45, 47, 49, 51, 53, 55, 57, 58, 62, 64, 65, 66, 70, 72, 73).

[37]     Many also fail to contain the proper regular hourly rate or are deficient in other respects, but since the overtime rate on each is inaccurate, the Court need not address these other deficiencies on an individual basis.

50

V.  The Moving Plaintiffs' Minimum Wage Claims Under the New York Labor Law

The Moving Plaintiffs seek partial summary judgment on their claim that defendants failed to comply with the minimum wage provisions of the NYLL, arguing that by failing to provide proper notice of a tip credit, defendants forfeited any right to claim the tip credit and therefore failed to pay the Moving Plaintiffs the required minimum wage.  (Pls.' Mem. at 29). The NYLL requires an employee bringing an action for unpaid minimum wages to prove that he performed work for which he was not properly compensated.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 41–42 (E.D.N.Y. 2015) (quoting Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)); see also Flores v. J & B Club House Tavern, Inc., No. 10 CV 4332, 2012 WL 4891888, at *1 (S.D.N.Y. Oct. 16, 2012) (discussing that under the NYLL, plaintiffs have the burden to prove that they performed the work for which they claim the defendant failed to compensate them).

As discussed supra at 11–12, in order for a defendant employer to take advantage of the "tip credit" under the NYLL, the defendant must comply with all of the NYLL's notice and record-keeping requirements.  12 N.Y.C.R.R. § 146-1.3.  Prior to January 1, 2011, this meant that an employer was required to:  1) post a notice at the workplace summarizing the minimum wage provisions; 2) furnish employees with a statement accompanying each paycheck, listing allowances claimed as part of the tip credit; and 3) maintain weekly payroll records showing the allowances claimed.  12 N.Y.C.R.R. § 137-2.2 (repealed eff. Jan. 1, 2011); id. § 137-2.3 (repealed eff. Jan. 1, 2011); see also Widjaja v. Kang Yue USA Corp., No. 09 CV 2089, 2016 WL 660713, at *2 n.6 (E.D.N.Y. Feb. 17, 2016); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012).

51

On January 1, 2011, a number of new requirements were imposed on employers seeking to take advantage of a tip credit. See 12 N.Y.C.R.R. § 146-2.2 ("Section 146"). Section 146 requires an employer to provide the employee, prior to the start of employment, with "written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." 12 N.Y.C.R.R. § 146-2.2(a); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 38–39. This written notice must also state "that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate," 12 N.Y.C.R.R. § 146-2.2(a), and must be provided in English and in "any other language spoken by the new employee as his/her primary language." Id. § 146-2.2(a)(1)-(2). The employer must keep "[a]n acknowledgment of receipt signed by the employee . . . on file for six years," § 146-2.2(c), and may not retain any portion of an employee's tips. See Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) (holding that violations of NYLL § 196-d, which provides that an employer may not retain any tips or gratuities received by employees, render an employer ineligible to receive a tip credit under New York law).

Since the tip credit notice requirements changed on January 1, 2011, and there are Moving Plaintiffs who were hired both before and after that date, the Court addresses the motion for partial summary judgment on the Moving Plaintiffs' minimum wage claims separately for those employees who were hired before January 1, 2011, and those hired after that date.

A.  <u>Moving Plaintiff Schmid Hired Before January 1, 2011</u>

Based on the documents submitted by the parties, Moving Plaintiff Erica Schmid was

hired by defendants on or before March 8, 2010.  (Graff Decl., Ex. 61).[38]  Thus, the requirements

in effect at that time, prior to the January 2011 amendment, would be applicable to her claim.

These included: 1) posted notice; 2) proper wage statement with each paycheck; and 3) weekly

payroll records.  12 N.Y.C.R.R. § 137-2.2 (repealed eff. Jan. 1, 2011).  It is defendants' burden to

demonstrate that the prerequisites for a tip credit have been met.

Defendants have provided the Court with copies of the wage posters that they claim have

been posted since "at least January 2011."  (Eames Decl. ¶ 19, Ex. A; Benson Decl., Ex. 17).

However, neither party has provided any evidence or testimony regarding whether a poster

summarizing the minimum wage provisions was provided at Ms. Schmid's workplace.  Nor have

defendants provided evidence or testimony regarding whether Ms. Schmid was provided with a

statement listing the allowances claimed as part of the tip credit with each of her paychecks.

Finally, defendants have failed to submit Ms. Schmid's payroll records that would allow the

Court to determine the allowances claimed.  Since it is defendants' burden to establish entitlement

to the tip credit and they have not provided any proof of compliance as to Ms. Schmid, the Court

respectfully recommends that the Moving Plaintiffs' motion for partial summary judgment on the

minimum wage claims filed by Ms. Schmid under the NYLL be granted because it is clear that if

---

[38]    There is a question of fact as to when exactly Moving Plaintiffs Stephanie Persaud and Mark Kennedy were hired.  Ms. Persaud's Notice form is dated March 8, 2011, but it does not indicate whether this was the date she was hired, or another date.  (<u>See</u> <u>supra</u> at 47).  While it is clear that she was hired before April 2011 for purposes of 198(b)'s damages provision for time-of-hire violations, it is unclear if she was hired prior to January 1, 2011, for purposes of the Section 146 analysis.  The same considerations relate to Mark Kennedy, whose Notice form is dated February 15, 2011, but does not indicate whether this was the date he was hired, or another date.  (Graff. Decl., Exs. 54, 69).

the defendants were not entitled to take a tip credit, then Ms. Schmid was paid less than the minimum wage to which she was entitled. (Graff Decl., Ex. 61 (showing Schmid's rate of pay)).

B. Moving Plaintiffs Hired On or After January 1, 2011

Other than Erica Schmid, the evidence submitted by the parties indicates that the remaining Moving Plaintiffs were hired by defendants on or after January 1, 2011.

1. Defendants' Compliance with the Tip Credit Notice Requirements

As a threshold matter, plaintiffs contend that all of the information that employers must provide to employees in order to claim a tip credit "must be provided in a single written notice." (Pls.' Mem. at 30 (citing Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 334)). Plaintiffs also note in their Reply that Section 146-2.2 discusses "notice" in the singular and they refer the Court to a sample notice provided in the regulations, which is one document and not multiple documents. (Pls.' Reply at 14 (citing 12 N.Y.C.R.R. § 146-2.2(d))). Defendants respond that the Hicks case is not only from outside of this district, but also "does not stand for the proposition cited whatsoever." (Defs.' Mem. at 24 n.10).

Defendants are correct that the Hicks case does not support plaintiffs' argument that the tip credit must be provided in a single notice. In Hicks, the defendants provided one notice to the plaintiff which lacked the required information. Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 348. The issue was not whether the Hicks defendants had provided multiple notices which, when considered together, would have satisfied the requirements of Section 146-2.2; the issue was only whether the notice that was supplied was sufficient. Moreover, Section 146-2.2(a) only states that

54

"an employer shall give each employee <u>written notice</u>;" it does not provide that there must be "one written notice." 12 N.Y.C.R.R. § 146-2.2(a) (emphasis added). While the regulation does provide a model notice that is set forth on one form, the regulation explicitly states that the model was provided "[a]s an example." <u>Id.</u> § 146-2.2(d). Thus, plaintiffs have not provided the Court with definitive authority that requires employers seeking to claim a tip credit to provide notice only on one form, rather than through a combination of forms.

Instead, defendants contend that they provided notice of the tip credit to the Moving Plaintiffs in a number of ways such that, at minimum, there is a genuine issue of material fact as to whether the notice defendants provided was sufficient to permit them to claim a tip credit. (Defs.' Mem. at 23–29). Specifically, they argue that the Moving Plaintiffs were given notice by: a) written notice, as provided in the wage notices given to employees prior to the start of their employment; b) minimum wage posters; c) forms provided by the New York Department of Labor; d) a "Notice to Team Members Who Receive Tips;" e) an employee handbook; and f) oral notice. (<u>Id.</u> at 23–28). Each method will be discussed below.

### a) <u>Individual Wage Notices Provided to the Moving Plaintiffs</u>

As discussed <u>supra</u>, "notice" for purposes of Section 146 must contain the following pieces of information: 1) the regular hourly pay rate; 2) the overtime hourly pay rate; and 3) the amount of tip credit, if any, to be taken from the employee's basic minimum hourly rate. 12 N.Y.C.R.R. § 146-2.2(a). Therefore, if the individual wage notices provided pursuant to Section 195 accurately listed all of this information, these notices could also be sufficient for purposes of a Section 146 tip notice analysis.

55

However, as discussed <u>supra</u> at 37–47, none of the wage notices provided to the Moving Plaintiffs contained each of the proper regular hourly pay rates, amount of tip credits, and overtime hourly pay rate. Indeed, none of the notices contain a correct overtime pay rate. Additionally, many notices contain an incorrect regular hourly pay rate, no tip credit amount, or an incorrect tip credit amount. Just as the Court found that for all of the Moving Plaintiffs, the wage notices given to them failed to comply with Section 195, the Court similarly finds that for all of the Moving Plaintiffs, these same notices fail to comply with Section 146-2.2(a)

Accordingly, since the NYLL only permits an employer to claim a tip credit towards the minimum wage amount if "the employee has been notified of the tip credit as required in section 146-2.2," defendants were only permitted to claim a tip credit if the Moving Plaintiffs were provided with another form of notice that otherwise complied with Section 146-2.2 in accurately stating the amount of the tip credit to be taken from the employees' wages as well as the proper overtime hourly pay rate. Defendants contend that they did just that by "utiliz[ing] a variety of [other] methods in order to give the Moving Plaintiffs proper notice of the tip credit." (Defs.' Mem. at 24).[39]

b)  <u>Minimum Wage Posters</u>

Defendants claim that each employee, including the Moving Plaintiffs, received tip credit notice through the New York State minimum wage posters, which defendants claim are placed in

---

[39]  Since the Court concludes that none of the other methods advanced by defendants satisfy the NYLL tip credit notice requirement, the Court does not address the issue of whether the wage notices that actually contain inaccurate information can be cured by accurate posters or other forms of notice.

a prominent area of their restaurants to which all employees have access. (Defs.' Mem. at 24 (citing Defs.' 56.1 Stmnt ¶ 74)).

As discussed supra at 11–12, in order to be permitted to claim a tip credit towards the required minimum wage, a tip credit notice must include each individual employee's regular hourly pay rate, overtime hourly pay rate, the amount of the tip credit, if any, to be taken from the basic minimum hourly rate, and the regular pay day. 12 N.Y.C.R.R. § 146-2.2. Accordingly, because New York law requires that the tip credit notice include this personalized information for each employee, courts in this circuit have held that posters containing "general information" regarding the minimum wage rate and tip credit requirements are not sufficient and do not satisfy the requirements of Section 146-2.2 to allow the employer, without more, to take a tip credit. See, e.g., Hernandez v. Jrpac Inc., No. 14 CV 4176, 2016 WL 3248493, at *12, *25 (S.D.N.Y. June 9, 2016).

Defendants contend that the New York minimum wage poster that has been used since 2007 states: "Tips: A specific allowance may be credited toward the minimum wage for tips earned." (Defs.' Mem. at 24 (citing Defs.' 56.1 Stmnt ¶ 74)). They argue that this language was "deliberately drafted by the New York Department of Labor and included on the poster to inform employees of the tip credits." (Id.) Defendants claim that the posters they employed are distinguishable from those rejected as providing insufficient notice of a tip credit by courts such as in Salinas v. Starjem Restaurant Corp., where the posters "only generally described 'employee rights, payroll, hourly wages, sick pay, and sick days.'" (Id. at 24 n.11 (citing Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d at 461)).

Plaintiffs reply that these posters do not satisfy the requirements of Section 146-2.2 because they are not given to each employee, and more importantly, do not provide notice of the actual amount of the tip credit being taken out of that employee's pay, nor do they provide notice of the employee's regular payday. (Pls.' Reply at 14 (citing 12 N.Y.C.R.R. § 146-2.2(a); Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015)).

Based on a review of the wage posters that defendants claim are posted in each restaurant, the Court finds that these posters do not satisfy the requirements of Section 146-2.2. While defendants claim that "[s]ince at least January 2011, there have been NYS minimum wage posters posted in a prominent area of each restaurant where all tipped employees had access" (Eames Decl. ¶ 19), the examples that defendants say they provided are generic and do not provide the particularized information required by the New York Labor Law.[40]  First, defendants submitted what appears to be a photograph of one such poster, which is illegible and cannot be read. (Id., Ex. A).  However, at oral argument, defendants' counsel conceded that the poster is indeed "generic" and does not contain information personalized as to each employee, which is required by the regulation.

