

Robert W. Ottinger
Direct: (917) 566-2037
robert@ottingerlaw.com

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

OTTINGERLAW.COM

August 13, 2018

The Honorable Eric N. Vitaliano
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *Marin v. Apple Metro, Inc.*, No. 12 Civ. 5274
              *Dove v. Apple Metro, Inc.*, No. 13 Civ. 1417

Dear Judge Vitaliano:

      Together with Borrelli & Associates, P.L.L.C., we represent the Plaintiffs, Opt-in Plaintiffs, and the potential classes in the above-referenced matters. We write to correct a number of misrepresentations that Defendants made at the July 17, 2018 oral argument regarding Defendants' objections to Magistrate Judge Pollak's October 4, 2017 Report and Recommendation ("Oral Argument"). *Marin v. Apple-Metro, Inc.*, No. 12 Civ. 5274, 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017).

      First and foremost, Defendants made several misrepresentations at the Oral Argument about both the regulatory history and enactment of the N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-2.2. Most notably, Defendants incorrectly suggested that the regulatory history of Section 146-2.2 and the section's subsequent interpretation by the New York Department of Labor's General Counsel show that an employer who fails to provide written notice of the tip credit to employees can nonetheless still avail itself of the tip credit.

      As explained below, however, in a declaration from M. Patricia Smith, the then-New York State Commissioner of Labor ("Commissioner")—who enacted Section 146-2.2—intended that: (1) Section 146-2.2 requires a written notice at the time of hire; (2) an employer who fails to provide the written notice to the employee at the time of hire loses the ability to claim a tip credit; and (3) employees who do not receive the required written notice at the time of hire may recover the difference between the full minimum wage and the sub-minimum tip wage. *See* **Exhibit A** (Declaration of M. Patricia Smith) ("Smith Decl.") at ¶¶ 2-3.

      The Court should give no weight to the letter from the current New York Department of Labor's General Counsel Pico Ben-Amotz ("Ben-Amotz Letter"), ECF No. 287-16 (*Marin*), who was Deputy Commissioner of Worker Protection when Commissioner Smith enacted Section

146-2.2, and who played absolutely no role in the process of enacting this regulation. *Id.* ¶ 11, n.1.

Second, Defendants misrepresented the case law interpreting Section 146-2.2 by falsely contending that no courts in the Second Circuit have found that an employer who fails to provide written notice cannot take advantage of the tip credit and that no court has rejected Ben-Amotz's letter prior to this case.

Third, Defendants falsely suggested that tipped workers suffer no harm when they are not properly informed of the tip credit pursuant to Section 146-2.2. Because Section 146-2.2 creates a separate, enforceable cause of action, Plaintiffs suffered harm by not receiving legally compliant notice of the tip credit.

Finally, with respect to the upon-hire written notice claim, Defendants cited the wrong legislative history in an effort to impose retroactivity into the law. Defendants cannot avail themselves of the Section 198 affirmative defenses.[1]

I. **New York Labor Law Requires Employers to Provide Written Notice of the Tip Credit at the Time of Hire in Order to Pay the Sub-Minimum Tip Wage.**

   A. **The Regulatory History and the Commissioner Who Enacted Section 146-2.2 Make Clear Employers Must Provide Written Notice to Tipped Workers at the Time of Hire or They Cannot Take a Tip Credit.**

The 2011 New York Hospitality Wage Order unambiguously requires written notice of the tip credit pursuant to Section 146-2.2 at the time of hire.[2] Nonetheless, at the Oral Argument,

