UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CARLOS MARIN, et al., on behalf of themselves    :
and all others similarly situated                            :
                                                                         :
                                          Plaintiffs,       :                        MEMORANDUM & ORDER
                                                                         :
                                      -against-                 :                        12-cv-5274 (ENV) (CLP)
                                                                         :
APPLE-METRO, INC., et al.,                               :
                                                                         :
                                         Defendants.       :
------------------------------------------------------------ x
------------------------------------------------------------ x
SHAUNTA DOVE, on behalf of herself and all       :
others similarly situated,                                     :
                                                                         :
                                          Plaintiff,          :                        MEMORANDUM & ORDER
                                                                         :
                                      -against-                 :                        13-cv-1417 (ENV) (CLP)
                                                                         :
APPLE-METRO, INC., et al,                                 :
                                                                         :
                                         Defendants.       :
------------------------------------------------------------ x

VITALIANO, D.J.

        Carlos Marin, Kenny Lebron, Martina Hanisch, and, separately, Shaunta Dove, brought

these related collective actions against Apple-Metro Inc., a corporation made up of Applebee's

restaurants operating throughout New York City, Westchester and Rockland counties, along with

their individual restaurant branches and a number of individual defendants, alleging violations of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law

("NYLL") §§ 195, 215, and 650 *et seq.*  On December 14, 2014, this Court affirmed a July 28,

2014 Order of now Chief Magistrate Judge Cheryl L. Pollak granting, over objections,

conditional class action certification in these two cases.  *See* December 16, 2014 Order, Dkt. 86.

According to plaintiffs, 1,104 individuals have since opted in to one or both of the cases.[1]  *See* Pls.' Partial Summ. J. Mem., Dkt. 277, at 2.

Presently before the Court is a report and recommendation ("R&R") issued by Judge Pollak recommending that the Court (1) grant in part and deny in part a motion for partial summary judgment on a subset of claims brought by the four named plaintiffs and sixty opt-in plaintiffs and (2) certify two proposed subclasses reflecting those claims.  R&R at 111–12, Dkt. 293.  Having reviewed the R&R, defendants' objections, plaintiffs' responses, and all of the parties' supplemental papers, the Court now adopts the R&R, with modification, as the opinion of the Court, but directs remand of the matter to Judge Pollak for further proceedings consistent with the Court's modification of her recommendations.

<u>Background</u>[2]

On November 4, 2016, plaintiffs proceeded to move for partial summary judgment on a subset of claims brought by the four named plaintiffs and sixty opt-in plaintiffs.  Pls.' Mot. for Partial Summ. J., Dkt. 276.  The motions were referred to Judge Pollak.  *See* Oct. 13, 2016 Order.  Plaintiffs' motions seek judgment on two claims brought under state law.  First, plaintiffs claim that defendants improperly took a tip credit without providing notice as required under 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2, and thus paid plaintiffs less than the minimum wage (the "minimum wage claims").  R&R at 9.  Second, plaintiffs claim that defendants failed to

---

[1] On January 21, 2014, the Court granted the parties' joint motion to deem the *Marin* and *Dove* actions related given the identity of facts, witnesses, discovery and the underlying events.  Although some of the claims brought in each complaint are different, the instant motion papers filed for each case are identical.  Accordingly, for the sake of simplification, citations to the docket will be to the docket for *Marin v. Apple-Metro, Inc., et al.*, 12-CV-5274.

[2] Familiarity of the parties with the factual background and procedural history upon which the R&R rests is presumed, though facts pertinent to the instant motions will be highlighted here.

distribute proper wage notices as required by NYLL § 195(1)(a) and are therefore liable for statutory damages under NYLL § 198(1-b) (the "wage notice claims").  *Id.*  For each claim, plaintiffs seek certification of a subclass.  *Id.*

After receiving the parties' briefing, Dkts. 277, 284, 290, Judge Pollak heard oral argument on February 3, 2017.  *See* Feb. 3, 2017 Minute Entry, Dkt. 292.  On October 4, 2017, Judge Pollak issued her R&R, in which she recommended that 61 plaintiffs be granted summary judgment on the minimum wage claims, but that summary judgment be denied as to the remaining 3.  R&R at 111–12.  Judge Pollak also recommended that 36 plaintiffs be granted summary judgment on their wage notice claims, but that summary judgment be denied as to the remaining 28.  *Id.* at 111.  Finally, Judge Pollak recommended that plaintiffs' two proposed subclasses be certified with slight modification.  *Id.* at 112.  The parties were given notice of time to object.  *Id.*  Defendants timely served their objections to the R&R on November 22, 2017.  Defs.' Mem. in Supp. of Objs. ("Defs.' Mem."), Dkt. 302.  Plaintiffs served their opposition to defendants' objections on January 9, 2018.  Pls.' Mem. in Opp'n to Objs. ("Pls.' Mem."), Dkt. 304.

After reviewing the parties' briefs, as well as additional letters filed by the parties in the interim, Dkts. 308, 311, 313, the Court held oral argument on July 17, 2018.  *See* Tr., Dkt. 319.  The parties were then granted leave to file post-oral argument briefs, which were filed on August 13, 2018.  Dkts. 321, 322.  Defendants, however, took issue with a declaration appended to plaintiffs' post-oral argument brief, and requested leave to file a motion to strike.  Defs.' Ltr., Dkt. 324.  Having been granted leave, defendants proceeded with their motion, and the parties filed their motion to strike briefs with the Court on November 9, 2018.  Dkts. 326, 327, 328, 330.  To top off the briefing, plaintiffs filed a letter informing the Court of supplemental authorities on

August 14, 2019, Dkt. 331, and defendants filed their response on September 6, 2019, Dkt. 335.

<u>Legal Standard</u>

In reviewing a report and recommendation of a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Further, a district judge is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). But, as to "those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record" in order to accept it. *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).