Second, defendants submitted copies of posters created by the New York State Department of Labor from 2009 and 2015 which they claim were posted in their workplaces since at least January of 2011.  (Defs.' 56.1 Stmnt ¶ 74; Benson Decl. ¶ 18, Ex. 17).  However, while these posters provide the applicable minimum wage, they do not provide the defendants'

---

[40]    The Court notes that, while defendants provided the Court with a photograph of one poster (see Eames Decl., Ex. A), they have not provided photographs of the wage posters allegedly provided at each restaurant at which the Moving Plaintiffs worked.  Accordingly, even if the Court found that the wage posters submitted to the Court provided the required information to permit defendants to claim a tip credit, the Court would be unable to find as a matter of law that the Moving Plaintiffs were provided with proper notice at all of the restaurants.

58

employees' "regular hourly pay rate, the amount of the tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." 12 N.Y.C.R.R. § 146-2.2.  Indeed, they do not even inform the employee that they are entitled to overtime compensation or that the employer is claiming a tip credit.  Rather, they explain that "[f]or <u>most</u> occupations, employees must be paid overtime after 40 hours or work in a week" and that "[a] specified [tip] allowance <u>may</u> be credited toward the minimum wage for tips earned." (Benson Decl., Ex. 17 at 1, 2 (emphasis added)).  Accordingly, even accepting as true that the wage posters provided by defendants were posted in each restaurant at which the Moving Plaintiffs worked, the information provided in the posters does not satisfy Section 146-2.2.

c) <u>Forms Provided to the Moving Plaintiffs by the N.Y. Department of Labor</u>

Defendants claim that the Moving Plaintiffs "should have received notice via the Section[] 195(1) forms that the NY Department of Labor <u>itself</u> provided." (Defs.' Mem. at 24 (emphasis in original) (citing Defs.' 56.1 Stmnt ¶ 75; Graff Decl., Exs. 12, 13)).  They acknowledge that "the rate and tip credit amounts have changed over the years," but claim that the notice has "always made it clear that tipped employees receive less than the full minimum wage, the Defendants take a tip credit, and if employees do not make enough in tips to bring them up to the full minimum wage, [employees] will be 'paid additional wages that week to make up the difference.'" (<u>Id.</u> at 24–25).  Defendants contend that this language was "deliberately drafted" by the Department of Labor to notify employees of the tip credit and that "[p]laintiffs cannot legitimately argue that the language drafted by the agency is somehow insufficient." (<u>Id.</u> at 25).

59

Plaintiffs respond that these forms do not provide the correct hourly and overtime rates for each employee and, therefore, again fail to satisfy the requirements of Section 146-2.2. (Pls.' Reply at 14).

The Court has reviewed the notices that defendants claim were created or provided by the New York Department of Labor and were given to the Moving Plaintiffs and find that none of them satisfy the strict requirements of Section 146-2.2. One of the documents submitted by plaintiffs in support of their motion is entitled "Notice and Acknowledgment Under Section 195.1 of the New York State Labor Law, the New York Hospitality Wage Order and 29 C.F.R. §§ 531.54 and 531.59. Notice for Tipped Employees." (Graff Decl., Ex. 12 at 1, Ex. 13 at 1). Defendants contend that this document provided the information required by New York Labor Law such that defendants were entitled to claim a tip credit. (See Defs.' Mem. at 24 (citing Graff Decl., Exs. 12, 13)). However, these are the forms that the Court has already addressed, supra at 55–56, and found fail to satisfy Section 146-2.2 based on their failure to provide accurate individualized regular hourly pay rates and/or overtime amounts. See also discussion supra at 37–47 (discussing these same forms in the context of plaintiffs' Section 195 claim).

To the extent that defendants refer to another document entitled "Labor Law Section 195(1) Notice and Acknowledgment of Wage Rate and Designated Payday Hourly Rate Plus Overtime," this form has also already been examined by the Court and found unsatisfactory in that each one, when it has been filled out at all, fails to list the correct overtime amount of pay. See discussion supra at 37–47. (Id., Ex. 12 at 2). Additionally, this form fails to provide the amount of the tip credit to be taken from the employee's basic minimum hourly rate. (See, e.g., Graff Decl., Ex. 12 at 2).

60

### d) Notice to Team Members Who Receive Tips

Defendants further refer to forms entitled "Notice to Team Members Who Receive Tips." (Defs.' Mem. at 24–25; Defs.' 56.1 Stmnt ¶¶ 75–76 (citing Eames Decl. ¶ 20, Ex. B; Benson Decl., Ex. 22 at 21)). According to defendants' Executive Director of Human Resources and Training, "all tipped employees should have received [Wage Theft Prevention Act] forms upon hire,[41] in addition to a company-specific notice called the 'Notice to Team Members Who Receive Tips.'" (Eames Decl. ¶ 20). The "Notice to Team Members Who Receive Tips" provides a comprehensive explanation of how the tip credit operates. (Graff Decl. ¶¶ 18, 32, 33, 40, 52, 65, 68, 70; Eames Decl., Ex. B; Benson Decl., Ex. 22 at 21). However, while this notice provides the applicable minimum wage rate and explains how the tip credit operates to reduce the employee's rate of pay below the minimum wage rate, it does not state what the individual employee's actual rate of pay would be, the amount of the tip credit to be taken for that employee, the overtime rate, or the employee's payday. (Id.) Indeed, the form actually indicates that employees "will be told the amount of [their] hourly pay rate when [they] begin work." (Id. (emphasis added)). Thus, this form fails to provide the information required by Section 146-2.2. See 12 N.Y.C.R.R. § 146-2.2(a) (emphasis added) (requiring the written tip credit notice to include "the employee's regular hourly pay rate, overtime hourly pay rate, the amount of the tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday).

---

[41]    As discussed supra, the Wage Theft Prevention Act notices, required by Section 195, were, at least as to those provided to the Court for certain plaintiffs and opt-ins, inaccurate and in some cases blank.

Accordingly, the Court finds that the forms created by or provided by the New York

Department of Labor that defendants claim were provided to the Moving Plaintiffs are not alone

sufficient to satisfy defendants' obligations under Section 146-2.2.


  e) <u>The Employee Handbook</u>

  Defendants contend that the Employee Handbook provided to all employees who worked

in June 2015 or later contains an "entire section on tip credit notice." (Defs.' Mem. at 25 (citing

Defs.' 56.1 Stmnt ¶ 77)). Plaintiffs did not reply to this argument.

  However, the Court has reviewed the portion of the Employee Handbook discussing tip

credits and finds that it also does not provide all of the information required by Section 146-2.2.

(<u>See</u> Eames Decl. ¶ 21, Ex. C). As an initial matter, defendants indicated that only employees

who worked in June 2015 or later received the Employee Handbook. (<u>Id.</u> ¶ 21). Accordingly,

even if the Employee Handbook contained all of the information that must be given to employees

"[p]rior to the start of employment," 12 N.Y.C.R.R. § 146-2.2, the Handbook would not meet the

requirements of Section 146-2.2 for most of the Moving Plaintiffs, who began employment prior

to June 2015. (Graff Decl., Exs. 12–73).

  Nonetheless, while the Handbook does indicate that the regular pay day is on Tuesday,[42]

as well as the applicable minimum wage and overtime rate, the Handbook does not indicate each

---

[42] The Court notes that this information as to the regular pay day set out in the Handbook
differs from the pay day provided in many of the wage notices provided to individual employees.
Some of the individual wage notices indicate that, at least as of the date that the notice was
completed, the employees' regular pay day was on Monday or Wednesday, not Tuesday as stated
in the Handbook. (<u>See</u> Graff Decl., Exs. 12, 13, 16, 18, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31,
32, 33, 34, 37, 39, 41, 42, 47, 48, 50, 51, 53, 55, 56, 57, 59, 60, 61, 62, 63, 64, 65, 66, 69, 70, 71,
72).

employee's particular rate of pay, the amount of the tip credit to be taken, or the overtime rate. (See Eames Decl., Ex. C).  The Court notes that not all employees were paid at the same wage rate.  While some received the minimum wage as their regular rate of pay, others did not, such that even as to the regular hourly rate of pay, providing certain employees with information about the statutory minimum wage rate would not have complied with Section 146-2.2.  Accordingly, the Handbook does not satisfy the requirements of Section 146-2.2, even for those employees who began working after June 2015.

### f) Oral Notice

#### i) The Parties' Arguments

Defendants contend that "all tipped employees should have received oral notice of the tip credit during their orientation" and that this oral notice sufficed to provide the required notice under Section 146-2.2.  (Defs.' Mem. at 25–26 (citing Defs.' 56.1 Stmnt ¶¶ 78, 79)).  The Moving Plaintiffs argue that oral notification is not sufficient to permit an employer to claim a tip credit. (Pls.' Mem. at 31 (citing Hernandez v. Jrpac Inc., 2016 WL 3248493, at *25; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d at 466; Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 39; Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015))).

Indeed, courts have found that evidence of oral notice of the tip credit provision to employees failed to satisfy the NYLL's tip credit notice requirements.  See Velez v. 111 Atlas Rest. Corp., No. 14 CV 6956, 2016 WL 9307471, at *9 (E.D.N.Y. Aug. 11, 2016) (explaining that "courts have found that evidence of oral notice of the tip credit provision to employees . . . would

not satisfy the NYLL"); Hernandez v. Jrpac Inc., 2016 WL 3248493, at *25 (noting that "[n]otice

of the tip credit under the NYLL . . . must be written"); Salinas v. Starjem Rest. Corp., 123 F.

Supp. 3d at 466 (explaining that, under the NYLL, "an employer may not take a tip credit unless

the employer has given the employee written notice. . . ."); Inclan v. New York Hosp. Grp., Inc.,

95 F. Supp. 3d at 501 (holding that the employer could not claim the tip credit under NYLL

because the employer did not provide the employee with a written wage notice containing

allowances, including tip allowances, at the time of the employee's hiring, "and then annually on

or before the first of February"); Kim v. Kum Gang, Inc., 2015 WL 2222438, at *23 (explaining

that "[t]he notice required by section[] 146–2.2 . . . involves written notice. . . .").

Defendants, however, refer the Court to a letter written on March 4, 2015 by Pico Ben-

Amotz, the General Counsel of the New York Department of Labor, to Joseph D. Morelle,

Majority Leader of the New York State Assembly.  (Benson Decl., Ex. 16 at 2; see also Defs.'

Mem. at 26 (citing Defs.' 56.1 Stmnt ¶ 80)).[43]  In this letter, Mr. Ben-Amotz expresses his opinion

that "a food service employer is eligible to claim the tip credit even when they fail to provide

written notice of the tip credit rules provided that the employer can demonstrate compliance with

---

[43]    Defendants also provided the Court at oral argument with a letter delivered to Joseph D.
Morelle from James Rogers, the Deputy Commissioner for Worker Protection at the New York
Department of Labor, dated May 4, 2016.  The letter reiterates the belief that "a food service
employer is eligible to claim the tip credit even when they fail to provide written notice of the tip
credit rules provided that the employer can demonstrate compliance with all of the other
minimum wage requirements and that their employees understood the manner in which the
employer took the tip credit."  The letter explains that, in the case of one particular employer,
employees were provided with "sufficient and specific enough notice to entitle the employer to
take the tip credit."  Since defendants did not provide this letter in connection with their motion
papers, plaintiffs have not had the opportunity to review and respond to the letter.  While
normally the Court would not even consider this evidence because plaintiffs were never given an
opportunity to consider it, nevertheless, the Court reviewed this argument in connection with
preparing this Report and Recommendation and the Court is not persuaded that this letter requires
the Court to alter its conclusions.

all of the other minimum wage requirements and that their employees understood the manner in

which the employer took the credit." (Benson Decl., Ex. 16 at 2).

New York courts have recognized that the New York Department of Labor's

"interpretation of a statute it is charged with enforcing is entitled to deference." Barenboim v.