---

[1] As argued both in our briefing and at Oral Argument, the standard of review for the Court's analysis of Defendants' Objections to Judge Pollak's Report and Recommendation is clear error, as Your Honor articulated in *Kennedy v. Adamo*, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (Vitaliano, J.), *aff'd*, 323 F. App'x 34 (2d Cir. 2009) (quoting *Barratt v. Joie*, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)) ("'[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the [c]ourt reviews the Report and Recommendation only for clear error.'"); *see also, e.g.*, ECF No. 304 (*Marin*) at 7-8; ECF No. 311 (*Marin*) at 6; *see also* **Exhibit B**, (July 17, 2018 Ct. Tr.), at 21-22. The clear error standard governs Defendants' Objections. For virtually all of Defendants' arguments (with the critical exception of the retroactivity argument, which, as described below and as argued in our prior briefing and at Oral Argument, this Court should not even consider)—they simply "reiterate" arguments presented to Judge Pollak. *Compare, e.g.*, ECF No. 284 (*Marin*) at 18 (sufficiency of the pleadings), *with* ECF No. 302 (*Marin*) at 12; ECF No. 284 (*Marin*) at 27 (standing), *with* ECF No. 302 (*Marin*) at 16; ECF No. 284 (*Marin*) at 28 (prejudice), *with* ECF No. 302 (*Marin*) at 17; ECF No. 284 (*Marin*) at 36-37 (prematurity of motion), *with* ECF No. 302 (*Marin*) at 19; ECF No. 284 (*Marin*) at 30 (good faith affirmative defense), *with* ECF No. 302 (*Marin*) at 24-25; ECF No. 284 (*Marin*) at 34 (oral notice of tip credit), *with* ECF No. 302 (*Marin*) at 31; ECF No. 284 (*Marin*) at 40, 43, 44, (Rule 23 issues), *with* ECF No. 302 (*Marin*) at 43, 44, 47.

[2] *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 ("Prior to the start of employment, an employer shall give each employee *written* notice of the

Defendants stated *four* times that the Commissioner of Labor did not believe that Section 146-2.2 imposed on employers a separate actionable requirement to provide written notice to tipped workers. *See, e.g.*, **Ex. B** (July 17, 2018 Ct. Tr.) at 4 ("And you don't have to take our word for it, that is the answer of the legislature, that is the answer of the Commissioner of Labor"), 14-15 ("There is no written requirement, that is clear and not in dispute and eventually adopted in publishing the at issue regulations the Commissioner of Labor makes very clear that the Department was in fact following the federal example and, as would be expected given that no notice was required federally, mentioned nothing whatsoever about such a written notice requirement when it came to the tip credit.").

Defendants' have flatly misrepresented the Commissioner's position to this Court. M. Patricia Smith was the Commissioner from 2007 through 2010. She enacted the 2011 New York Hospitality Industry Wage Order, which included Section 146-2.2. **Ex. A** (Smith Decl.) at ¶¶ 1, 4, 8-10. Ms. Smith, whose sworn declaration is attached hereto as **Exhibit A**, unequivocally states that the 2011 New York Hospitality Industry Wage Order requires written notice of the tip credit at the time of hire pursuant to N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-2.2; *and* that where an employer fails to provide such notice, they lose the ability to claim a tip credit, and employees may recover the difference between the full minimum wage and the tip-credit sub-minimum wage. *Id.* at ¶¶ 2-3.

Ms. Smith further provides that as part of her duties as Commissioner, she appointed Wage Boards that submitted reports and recommendations to her regarding minimum wages and "regulations as it deem[ed] appropriate to carry out the purposes of [the minimum wage laws] and to safeguard minimum wages." N.Y. Lab. Law § 655(5)(b); **Ex. A** (Smith Decl.) at ¶ 4. The Wage Boards consisted of representatives of "affected industries, representatives of employees in those industries, and representatives of the public." *Id.* After receiving reports and recommendations from the Wage Boards, Ms. Smith "had the authority to accept the recommendations and codify them into regulations." **Ex. A** (Smith Decl.) at ¶ 5 (citing N.Y. Lab. Law §§ 656-57).

On March 18, 2009, Ms. Smith appointed the 2009 Restaurant and Hotel Industry Wage Board ("2009 Wage Board") to examine and review the Regulations that applied to restaurant and hotel workers. **Ex. A** (Smith Decl.) ¶ 6. She tasked the board with examining several issues, including:

> Under federal law, in order to receive a tip allowance, employers must inform tipped employees that they are getting a lower rate based on receipt of gratuities, and must also keep an accurate record of tips received by employees. Employers

---

employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.") (emphasis added); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (An employer may only take a tip credit, "if the employee has been notified of the tip credit *as required in section 146-2.2 of this Part*") (emphasis added).

who do not do so may not receive a tip allowance. Should the Wage Orders be amended to conform with federal law in this respect?

ECF No. 303-2 (*Marin*) at 2 (Recommendation of the Minimum Wage Board to the Commissioner of Labor Pursuant to Labor Law Section 655 (Article 19, The Minimum Wage Act)).