<u>Discussion</u>

I.   <u>Motion to Strike</u>

In support of the arguments advanced in their post-oral argument brief, plaintiffs have proffered the Declaration of M. Patricia Smith, who served as the New York State Commissioner of Labor from 2007 to 2010. Pls.' Post-Oral Arg. Mem., Dkt. 322, Ex. 1. They attached the Smith Declaration, plaintiffs say, to help the Court interpret 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2, regulations that former Commissioner Smith claims to have played a role in adopting.[3] Pls.' Mot. to Strike Mem., Dkt. 328, at 1–2. Defendants argue that the Court should strike the Smith

---

[3] Because 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2 became effective after Commissioner Smith moved on from her role as commissioner, the parties dispute the extent of her involvement.

Declaration because, among other reasons, it is untimely under Federal Rule of Civil Procedure 26, and, in any event, it is not admissible either as evidence or as part of the regulatory history. Defs.' Mot. to Strike Mem., Dkt. 327, at 5–8.  In a cat and mouse response, plaintiffs firmly state what the Smith Declaration is not, but offer no explanation, other than their fiat, as to why it is properly before the Court: "Commissioner Smith is not a factual witness," plaintiffs advise, but rather "[h]er declaration clarifies that the Court should interpret the regulation the way that Plaintiffs propose . . . ."  Pls.' Mot. to Strike Mem. at 2.

Plaintiffs' chameleon-like characterization of the Smith Declaration as some form of hybrid between an expert opinion and a component of the regulatory history falls flat.  Neither characterization leads to the consideration of the declaration for the purpose coveted by plaintiffs.  To the extent the Smith Declaration should be construed as an expert opinion, this violates the clear rule prohibiting experts from supplying legal opinions or conclusions.  *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citing cases); *see also State of New York v. Shalala*, No. 93-CIV-1330 (JFK), 1996 WL 87240, at *6 (S.D.N.Y. Feb. 29, 1996) (granting motion to strike affidavits intended to provide "background information and explain complex issues" in review of agency regulations).[4]  To the extent the Smith Declaration should be construed as a component of the regulatory history, plaintiffs have cited no authority for the notion that the regulatory history includes statements made by agency officials *after they are no longer associated with that agency*.  This is not surprising, as courts have long recognized that agencies may change their interpretations over time.  *See, e.g.*,

---

[4] Furthermore, if the declaration should be considered that of an expert witness, defendants would have been entitled to expert discovery on its contents.  *See, e.g.*, *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 & n.4 (2d Cir. 2001).  They were granted no such opportunity, which would bar its proffer here even if the opinion was otherwise admissible.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 863, 104 S. Ct. 2778, 2792,

81 L. Ed. 2d 694 (1984) ("An initial agency interpretation is not instantly carved in stone.");

*Terrace Court, LLC v. New York State Div. of Hous. & Cmty. Renewal*, 18 N.Y.3d 446, 453, 940

N.Y.S.2d 549, 963 N.E.2d 1250 (2012) (noting that an agency may change an interpretation if it

offers an adequate explanation).  An advanced degree in logic is not required to deduce that a

hybrid form of two proffers that fail to secure judicial consideration cannot succeed in their

stead.  The motion to strike is granted, and the Smith Declaration will not be considered in the

review of Judge Pollak's R&R.

II.    <u>Threshold Objections</u>[5]

    A.    *Dove Pleadings*

Based on both the law of the case doctrine and the general standard for pleadings, Judge

Pollak rejected defendants' claim that the Dove complaint failed to adequately plead the

minimum wage and wage notice claims.  R&R at 20–25.  Defendants object on both theories.

Def.'s Mem. at 6–9.

Absent prejudice, compliance with Rule 8 satisfies the rules of the road and puts to rest

other technical objections.  As must be understood, Rule 8(a) requires "factual allegations that

are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d

929 (2007)).  "The failure in a complaint to cite a statute, or to cite the correct one, in no way

---

[5] These objections come dangerously close mere regurgitation of previous arguments made to the magistrate judge, which would foreclose *de novo* review.  *See LG Capital Funding, LLC v. On4 Commc'ns, Inc.,* No. 16-CV-6943 (ENV) (RER), 2018 WL 4583486*,* at **3–4 (E.D.N.Y. Sept. 25, 2018).  Nevertheless, since the Court finds that the objections are without merit even upon *de novo* review, the point is academic and need not be decided.

affects the merits of a claim.  Factual allegations alone are what matters."  *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (*Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).

Defendants argue that they had no notice of the minimum wage and wage notice claims, but, as Judge Pollak correctly determined, the factual allegations comprising these claims are present in the Dove complaint.  R&R at 21–24.  Pertinently to the minimum wage claims, the complaint alleges that defendants "failed to pay [Dove] . . . the minimum hourly required rate of pay per hour worked" and took "credit for an inaccurate amount of her tips."  Dove Compl., Dkt. 15 (Dove), ¶ 71.  As for the wage notice claims, it also alleges that "defendants failed to provide Plaintiff and Class Action Plaintiffs with proper pay stubs/wage statements" in "violation of Labor Law § 195."  *Id.*  at ¶¶ 174, 176.

It is of no moment that the complaint refers only to § 195 generally and to "pay stubs/wage statements" rather than "wage notice."  *See* Defs.' Mem. at 8.  Defendants' argument that this did not provide fair notice is undercut by the fact that defendants pleaded affirmative defenses to these claims.  *See* Def.'s Ans., Dkt. 16 (Dove), ¶¶ 18–19.  Similarly, that the complaint does not itemize each and every requirement under § 195(1)(a) is also unavailing, as courts do not require such granular specificity in pleading such claims.  *See Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 457–58 (E.D.N.Y. 2014) (finding general allegation that defendants never provided plaintiffs with a wage notice under § 195(1)(a) to be sufficient).  Therefore, the Court finds that the Dove complaint sufficiently pleaded minimum wage and wage notice claims, and defendant's objections are overruled.[6]

---

[6] Because the Court finds that the Dove complaint has properly pleaded wage notice and minimum wage claims, it need not reach defendants' law of the case objection since the "law of the case" would not tie a court's hands in such circumstances.