Starbucks Corp., 21 N.Y.3d 460, 470–71, 995 N.E.2d 153, 158, 972 N.Y.S.2d 191, 196 (2013)

(quoting Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79, 883 N.E.2d 990, 995, 854 N.Y.S.2d 83,

88 (2008)). Thus, "[t]he construction given statutes and regulations by the agency responsible for

their administration, 'if not irrational or unreasonable,' should be upheld." Samiento v. World

Yacht Inc., 10 N.Y.3d at 79, 883 N.E.2d at 995, 854 N.Y.S.2d at 88 (quoting Chesterfield Assocs.

v. New York State Dep't of Labor, 4 N.Y.3d 597, 604, 830 N.E.2d 287, 292, 797 N.Y.S.2d 389,

394 (2005)). An informal opinion letter that "represents the position" of the relevant agency is

also entitled to deference. A.M. Med. Servs., P.C. v. Progressive Cas. Ins. Co., 101 A.D.3d 53,

64, 953 N.Y.S.2d 219, 226 (2d Dep't 2012). However, if the agency's interpretation conflicts

with the "plain meaning of the promulgated language," a court need not defer. Mid Island

Therapy Assocs., LLC v. New York State Educ. Dep't, 129 A.D.3d 1173, 1175, 10 N.Y.S.3d

688, 690 (3d Dep't 2015) (quoting Visiting Nurse Serv. of N.Y. Home Care v. New York State

Dep't of Health, 5 N.Y.3d 499, 506, 840 N.E.2d 577, 580, 806 N.Y.S.2d 465, 468 (2005)).

Defendants contend that Mr. Ben-Amotz's letter addressed the question of "whether the

portion of 12 N.Y.C.R.R. § 146-1.3 . . . requires, as a precondition to claiming a tip credit, that an

employer provide written notice of the tip credit rules" and answered that question "with a

sounding and unambiguous: no." (Defs'. Mem. at 26 (emphasis in original) (citing Benson Decl.,

Ex. 16 at 1)). Defendants assert that the letter took the position that, even if an employee has not

65

been provided with written notice of a tip credit, the employer may nevertheless claim the tip

credit if "all of the other minimum wage requirements" are met and the employees understood

"the manner in which the employer took the tip credit." (Benson Decl., Ex. 16 at 2). According

to Mr. Ben-Amotz's letter, Section 146-1.3 does not specifically require that written notice be

provided; he asserts that, even though Section 146-2.2 requires written notice, "[h]ad Section 146-

1.3 required a written notice of the tip credit rules, such a writing requirement would be explicit in

the regulation." (Id.)

    According to Mr. Ben-Amotz, his conclusion is based on the "plain language" of Section

146-1.3, as well as the "need to prevent unintended consequences, such as loss of eligibility for

the tip credit for otherwise compliant employers and an unjustified windfall for employees that

have actual notice of their employer's tip credit practices;" "[a]lternatively stated, written notice

is not necessary to protect employees that have actual knowledge of the tip credit rules." (Id.)

    Defendants argue that Mr. Ben-Amotz's letter is entitled to deference, and they refer to a

decision from the Southern District of New York which afforded deference to it. (Defs.' Mem.

at 27 (citing Carvente-Avila v. Chaya Mushkah Rest. Corp., No. 12 CV 5359, 2016 WL 3221141

(S.D.N.Y. Mar. 1, 2016))). Defendants note that the court in Carvente-Avila deferred to the

letter in rejecting the plaintiffs' argument that the defendants should not be entitled to claim a tip

credit on the plaintiffs' wages based on defendants' alleged failure to provide proper notice

pursuant to Sections 195(1) and (3) of the NYLL. (Id. (citing Carvente-Avila v. Chaya Mushkah

Rest. Corp., 2016 WL 3221141, *1–2)).

    In Carvente-Avila, the court determined that Mr. Ben Amotz's interpretation was rational

and referred to the three grounds upon which Mr. Ben-Amotz found that oral notice may be

sufficient to permit an employer to take a tip credit.  Carvente-Avila v. Chaya Mushkah Rest.

Corp., 2016 WL 3221141, *2–3.  First, the court noted that Section 146-1.3 does not explicitly

require written notice to be provided, but rather refers to the requirements laid out in Section

146-2.2.  Id. at *2.  The Court noted that Mr. Ben-Amotz's letter reasoned that had the regulation

been aimed at requiring written notice, the requirement would have been explicit in the

regulation.  Id.  Next, the court recognized the letter's statement regarding the "need to prevent

unintended consequences," such as an otherwise compliant employer losing the ability to take a

tip credit when an employee earns the proper amount and had full knowledge of the tip credit

rules.  Id.  Finally, the letter noted that there are other consequences sufficient to provide an

incentive for an employer to provide written notice, even without the potential to lose a tip credit.

Id. at *3.  The court thus deferred to the conclusion set forth in the letter and held that oral notice

may suffice to permit an employer to claim a tip credit.  Id.  The court stated that "[t]he judicial

function is exhausted when there is found to be a rational basis for the conclusions approved by

the administrative body."  Id. at *2.  Thus, so long as a regulation is supported by a rational

basis, a court will defer to the regulation.

  In addition to Carvente-Avila, defendants cite to two subsequent decisions from the

Southern District of New York which have addressed the deference to be afforded to the Ben-

Amotz letter.  (Defs.' Mem. at 28 (citing Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14

CV 7850, 2016 U.S. Dist. LEXIS 155116, at *38 n.12 (S.D.N.Y. Nov, 7, 2016); Franco v.

Jubilee First Ave. Corp., No. 14 CV 7729, 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016))).

Defendants contend that, as in Carvente-Avila, this Court should defer to Mr. Ben-Amotz's letter

and find that oral notice may be sufficient to permit defendants to claim a tip credit.  (Id.)

The Moving Plaintiffs respond that the Ben-Amotz letter is not entitled to deference and note that this Court has recently acknowledged that "[c]ourts have found that evidence of oral notice of the tip credit provision to employees, which may satisfy the notice requirement of the FLSA, would not satisfy the NYLL." (Pls.' Reply at 15 (quoting Velez v. 111 Atlas Rest. Corp., 2016 WL 9307471, at *9)). The Moving Plaintiffs contend that the Department of Labor does not issue formal opinion letters and argue that, in any event, this is not a formal opinion letter issued by the Department; it was just an opinion that the General Counsel addressed to one particular state assemblyman and was not an agency interpretation issued to the public generally. (Id. at 15–16). As a result, the Moving Plaintiffs argue that the Court should not defer to Mr. Ben-Amotz's opinion as stated in the letter. (Id.)

Moreover, the Moving Plaintiffs contend that the justifications for Mr. Ben-Amotz's conclusion are not persuasive. (Id. at 16). As to the rationale that Section 146-1.3 does not explicitly require written notice, plaintiffs note that Section 146-1.3 primarily serves to set forth the amount of a permissible tip credit and otherwise "specifically identif[ies] Section 146-2.2, which expressly requires 'written notice' of the tip credit." (Id. (citing 12 N.Y.C.R.R. § 146-1.3)). Thus, according to the Moving Plaintiffs, the intent of the regulation "could not be clearer – an employer may take a tip credit under Section 146-1.3 only if it complies with Section 146-2.2's notice requirements," and the letter's contrary interpretation "contravenes the regulation's plain text and must be rejected." (Id.)

As to the letter's argument that this interpretation would prevent employees from reaping a windfall when they were paid the proper amount and were aware of the tip credit but were not provided with written notice, the Moving Plaintiffs note that "many courts have rejected this

rationale in holding employers to their tip credit notice obligations, even when their violations are only technical." (Id. at 17 (citing Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 348; Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011))). As one court noted, "if the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." (Id. (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d at 288)).

Moreover, the Moving Plaintiffs note that "while New York state representatives have attempted to repeal the Wage Theft Prevention Act [with its written notice provisions], those efforts were swiftly swept aside, strongly indicating the Legislature's favorable views of the Act and its penalties." (Id. (citation omitted)). Indeed, the Moving Plaintiffs note that "just last year" – after Mr. Ben-Amotz's letter was written – "the Legislature increased the maximum penalties for violations of each subsection of the WTPA from $2,500.00 to $5,000.00." (Id. (emphasis in original) (citing NYLL § 198(1-b))). Thus, the Moving Plaintiffs take the position that the New York legislature's and the Department of Labor's failure to amend the applicable statutes or regulations to remove the written notice requirements evinces their disagreement with Mr. Ben-Amotz's opinions. Finally, the Moving Plaintiffs contend that defendants should not be permitted to rely on Mr. Ben-Amotz's letter because it was issued on March 4, 2015, long after defendants allegedly provided oral notice of the tip credit to the Moving Plaintiffs. (Id.)

ii) Analysis

The Court declines to defer to the conclusion reached by Mr. Ben-Amotz. As an initial matter, the Court notes that, while informal opinion letters that "represent[] the position" of the

69

agency may be entitled to deference, see A.M. Med. Servs., P.C. v. Progressive Cas. Ins. Co., 101 A.D.3d at 64, 953 N.Y.S.2d at 226, this letter does not represent the position of the Department of Labor.  The Department of Labor has expressly stated that it does not "issue opinions on a case-by-case basis."  See Counsel, New York State Dep't of Labor, https://labor.ny.gov/legal/counsel.shtm (last accessed July 18, 2017).  Here, however,  Pico Ben-Amotz states in the first sentence of his letter that his response was based on an inquiry regarding the case of Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d 329 (W.D.N.Y. 2014).  (Benson Decl., Ex. 16 at 1).  Thus, because the Department of Labor does not issue formal opinion letters on a case-by-case basis, this letter cannot be said to represent the position of the Department of Labor, but rather represents Mr. Ben-Amotz's response to an inquiry about a specific case.

Even if this letter was the position of the Department of Labor on the date it was sent, March 4, 2015, the Department of Labor has made clear that its opinion letters cease to serve as "interpretive guidance" if there is "subsequent guidance providing otherwise."  See Counsel, New York State Dep't of Labor, https://labor.ny.gov/legal/counsel.shtm (last accessed September 19, 2017).  Since the Department of Labor ceased issuing opinion letters on a case-by-case basis, it now provides formal responses to inquiries for opinion requests by including them on its General Counsel's "Frequently Asked Questions" page. Id.  The "Frequently Asked Questions" page that is currently available on tips and gratuities continues to advise employers of the mandate to provide written notice:

> For the employer to claim a tip credit/allowance (and pay a reduced hourly wage in conjunction with the tips received by the employee), the employer must prove that the employee actually received such tips.  Employers must give employees, at or before the time of hiring, written notice that the employer will apply a tip credit or allowance toward their minimum wage.

Tips and Gratuities Frequently Asked Questions, New York State Dep't of Labor,

https://labor.ny.gov/legal/counsel/pdf/tips-frequently-asked-questions.pdf (last accessed

September 19, 2017) (emphasis added).  Thus, the current position of the Department of Labor, as

indicated in the only form of guidance that it provides, is that written notice is required for an

employer to be permitted to claim a tip credit.[44]

Finally, even if the opinion letter did represent the current position of the Department of

Labor, it would only be entitled to deference as long as it was not "irrational or unreasonable,"

Samiento v. World Yacht Inc., 10 N.Y.3d at 79, 883 N.E.2d at 995, 854 N.Y.S.2d at 88, and did

not conflict with the "plain meaning of the promulgated language."  Mid Island Therapy Assocs.,

LLC v. New York State Educ. Dep't, 129 A.D.3d at 1175, 10 N.Y.S.3d at 690.  In the instant

case, the Court recommends that the letter not be given deference because it clearly conflicts with

the plain language of the regulations that the Department itself has promulgated.  Section 146-1.3

of the Department of Labor's own regulations provides that "[a]n employer may take a credit

towards the basic minimum hourly rate . . . if the employee has been notified of the tip credit as

required in section 146-2.2 of this Part."  12 N.Y.C.R.R. § 146-1.3 (emphasis added).  Section

146-2.2 explicitly provides that the notice that is required must be in writing:  "Prior to the start of

employment, an employer shall give each employee written notice. . . ."  Id. § 146-2.2(a)

(emphasis added).  Accordingly, the opinion letter of Mr. Ben-Amotz contradicts the plain text of

the regulations that the Department itself has propounded.

---

[44]     Moreover, in August 2015 – after Mr. Ben-Amotz submitted his letter – the Department of Labor posted a "Fact Sheet" regarding the Wage Theft Prevention Act.  Fact Sheet, Wage Theft Prevention Act, New York State Dep't of Labor, https://www.labor.ny.gov/formsdocs/wp/ p715.pdf (Aug. 2015).  Although not an official statement of the Department of Labor's position on the issue, the Fact Sheet explained that employers must provide "a written notice" of "[a]llowances taken as part of the minimum wage," including "tip . . . deductions."