On September 18, 2009, the 2009 Wage Board submitted its Report and Recommendation of the Minimum Wage Board to the Commissioner of Labor Pursuant to Labor Law Section 655 (Article 19, The Minimum Wage Act) to Ms. Smith. In this Report and Recommendation, the 2009 Wage Board recommended that Ms. Smith adopt a requirement that:

> when employees receive a lower hourly wage based on the receipt of tips (a tip allowance), employers be allowed to receive such a tip allowance only if they notify the employee of the tip credit system. Providing an employer with concise guidance . . . will remove any uncertainty as to this issue. This process will allow employees to better understand what the tip credit actually means for them. *To ensure compliance with this notice provision, employers who fail to notify their employees of the tip allowance system will be prohibited from taking any tip credit for any employee who is not notified of the tip credit system.*

*Id*. at 12 (Recommendation of the Minimum Wage Board to the Commissioner of Labor Pursuant to Labor Law Section 655 (Article 19, The Minimum Wage Act)) (emphasis added); **Ex. A** (Smith Decl.) at ¶ 7.

On November 5, 2009, Ms. Smith accepted the 2009 Wage Board's recommendation "to require employers to notify tipped employees of any tip allowances that will be taken *and to disallow the tip allowance if such notice is not given.*" *Id*. at 19 (Order of Commissioner of Labor M. Patricia Smith on the Report and Recommendation of the 2009 Wage Board) (emphasis added). Based on Ms. Smith's Order, as of January 1, 2011, the New York Labor Law Regulations included a requirement that "[p]rior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2.

The intent of Section 146-2.2 was to:

> *make explicit the **written** notice requirements that employer must follow in order to take a tip credit.* In order to avoid ambiguity on the notice requirement, the Section 146-2.2 enumerates everything that must be included in the notice and specifies that the notice must be in writing. *Section 146-2.2 created a separate actionable violation if an employer failed to provide **written** notice pursuant to the Section 146-2.2.* This is underscored by Section 146-1.3, which provides that the tip credit is conditional upon the notification under Section 146-2.2: 'An

> employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part.'
>
> If the employer does not give the required notice, they may not take a tip credit. *If they pay a cash wage below the regular minimum wage, minimum wage violations have occurred. As with any minimum wage violation, the employee may recover the difference between the cash wage paid and the full minimum wage.* As the 2009 Wage Board noted, the only way to ensure compliance with the notice requirement is to prohibit an employer from taking a tip credit if the employer does not provide the required written notice.

**Ex. A** (Smith Decl.) at ¶¶ 9-10 (emphasis added).

In her sworn statement, Ms. Smith explicitly rejects Defendants' self-serving theory that tipped workers must prove an additional wage violation in order to bring claims against an employer who fails to provide written notice pursuant to Section 146-2.2. *Id.* As Ms. Smith explains, the "Wage Board never proposed, and Section 146-2.2 does not require, that employees prove another separate violation of the minimum wage in order to bring a claim under Section 146-2.2. This concept appears nowhere in the Regulations or the Report and Recommendation and is contrary to the Report and Recommendation that I accepted as Commissioner of Labor." *Id.* at ¶ 12. This is because "the goal of Section 146-2.2 was to reduce ambiguity and *to create a separate actionable violation when an employer fails to provide written notice.* Section 146-2.2 sets out explicit information that the written notice must include." *Id.* at ¶ 13 (emphasis added).

In support of their theory, Defendants rely heavily on the Ben-Amotz Letter, but Mr. Ben-Amotz's opinion on this matter carries no legal weight.[3] Mr. Ben-Amotz was not even involved in the Wage Board proceedings regarding the regulations, and his letter does not "correctly reflect the New York Labor Law Regulations that [Ms. Smith] put into place or the 2009 Wage Board Report and Recommendation that underlie them." *Id.* at ¶ 11. Furthermore, in his role as General Counsel, Mr. Ben-Amotz "has no authority to change this regulation or add new requirements." *Id.* at ¶ 14.

### B. Courts Have Consistently Found That the New York Labor Law Requires Written Notice of the Tip Credit.

Defendants also incorrectly informed the Court of the state of the case law requiring written notice to tipped workers. *See* **Ex. B** (July 17, 2018 Ct. Tr.) at 4-5 ("[E]very court that has addressed this issue with the exception of the magistrate judge herein tells us that the tip credit is not lost [when the employer fails to provide written notice]"). This is simply false. Numerous courts in this Circuit that have correctly concluded that written notice is required. *See Jindan Wu*

---

[3] The same rationale presented herein (and in Plaintiffs' prior briefing and argument) with respect to the Ben-Amotz letter also applies to the May 4, 2016 letter of James Rogers, Deputy Commissioner for Worker Protection. This Court should reject consideration of the Rogers letter for the reasons articulated by Judge Pollak in her Report and Recommendation. *See* ECF No. 293 (*Marin*) at 64 n. 43.