B.     *Opt-In Plaintiff Standing*

Defendants next threshold objection is to Judge Pollak's finding that the opt-in plaintiffs have standing to bring claims under NYLL.  Defs.' Mem. at 9.  Specifically, defendants contend that the opt-in plaintiffs do not have standing to bring NYLL claims because the notice and consent forms clearly indicated they were opting in to the federal claims alone.  *Id.*

But, as Judge Pollak found, there is little doubt that opt-in plaintiffs intended to join both the federal and state law claims.  R&R 28–29.  The notice form repeatedly alleges that defendants violated both "federal and state law," and the consent form specifically states, "I consent to join in one or both of the above collective action(s) . . . and authorize [plaintiffs' counsel] to act on my behalf *in all matters relating to this action* . . . ."  *See* Pls.' Ltr., Dkt. 91, Exs. A, B (emphasis added).

Defendants cling to a single section of the notice warning that if opt-in plaintiffs do not return the consent form by a certain date, they may "not be allowed to participate in the federal law portion of this lawsuit."  Defs.' Mem. at 10.  Having reviewed the notice and consent forms in their entirety, the Court is not convinced that this single reference somehow severs the state law claims.  Defendants also cannot seriously contend that they would be prejudiced by the inclusion of the opt-in plaintiffs' state law claims.  *See* Defs.' Mem. at 11.  Unlike in the case offered by defendants, the notice and consent forms here made no suggestion that the state law claims would not be included.  *Compare Briceno v. USI Services Group, Inc.*, No. 09-CV-4252, 2016 WL 324964, at *5 (E.D.N.Y. Jan. 26, 2016) (finding defendants would be prejudiced because the notice stated "[t]his Notice relates only to the Fair Labor Standards Act claims").  As a consequence, the Court finds that the opt-in plaintiffs opted in to both the federal and state law claims, and this objection is overruled.

C.      Prematurity

As for the last of the three, defendants contend that Judge Pollak erred in finding that plaintiffs' motion for summary judgment was not premature.  Defs.' Mem. at 12.  Specifically, defendants contend that all relevant discovery relating to the minimum wage and wage notice claims had not been exchanged, and they sought additional discovery to search for written wage notices and "to determine whether actual notice of the tip credit was given and/or whether Defendants can properly evoke the affirmative defense."  *Id.*  Again, defendants' contention is without merit.

So there is no misunderstanding, it must be emphasized that defendants do not argue that no discovery has been conducted, but rather that they should be allowed to conduct additional discovery.  *See Desclafani v. Pave-Mark Corp.*, 06-CV-4639 (HBP), 2008 WL 3914881, at *7 (S.D.N.Y. Aug. 22, 2008) (noting "a critical distinction" between these two requests).  Under Federal Rule of Civil Procedure 56(d), in order to successfully stay a motion for summary judgment to conduct additional discovery, the non-movant must "file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine [dispute] of material fact, (3) what effort the affiant has made to obtain those facts, and (4) why [those efforts were] unsuccessful[.]"  *DeRosier v. Czarny*, No. 5:18-CV-0919 (GLS) (DEP), 2019 WL 4697504, at *5 (N.D.N.Y. May 24, 2019) (quoting *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989)), *report and recommendation adopted*, No. 5:18-CV-919 (GLS) (DEP), 2019 WL 4691251 (N.D.N.Y. Sept. 26, 2019).  Failure to file an affidavit "'is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13–14 (2d Cir. 2013) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.

9

1994)).

Defendants' request may be rejected solely on the basis that they never filed an affidavit. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927–28 (2d Cir. 1985) ("A memorandum is not a substitute for an affidavit."). But more significantly, defendants still have not provided an adequate explanation for their failure to seek discovery relating to the minimum wage and wage notice claims. As noted above, while defendants hide behind their "we didn't get notice of their claims" cry of foul, they did interpose affirmative defenses to the very same claims. Indeed, they were entitled to discovery on those defenses which would have provided the very discovery they now lament they did not get. That was a strategic choice defendants made then which does not afford a basis for objection now. As a consequence, this final threshold objection is also overruled.

III.   Affirmative Defense

A.   *Retroactivity in the Nature of Statutory Revision*

Defendants object to Judge Pollak's finding that they have no recourse to the affirmative defense in NYLL § 198(1-b). Defs.' Mem. at 14. The affirmative defense shields employers from liability "for violation of [§ 195(1)(a)]" if they can show either "complete and timely payment of all wages" or that they "reasonably believed in good faith that [they were] not required to provide the employee with notice." NYLL § 198(1-b). Defendants argue that the affirmative defense provides a "complete defense" to both the wage notice claims and minimum wage claims. *Id.* at 18. But, Judge Pollak found that, as a matter of law, defendants had no recourse to the defense because it did become effective until February 27, 2015 and there is no indication that the Legislature intended it to apply retroactively. R&R at 43–46.

Defendants maintain that Judge Pollak erred in finding that the amendment did not apply

retroactively to April 9, 2011, when the original language of NYLL § 198(1-b) became effective, because the amendment merely fixed a typographical error. Defs.' Mem. at 16–18. Plaintiffs dispute this. Resorting to legislative history and case law, plaintiffs argue that retroactive applications are disfavored in New York, and such an interpretation is not warranted here. Pls.' Mem. at 23–28. Review on this disputed point is *de novo*.

Though telling half a tale, plaintiffs correctly characterize the approach taken by New York courts in construing legislative enactments. The Second Circuit has made clear that "'retroactive operation of statutes is not favored by [New York] courts' and it 'takes a clear expression of the legislative purpose to justify a retroactive application.'" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (quoting *Majewski v. Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998)). When a statutory amendment has a remedial intent, however, retroactive application may be appropriate "in order to effectuate its beneficial purpose." *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122, 726 N.Y.S.2d 45, 749 N.E.2d 724 (2001) (applying amendments retroactively because they were intended to "clarify what the law was always meant to do and say"). In any case, to determine legislative purpose under New York law, courts must first look to the text of the legislation, and if that fails, then to the legislative history. *Gold*, 730 F.3d at 143. Defendants' cry of scrivener's error fits comfortably within these collective interpretive confines.