Notably, after Ben-Amotz's letter was written, the Department revised this set of regulations. See 12 N.Y.C.R.R. § 146-2.2 (effective Dec. 31, 2016). In issuing the new regulations, the Department did not alter or eliminate the requirement that notice of the tip credit must be provided in writing. Id. Indeed, the New York Court of Appeals has held that these regulations – which require notice of the tip credit to be provided in writing – are entitled to deference. See Barenboim v. Starbucks Corp., 21 N.Y.3d at 471–72, 972 N.Y.S.2d at 196–97, 995 N.E.2d at 158–59. Moreover, despite amending the relevant statute after the date of Mr. Ben-Amotz's letter, the New York state legislature did not amend the statute to permit an employer to claim a tip credit based on oral notice to the employee of the tip credit allowance. See 12 N.Y.C.R.R. § 146-2.2 (effective Dec. 31, 2016).

With respect to the cases from the Southern District of New York to which defendants cite, the Court notes that the decision in Carvente-Avila was issued prior to the Department of Labor's revisions to the applicable regulations. In retaining the requirement that notice of the tip credit be provided to employees in writing, the newly issued regulations continue to reflect the view that written notice is required, notwithstanding Mr. Ben-Amotz's opinion otherwise. Additionally, the Court notes that neither Almanzar or Franco, two of the other cases cited by defendants, actually afforded deference to Mr. Ben-Amotz's letter. In Almanzar, the court recognized the existence of the letter but did not address the question of deference because the defendants had not made any showing that the employee understood the tip credit in the absence of written notice and the plaintiff's allegations as to his non-tipped duties "forclose[d] availability of a tip credit under the NYLL." Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., 2016 U.S. Dist. LEXIS 155116, at *38 n.12. In Franco, the court also acknowledged the existence of the

72

letter and the Carvente-Avila decision, but did not address whether deference was appropriate because the defendants had not argued that they had provided adequate notice of the tip credit, nor had they refuted the plaintiffs' arguments as to whether the letter was applicable in the case. Franco v. Jubilee First Ave. Corp., 2016 WL 4487788, at *13.

Accordingly, consistent with the Department of Labor's current interpretation of its own regulations, the regulations themselves, and prior case law in this district, the Court declines to find that Mr. Ben-Amotz's letter to a member of the New York State Assembly is entitled to deference and respectfully recommends that the district court find that written notice is necessary to satisfy the requirements for an employer to claim a tip credit.[45]

### 2. Any Additional Materials Not Yet Produced in Discovery

Defendants contend that "any motion that is broader than simply whether Plaintiffs received Section 195(1) wage notices is premature." (Defs.' Mem. at 28). They argue that they have not had the opportunity to "request any discovery" on the claims on which the Moving Plaintiffs seek summary judgment, and that they have not "been able to search for additional

---

[45]    To the extent that defendants claim that employees would receive a "windfall" if they were provided with oral notice of the tip credit and received the wages which they were informed they would receive, the Court notes that the written notice requirement is intended to protect employees. Indeed, employers are in the best position to know what the tip credit is and to properly explain it to employees. Moreover, the NYLL requires employers to maintain an acknowledgment of receipt of the written notice for six (6) years. See 12 N.Y.C.R.R. 146-2.2(c). Thus, to permit an employer to claim a tip credit by virtue of providing oral notice of the tip credit runs not only contrary to the plain notice of the NYLL and accompanying regulations, but also undermines the policy of providing protections to workers, many of whom may be uneducated or speak little English. If oral notice were permitted, those vulnerable employees may be forced to rely on a factfinder to determine whether their testimony that no oral notice was given is credible. As discussed supra at 69, the court in Copantitla v. Fiskardo Estiatorio, Inc., noted, "notice is not difficult for the employer to provide." 788 F. Supp. 2d at 288.

Notices to Team Members Who Receive Tips that are not contained in personnel files or other sources of written notice of the tip credit." (Id. (citing Defs.' 56.1 Stmnt ¶¶ 46, 47, 48)). Accordingly, given that "it is actual notice, and not necessarily what was contained on the notices themselves that are [sic] relevant," defendants argue that additional discovery is "necessary" before the Moving Plaintiffs' minimum wage claims under the NYLL can be decided. (Id. at 28–29).

       To the extent that defendants seek additional evidence as to whether the Moving Plaintiffs had "actual" notice that defendants were claiming the tip credit, as the Court has already discussed supra, defendants incorrectly rely on their position that what the employee knew is relevant, and that written notice is not required. Sections 146-1.3 and 146-2.2 make clear that, in order for an employer to claim a tip credit, a written notice must be provided to the employee prior to the start of employment that contains, among other things, the individual employee's regular hourly pay rate and amount of the tip credit to be claimed. See 12 N.Y.C.R.R. §§ 146-1.3, 146-2-2(a). The employee must sign an acknowledgment of receipt of that notice. Id. § 146-2.2(c). Thus, provided that the notice was given and the employee acknowledged receipt, the extent to which the employee did or did not understand the contents of the notice is not material. Accordingly, the only discovery that is necessary for the Moving Plaintiffs' claims is whether defendants provided the proper written notices, with an acknowledged receipt, from the Moving Plaintiffs. Depositions of the Moving Plaintiffs to discover whether they actually understood that defendants were claiming a tip credit are not required and, in any event, even if plaintiffs did testify that they understood the tip credit, this, as discussed supra, is not a defense to failing to provide proper written notice.

74

As to defendants' argument that they "have not had the opportunity to request any discovery on this issue" (Defs.' Mem. at 28), defendants have not indicated to the Court why these written notices are not in defendants' possession and why the Moving Plaintiffs would have relevant information or documents that defendants themselves did not have. Indeed, the NYLL makes clear that it is the responsibility of the employer, not the employee, to preserve the employee's acknowledgment of receipt of the wage notice. See NYLL § 195(1)(1), 12 N.Y.C.R.R. § 146-2.2(c). Defendants have not explained why plaintiffs would have copies of notices that defendants do not. Moreover, given that plaintiffs requested production of all documents related to employee compensation and that defendants have already produced the Moving Plaintiffs' personnel files, defendants have not explained to the Court why any tip credit notices pertaining to particular employees would not have been included in their individual personnel files or, if located in other files of defendants, why these documents would not have been found by now or were not otherwise produced.

Thus, the Court finds that, since defendants have already produced the Moving Plaintiffs' personnel files and should have maintained all of the records required by law, including information relevant to determining whether the Moving Plaintiffs were provided with sufficient written notice of the tip credit, there is no need for additional discovery from the Moving Plaintiffs before this motion can be decided. If defendants failed to maintain the records evidencing that written notice was provided to each plaintiff, then they violated Section 146-2.2(c), which provides that employers must preserve for six (6) years "[a]n acknowledgment of receipt signed by the employee" evidencing their written notice of the tip credit, and that alone supports the finding that they are not entitled to claim a tip credit. 12 N.Y.C.R.R. § 146-2.2(c).

### 3. Defendants' Argument That This Was a "Victimless" Omission

At oral argument, defendants' counsel emphasized that even if the Moving Plaintiffs were not provided with written notice of the tip credit that complied with the NYLL, defendants should not lose their entitlement to the tip credit because the Moving Plaintiffs received the proper amount of compensation.[46]  However, defendants' counsel made this same argument in the Hicks case and the court there rejected that argument, as the Court does here.  The court in Hicks stated that "[c]ertainly New York State does not consider failure to provide employees with proper wage notices a trifle, in that NYLL § 198(1-b) allows for damages of up to $2,500 for failure to provide the same." Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 348.  Indeed, since the Hicks decision was issued, the maximum penalty for failure to comply with the NYLL's wage notice requirements has been increased from $2,500 to $5,000.  NYLL § 198(1-b) (amended Jan. 19, 2016).

Moreover, defendants are incorrect in arguing that the Moving Plaintiffs received the proper amount of compensation.  Given that defendants did not provide the required notice, they were not entitled to claim a tip credit.  Thus, because they reduced the Moving Plaintiffs' wages by the tip credit amount when they were not entitled to take such a credit, or otherwise paid employees below the minimum wage by claiming a tip credit, most of the Moving Plaintiffs were paid below the minimum wage, and those Moving Plaintiffs were not compensated properly.  Accordingly, in light of the evidence presented to the Court, it is no defense to the Moving Plaintiffs' minimum wage claims under the NYLL that the Moving Plaintiffs were paid the proper amount of wages.

---

[46]    It is unclear what the basis for this assertion is since defendants have not produced any records to demonstrate proper payment to each Moving Plaintiff.

76

### 4. Consequences of Tip Credit Not Applying: Minimum Wage Violations

Since defendants were not entitled to claim a tip credit and the tips the Moving Plaintiffs

may have received are not considered in calculating their wages, there is no genuine issue of

material fact that the Moving Plaintiffs, other than Carlos Marin, Melitta Jones, Christian

Rodriguez, and Samuel Williams, were paid by defendants at an hourly rate that fell below the

minimum wage.[47]

In their Rule 56.1 Statement of Uncontested Facts, the Moving Plaintiffs claim that

defendants paid the Moving Plaintiffs $5.00 per hour for their regular pay, and $7.50 per hour for

their overtime pay. (Pls.' 56.1 Stmnt ¶ 23).[48]  In support of this contention, plaintiffs included in

their papers excerpts from spreadsheets produced by defendants reflecting that most of the

Moving Plaintiffs were paid at the base rate of $5.00 per hour or at other hourly rates that fell

below the applicable minimum wage. (Graff Decl. ¶ 19, Ex. 11).[49]  Additionally, the parties have

---

[47]     Defendants maintain that they have not been able to search their own files for additional notices that were distributed to the Moving Plaintiffs and therefore plaintiffs' motion is premature.  However, since the Marin case was filed in October 2012 and the Dove case was filed in March 2013, it is unclear why defendants have not had sufficient time in the last four years to search for these records.  (Id. at 28–29).

[48]     The Court notes that the records provided by the Moving Plaintiffs indicate that not all of the Moving Plaintiffs were paid at these rates.  (See Graff. Decl., Exs. 12–73; see also Benson Decl., Exs. 23–34).

[49]     The Moving Plaintiffs whose hours are reflected in these records are:  1) Akita Ashley; 2) Sheena Benjamin; 3) Shawna Brunson; 4) Christina Carr; 5) Ashley Marie Cedeno; 6) Saquarius Delain; 7) Camille Dieudonne; 8) Ajalai Edwards; 9) Antonio Ferrara; 10) Stephen Friscia; 11) Kashawn Gillespie; 12) Tiffany Jacinthe; 13) Anorvia James; 14) Marquetta Jemmott; 15) Daja Karumba; 16) Sara Kastuk; 17) Mark Kennedy; 18) Whitney Kerr-Black; 19) Michael Magagnin; 20) Christina Makepeace; 21) Keydia Manns; 22) Demetrius Mariakakis; 23) David Martinez; 24) Marsha Michaud; 25) Azuria Nesmith; 26) Briana Palmeri; 27) Stephanie Persaud; 28) Ariel Plaza; 29) Natalie Ramirez; 30) Gasoare Randazzo; 31) Tiffany Reese; 32) Tiana K. Reid; 33) Esmeralda Rivera; 34) Jesus Roldan; 35) Ariana Roman; 36) Mana Camila Ruiz; 37) Ralph Ruiz; 38) Ashley Scheur; 39) Erika Schmid; 40) Jennifer

provided the Court with copies of the wage notices that were provided to all of the Moving
Plaintiffs, as well as pay records for many of the Moving Plaintiffs, which indicate that the
regular hourly rate paid to all but four of them, after subtracting the amount of the tip credit taken
from the minimum wage, fell below the applicable minimum wage rate.  (See id., Exs. 12–73;
Benson Decl., Exs. 23–34).

There are, however, four Moving Plaintiffs who were paid above the minimum wage
based on the evidence presented.  As to named plaintiff Carlos Marin, defendants have submitted
records indicating that Mr. Marin was paid $9.50 per hour and plaintiff Marin concedes that he
was paid $9.50 per hour "for almost all of the work that [he] performed" for which he was paid.
(Benson Decl., Ex. 23; Marin Decl. ¶ 6).  Moving Plaintiff Melitta Jones's wage notice similarly
indicates that she was paid $9.50 per hour as of September 14, 2013, which complied with the
applicable minimum wage rate at the time[50] (Benson Decl., Ex. 31 at 38), and her pay records also
indicate that she was paid above the minimum wage.  (Id., Ex. 34 at 14–24).  Moving Plaintiff
Christian Rodriguez's wage notice indicates that he was paid $8.00 per hour as of June 5, 2014,
which complied with the applicable minimum wage rate at the time.  (Graff. Decl., Ex. 73).
Moving Plaintiff Samuel Williams's time records reflect that he was paid above the applicable
minimum wage for the hours recorded.  (Benson Decl., Ex. 33 at 75–90).