*v. Nat. Tofu Rest. Corp.*, No. 16 Civ. 3613, 2018 WL 1009274, at *5 (E.D.N.Y. Feb. 20, 2018) ("Under the NYLL, employers must provide written notice to employees at the beginning of their employment"); *see also Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) ("An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."); *Mahoney v. Amekk Corp.*, No. 14 Civ. 4131, 2016 WL 6585810, at *13 (E.D.N.Y. Sept. 30, 2016) (finding employer ineligible for tip credit where it failed to provide the plaintiff with "written notice" as required under § 146-2.2); *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016) (interpreting Sections 146-1.3 and 146-2.2 to require written notice and concluding that defendant could not take the tip credit because it failed to give proper written notice); *Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344, 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015) (discussing the preconditions for tip credit, including "written notice at the time of hiring" as "required in section 146-2.2"); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice . . . ."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 39 (E.D.N.Y. 2015) (Mauskopf, *J.*) (stating that NYLL requires written notice for an employer to be eligible for tip credit); *cf. Velez v. Atlas 111 Rest. Corp.*, No. 14 Civ. 6956, 2016 WL 9307471, at *9 (E.D.N.Y. Aug. 11, 2016) (holding that "courts have found that evidence of oral notice of the tip credit provision to employees, which may satisfy the notice requirements of the FLSA, would not satisfy the NYLL[,]" and recommending that the district court grant summary judgment to the plaintiffs because the defendants had failed to provide adequate notice in writing).

Defendants are also wrong that all courts considering the Ben-Amotz Letter afford it deference. For instance, in *Franco v. Jubilee First Ave. Corp.*, the court granted summary judgment to the plaintiffs because the defendants admitted that they had not provided written notice of the tip credit. No. 14 Civ. 07729, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016). Although *Franco* discusses the Ben-Amotz Letter, it did not find it to be persuasive. *See id.* at *12-13 (recognizing Ben-Amotz's conclusion, but nonetheless granting summary judgment and holding that employers may take the tip credit "only if they provide employees with written notice").

**II. Tipped Workers Who Do Not Receive Written Notice of the Tip Credit Suffer Harm.**

The Wage Theft Prevention Act ("WTPA") was created to prevent systemic notice failures and deter employers from undercompensating their employees. As stated by Governor Cuomo, the WTPA was enacted "to give workers the means to ensure that they are paid the wages to which they are legally entitled." *See* N.Y. Bill Jacket 8380 of 2010, ch. 564 at p. 4. Defendants' notices, which were supposed to educate low-wage workers about their earned wages, in fact, blatantly misled them. This is not a technical failure or a "victimless omission" as Defendants have asserted in previous submissions.

Conversely, Plaintiffs suffered real harm because they did not receive the written notification of the tip credit pursuant to Section 146-2.2 and therefore were not properly

informed of their rights, which the New York Labor Law requires, making it far easier for Defendants to carry on years of systematic wage theft. The "only way to ensure compliance with the notice requirement is to prohibit an employer from taking a tip credit if the employer does not provide the required written notice." **Ex. A** (Smith Decl.) at ¶¶ 9-10.

And while Section 146-2.2 creates a separate actionable claim, *see supra* p. 5, **Ex. A** (Smith Decl.) ¶ 13, Defendants also underpaid Plaintiffs and other workers by requiring them to work uncompensated overtime off-the-clock, to perform duties that entitled them to the full minimum wage, to participate in an illegal tip-sharing scheme, and by failing to pay for the minimum hourly rate of pay, overtime premium and spread-of-hours pay; by shaving time from Plaintiffs' and other workers' time records, and by taking improper deductions from their pay. *See* 12 Civ. 5274, ECF No. 23 (Marin Second Am. Compl.) ¶¶ 99-101, 106-24, 134-58; 13 Civ. 1417, ECF No. 15 (*Dove* First Am. Compl.) ¶¶ 87-168.[4]