When the bill that enacted § 198(1-b) was originally passed, the language of the bill as drafted provided a defense to violations "of paragraph (d) of subdivision one of section one hundred ninety-five of this article . . . ." *See* NYLL § 198(1-b) (eff. Apr. 9, 2011). But in 2015, it was amended to refer to a violation of paragraph *(a)*. *See* NYLL § 198(1-b) (eff. Feb. 27, 2015). Looking to the text of the 2015 enactment, there is no express reference to retroactivity

11

or a remedial purpose.  *See* 2014 A.B. 8106-C, Ch. 537.  But, crucially, the original text of the

affirmative defense read, as enacted by Senate Bill 8380, simply makes no sense.  *See* 2010 S.B.

8380, Ch. 564.  Paragraph (d) of § 195(1) protects employers from liability for violations that

stem from the New York Department of Labor's ("NYDOL") own actions.  *See* NYLL §

195(1)(d) ("An employer shall not be penalized for errors or omissions in the non-English

portions of any notice provided by the commissioner.").  Plainly, the language as drafted is

metaphysically incapable of violation, and Senate Bill 8380's creation of an affirmative defense

to the impossible violation would be pointless.  This suggests that the reference to paragraph (d)

was in error.  *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS

234–35 (2012) (Under the absurdity doctrine, courts may correct an apparent drafters' error that

"produces a disposition that makes no substantive sense (a so-called evaluative absurdity) . . . .");

*cf. Anonymous v. Molik*, 32 N.Y.3d 30, 37, 84 N.Y.S.3d 414, 109 N.E.3d 563 (2018) ("In

interpreting statutory language, 'all parts of a statute are intended to be given effect' and 'a

statutory construction which renders one part meaningless should be avoided.'" (quoting

*Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 515, 577 N.Y.S.2d 219, 583 N.E.2d 932

(1991))).  When the plain language of the statute creates an absurdity, a court construing it must

turn to the statute's legislative history.

    Looking to the bill jacket of Assembly Bill 8106-C,[7] there is at least one reference to the

remedial nature of the amendment.  In a letter to the Governor from one of the bill's sponsors, it

---

[7]  A bill jacket comprises an official compilation of materials that accompanies a bill on its life
from legislative action through executive action and is intended by the Legislature and the
Governor to be an official history of the bill's enactment, explain its purposes and provides
insight into its language.  *See* William H. Manz, *The Citation Practices of the New York Court of
Appeals: A Millennium Update*, 49 BUFF. L. REV. 1273, 1288 (2001); *see also Ortiz v. CIOX
Health LLC*, 386 F. Supp. 3d 308, 315 (S.D.N.Y. 2019) ("The New York Court of Appeals
commonly relies on submissions included in the Bill Jacket as a source of legislative history.").

states that the bill "corrects some technical errors with the original bill that could cause confusion in the courts when interpreting the law."  New York Bill Jacket, 2014 A.B. 8106-C, Ch. 537, at 6.  While not particularly specific, this acknowledgment weighs strongly in favor of finding a remedial purpose.  More telling, however, is the Senate sponsor's supporting memorandum for Senate Bill 8380, which, when enacted, originated the affirmative defense.  *See* New York Bill Jacket, 2010 S.B. 8380, Ch. 564.  The memorandum states that the bill provides "two affirmative defenses" under the heading "Employer Violations of Wage Stub and Notice Requirements."  *Id.* at 6.  Reading the text of Senate Bill 8380 as written, all of the wage stub and notice requirements are in paragraph (a); none are in paragraph (d).  *See* 2010 S.B. 8380, Ch. 564.  Obviously, then, the defense was intended to apply to violations of § 195(1)(a), and the amendment changing the reference from paragraph (d) to paragraph (a) was remedial in nature; indeed, it was merely a revision to catch a drafting error that slipped notice in 2011.

Given the plain language of the legislative sponsor submissions to the bill jackets of the two relevant enactments that put the affirmative defense in place, plaintiffs cannot dispute the countervailing import of this legislative history, but, they nonetheless urge the Court to find against retroactive application by citing to cases holding that the 2015 amendment to § 198(1-b) is not retroactive.  Pls.' Post-Oral Arg. Mem. at 9.  Yet, those cases hold only that the amendments to the *statutory penalties* found in § 198(1-b) are not retroactive.  *See, e.g.*, *Saldana v. New Start Grp., Inc.*, No. 14-CV-4049 (CBA) (RLM), 2016 WL 3683530, at *1 (E.D.N.Y. July 6, 2016) (applying the original $2500 statutory damages ceiling rather than the amended $5000 ceiling).  For whatever value these decisions might have, standing in greater counterweight is the one decision that has actually considered whether the amendment *to the affirmative defense* in § 198(1-b) should apply retroactively, which found that it should.  *Hicks v.*

*T.L. Cannon Mgmt. Corp.*, No. 13-CV-06455 (EAW), 2018 WL 2440732, at *7 (W.D.N.Y. Mar. 13, 2018).[8]

Given this factual framework and utilizing the tools of statutory construction recognized by New York law, the Court concludes that the affirmative defenses in § 198(1-b) were made to apply retroactively; that is, the 2015 amendment in this regard was intended as a revision in order to conform the language to the original intent of the 2011 enactment. Accordingly, the R&R is modified to reflect this Order.

   B.   *Establishing the Defense*

The affirmative defense applies if defendants can show that they either (1) made complete and timely payment of all wages due or (2) reasonably believed in good faith that it was not required to provide the employee with notice. Defendants contend that they can satisfy both theories. Defs.' Mem. at 18. Plaintiffs, on the other hand, argue that, even if the defense applies, defendants can satisfy neither. Pls.' Mem. at 18–20.