Thus, while defendants claim that the pay records reflect "a variety of hours" (see Defs.' 56.1
Stmnt ¶¶ 23, 66–69), these documents reflect that all of the Moving Plaintiffs, other than Carlos

---

Schmoll; 41) Denae Stallings; 42) Brianna Thomas; 43) Latoya Thomas; 44) Jamal Vargas;
45) Angie Wassif; and 46) Danielle Williams.  (See Graff Decl., Ex. C).

[50]     The applicable minimum wage rates in New York are provided in Section 652 of the
NYLL.

Marin, Melitta Jones, Christian Rodriguez, and Samuel Williams, received hourly pay rates below the applicable minimum wage. Accordingly, the wages provided to all of the Moving Plaintiffs, other than Carlos Marin, Melitta Jones, Christian Rodriguez, and Samuel Williams, fell below the minimum wage and therefore violated the NYLL.

### C. Conclusion

In light of the foregoing, the Court respectfully recommends that, with the exception of Moving Plaintiffs Carlos Marin, Melitta Jones, Christian Rodriguez, and Samuel Williams, the Moving Plaintiffs' motion for summary judgment on their minimum wage claims under the NYLL be granted. As to Moving Plaintiffs Carlos Marin, Melitta Jones, Christian Rodriguez, and Samuel Williams, the Court respectfully recommends that the motion for summary judgment on their minimum wage claims under the NYLL be denied without prejudice.

### MOTION FOR CLASS CERTIFICATION

Plaintiffs seek certification of two NYLL subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Pls.' Mem. at 37). Plaintiffs' Proposed Subclasses correspond to the claims for which the Moving Plaintiffs seek partial summary judgment:

> Subclass A:    All current and former employees of Apple-Metro from January 1, 2011 through the present who were paid tip-credit reduced (sub-minimum wage) hourly rates but were not provided with compliant written notices containing the information required under NYCCRR tit. 12, § 146-2.2, who are thereby owed additional pay per hour worked based on Apple-Metro's failure to pay minimum wages.

> Subclass B:    All current and former employees of Apple-Metro
> from January 1, 2011 through the present who were not
> provided with compliant wage notices as required by NYLL
> Section 195(1) and who are thereby entitled to the statutory
> penalties set forth in Section 195(1).[51]

Defendants oppose certification of both Proposed Subclasses.


I. "Fail-Safe" Classes

Defendants argue that neither Proposed Subclass should be certified because they

represent impermissible "fail-safe" classes. (Defs.' Mem. at 30–31).

"A fail-safe class is one whose definition 'shields the putative class members from

receiving an adverse judgment. . . .' In other words, 'in a fail-safe class, either the class members

win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.'"

Spread Enters., Inc. v. First Data Merchant Servs. Corp., 298 F.R.D. 54, 69 (E.D.N.Y. 2014)

(quoting Mazzei v. Money Store, 288 F.R.D. 45, 55 (S.D.N.Y. 2012), aff'd, 829 F.3d 260 (2d Cir.

2016). See McCaster v. Darden Rest. Inc., 845 F.3d 794, 798 (7th Cir. 2017) (defining a fail safe

class as one that "is defined so that whether a person qualifies as a member depends on whether

the person has a valid claim") (quoting Messner v. Northshore Univ. HealthSystem, 669 F.3d 802,

825 (7th Cir. 2012)). Courts should not certify a proposed "fail-safe" class because they are

"unfair to defendants," "prevent[] an adverse judgment being entered against plaintiffs," and are

"unmanageable because the members of the class could only be known after a determination of

---

[51]    The Court notes that, although Subclass B refers to employees who worked from January
1, 2011 to the present, statutory penalties for failure to provide proper wage notices have only
been available since April 9, 2011. (See supra at 33–36). Additionally, the statutory penalties for
violations of Section 195(1) are set forth in Section 198(1-b), not Section 195(1), of the NYLL.
(Id.)

liability." Id. (quoting Mazzei v. Money Store, 288 F.R.D. at 55); see also Ruiz v. Citibank, N.A.,

No. 10 CV 5950, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) (explaining that "fail-safe"

classes are disfavored, in part, because they "require an adjudication of the merits of each

individual's claim to determine whether they are within the class, squandering whatever

efficiency gains might be had from mass litigation").

Where a party proposes a "fail-safe" class, "courts have the discretion 'to . . . redefine the

class to bring it within the scope of Rule 23.'" Spread Enters., Inc. v. First Data Merchant Servs.

Corp., 298 F.R.D. at 70 (quoting Mazzei v. Money Store, 288 F.R.D. at 55). Indeed,

> [i]t is well-established that 'the court may, in its discretion . . .
> modify the definition of the proposed class to provide the necessary
> precision or to correct other deficiencies. In fact, the court has a
> duty to ensure that the class is properly constituted and has broad
> discretion to modify the class definition as appropriate to provide
> the necessary precision.

Rivera v. Harvest Bakery, Inc., 312 F.R.D. 254, 267 (E.D.N.Y. 2016) (quoting Morangelli v.

Chemed Corp., 275 F.R.D. 99, 114 (E.D.N.Y. 2011)).

Defendants argue that both of the Proposed Subclasses represent "fail-safe" classes

because they "presuppose Defendants' liability: both Proposed Subclasses A and B include only

those "employees who 'were not provided with compliant written notice'. . . or 'compliant wage

notices.'" (Defs.' Mem. at 30–31). Thus, defendants contend that certifying the Proposed

Subclasses would permit plaintiffs to litigate without risking an adverse judgment, given that

putative class members either "win and are in the class, which by definition cannot lose its

claim," or they "lose and are outside the class, and thus are not bound by an adverse decision."

(Id. at 31 (internal quotations omitted) (citing Ruiz v. Citibank N.A., 2015 WL 4629444, at *7)).

While plaintiffs "dispute" defendants' argument that the Proposed Subclasses represent "fail-

safe" classes, they have not advanced any substantive arguments to refute defendants' contention that the Proposed Subclasses represent "fail-safe" classes. (See Pls.' Reply at 18–19).

The Court finds that both of plaintiffs' original Proposed Subclasses represent "fail-safe" classes and respectfully recommends that they not be certified as defined. Each Proposed Subclass would only have members if plaintiffs were to prevail on their minimum wage or wage notice claims, respectively, under the NYLL. Proposed Subclass A as defined by plaintiffs would be comprised of those who were paid sub-minimum hourly wages based on defendants' use of a tip credit but who "were not provided with compliant written notices containing the information required" by the NYLL, and "are thereby owed additional pay per hour worked based on Apple-Metro's failure to pay minimum wages." (Pls.' Mem. at 37). Thus, the only members of the class would be employees who would prevail on their minimum wage claims under the NYLL; to the extent that any employees were provided proper notices, those employees would not be part of this class and, thus, would not be bound by any adverse judgment. The same is true of Proposed Subclass B, which would be comprised of employees who "were not provided with compliant wage notices as required" by Section 195(1) of the NYLL, and thus are "entitled to the statutory penalties" set forth therein. (Id.) The only members of this Proposed Subclass would be those who would prevail on their wage notice claims and would therefore be entitled to statutory damages; any individual who was provided with proper wage notices would not be included in the subclass and would not be bound by any adverse judgment.

Additionally, as for plaintiffs' proposed Subclasses A and B, membership in each subclass turns on whether the employee received a "compliant" wage notice. Thus, in order to be a class member, the proposed definition presupposes that the employee was not given a compliant wage

82

notice.  As the court in <u>Spread Enterprises</u> explained, "[i]n this way, the proposed class definitions for these subclasses are not neutral in that they already presuppose that the subject fees were excessive, despite the fact that the Defendants dispute this allegation."  <u>Spread Enters., Inc. v. First Data Merch. Servs. Corp.</u>, 298 F.R.D. at 69–70 (finding proposed subclass a fail-safe class).

Accordingly, the Court respectfully recommends that plaintiffs' Proposed Subclasses A and B not be certified.  In the event that the Court finds that the original Proposed Subclasses represented "fail-safe" classes, plaintiffs propose the following revised definitions to their Proposed Subclasses:

> Proposed Revised Subclass A:  All tipped hourly employees at all Apple-Metro restaurants, from January 1, 2011 through the present, who have been paid tip-credit reduced (sub-minimum wage) hourly rates.

> Proposed Revised Subclass B: All non-managerial employees at all Apple-Metro restaurants from April 9, 2011 to the present.

(<u>Id.</u> at 19 (footnote omitted)).

By making these modifications, membership in the subclasses does not rest on whether the class member received a compliant wage notice.  Instead, with respect to Revised Subclass A, membership in the class turns on whether the employee was paid an hourly rate based on a tip credit reduction.  The question common to all of the class members, as discussed in more detail below, is whether defendants properly paid the class members at a reduced hourly rate.

As for Revised Subclass B, the Court respectfully recommends that this Subclass be further modified as follows:

> Revised Subclass B: All non-managerial employees at all

Apple-Metro restaurants who were hired on or after
April 9, 2011.

A court can "redefine the class to bring it within the scope of Rule 23." (Cokely v. N.Y.
Convention Ctr. Operating Corp., No. 00 CV 4637, 2004 WL 1152531, at *2 n.3 (S.D.N.Y. May
21, 2004). Indeed, it is the Court's duty to ensure that a class "is properly constituted," Rivera v.
Harvest Bakery, Inc., 312 F.R.D. at 267. This further modification makes it clear that the class is
limited to those employees hired after April 9, 2011, after the amendment to NYLL 195(1)
requiring the provision of a wage notice upon hiring, went into effect. The question common to
this subclass is whether they were provided with compliant notices or no notices at all; in either
case, their damages would be calculated based on the statutory amounts set out in Section 198.

Neither Revised Subclass is a fail-safe class. Revised Subclass A includes tipped hourly
employees who have been paid sub-minimum wage hourly wages; thus, a tipped employee who
received a wage lower than the minimum wage but received proper tip credit notice would be a
member of Revised Subclass A and would be bound by a judgment that the tip credit notices
received by the class were adequate. Similarly, the modified Revised Subclass B includes all
non-managerial employees hired by Apple-Metro after April 9, 2011, even those who received
compliant wage notices; thus, an employee who received a proper Section 195(1) notice would be
a member of the modified Revised Subclass B and would be bound by a judgment as to the legal
sufficiency of the notices.

Accordingly, the Court proceeds to consider whether Revised Subclasses A and B should
be certified.

84

## II. Rule 23 Class Certification

### A. The Requirements of Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification and provides the following:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In Wal-Mart Stores, Inc. v. Dukes, the Supreme Court discussed the requirements of Rule 23, stating the following:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule. . . . We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." [General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160–61 (1982)]. Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

564 U.S. 338, 350–51 (2011) (citations omitted). Following the decision in Wal-Mart Stores, Inc. v. Dukes, the Second Circuit determined that "[t]he party seeking certification must establish [Rule 23's] requirements by a preponderance of the evidence." Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 119 (2d Cir. 2014) (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)). A

district court must conduct a "rigorous analysis" that may "overlap with the merits of the plaintiff's underlying claims." Jacob v. Duane Reade, Inc., 602 F. App'x 3, 5 (2d Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350–51). The court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006); see also Kurtz v. Kimberly-Clark Corp., No. 14 CV 1142, 2017 WL 1155398, at *34 (E.D.N.Y. Mar. 27, 2017).

In their papers, the parties address whether the plaintiffs' Proposed Subclasses should be certified, and they present arguments as to the specific requirements of Rule 23 insofar as the Proposed Subclasses are concerned. However, since the Court has already found that the Proposed Subclasses are impermissible fail-safe classes (see supra at 82), the Court now considers whether it should exercise its discretion to re-define the Proposed Subclasses and whether class certification is appropriate for either of the proposed Revised Subclasses. The parties' arguments respecting the original Proposed Subclasses are relevant to the Court's analysis of the proposed Revised Subclasses and will be considered herein.

### 1. Numerosity

Plaintiffs contend that the Proposed Subclasses satisfy the numerosity requirement of Rule 23(a). (Pls.' Mem. at 38). As the Second Circuit has noted, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S. 2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41,

48 (E.D.N.Y. 2010). Plaintiffs note that more than 1,000 putative class members have already opted into these cases pursuant to Section 216 of the FLSA, and that defendants produced a "class list" consisting of more than 14,000 putative class members for purposes of distributing FLSA collective certification notices. (Pls.' Mem. at 38). Defendants concede that the numerosity requirement has been satisfied. (Defs.' Mem. at 29 n.14; see also Pls.' Reply at 19 n.16).