### III. Defendants' Affirmative Defense with Respect to Plaintiffs' Section 195(1) Notice Claims Fail.

Defendants are not entitled to an affirmative defense that it paid all wages due, and therefore are not liable for their failure to provide complaint annual notices because: (1) the affirmative defense is not applicable to Plaintiffs' notice claims under Section 195(1); (2) in seeking an affirmative defense, Defendants cited a later-enacted version of the statute and failed to argue that it should apply retroactively; and (3) Defendants did not pay all wages due or reasonably believe in good faith that they were not required to provide written notice. In addition, the Court does not need to reach this issue, which is a question of damages, to determine that Defendants' notices were legally deficient. *See, e.g., Pantoja v. Maredin Rest. Corp.*, 13 Civ. 3691, 2016 WL 4097150, at *2 (E.D.N.Y. Aug. 1, 2016) (granting partial summary judgment on plaintiff's FLSA and NYLL claims but reserving issue of damages for trial). The Court should reject Defendants' last-ditch effort to avoid liability for the Plaintiffs' notice claims.

---

[4] For the avoidance of doubt, when responding to the Court's question during Oral Argument, specifically instructing Plaintiffs to "assume that notice was proper and therefore their wage should be computed on a tip credit basis[,]" *see* **Ex. B** (July 17, 2018 Ct. Tr.) at 29, Plaintiffs were *not* conceding that Defendants provided proper notices to the Plaintiffs and putative Class Members. Rather, counsel's response at Oral Argument was strictly limited to the hypothetical scenario posed by the Court: that if there were *no* inaccurate notices, and *no* violations apart from the inaccurate notices, whether an employer can pay sub-minimum tip wages to their tipped employees by providing them with *accurate* notices. That answer, assuming no other tip-related violations occurred, must of course be yes—at least until the Department of Labor repeals the NYLL's tip credit. *See* Subminimum Wage Hearings, https://www.labor.ny.gov/workerprotection/laborstandards/subminimumwage.shtm (*last accessed* Aug. 8, 2018). However, it should go without saying that the Court's hypothetical is plainly not the case here, as Judge Pollak definitively found when she held that "each Moving Plaintiff received an inaccurate wage notice." *See* EC No. 193 (*Marin*) at 39, 42, 50 n.37, 61, 97-98. To hold otherwise would require a complete re-write of the law, which would be contrary to the intent of the Department of Labor, as confirmed by the attached Smith Declaration. **Ex. A** (Smith Decl.) at ¶¶ 9-10.

### A. The Affirmative Defense that Defendants Invoke Does Not Apply to Plaintiffs' Time-of-Hire Claims.

When the alleged violations occurred, from April 9, 2011 until, at the very earliest, December 18, 2014, *see* ECF No. 86 (*Marin*) at 3 (overruling Defendants' objections to Report and Recommendation granting motion for conditional certification), there was no affirmative defense in Section 198(1-b) of the WTPA for employers who violated Section 195(1)(a).[5] Section 198(1-b) only provided an affirmative defense to employers who violated "paragraph (d) of subdivision one of section one hundred ninety-five." N.Y. Lab. Law § 198 (eff. Apr. 9, 2011 to Feb. 26, 2015). In arguing that Section 198(1-b) contained a typographical error and should have referenced Section 195(1)(a) rather than Section 195(1)(d), Defendants ask the Court to derive a meaning from the statute which is absent from the text. Such arguments have been soundly rejected by courts. *Hernandez v. Barrios-Paoli*, 93 N.Y.2d 781, 788 (1999) (citing *Braschi v. Stahl Assocs. Co.*, 74 N.Y.2d 201, 208 (1989)) ("[A] court's role is not to delve into the minds of legislators, but rather to effectuate the statute by carrying out the purpose of the statute as it is embodied in the words chosen by the Legislature."); *In re Barnet*, 737 F.3d 238, 246 (2d Cir. 2013) (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (plurality op.)) ("[T]he preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." (internal quotation marks omitted)).

Further, Defendants incorrectly argue that the law's correction of a typographical error renders it remedial in nature and that because it is remedial, it should apply retroactively. Defendants' Mem. of Law Pursuant to Fed. R. Civ. P. 72(b) in Support of Their Objections to Magistrate J. Pollack's Oct. 4, 2017 Rep. and Recommendation ("Defendants' Objections"), ECF. No. 302 at 14-18. This argument fails because there is no evidence of legislative intent from the bill or its memorandum that supports this conclusion. *See* A.B. 8106C, 2013-14 Leg. (N.Y. 2014) (enacted).[6] Even if the effect of the statute as enacted, in part, changed the reference from paragraph "(d)" to paragraph "(a)," there is no provision in the text of the statue, the sponsoring memorandum, or anywhere in the legislative history to confirm that this change was intended to "correct a typographical error," confirming that this fact does not necessitate

---

[5] The affirmative defense set forth in the amended Section 198 has no effect on Plaintiffs' tip notice claim because the affirmative defense is only applicable to the time-of-hire claims of Section 195(1), and not Section 146-2.2.