Disposing with the second theory of defense first, the Court notes that defendants seem to misunderstand this portion of the affirmative defense. Defendants point to a declaration showing they tried in good faith to comply with the notice requirements under § 195(1)(a). Defs.' Mem. at 18–19. But, the affirmative defense applies not when the employer has a good faith belief it complied with § 195(1)(a)'s notice requirements; rather, it applies when the employer has a good faith belief "*that it was not required to*." NYLL § 198(1-b) (emphasis added); *see also Jindan*

---

[8] In finding that the affirmative defense applies retroactively, the court in *Hicks* relied on the history of Assembly Bill 3090, which proposed a similar amendment to Assembly Bill 8106-C, but never passed. *Hicks*, 2018 WL 2440732, at *7. Because Assembly Bill 3090 never passed, plaintiffs and defendants disagree as to whether the Court should consider it. In any event, the Court has found the legislative history of the bills that did pass sufficient, so it need not consider the significance of Assembly Bill 3090.

*Wu v. Nat.'l Tofu Rest. Corp.*, No. 16-cv-3613, 2018 WL 1009274, at *7 (E.D.N.Y. Feb. 20, 2018) (no reasonable juror could find that defendants reasonably believed in good faith they were not required to furnish wage notices when they "did not consult an attorney or other expert, or attend any trainings to learn about their labor law obligations"). Under this standard, the fact defendants knew § 195(1)(a) applied to them—and attempted to comply with it—fatally weighs against this theory of defense, not in favor. This theory, therefore, is no refuge for defendants.

The first affirmative defense theory advanced by defendants, however, tells quite a different story and certainly impels a different conclusion. Plaintiffs conceded at oral argument that defendants paid all wages owed if one assumes that "no one was not paid for off the clock time" and "the tip credit notice was correct." *See* Tr. at 29:13–21. While the claims for off-the-clock time are still pending, Tr. at 29:7–10, plaintiffs believe, and Judge Pollak agreed, that the defense of "complete and timely payment" is foreclosed because of defendants' inability to establish that they complied with the tip credit notice requirements of §§ 146-1.3 and 146-2.2. Pls.' Mem. at 18–19. Regardless of whether defendants ultimately prevail on the facts, contrary to plaintiffs' arguments and the findings of the R&R, the defense of "complete and timely payment" is most certainly not foreclosed.

Plaintiffs, to be sure, sketch a very neat argument for liability as a matter of law, focusing first on § 146-1.3, which states that employers may take a tip credit only if "the employee has been notified of the tip credit as required in section 146-2.2." 12 N.Y.C.R.R. § 146-1.3. Section 146-2.2, in turn, specifies various written notice requirements, including notice of the tip credit. 12 N.Y.C.R.R. § 146-2.2. Thus, plaintiffs argue that even if they were actually paid all wages owed, defendants must be deemed to have underpaid plaintiffs as a matter of law because they did not comply with §§ 146-1.3 and 146-2.2, and are, therefore, not entitled to use the

15

affirmative defense of "complete and timely payment." Pls.' Mem. at 18–19. This argument, of course, runs afoul of the finding that the affirmative defense of "complete and timely payment" under § 195(1)(a) applies retroactively, pursuant to the 2015 amendment, to April 9, 2011. Consequently, if defendants can show that they actually paid plaintiffs all wages owed, they have established a complete defense to both the wage notice and the minimum wage claims unless there is some other legal impediment to advancing it.

Here, there do not appear to be any. First, the minimum wage claims for violations of §§ 146-1.3 and 146-2.2 are covered under the affirmative defense. As other courts have observed, §§ 146-1.3 and 146-2.2 were promulgated by NYDOL to carry out the requirements set for in § 195(1)(a). *Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-CV-06455 (EAW), 2018 WL 2440732, at *7 (W.D.N.Y. Mar. 13, 2018); *see also Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12-CV-5359 (KBF), 2016 WL 3221141, at *2 (S.D.N.Y. Mar. 1, 2016). Therefore, an affirmative defense to violations of § 195(1)(a) would naturally apply to violations of §§ 146-1.3 and 146-2.2 as well. *See* NYLL § 198(1-b) (providing a defense to "violation of [§195(1)(a)]").

Second, it would be absurd if use of the affirmative defense were contingent on proper notice of the tip credit. The affirmative defense is meant to shield employers from liability for failure to provide sufficient notice, including notice of the tip credit, when employees actually receive all wages due. Thus, a defense to insufficient wage notice cannot itself depend on the ability of the defendant asserting the defense to establish the sufficiency of the wage notice. That is the sophistry that lies at the core of plaintiffs' argument and lights the path to its rejection.

Only two courts appear to have considered this issue, and, helpfully, both agree that the affirmative defense of "complete and timely payment" of wages is a complete affirmative

defense without showing compliance with the tip credit notice requirements of §§ 146-1.3 and 146-2.2. First, in *Ahmed v. Morgans Hotel Grp. Mgmt.*, *LLC*, the defendant moved for summary judgment on plaintiff's minimum wage claim based on evidence that plaintiff was always paid at least minimum wage if tips were included. 54 Misc.3d 1220(A), 55 N.Y.S.3d 691, at **3–4 (N.Y. Sup. Ct. 2017), *aff'd sub nom. Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555, 74 N.Y.S.3d 546 (N.Y. App. Div. 2018). The plaintiff there argued that tips should not be included for purposes of the affirmative defense because defendant did not comply with the notice requirement under §§ 146-1.3 and 146-2.2. *Id.* at *4. But, the court rejected the plaintiff's argument, explaining that the affirmative defense was intended to "protect employers from a mere technical violation of the notice provision" and further that "if the employee suffered no actual injury as a result of not being given the notice, there is no liability." *Id*. The court ultimately held that § 198(1-b) "provide[d] a complete defense to plaintiff's claim." *Id.* Then, in *Hicks v. T.L. Cannon Mgmt. Corp.*, the court cited *Ahmed* favorably and denied plaintiffs' motion for summary judgment, finding that the affirmative defense could apply even if defendants took a tip credit to which they were not entitled. No. 13-CV-06455 (EAW), 2018 WL 2440732, at *8 (W.D.N.Y. Mar. 13, 2018). The *Hicks* court noted that, upon further discovery, defendants "could show that they were entitled to take the tip credit, or *that they had otherwise paid all wages to which Plaintiffs were entitled*." *Id.* (emphasis added).