Since Revised Subclasses A and B are arguably more expansive than the Proposed Subclasses which have more than 14,000 putative class members, and defendants concede that the numerosity requirement has been met as to the Proposed Subclasses, the Court finds that the Revised Subclasses meet the numerosity requirement.

### 2. Commonality

#### a) Plaintiffs' Arguments as to Commonality

Plaintiffs claim that both Proposed Subclasses satisfy the commonality requirement. (Pls.' Mem. at 38–39). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of the law." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 349–50 (citing General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)). The common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

In the context of wage-and-hour cases, courts in this circuit have interpreted Dukes "to require movants to either show proof of an express company policy that violates wage and hour

laws, or proof from which a court can infer that the defendant operated under a de facto policy to deny class members the wages to which they were entitled." Rivera v. Harvest Bakery Inc., 312 F.R.D. at 269. "It is well-established that 'the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement.'" Id. at 271 (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011)); see also Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) (quoting Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011)) (explaining that "it is axiomatic that 'the commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct'"). Thus, "courts addressing the commonality requirement after Dukes have typically held that the requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy." Ramirez v. Riverbay Corp., 39 F. Supp. 3d at 364 (citing Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011); Espinoza v. 953 Assocs. LLC, 280 F.R.D. at 127; Youngblood v. Family Dollar Stores, Inc., No. 09 CV 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011); Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 355 (E.D.N.Y. 2011)).

Plaintiffs claim that both Proposed Subclasses satisfy the commonality requirement. (Pls.' Mem. at 38–39). They maintain that the Second Circuit has reasoned that "when employees are challenging a restaurant's tip credit policies, those claims will meet the commonality requirements of Rule 23" because "[t]hey all derive from the same compensation policies and they all arise under the same statutes and regulations." (Id. (citing Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 252)). Plaintiffs refer the Court to Hicks v. T.L. Cannon

Corp., which plaintiffs aver was "a case almost identical to the one before this Court." (Id. at 39). Plaintiffs note that the court in Hicks found that the commonality requirement was satisfied because the "Plaintiffs' claims depend upon the common contention that Defendants allegedly provided all class members with deficient wage and tip notices," which rendered the case "'capable of classwide resolution' as its 'truth or falsity will help resolve the issue . . . in one stroke.'" (Id. (citing Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 352)). Thus, as in Hicks, plaintiffs contend that they have established commonality "because the claims for which Plaintiffs seek class certification all derive from the same tip credit compensation policies and they arise under the same statutes and regulations." (Id.)

### b) Defendants' Arguments

Defendants respond by referring the Court to Wal-Mart Stores, Inc. v. Dukes and its explanation that commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." (Defs.' Mem. at 32 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 349–50)). Defendants note that a plaintiff's claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (Id. at 32–33 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350)). According to defendants, "what matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (Id. at 33 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350)).

Defendants contend that there is no common question that is capable of classwide resolution.  (Id. at 34).  While they acknowledge that defendant Apple-Metro had common policies and practices of providing tip credit notices and Section 195(1) wage notices, they contend that Apple-Metro left the task of providing those notices to each restaurant's management and that, "in certain instances," those managers allegedly deviated from Apple-Metro's policies and practices.  (Id. (citing Defs.' 56.1 Stmnt ¶¶ 50–52, 55–65, 71–72)).  Accordingly, defendants argue that "there is no pattern or predictability to (1) how and whether tipped employees received proper notice of the tip credit (Subclass A), or (2) which employees received and signed all required wage notice forms . . ., which forms were preserved and placed in personnel files, and which personnel files were properly preserved (Subclass B)."  (Id. (citing Defs.' 56.1 Stmnt ¶¶ 60, 71–78)).  Defendants aver that "[t]his lack of pattern or predictability not only affects all the members of both subclasses, but also the Named Plaintiffs seeking to represent them."  (Id.)

As to Subclass A, defendants claim that employees received different forms of notice of the tip credit, such that "[t]here is simply no common or representative evidence that can answer the question of whether an employee received notice of the tip credit, 'in one stroke,' generating a common answer."  (Id. at 34–35 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350)).  For example, defendants claim that different employees may have received written notice of the tip credit through Section 195(1) forms, "Notice to Team Members Who Receive Tips" forms, and/or employee handbooks, while other employees allegedly did not receive written notice but may have received oral notice, while still others may have received no notice of the tip credit whatsoever.  (Id. at 34 (citing Defs.' 56.1 Stmnt ¶¶ 73–79)).  With respect to employees who did not receive written notice of the tip credit, defendants claim that "only individualized testimony

will be able to provide the evidence required to resolve those plaintiffs' claims." (Id. at 35 (citing

Romero v. H.B. Auto. Grp., Inc., No. 11 CV 386, 2012 WL 1514810, at *18–19 (S.D.N.Y. May

1, 2012); Gardner v. Western Beef Props., Inc., No. 07 CV 2345, 2011 WL 6140518, at *3–4

(E.D.N.Y. Sept. 26, 2011), report and recommendation adopted as modified, 2011 WL 6140512

(E.D.N.Y. Dec. 9, 2011); Edwards v. Publishers Circulation Fulfillment, Inc., 268 F.R.D. 181,

188–89 (S.D.N.Y. 2010); Diaz v. Electronics Boutique of Am., Inc., No. 04 CV 840, 2005 WL

2654270, at *6 (W.D.N.Y. Oct. 17, 2005))).

　　　With respect to Subclass B, defendants allege that some putative class members received a

Section 195(1) notice while others may not have, and that some of the forms contained the proper

overtime hourly pay rate listed while others did not, such that "[b]y looking at one employee's

Section 195(1) forms, there is no way to determine whether the next employee's forms will be

preserved and/or properly completed." (Id. (citing Defs.' 56.1 Stmnt ¶¶ 53–66; Graff Decl., Exs.

12–73)). According to defendants, "[t]he only way to determine liability is to go through each

and every subclass B member's personnel files – over 14,000 – to review the wage notice forms

found within." (Id. at 35–36).

　　　Defendants further note that they seek to invoke an affirmative defense applicable to both

Subclasses – namely, that there is no violation if the employees received the proper amount of

wages. (Id. at 36). Thus, they argue that an individualized inquiry is required for each employee.

(Id.) Defendants refer the Court to Gregory v. Stewart's Shops Corp., in which the defendant had

a policy of providing wage notices but the plaintiffs claimed that the defendant violated its own

policy and failed to comply with Section 195(1) of the NYLL. (Id. (citing Gregory v. Stewart's

Shops Corp., No. 14 CV 33, 2016 U.S. Dist. LEXIS 89576, at *98–99 (N.D.N.Y. July 8, 2016),

report and recommendation adopted, 2016 U.S. Dist. LEXIS 133136 (N.D.N.Y. Sept. 28, 2016))).

In Gregory, the court recommended denying class certification on the plaintiffs' Section 195(1)

claims in part because the defendant sought to invoke the affirmative defense that, even if it failed

to properly distribute wage notices, it made "complete and timely payment of all wages due" to

the putative plaintiffs.  Gregory v. Stewart's Shops Corp., 2016 U.S. Dist. LEXIS 89576, at

*98–99 (citing NYLL § 198(1-b).  Thus, the court found that resolving the affirmative defense

would require an individualized inquiry as to whether each employee was paid the proper amount

in wages, such that commonality was not established.  Id.  Defendants claim that the Gregory case

is indistinguishable from the instant one, where "mini-trials" may be required to determine

whether each employee received the proper amount in wages, notwithstanding any deficiencies in

wage notices.  (Defs.' Mem. at 36–37 (citing Vinole v. Countrywide Home Loans, Inc., 571 F.3d

935, 947 (9th Cir. 2009); Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002))).

    Finally, to the extent that plaintiffs argue that defendants' "common ownership and

manager training materials provide sufficient evidence of commonality," defendants argue that

such evidence is "not central to the validity of Plaintiffs' claims that they did not receive notice of

the tip credit or their Section 195(1) notices."  (Id. at 35 n.15 (citing Wal-Mart Stores, Inc. v.

Dukes, 564 U.S. at 350;  Edwards v. Publishers Circulation Fulfillment, Inc., 268 F.R.D. at 186)).


### c)  Plaintiffs' Reply

    Plaintiffs respond that, rather than requiring "mini trials," defendants' liability on both

plaintiffs' NYLL minimum wage and Section 195(1) claims is "readily ascertainable by objective

documentation in Defendants' possession – namely, the existence and content of the written tip

credit notice and wage notice forms required under 12 N.Y.C.R.R. § 146-2.2 and NYLL § 195(1)." (Pls.' Reply at 21). Plaintiffs refer the Court to cases in which courts certified classes where objective documentation permitted a classwide determination of the issues involved. (Id. (citing Mendez v. U.S. Nonwovens Corp., 314 F.R.D. 30, 55 (E.D.N.Y. 2016); Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 308 (E.D.N.Y. 2013); Flores v. Anjost Corp., 284 F.R.D. 112, 123 (S.D.N.Y. 2012))).

As to defendants' contention that they would need to review all putative class members' personnel files in order to determine their liability, plaintiffs respond by pointing out that it is defendants' burden to establish that they have provided adequate notice of the tip credit and that defendants' "legal obligations are not waived by virtue of Defendants' disregard of those obligations to more than 14,000 current and former employees." (Id. at 21–22). Indeed, plaintiffs claim that "the vast scale of Defendants' unlawful conduct against many thousands of employees only underscores that a class action is the superior method of adjudicating these restaurant employees' claims to achieve economies of time, effort, and expense, and to promote uniformity of decisions as to the similarly situated employees." (Id. at 22 (citing Fed. R. Civ. P. 23(b)(3))).

Finally, plaintiffs claim that individualized proof regarding defendants' affirmative defense to plaintiffs' Section 195(1) claim is unnecessary, given that defendants have not presented any evidence suggesting a good faith basis to believe they were not required to provide Section 195(1) wage notices. (Id.)

d) Analysis

The Court finds that plaintiffs have established, by a preponderance of the evidence, that there are common questions of fact among the putative class members of both Revised Subclasses A and B that can be answered on a classwide basis. Specifically, the Court finds that whether defendants provided putative class members with proper tip credit notices (Revised Subclass A), thus allowing the employer to pay at an hourly rate below the standard minimum wage, and whether defendants provided sufficient Section 195(1) wage notices at the time of hire (Revised Subclass B) may be answered by reference to the wage notices already produced by defendants and provided to the Court in connection with these motions. (See Graff Decl., Exs. 12–73).

As discussed supra, the documents that defendants maintained in the Moving Plaintiffs' personnel files establish that none of the Moving Plaintiffs received proper notice of the tip credit; thus the Court respectfully recommended that most of the Moving Plaintiffs' be granted summary judgment on their minimum wage claims, and that the 198(b) Plaintiffs subset within the Moving Plaintiffs be granted summary judgment on their wage notice claims under the NYLL. Specifically, the Court found that each written wage notice that was provided to the Moving Plaintiffs contained one common error – namely, that the wage notices stated the incorrect amount for the Moving Plaintiffs' overtime hourly pay rate. (See supra at 37–40). Indeed, every wage notice that defendants produced to plaintiffs had an incorrect amount; there was not a single notice that provided the proper overtime amount. Surely had defendants had some proper notices, they would have provided them, leading the Court to conclude that there was a widespread practice which resulted in improper notices. Thus, the Court finds by a preponderance of the evidence that defendants maintained a policy or practice of providing an incorrect overtime

94

hourly pay rate in the wage notices they provided to non-exempt employees.[52]  Under the NYLL, defendants' failure to provide accurate overtime rates on wage notices alone deprives defendants of the entitlement to claim a tip credit.

Moreover, as to defendants' claim that individualized proof would be required to assess defendants' affirmative defense that their employees received the proper amount of pay notwithstanding a failure to provide an adequate tip credit notice or Section 195(1) wage notice, the Court has already discussed, supra, such an affirmative defense is not available at all for minimum wage claims or for Section 195(1) claims that arose prior to February 27, 2015. Accordingly, individualized proof about the amount of wages received by each employee who was hired before February 27, 2015 would only be relevant to an assessment of damages.  See Mendez v. U.S. Nonwovens Corp., 314 F.R.D. at 53.  Moreover, to the extent that each employee may be entitled to a different amount of damages, individualized damages inquiries do not themselves defeat class certification.  See Rivera v. Harvest Bakery Inc., 312 F.R.D. at 271.