[6] At Oral Argument, despite relying on Judge Wolford's recent decision in the *Hicks* case, *see* **Ex. B** (July 17, 2018 Ct. Tr.) at 10-11, Defendants *still* refused to acknowledge that the *Hicks* decision rendered by Judge Wolford was tethered entirely to the wrong analysis of the wrong legislative history of a statute that never made it out of committee: Assembly Bill A3090. **Ex. B** (July 17, 2018 Ct. Tr.) at 10-11 ("The Court: A3090 died at the end of the session."). Notably, unlike Plaintiffs in this action, the *Hicks* plaintiffs never corrected the *Hicks* defendants' incorrect (to put it kindly) citation to the incorrect statute's incorrect sponsoring memorandum, ultimately leading to the *Hicks* court's citation to and reliance on the incorrect statute's history when finding retroactive application of 198(1-b)'s amendment contained in the *correct* statute: A8106-C, found in Chapter 537 of the Laws of 2014. **Ex. B** (July 17, 2018 Ct. Tr.) at 23-24.

retroactive application. It is well settled that "'retroactive operation of statutes is not favored by [New York] courts' and it 'takes a clear expression of the legislative purpose to justify a retroactive application.'" *Gold v. New York Life Ins. Co.,* 730 F.3d 137, 143 (2d Cir. 2013) (quoting *Majewski v. Broadalbin–Perth Cent. School Dist.*, 91 N.Y.2d 577, 584 (1998)) (internal brackets omitted). There is no such expression of legislative intent here that suggests that the statute at issue should apply retroactively.

Other courts considering whether Section 198(1-b) applies retroactively have also not found any clear indication of the legislature's intent. *See, e.g., Saucedo v. On the Spot Audio Corp.*, No. 16 Civ. 451, 2016 WL 8376837, at *14 n. 14 (E.D.N.Y. Dec. 21 2016), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017) ("Although the Court notes that [NYLL] § 198 has been amended effective January 19, 2016, courts in this district have not applied this revision retroactively to violations that occurred prior to January 19, 2016"); *Saldana v. New Start Grp., Inc.*, 14 Civ. 4049, 2016 WL 3683530, at *1 (E.D.N.Y. July 6, 2016) (collecting cases where federal courts did not apply Section 198 of the NYLL retroactively); *Chen v. JP Standard Corp.*, No. 14 Civ. 1086, 2016 WL 2909966, at *13 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, No. 14 Civ. 1086, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (finding that plaintiff was entitled to the damages set forth according to the version of Section and 198 (1-b) and 198(1-d) that was in effect at the time of plaintiff's hiring). Defendants attempt to distinguish these cases by arguing that the courts examined other parts of the statute but they have not articulated the significance of this fact. Further, the analysis of the legislative history in these cases is not expressly limited to their respective parts of the statute. This is consistent with the fact that there is nothing in the statute's text or sponsoring memorandum that speaks to retroactivity.[7] The Court should follow the rationale of this line of cases and find that the absence of a "clear expression of legislative purpose" requires upholding the presumption in favor of prospective application only.

Defendants' also ignore the Second Circuit's clear articulation of the appropriate standard by relying on older state court cases which reach a contrary conclusion without examining legislative intent: that remedial or corrective amendments to statues should be applied retroactively. The Court in *Gold* was clear, however, in its rejection of this standard because it is devoid of any context:

> The New York Court of Appeals has noted that, although amendments to remedial statutes were once presumed to be retroactive, the classification of a statute as 'remedial' no longer automatically overcomes the strong presumption against retroactivity and that a better guide for discerning the intent of the legislature is text and history.