In response, plaintiffs argue that *Ahmed* is distinguishable because the notice defect there was what the court called "a mere technical violation," whereas here the defect is "an *actual* substantive violation of law." Pls.' Mem. at 23 (emphasis in original). In *Ahmed*, the employer failed to tell its employees that if the sum of their wages and tips did not add to the minimum wage, it would make up the difference. *Ahmed*, 54 Misc.3d 1220(A) at **3–4. Plaintiffs liken

this to a harmless error like the misspelling of the employer's name or the misstatement of its address.  Pls.' Mem. at 23.  By contrast, plaintiffs submit that the error here—the inaccurate statement of wage rates—is actually harmful.  *Id.*

Although plaintiffs latch on to the obvious difference between the violation in *Ahmed* and the one they charge here, these differences and distinctions are insignificant from the perspective of statutory construction.  Substantively, § 146-2.2 requires employers to notify tipped employees they will cover deficiencies presumably for the same reason it requires notice of accurate wage rates: so employees know whether they are being paid enough.  It is unclear how failing to tell employees they have a right to additional pay if they do not make enough tips is harmless when compared to providing them with accurate rates.

Of course, just because notice of the tip credit is immaterial to whether the affirmative defense applies does not mean plaintiffs cannot ultimately prevail.  Indeed, plaintiffs claim that defendants failed to pay them for time worked off the clock, *see* Tr. at 29:7–21, and plaintiffs may prove those claims yet.  But, beyond that, since the Court has now found that the statutory revision is retroactive, the affirmative defense is not barred to defendants as a matter of law, and there is now an open question of material fact as to its applicability here.  Accordingly, summary judgment on both the wage notice and minimum wage claims for violations after April 9, 2011 must be denied, and the R&R, which found differently, is modified as reflected in this Order.

IV.   <u>Plaintiffs Hired Before April 9, 2011</u>

While the Court has determined that summary judgment must be denied as to plaintiffs hired after April 9, 2011, Judge Pollak also recommended granting summary judgment on the minimum wage claims of three plaintiffs who were hired before April 9, 2011—Stephanie Persaud, Mark Kennedy and Erica Schmid.  R&R at 47, 79.  Because NYLL did not provide a

remedy for wage notice violations prior to April 9, 2011, these three plaintiffs cannot recover for wage notice claims under § 198(1-b), but defendants also cannot resort to the affirmative defense in reply to their minimum wage claims to the extent they seek recovery for violations that pre-date April 9, 2011. *See Moore v. United States*, 318 F. Supp. 3d 188, 192–93 (D.D.C. 2018) (holding that statute annulling affirmative defense did not apply when underlying conduct occurred before it became effective).  Nevertheless, that still leaves defendants' objections to Judge Pollak's findings with respect to those claims.

Defendants' make three primary objections.  First, they object to the definition of "hourly overtime rate of pay," contending that the Court should use a different definition that would show 25 plaintiffs were provided accurate notice.  Defs.' Mem. at 32–34.  Second, they object to Judge Pollak's finding that only written notice of the tip credit, rather than actual notice, is sufficient to comply with §§ 146-1.3 and 146-2.2.  Defs.' Mem. at 22–31.  Third, adding yet another wrinkle, because claimant Schmid was hired before January 1, 2011, §§ 146-1.3 and 146-2.2 do not apply to her claims to the extent they seek recovery for violations that pre-date January 1, 2011.  R&R at 53.  Consequently, defendants lodge a separate objection to Judge Pollak's recommendation with respect to her minimum wage claim, arguing that there were no notice requirements at all before January 1, 2011.  Defs.' Mem. at 34–36.

The first and third of these objections are new arguments.  In their original brief, defendants focused on only the definition of the regular rate of pay and made no contention as to the definition of the overtime rate.  *See* Defs.' Partial Summ. J. Mem., Dkt. 128, at 22 (defendants "concede for purposes of this motion only that they did not list some of the proper overtime rates on Moving Plaintiffs' forms.").  Furthermore, defendants made no mention of Schmid or the grounds for denying her relief in their original brief.  Courts in this circuit have

19

held that "a litigant is not allowed to oppose a magistrate [judge]'s Report and Recommendation by suddenly asserting new arguments that were not presented to the magistrate [judge] originally." *Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-CV-2293 (NGG) (RER), 2015 WL 6021534, at *3 (E.D.N.Y. Oct. 14, 2015) (quoting *Kennedy v. Adamo*, No. 1:02-CV-01776 (ENV) (RML), 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)) (collecting cases).  While the Court has discretion to consider new evidence or arguments when reviewing an objection to an R&R, *see id.*, defendants have offered no reason for the Court to do so.  Accordingly, the Court reviews Judge Pollak's findings on these two issues for clear error and finds none.

Defendants' remaining objection properly raises an issue, which must be considered *de novo*.  Defendants contend that, under §§ 146-1.3 and 146-2.2, actual notice is all that is required to take a tip credit, and further that they have produced evidence creating an issue of fact as to actual notice, thereby defeating summary judgment.  Defs.' Mem. at 28–31.  Plaintiffs neither contest nor concede that defendants are able to show actual notice, but vigorously deny that actual notice is sufficient, citing to the determinations made by Judge Pollak.  Pls.' Mem. at 28– 33.

As previewed earlier, § 146-1.3 makes no reference to written notice, but requires notice "of the tip credit as required in section 146-2.2," which does impose a written notice requirement.  *See* 12 N.Y.C.R.R. § 146-1.3.  In particular, § 146-2.2 provides: "Prior to the start of employment, an employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate . . . ."  12 N.Y.C.R.R. § 146-2.2.

The cross reference did not go unnoticed.  Judge Pollak found that § 146-1.3, through its reference to § 146-2.2, makes written notice a prerequisite for taking a tip credit.  R&R at 69–73.  Most courts that have considered this issue have found the same.  *See, e.g.*, *Hernandez v. Jrpac,*

*Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at \*25 (S.D.N.Y. June 9, 2016).  But, defendants argue that the position of NYDOL itself is that reference to § 146-2.2 is solely intended to describe the type of notice required, not its form.  Defs.' Mem. at 25.  And to support this argument, defendants cite to a March 4, 2015 opinion letter issued by NYDOL General Counsel Pico Ben-Amotz, (the "Ben-Amotz letter"), Dkt. 287-16.