With respect to defendants' argument that they would need to review the more than 14,000 personnel files for each putative plaintiff in order to determine their liability on plaintiffs' minimum wage and wage notice claims, as the Court has already discussed, the records submitted by the parties indicate a consistent policy and practice of failing to provide wage notices and proper notice of a tip credit even without needing to analyze each file individually.  Moreover, to the extent that defendants claim that more discovery should be performed or is necessary to

---

[52]    It is notable that nowhere in defendants' papers opposing partial summary judgment or arguing against class certification have defendants provided a single compliant wage notice containing the proper regular rate, proper tip credit, and proper overtime amount, thus calling into question the accuracy of defendants' claim that only "in certain instances" did some Apple-Metro managers deviate from Apple-Metro's policies.  (Defs.' Mem. at 34).

determine their liability, the Court notes that defendants requested the opportunity to produce a sample of personnel files, rather than produce thousands of files, and, indeed, defendants were permitted to select the files on which the instant motion is based. (See 11/12/15 Minute Entry[53]). Thus, the Court will not now consider defendants' argument that they should be permitted to inspect additional personnel files before the Court decides this motion. Had defendants wanted to produce additional files and records, they were free to do so.

While defendants argue that the Gregory case is "indistinguishable" from the instant one (Defs.' Mem. at 36), the nature of the proof in that case was different from the instant case. In Gregory, the plaintiffs sought class certification of claims under Section 195(1) of the NYLL. Gregory v. Stewart's Shops Corp., 2016 U.D. Dist. LEXIS 89576, at *92. Plaintiffs sought to represent a class of approximately 4,000 employees of a convenience store chain with more than 300 locations. Id. at *4. The defendant claimed that its policy was to provide all employees with "legally compliant wage notices," which consisted of one full page of paper containing two identical wage notices. Id. at *12. After a supervisor met with an employee and discussed the wage notice with the employee, the defendant claimed that its policy was to detach one half of the form, representing one wage notice, and provide it to the employee, retaining the remaining half of the page for its records. Id. The defendant claimed that, to the extent certain locations deviated from that policy, such deviations were undertaken by specific store managers and, therefore, adjudication of wage notice claims was "not susceptible to class-wide determination." Id. at *12, *91.

---

[53]    Citations to "11/12/15 Minute Entry" refer to the Minute Entry of a Status Conference held before the undesigned on November 12, 2015, filed on November 16, 2015.

In support of their claim that the defendant did not follow its policy of providing employees with copies of their wage notices, the plaintiffs in <u>Gregory</u> submitted the testimony of the three named plaintiffs, one of whom testified that she was never given a copy of the wage notice, and the other two claimed that they could not recall receiving their wage notices. <u>Id.</u> at *92. Other opt-in plaintiffs claimed that they "did not recall" being given copies of their wage notices. <u>Id.</u> at *93. However, the defendant claimed that it had located the original wage notice of one of the named plaintiffs that contained only half of the original wage notice form, which indicated that the other half had in fact been given to the employee. <u>Id.</u> at *94–95. Moreover, while the plaintiffs submitted declarations from more than fifty (50) employees, "most" of the declarants acknowledged that they were given copies of the wage notices. <u>Id.</u> at *95. Thus, because the evidence submitted in <u>Gregory</u> by the plaintiffs was inconsistent, the court found that whether an employee did or did not receive a copy of the wage notice required an individualized inquiry and that the plaintiffs failed to establish "a pervasive deviation from [the defendant's] facially valid wage notification policy that would allow a class-wide determination of liability, as opposed to individualized or store-by-store mini-trials." <u>Id.</u> The <u>Gregory</u> court further noted that, even if certain employees did not receive a copy of their wage notices, "there could be other facts relevant to liability issues – <u>e.g.</u>, whether an employee was offered a copy of the wage notice but chose not to take it – which could not be determined from the wage statement, and would require individualized proof." <u>Id.</u> at *95–96.

Unlike in <u>Gregory</u>, where the question of liability depended on whether each employee received a copy of his or her wage notice, in the instant case, the uncontroverted evidence is that every employee whose personnel file was produced received a deficient wage notice in that the

97

wage notice was either blank or listed an inaccurate overtime hourly pay rate. Moreover, while in Gregory, individualized testimonial evidence would have been necessary to determine whether employees who did not receive a wage notice chose to take or not to take it, here, no further evidence is necessary beyond the actual text of the wage notices contained in defendants' own records. Here, where the wage notices that have been provided all demonstrate the same error, commonality has been established.[54]

Accordingly, the Court finds that plaintiffs have established commonality for each of Revised Subclasses A and B.

### 3. Typicality

Plaintiffs claim that the named plaintiffs' claims are typical of the putative class members' claims. (Pls.' Mem. at 39–40). Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality has been found when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux

---

[54]     The court in Gregory also found that commonality had not been established because the defendants sought to invoke the affirmative defense that it "made complete and timely payment of all wages due" to employees who did not receive proper wage notices. Gregory v. Stewart's Shops Corp., 2016 U.S. Dist. LEXIS 89576, at *98 (citing NYLL § 198(1-b)). However, as discussed supra, that affirmative defense is not available for the Apple-Metro employees who were hired prior to February 27, 2015. To the extent that the court in Gregory found that the affirmative defense was available, the Court finds that such a decision was erroneous and, since the Gregory decision is not binding on this Court, the Court declines to follow it. See Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 347 (finding that the affirmative defense did not apply to wage notice claims prior to the NYLL's February 2015 amendments). Moreover, even if the affirmative defense was available to Section 195(1) claims that arose prior to February 27, 2015, the Court would nevertheless find that commonality was established since the primary question on each claim is whether the Section 195(1) wage notices complied with the NYLL.

98

v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).  Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims.  Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 456–57 (E.D.N.Y. 1996)).

Plaintiffs claim that, because "a determination that Defendants failed to properly provide the appropriate notice would result in all Plaintiffs obtaining the same relief," plaintiffs have established typicality.  (Pls.' Mem. at 40 (quoting Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d at 352)).

Defendants contend that "the Named Plaintiffs have not suffered the same grievance (if any)," and make the same arguments regarding typicality as they do for commonality.  (See Defs.' Mem. at 32–37).  Thus, it appears that defendants' argument is that, because providing notice of the tip credit and Section 195(1) notices was left to restaurant-specific managers, who carried out providing notices in different ways, the named plaintiffs' claims are not typical of those of other class members who worked at other restaurants and were provided notice by different managers.  (See id. at 34).

However, because none of the notices provided to the Court contained an accurate overtime hourly pay rate, including those provided to the named plaintiffs, there is a basis upon which to find that across all restaurants, defendants failed to provide adequate notice of the tip credit and failed to provide adequate Section 195(1) notices.  Thus, the Court finds that the named

plaintiffs' claims are typical of those of the Revised Subclasses, with the exception of plaintiff

Marin insofar as he is not a member of Revised Subclass A.  (See supra at 77–78).[55]

### 4.  Adequacy of Representation

Plaintiffs claim that the named plaintiffs and their counsel will adequately represent the

Proposed Subclasses, and for the same reasons be adequate representatives of the Revised

Subclasses.  (Pls.' Mem. at 40–41).  In order to satisfy Rule 23(a)(4), which requires the interests

of the class to be adequately represented, the Second Circuit has established a two-pronged test.

First, there must be a showing that class counsel is "qualified, experienced and able to conduct the

litigation."  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35 (quoting Baffa v.

Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)).  Second, the named

plaintiffs' interests may not be "antagonistic to the interest of other members of the class."  Id.

(quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 60); see also Hill v. City

of New York, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2016).  The focus of the inquiry is uncovering

"conflicts of interest between named parties and the class they seek to represent."  In re Flag

Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35 (quoting Amchen Prods., Inc. v. Windsor, 521

U.S. 591, 625 (1997)).  The conflict "must be fundamental" to defeat a motion for class

certification.  Id. (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d

Cir. 2001)).  Further, to satisfy the adequacy requirement, the named plaintiffs must "possess the

---

[55]    As discussed supra at 78, plaintiff Marin was paid $9.50 per hour for most hours for which he claims he was paid.  Accordingly, he would not be a member of Revised Subclass A, which would only include employees who were paid sub-minimum wage hourly rates.  (See Pls.' Reply at 19).  Clearly, his wage claims are not typical of the claims of Revised Subclass A, since he was paid above the applicable minimum wage while the putative Revised Subclass A members were paid below the applicable minimum wage.

same interests and suffer the same injuries as the class members." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting Amchen Prods., Inc. v. Windsor, 521 U.S. at 625–26).

Plaintiffs claim that neither the named plaintiffs nor counsel have "any interests antagonistic to the class" and argue that they "have demonstrated a commitment to the class by assisting with the prosecution of the case and participating in discovery." (Pls.' Mem. at 40 (citing Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 253)). Plaintiffs also claim that counsel is "qualified, experienced and able to conduct the litigation." (Id. at 40–41 (citing Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 60; Graff Decl. ¶¶ 82–87; Borrelli Decl.[56])).

Defendants concede that plaintiffs' counsel is adequate (Defs.' Mem. at 29 n.14), but claim that because the named plaintiffs received adequate notice of the tip credit, they do not have standing to bring a minimum wage claim. (Id. at 31–32). Thus, defendants claim that the named plaintiffs are not adequate representatives of Subclass A. (Id.)

Plaintiffs respond that defendants' argument "boils down to the simple assertion that the Named and putative class Plaintiffs alike have purportedly suffered no injury at all." (Pls.' Reply at 20). Plaintiffs claim that "[t]his argument fails for the reasons set forth in connection with Plaintiffs' arguments . . . in support of summary judgment" – namely, that defendants failed to pay the proper minimum wage because they were not entitled to claim a tip credit. (Id.) While plaintiffs acknowledge that defendants deny liability on plaintiffs' minimum wage claims, they argue that the named plaintiffs claim the same injury as the putative party plaintiffs. (Id.)

---

[56]    Citations to "Borrelli Decl." refer to the Declaration of Michael J. Borrelli, Esq. in Support of Plaintiffs' Motion for Partial Summary Judgment and Class Certification, filed on November 4, 2016.

As discussed <u>supra</u>, the Court previously found that, with the exception of plaintiff Marin, the other named plaintiffs were paid less than the minimum wage. Thus, the Court finds defendants' argument that the named plaintiffs lack standing to bring minimum wage claims or represent Revised Subclass A to be without merit. The Court further finds that there are no conflicts of interest between the named plaintiffs and the members of either subclass. Additionally, having presided over this case for several years and being familiar with both the facts and parties involved, the Court finds that both the named plaintiffs and plaintiffs' counsel are adequate representatives of the class. Accordingly, the Court finds that plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

### 5. <u>Ascertainability</u>

Plaintiffs claim that the scope of both subclasses is ascertainable. (Pls.' Mem. at 41). In addition to the requirements of Rule 23(a), "the Second Circuit has also recognized the 'implied requirement of ascertainability.'" <u>Hughes v. Ester C Co.</u>, 317 F.R.D. 333, 343 (E.D.N.Y. 2016) (quoting <u>In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.</u>, No. 13 CV 150, 2015 WL 5730022, at *2 (S.D.N.Y. Sept. 30, 2015)); <u>see also</u> <u>In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d at 30 (discussing "[t]he implied requirement of ascertainability"). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries. . . . In other words, a class should not be maintained without a clear sense of who is suing about what." <u>In re Petrobras Secs.</u>, 862 F.3d 250, 269 (2d Cir. 2017).

Plaintiffs note that defendants produced a list of 14,890 "potential opt-in Plaintiffs to facilitate Plaintiffs' mailing of the Court authorized notice of the pendency of these actions." (Graff Decl. ¶ 7; see also Pls.' Mem. at 41). Thus, plaintiffs claim that it would be relatively simple for defendants to similarly create a list of all individuals within the certified subclasses. (Pls.' Mem. at 41). Defendants did not respond to this argument.

The Court finds that, because defendants were able to provide plaintiffs with list of individuals who were members of the conditionally certified FLSA collective action, defendants would also be able to create a list of individuals who are potential members of the certified NYLL subclasses. Accordingly, the membership of both Revised Subclasses is ascertainable.