---

[7] On the contrary, while it is not Plaintiffs' burden to argue that the statute should be applied as it is written—prospectively—the fact that the statute at issue here did not take effect immediately and there was a 60-day delay in the effective date of the bill supports a finding that the bill was intended to only apply prospectively. A.B. 8106C, 2013-14 Leg. (N.Y. 2014) (enacted); *see also People v. Basir*, 529 N.Y.S.2d 841, 842 (2d Dep't 1988) (holding "[T]he Legislature, by expressly providing that the amendment would take effect several months after its enactment, demonstrated an intent contrary to retroactive application.").

730 F.3d at 144 (citing *Majewski*, 91 N.Y.2d at 584).

In rejecting *Gold*, Defendants proffer a mystifying argument that actually supports Plaintiffs' position. Defendants argue that *Gold* has "nothing to do with the principles at issue in the instant case" because the decision "focused on the legislative history as the true controlling principle and found no intention for retroactive application." **Ex. B** (July 17, 2018 Ct. Tr.) at 11-12. By stating the takeaway holding of *Gold*, which requires examining the legislative history when deciding whether a statute applies retroactively, Defendants have merely re-articulated the rule without meaningfully distinguishing it from the instant circumstances. As a feeble attempt to distinguish the instant case from *Gold*, Defendants point out that the statute at issue in *Gold* pertained to liquidated damages. Defendants fail, however, to explain how the substantive difference in the statutes is of any significance to the standard by which to assess legislative intent on the issue of retroactivity. Because Defendants have not distinguished the rationale of *Gold*, the Court should apply its holding to the instant case.

At Oral Argument, Defendants argued that *Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, which applied the affirmative defense under Section 198(1-b) retroactively, "clearly represents the current law of the State." No. 153841-15, 2017 WL 758350 (N.Y. Sup. Ct. Feb. 27, 2017), *aff'd sub nom. Ahmed v. Morgan's Hotel Grp. Mgmt.*, LLC, 74 N.Y.S.3d 546 (1st Dep't 2018); **Ex. B** (July 17, 2018 Ct. Tr.) at 10-11. Upon closer examination, however, neither the Supreme Court nor the Appellate Division, First Department on appeal analyzed whether the affirmative defense should apply retroactively. 2017 WL 758350 at *6; 74 N.Y.S.3d at 547. In fact, the plaintiffs in *Ahmed* failed to dispute the defendants' position regarding the accuracy of the upon-hire notice in question there, and neither opinion raises the fact that the affirmative defense was not in effect at the time of the alleged violations. Accordingly, it is a serious misstatement of the law to say that this case is representative of New York's stance on retroactivity given that it does not mention retroactivity at all.

Similarly, Defendants cannot find support for their position in *Liu v. Elegance Restaurant Furniture Corp.*, 15 Civ. 5787, 2017 WL 4339476 (E.D.N.Y. Sept. 25, 2017), because it, too, does not analyze the issue of retroactivity or apply *Gold*, which is binding case law from the Second Circuit. Defendants have also cited *In re Gleason (Michael Vee, Ltd.)*, but this case also supports Plaintiffs' position that the Court should look at a statute's text and history to discern legislative intent. 96 N.Y.2d 117, 120 (N.Y. 2001) ("*In re Gleason*"). In *In re Gleason*, the New York Court of Appeals found that the legislature had "responded" to its invitation to amend the statute if it had a different intention than how the court had applied it. In fact, the Sponsor's Memorandum explicitly noted that the amendment was remedial, referenced the court case in which the Court of Appeals had invited it to amend the statute by name, and took effect immediately. *Id.* at 121-22. Because the statute in *Gleason* contained *evidence* that the legislature intended the statute to apply retroactively, which is not true for the statute at issue here, *Gleason* supports Plaintiffs' position.

As the Court heard at Oral Argument, Defendants have improperly attempted to inject another bill's legislative history into the history of the statute at issue to justify overcoming the

presumption against retroactive application. **Ex. B** (July 17, 2018 Ct. Tr.) at 7-8; at Defendants' Objections at 16-17. Defendants' reliance on A3090 (2013)'s legislative history is especially inappropriate because it had a different sponsor and minimal support from legislators. In fact, A3090, which was sponsored by Assemblymember Lavine, had no cosponsors, no same-as bill in the Senate, and never left its assigned committee. *See* ECF No. 303-1 (*Marin*) at 1 (Summary, A.B. 3090, 2013-14 Leg. (N.Y. 2014)). Defendants' request that the Court discern the intent of the legislature regarding the retroactivity of the statute at issue by examining the memorandum for another bill that was introduced and supported by only *one* Assembly member is illogical. And to the contrary, the legislature's decision to omit A3090's sponsoring memorandum language alluding to any "errors" from enacted A8106-C's sponsoring memorandum further confirms that the legislature declined to ascribe any indicia of retroactivity when passing A8106-C, strengthening Judge Pollak's ruling and Plaintiffs' argument on this issue.