Judicial opinion on the letter is scant.  Many of the opinions finding written notice to be required were issued before the letter, *see, e.g.*, *Hart v. Rick's Cabaret Intern, Inc.*, 60 F. Supp. 3d 447, 455 (S.D.N.Y. 2014), and most that have been issued since either do not consider the letter or sidestep the issue entirely.  *See, e.g.*, *Garcia v. Saigon Market LLC*, No. 15-CV-9433, 2019 WL 4640260, at \*9 (S.D.N.Y. Sept. 24, 2019) (questioning provenance of the letter, but finding that even under its terms defendants did not provide adequate notice).  Apparently, the only other opinion to fully consider the letter on the merits is *Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, No. 12-CV-5359 (KBF), 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016).[9]  There, the *Carvente-Avila* court found that the letter was entitled to deference, and consequently, that § 146-1.3 does not require written notice.  *Id.* at \*2.  As a result, as a preliminary but fundamental question, it must be determined what deference, if any, must be accorded to the Ben-Amotz letter.[10]

---

[9] Plaintiff notes that the court in *Hicks* considered the letter negatively because it was written in response to its holding in an earlier opinion. Pls.' Supp. Mem., Dkt. 311, at 5.  Although the *Hicks* court did express some discomfort with the fact that the letter had been issued in response to an earlier opinion in the case, it did not ultimately rule on whether it should be granted deference.  *Hicks*, 2018 WL 2440732, at \*\*9–10.

[10] Defendants have also attached a letter from James Rogers, Deputy Commissioner for Worker Protection for NYDOL, providing the same opinion.  Defs.' Mem. at 26.  Plaintiffs argue that the Court should not consider this letter because it was not raised before Judge Pollak.  Pls.' Mem. at 31.  Because the Court finds the Ben-Amotz letter sufficient, it need not consider these additional materials.

The Ben-Amotz letter's stated purpose is to "summarize the Department of Labor's (DOL) interpretation of the intersection of the tip credit and notice of pay rules in 12 N.Y.C.R.R §§ 146-1.3 and 146-2.2." Ben-Amotz letter at 1. According to the letter, NYDOL's position is that employers are eligible to claim the tip credit even without written notice, so long as the employer can show "compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." *Id.* at 2. It provides three rationales for this interpretation. First, it notes that the plain language of § 146-1.3 does not specifically require written notice, and if such a requirement existed, it "would be explicit in the regulation." *Id.* at 2. Second, it explains that while § 146-2.2 requires written notice, the penalty for failing to provide such notice is not loss of the tip credit, but a civil penalty under NYLL § 218.[11] *Id.* Finally, it states that its interpretation is compelled by "the need to prevent unintended consequences," namely "an unjustified windfall for employees that have actual notice of their employer's tip credit practices." *Id.* Powerfully, the letter concludes that this interpretation provides "a sufficiently strong incentive to employers to comply with written notice requirements . . . without being unnecessarily punitive to those employers that do not provide the required written notice . . . ." *Id.*

The Ben-Amotz letter does work a sea change. District courts construing this regulatory language beforehand did so unaided by administrative interpretation of that language. The change in posture is extremely significant because New York courts hold that "[t]he construction given to statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79,

---

[11] NYLL § 218 provides that the Commissioner may penalize violations "in an amount not to exceed one thousand dollars for a first violation, two thousand dollars for a second violation or three thousand dollars for a third or subsequent violation."

854 N.Y.S.2d 83, 883 N.E.2d 990 (2008) (quoting *Chesterfield Assoc. v. New York State Dep't of Labor*, 4 N.Y.3d 597, 604, 797 N.Y.S.2d 389, 803 N.E.2d 287 (2005)).  Deference extends even to informal opinion letters that "represent[] the position" of the relevant agency.  *A.M. Med. Servs., P.C. v. Progressive Cas. Ins. Co.*, 101 A.D.3d 53, 64, 953 N.Y.S.2d 219 (N.Y. App. Div. 2012).  But deference is not warranted if the agency's interpretation conflicts with the "plain meaning of the promulgated language." *Mid Island Therapy Assocs., LLC v. New York State Educ. Dep't*, 129 A.D.3d 1173, 1175, 10 N.Y.S.3d 688 (N.Y. App. Div. 2015) (quoting *Visiting Nurse Serv. of N.Y. Home Care v. New York State Dep't of Health*, 5 N.Y.3d 499, 506, 806 N.Y.S.2d 465, 840 N.E.2d 577 (2005)).  Indeed, agency deference is so cardinal rule of regulatory interpretation in New York, that even if the agency's interpretation "might not be the most natural reading of the regulation, or [] the regulation could be interpreted in another way, [that] does not make the interpretation irrational." *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 177, 100 N.Y.S.3d 612, 124 N.E.3d 162 (2019) (quoting *Matter of Elcor Health Servs., Inc. v. Novello*, 100 N.Y.2d 273, 280, 763 N.Y.S.2d 232, 794 N.E.2d 14 (2003)).