### B.  The Requirements of Rule 23(b) and Rule 23(c)(4)

In addition to satisfying the prerequisites of Rule 23(a), "the district court must be satisfied that certification is appropriate under Rule 23(b)." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (citing Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)). Certification may be granted under Rule 23(b)(3) if both "questions of law or facts common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiffs claim that both Proposed Subclasses meet the requirements of Rule 23(b)(3). (See Pls.' Mem. at 41–44).[57]

---

[57]    Plaintiffs further argue that, if the Court were to deny certification under Rule 23(b)(3), the subclasses could alternatively be certified "under the more permissive standards of Rule 23(c)(4)." (Pls.' Mem. at 44–45). Rule 23(c)(4) permits a court "to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." Morangelli v. Chemed Corp., 275 F.R.D. at 105–06 (quoting In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006)). Since the Court respectfully recommends that both

1.  <u>Predominance</u>

Under Rule 23(b)(3), when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper [] even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1045 (2016) (citing 7AA Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1778 (3d ed. 2005)).  A proposed class must be "sufficiently cohesive to warrant adjudication by representation.  <u>Id.</u> (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997)).  This requirement serves to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" <u>Myers v. Hertz Corp.</u>, 624 F.3d at 547 (quoting <u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 104 (2d Cir. 2007)).

However, common issues, such as liability, may be certified even where other issues, such as damages, "do not lend themselves to classwide proof." <u>Id.</u> (citing <u>In re Nassau Cty. Strip Search Cases</u>, 461 F.3d at 227).  Indeed, to the extent that individual defenses "'may affect different class members differently,' their existence 'does not compel a finding that individual issues predominate over common ones.'" <u>Id.</u> (quoting <u>In re Nassau Cty. Strip Search Cases</u>, 461 F.3d at 225).  "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of

---

Revised Subclasses A and B be certified, the Court need not address Rule 23(c)(4).  However, because the only difference between a Rule 23(b)(3) class and a Rule 23(c)(4) class is that the latter does not require a showing of predominance, for the same reasons discussed herein, the Court respectfully recommends that, if the Revised Subclasses are not certified pursuant to Rule 23(b)(3), they nevertheless be certified pursuant to Rule 23(c)(4).

some of the legal or factual questions that qualify each class member's case as a genuine

controversy can be achieved through generalized proof' and whether 'these particular issues are

more substantial than the issues subject only to individualized proof.'" Id. at 139 (quoting In re

U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013)).

Plaintiffs argue that the central issue on their minimum wage claims is whether defendants

provided sufficient notices so as to entitle them to pay employees below the minimum wage, and

that the central issue on their wage notice claims is whether the notices that defendants provided

employees met the requirements of Section 195(1) of the NYLL. (Pls.' Mem. at 42). Plaintiffs

contend that generalized proof can be utilized by both sides to determine liability on both claims,

such that common questions predominate over individual ones. (Id.)

Defendants note that the Court has a duty to take a "'close look' into whether common

issues actually predominate under Rule 23(b)(3), including whether the action can be tried in a

representative fashion." (Defs.' Mem. at 33–34 (quoting Comcast Corp. v. Behrend, 133 S. Ct. at

1432)). According to defendants, "trying the case based on representative proof would be

impossible." (Id. at 34). As to plaintiffs' minimum wage claims, defendants claim that because

employees may have received different forms of notice, including oral notice, "[t]here is simply

no common or representative evidence that can answer the question of whether an employee

received notice of the tip credit, 'in one stroke,' generating a common answer." (Id. at 34–35

(quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350)).

Similarly, as to plaintiffs' wage notice claims, defendants claim that because some

employees received notices while others allegedly did not, and some were allegedly filled out

correctly while others were not, there is no representative evidence sufficient to determine

liability on a classwide basis. (<u>Id.</u> at 35). Defendants also claim that the existence of an affirmative defense that employees received the proper wages despite receiving noncompliant wage notices "necessitates an individualized inquiry." (<u>Id.</u> at 36). Finally, defendants again rely on the decision in <u>Gregory v. Stewart's Shops Corp.</u>, where the court denied class certification on plaintiffs' claimed violations of Section 195(1) of the NYLL, referencing the claimed affirmative defense, which "implicate[d] . . . concerns about individualized proof." (<u>Id.</u> (citing <u>Gregory v. Stewart's Shops Corp.</u>, 2016 U.S. Dist. LEXIS 89576, at *98–99); <u>see also</u> <u>supra</u> at 92–93). Thus, defendants claim that individual questions predominate over common questions. (Defs.' Mem. at 36–37).

Plaintiffs respond as explained, <u>supra</u> at 92, 93–94. Of note, plaintiffs claim that "Defendants' liability on [both] claims are readily ascertainable by objective documentation in Defendants' possession – namely, the existence and content of the written tip credit notice and wage notice forms required under 12 N.Y.C.[]R.R. § 146-2.2 and NYLL § 195(1)." (Pls.' Reply at 21). As to defendants' arguments regarding their proposed affirmative defense, plaintiffs claim that because defendants have not preserved evidence "suggesting a good faith basis for believing that they were not required to provide Plaintiffs with wage notices under Section 195(1)," the affirmative defense fails on a classwide basis. (<u>Id.</u> at 22).

As the Court has discussed at length, <u>supra</u>, plaintiffs have established by a preponderance of the evidence that defendants had a policy or practice of including an incorrect value for the overtime hourly pay rate on its employees' wage notices, which implicates both plaintiffs' minimum wage and Section 195(1) claims. Further, the Court has also already determined that the alternative forms of notice defendants claim require an individualized inquiry to determine

what notice the employees received are insufficient as a matter of law both to permit defendants

to claim a tip credit and to satisfy Section 195(1) of the NYLL.  (See discussion supra at 54–72).

Accordingly, the Court finds that plaintiffs have satisfied the predominance requirement

of Rule 23(b)(3).  With respect to Revised Subclass A, a common question of fact exists as to

whether class members received adequate notice of the tip credit, which can be answered by

looking at the wage notice forms that, based on the sample provided, uniformly list an incorrect

overtime hourly pay rate.  To the extent that individualized questions exist as to the amount of

damages to which class members may be entitled, including minimum wages, overtime wages,

and/or liquidated damages, the common issue of whether those class members received adequate

notice may nonetheless be certified even though the question of damages "do[es] not lend [itself]

to classwide proof."  Johnson v. Nextel Commc'ns Inc., 780 F.3d at 138.

Similarly, the primary question with respect to liability as to Revised Subclass B is

whether class members received a wage notice that complied with Section 195(1) of the NYLL,

which can be answered by looking at the wage notices provided to class members.  This issue is

capable of resolution on a classwide basis, as discussed supra, since all of the wage notices that

were provided appear to list an incorrect or no overtime hourly pay rate.  See, e.g., Torres v.

Gristede's Corp., No. 04 CV 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (finding

that plaintiff "introduced sufficient proof that Defendants engaged in a common practice to deny

employees overtime pay," and that "this issue predominates over any individual calculations of

overtime wages").

To the extent that defendants seek to invoke an affirmative defense, as previously

discussed, the affirmative defense is not available to employees who were entitled to wage notices

prior to February 27, 2015. Moreover, even for those employees for whom the affirmative defense is available, to the extent that individual defenses "'may affect different class members differently,' their existence 'does not compel a finding that individual issues predominate over common ones.'" Johnson v. Nextel Commc'ns Inc., 780 F.3d at 138.[58] To the extent that class members may be entitled to varying amounts in statutory damages if defendants are found liable on plaintiffs' Section 195(1) claims, such variations do not undermine the Court's finding that common questions predominate. See id.

Accordingly, the Court finds that plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) as to both Revised Subclasses A and B.


## 2. Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

---

[58]   To the extent that defendants argue that, as to employees hired after February 27, 2015, there are individualized questions as to defendants' affirmative defense to those employees' wage notice claims, the Court finds that there nevertheless remains a common question as to whether those employees received proper Section 195(1) wage notices.

Fed. R. Civ. P. 23(b)(3); see also Pagan v. Abbott Labs., Inc., 287 F.R.D. 139, 147 (E.D.N.Y. 2012). "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently employed by the defendants." Cazares v. AVA Rest. Corp., No. 15 CV 477, 2017 WL 1229727, at *8 (E.D.N.Y. Mar. 31, 2017) (quoting Fonseca v. Dircksen & Talleyrand Inc., No. 13 CV 5124, 2015 WL 5813382, at *6 (S.D.N.Y. Sept. 28, 2015)).

Plaintiffs claim that each of the Rule 23(b)(3) factors are satisfied. First, they claim that the class members are each "alleged to be owed only a relatively modest amount which might not justify the cost of individual litigation." (Pls.' Mem. at 43 (quoting Grenawalt v. AT & T Mobility, LLC, No. 11 CV 2664, 2014 WL 4832318, at *6 (S.D.N.Y. Sept. 29, 2014))). Here, with respect to the minimum wage claims, plaintiffs claim that members of Proposed Subclass A would be entitled to the difference between their hourly pay and overtime pay and the then-existing minimum wage, multiplied by the number of hours worked. (Id.) As to the wage notice claims, plaintiffs aver that members of Proposed Subclass B would be entitled to up to either $2,500.00 or $5,000.00 each, pursuant to Section 198(1-b) of the NYLL. (Id. (citing Hernandez v. Jrpac Inc., 2016 WL 3248493, at *29)). Thus, plaintiffs argue that each class members' claims are for a "relatively modest amount" that may not individually warrant litigation. (Id.)

Next, plaintiffs note that "this Court has already applied the first-filed rule and dismissed two putative class actions that overlap with the claims for which Plaintiffs seek class certification here," and thus has "explicitly recogniz[ed] the efficiency, desirability, and superiority of litigating all claims through one action." (Id.) Plaintiffs also claim that they are not aware of any

other pending litigation involving putative class members and the claims raised in this case. (Id. at 43–44). Third, plaintiffs argue that this is a proper forum in which to resolve the class members' claims because: 1) defendant Apple-Metro's executive office is located in this district; 2) many class members work or reside within this district; and 3) the Court is familiar with the facts of this case. (Id. at 44). Finally, plaintiffs contend that it is unlikely that there will be manageability problems involving either class, since "the claims of potential class members are identical." (Id.)

The Court agrees with plaintiffs that the Rule 23(b)(3) factors weigh heavily in favor of finding that a class action is a superior method of resolving the class members' claims. As one court explained in the context of a wage-and-hour case:

> Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually. . . . In addition, since some class members are still employees of Defendants, class members may fear reprisal and would not be inclined to pursue individual claims. . . . The Court further finds that a class action would eliminate the risk that questions of law common to the class will be decided differently in each lawsuit.

Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *16 (citations and internal quotations omitted). Here, it is unlikely that at least some individual class members would bring their own actions because the cost of litigation would likely outweigh any individual recovery. Moreover, in addition to achieving economies of scale for the class members, proceeding as a class action would, in this case, preserve judicial resources by consolidating common issues of fact and law, with the result of preserving public confidence in the system by avoiding inconsistent adjudications. Finally, there is no indication that the class members desire to control their own cases. Defendants do not raise any arguments regarding this second prong of Rule 23(b), and

indeed, do not appear to dispute the fact that a class action would be superior to individual actions in this case.

### III. Conclusion

In light of the foregoing, the Court respectfully recommends that the district court find that plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3) as to Revised Subclasses A and B. Pursuant to those provisions, the Court recommends that the class members be certified as two subclasses consisting of: 1) all tipped hourly employees at all Apple-Metro restaurants, from January 1, 2011 through the present, who have been paid tip-credit reduced hourly rates and whose hourly wages fell below the minimum wage ("Subclass A"); and 2) all non-managerial employees at all Apple-Metro restaurants who were hired on or after April 9, 2011 ("Subclass B"). However, the Court respectfully recommends that named plaintiff Marin be removed as a named plaintiff for purposes of Revised Subclass A.

### CONCLUSION

Having considered the parties' submissions, the Court respectfully recommends that the Moving Plaintiffs' motions for partial summary judgment be granted in part and denied in part. Specifically, the Court recommends that the thirty-six (36) 198(b) Plaintiffs be granted summary judgment on their Section 195(1) claims, but that the other Moving Plaintiffs be denied summary judgment on their Section 195(1) claims. The Court further recommends that the motions for partial summary judgment filed on behalf of Moving Plaintiffs Marin, Jones, Rodriguez, and

111

Williams be denied as to their minimum wage claims, but that the remaining Moving Plaintiffs' motions for partial summary judgment be granted as to their minimum wage claims.

The Court also respectfully recommends that plaintiffs' request for class certification of the two Revised Subclasses be granted, as modified, and that named plaintiff Marin be removed as a named plaintiff with respect to Subclass A.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
     October 4, 2017

/s/  Cheryl Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

112