Because Defendants have not provided any contravening binding authority that would require the Court to reject the holding in *Gold* and because there is no text or history from the statute at issue indicating the legislature's intent on this issue, the Court should find that Defendants have not overcome the presumption against retroactive application of the statute and deny Defendants' attempt to raise the affirmative defense in N.Y. Lab. Law § 198 (1-b) (eff. Feb. 27, 2015).

### B. Defendants Are Foreclosed from Arguing the Affirmative Defense Should Apply Retroactively.

While Defendants now argue that the affirmative defense should apply retroactively, they never raised these arguments in their briefing in opposing Plaintiffs' partial summary judgment motion. Instead, Defendants improperly cited and relied on the 2015 version of the bill which was not in effect at the time of Plaintiffs' time-of-hire notice claims. In this Circuit, it is the "established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, 06 Civ. 3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009); *see also Pierce v. Mance*, 08 Civ. 4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009) ("Rule 72(b) does not provide that new claims may be raised in objections to a report and recommendation . . . . [or] presented in the form of, or along with, 'objections[]' . . . ."). Indeed, this Court has held that very rule to apply when previously considering objections to a report and recommendation on a motion for summary judgment in *Kennedy v. Adamo*, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (Vitaliano, *J.*) (quoting *Haynes v. Quality Markets*, 2003 WL 23610575, at*3 (E.D.N.Y. Sept. 22, 2003)) ("'[t]he law is clear that when a dispositive motion is heard before a magistrate judge, the [litigants] must make all . . . arguments then and there, and cannot later add new arguments at subsequent stages of the proceedings' without a very compelling reason."). To do otherwise would be to encourage a practice of reserving arguments for the objections to take a second-bite at the apple—an inefficient waste of the court's resources.

### C. Defendants Are Not Entitled to the Affirmative Defense Because They Did Not Pay All Wages Due Nor Did They Reasonably Believe in Good Faith That They Were Not Required To Provide Written Notice[8]

The core claims in this case involve Defendants' failure to pay all wages due. Most relevant here, if the Court grants summary judgment on Plaintiffs' tip-notice claims and finds the notice provided was inadequate, Defendants are not entitled to claim a tip credit.[9] 12 N.Y.C.R.R. § 146–1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips *and if the employee has been notified of the tip credit as required in section 146–2.2 of this Part.*" (emphasis added)). If Defendants were not entitled to claim a tip credit, then they failed to pay all wages due, and would not be entitled to the affirmative defense.

For the reasons stated above, for all the reasons presented throughout Plaintiffs' briefing, and for the reasons found in Judge Pollak's Report and Recommendation, the Court should find that Defendants' wage notices to Plaintiffs were legally deficient pursuant to Section 195(1) and decline Defendants' attempt to invoke an affirmative defense derived from a later-enacted statute.

In sum, Plaintiffs respectfully request that the Court adopt Judge Pollak's Report and Recommendation in its entirety, grant partial summary judgment on the issues of Defendants' failure to provide accurate written notice of the tip credit and liability for unpaid minimum wages and wage notice penalties under the NYLL, and permit Plaintiffs to submit a proposed class notice to be disseminated to the certified classes under Rule 23.

Respectfully submitted,

Robert W. Ottinger
*Counsel for Plaintiffs*

---

[8] Defendants made no mention of this prong of their defense during Oral Argument, seemingly conceding that the admission of HR Director Timothy Eames has foreclosed reliance on this prong of 198(1-b). *See* ECF No. 290 (*Marin*) at 18 (confirming that that General Managers "were responsible for getting the notices signed" and that Defendants believed that the General Managers had properly "provided the required notice.").

[9] While not presently before the Court on this motion, Defendants also underpaid Plaintiffs and other workers by requiring them to work uncompensated overtime off-the-clock, to perform duties that entitled them to the full minimum wage, to participate in an illegal tip-sharing scheme, and by failing to pay for the minimum hourly rate of pay, overtime premium and spread-of-hours pay; by shaving time from Plaintiffs' and other workers' time records, and by taking improper deductions from their pay.