Before looking to the substance of the letter, Judge Pollak made a series of findings questioning its provenance.  Defendants object to each finding:

First, Judge Pollak found that the letter did not "represent the position of the Department of Labor" because NYDOL has stated on its website that it will no longer "issue opinions on a case-by-case basis."  R&R at 70 (quoting *Counsel*, N.Y. State Dep't of Labor, https://labor.ny.gov/legal/counsel.shtm (last visited September 19, 2020)).  But, as defendants point out, the same page states: "If it is determined, in the Commissioner's discretion, that guidance on a specific issue is necessary, a letter with new guidelines may be issued."  *See* Defs.' Mem. at 30 (quoting *Counsel*, N.Y. State Dep't of Labor, https://labor.ny.gov/legal/counsel.shtm

(last visited September 19, 2020)).  Effectively, the R&R refuses to acknowledge the letter as "official" because NYDOL's website indicates that letters like this will no longer be issued.  But, undeniably, an appropriate official of the department did issue the letter, and the very same website clearly shows that, notwithstanding the general rule against the issuance of such letters, the department reserved its right expressly to issue such letters when the department deemed it appropriate.  Moreover, despite its reference to *Hicks*, the letter seems to be more in the vein of general NYDOL policy guidance, and is unlike the case-by-case opinions previously issued by NYDOL, which limited their applicability to facts presented.  *See, e.g.,* N.Y. State Dep't of Labor, Op. Letter No. RO-09-0173 (Dec. 11, 2009) (disclaiming that the "opinion has been provided on the basis of the facts set forth in Mr. [redacted]'s memo of November 25, 2009.  A different opinion might result if the circumstances outlined in such memo change.").  In the face of the letter's issuance and in the absence of any evidence to the contrary, the finding that the letter does not express the department's official view on the regulations it discusses cannot be sustained.

Next, Judge Pollak found that even if the letter was the position of NYDOL on the date it was sent, NYDOL has since made clear on its Frequently Asked Questions page that written notice is required for an employer to be permitted to claim a tip credit.  R&R at 70–71.  Defendants object here because they contend the guidance on this page does not actually make written notice a prerequisite to taking the tip credit.  Defs.' Mem. at 29.  The applicable section provides:

> For the employer to claim a tip credit/allowance (and pay a reduced hourly wage in conjunction with the tips received by the employee), the employer must prove that the employee actually received such tips.  Employers must give employees, at or before the

time of hiring, written notice that the employer will apply a tip credit of allowance toward

their minimum wage.

Tips and Gratuities Frequently Asked Questions, N.Y. State Dep't of Labor,

https://labor.ny.gov/legal/frequently-asked-questions.shtm (last visited September 19, 2020).

The only explicit prerequisite to taking the tip credit provided in this section is that the

employer "must prove that the employee actually received such tips." *Id.* The next sentence,

while declaring that employers must give employees written notice, makes no mention of the

consequences for not providing such notice. There is, of course, no dispute that written notice is

required under NYDOL regulations. The Ben-Amotz letter acknowledges that on its face. Ben-

Amotz letter at 1–2. The issue, and what the paragraph above does not explain, is what the

penalty for failing to provide such notice is.

Turning to the merits of the letter's reasoning then, Judge Pollak found that even if it

represents NYDOL's official position, it is not entitled to deference because "it clearly conflicts

with the plain language of the regulations that the Department itself has promulgated." R&R at

71. Defendants object, contending that it is not unreasonable to interpret § 146-1.3's reference to

§ 146-2.2 as setting forth the type of notice, not its form. Defs' Mem. at 25.

At any rate, it is clear that § 143-1.3 makes no explicit reference to a written notice

requirement. Accordingly, if the reference to § 146-2.2 is read simply to require that the

employee be notified of the substance of the tip credit notice in § 146-2.2, whether that notice be

written or otherwise, there is no conflict between the text of the regulation and the interpretation

adopted by the Ben-Amotz letter. Despite plaintiffs' advocacy for their own interpretation,

plaintiffs point to nothing that precludes deference to NYDOL's position. Indeed, as the New

York Court of Appeals recently held, even if the agency's interpretation "might not be the most

natural reading of the regulation, or [] the regulation could be interpreted in another way, [that] does not make the interpretation irrational." *Andryeyeva*, 33 N.Y.3d at 177 (2019) (quoting *Matter of Elcor Health Servs., Inc.*, 100 N.Y.2d at 280).[12]

In the end, New York's strong policy favoring administrative deference wins the day. Consequently, since the Court finds that the Ben-Amotz letter reflects the policy of NYDOL on this issue, it defers to the interpretation of §§ 146-1.3 and 146-2.2 espoused in the Ben-Amotz letter and finds that summary judgment on Persaud's, Kennedy's and Schmid's minimum wage claims, to the extent they seek recovery for violations that post-date January 1, 2011, must be denied, as a genuine issue of dispositive fact exists. The R&R is accordingly modified to reflect this Order.

V.      Class Certification

Finally, defendants object to the R&R's recommendation for certification of two subclasses. Subclass A corresponds to the minimum wage claims, and Subclass B corresponds to the wage notice claims. *See* R&R at 83–84. As defendants point out, if the Court were to find the affirmative defense in NYLL § 198(1-b) available or the approach set forth in the Ben-Amotz Letter applicable, it would have significant implications for the Court's commonality and predominance analyses. Defs.' Mem. at 36–37. Given that the Court has made both of these findings, which make fundamental changes to Judge Pollak's R&R, the Court, pursuant to Federal Rule of Civil Procedure 72, returns the matter to Judge Pollak and asks that she consider

---

[12] In what amounts to a sidebar skirmish, the parties clash over Judge Pollak's finding that § 146-2.2 includes a writing requirement because it was amended in 2016 and no changes were made to conform to the policy espoused in the Ben-Amotz letter. *See* R&R at 72. While Judge Pollak found the failure to make a parallel amendment persuasive, there is nothing inherent in the interpretation offered by the Ben-Amotz letter that would have triggered the need for an amendment to § 146-2.2 in 2016. Upon *de novo* review, the Court finds it insignificant.

the class certification issue in light of the Court's determination both that the affirmative defense in NYLL § 198(1-b) is available and the approach set forth in the Ben-Amotz Letter is applicable.

Conclusion

In light of the foregoing, the R&R is adopted with modification.  As a result, summary judgment on plaintiffs' minimum wage claims and wage notice claims is denied, except that summary judgment with respect to Schmid's minimum wage claim is granted to the extent she seeks recovery for violations that pre-date January 1, 2011.  With the modifications set forth in this Order, the matter is returned to Judge Pollak for consideration as to whether class certification should be granted in light of these determinations and for all remaining pretrial matters including possible renewed settlement discussions.

So Ordered.

Dated:   Brooklyn, New York
         October 7, 2020

                                        /s/ENV
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge